IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CHAMPION ENTERPRISES, INC., et al.,[1] | ) | Case No. 09-14019 (___) |
| | ) | |
| | ) | (Joint Administration Requested) |
| Debtors. | ) | |

**MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS UNDER SECTION 366 OF THE BANKRUPTCY CODE (A) PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING OR DISCONTINUING SERVICE, (B) DEEMING UTILITIES ADEQUATELY ASSURED OF FUTURE PERFORMANCE, AND (C) ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT**

Champion Enterprises, Inc. and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"), hereby file this Motion for entry of an interim order (the "Interim Order") and a final order (the "Final Order"), under 11 U.S.C. §§ 105(a) and 366(a) (a) prohibiting the Utility Providers (defined below) from altering, refusing or discontinuing service; (b) deeming the Utility Providers adequately assured of future performance; and (c) establishing procedures for determining additional adequate assurance of future payment (the "Motion"). In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Redman Homes, Inc. (4957); Champion Enterprises, Inc. (3168); Champion Home Builders Co. (4984); New Era Building Systems, Inc. (0928); North American Housing Corp. (1097); Homes of Merit, Inc. (8488); Western Homes Corporation (6910); Star Fleet, Inc. (0506); Champion Enterprises Management Co. (6726); Champion Retail, Inc. (2154); San Jose Advantage Homes, Inc. (1951); Highland Acquisition Corp. (8962); Highland Manufacturing Company LLC (6762); SSH Liquidating Corp. (6678); Champion Homes of Boaz, Inc. (3165); Iseman Corp. (5899); MHCDC, LLC (3417); HomePride Finance Corp. (4767); and Champion Development Corp. (4642). The address for all Debtors is 755 W. Big Beaver, Suite 1000, Troy, MI 48084.

## Jurisdiction

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of these proceedings and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a), 363, 366, 1107 and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules").

## Background

3. On the date hereof (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in the Debtors' chapter 11 cases.

4. The Debtors and their non-debtor affiliates are leading producers of manufactured and modular housing, as well as modular buildings for government and commercial applications. The Debtors distribute these products through independent retailers, builders and developers. In addition to their manufacturing and other sale operations, Debtors also sell manufactured homes directly to certain manufactured home parks in California and transport their products from the factories to retailers.

2

5. The factual background relating to the Debtors' commencement of these chapter 11 cases is set forth in detail in the *Declaration of Phyllis Knight, Chief Financial Officer of the Debtors, in Support of First Day Motions* (the "Knight Declaration") filed contemporaneously with this Motion and incorporated herein by reference.

6. In the normal course of business, the Debtors have relationships with various utility companies and other providers (each a "Utility Provider" and, collectively, the "Utility Providers") for the provision of telephone, gas, electricity and related services (the "Utility Services"). The Utility Providers include, without limitation, the entities set forth on the list attached hereto as Exhibit A.[2] The Debtors estimate that their average monthly payments to the Utility Providers aggregate approximately $480,000.

## Relief Requested

7. The Debtors, by this Motion and pursuant to sections 105(a) and 366 of the Bankruptcy Code, seek the entry of interim and final orders: (a) prohibiting the Utility Providers from altering, refusing or discontinuing services; (b) deeming Utility Providers adequately assured of future performance; and (c) establishing procedures for determining adequate assurance of future payment.

8. In order to provide adequate assurance of payment for future services to the Utility Providers, the Debtors propose to make a deposit (a "Utility Deposit") equal to 50% of the Debtors' estimated cost of their monthly utility consumption to each Utility Provider

---

[2] The listing of any entity on Exhibit A hereto is not an admission that any listed entity is a utility within the meaning of section 366 of the Bankruptcy Code. The Debtors reserve the right to assert at any time that any entity listed on Exhibit A is not entitled to adequate assurance pursuant to Bankruptcy Code section 366. The Debtors further reserve the right to terminate the services of any Utility Provider at any time and to seek an immediate refund of any Utility Deposit (as defined below) without giving effect to any right of setoff or claim asserted by a Utility Provider against the Debtor.

3

which the Debtors intend to continue to utilize during the course of these cases. The Debtors estimate that the Utility Deposits, in the aggregate, will total approximately $240,000. The Debtors propose to make Utility Deposits to each of the Utility Providers specified on Exhibit A hereto within ten (10) days after the entry of an interim order granting this Motion, pending further order of the Court, for the purpose of providing each Utility Provider with adequate assurance of payment of its postpetition date services to the Debtors.

9. In addition, the Debtors seek to establish reasonable procedures (the "Procedures") by which a Utility Provider may request additional adequate assurance of future payment, in the event that such Utility Provider believes that its Utility Deposit does not provide it with satisfactory adequate assurance. Such Procedures, in particular, would provide that:

a. If a Utility Provider is not satisfied with the assurance of future payment provided by the Debtors pursuant to the proposed Utility Deposit, the Utility Provider must serve a written request (the "Request") upon the Debtors setting forth the location(s) for which Utility Services are provided, the account number(s) for such location(s), the outstanding balance for each account, a summary of the Debtors' historical amounts incurred with respect to utility use over the course of the last 12 months for each account, and an explanation of why the Utility Deposit is inadequate assurance of payment;

b. The Request must be actually received by the Debtors and Debtors' counsel, Laura Davis Jones, Esquire, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899-8705 (Courier 19801) within forty-five (45) days of the date of the interim order granting this Motion (the "Request Deadline");

c. Without further order of the Court, the Debtors may enter into agreements granting additional adequate assurance to a Utility Provider serving a timely Request, if the Debtors, in their discretion, determines that the Request is reasonable;

d. If the Debtors believe that a Request is unreasonable, then the Debtors shall, within thirty (30) days after the Request Deadline

4

date, file a motion pursuant to section 366(c)(2) of the Bankruptcy Code (a "Determination Motion"), seeking a determination from the Court that the Utility Deposit, plus any additional consideration offered by the Debtors, constitute adequate assurance of payment. Pending notice and a hearing on the Determination Motion, the Utility Provider that is the subject of the unresolved Request may not alter, refuse, or discontinue services to the Debtors; and

e. Any Utility Provider that fails to make a timely Request shall be deemed to be satisfied that the Utility Deposit provided to it constitutes adequate assurance of payment.

10. If the Debtors supplement the list in Exhibit A hereto subsequent to the filing of this Motion, the Debtors will serve a copy of this Motion and the signed order granting the Motion (the "Order") on any Utility Provider that is added to the list by such a supplement (the "Supplemental Service"). In addition, the Debtors will also provide a Utility Deposit in the amount of 50% of the estimated cost of monthly utility consumption for the added Utility Provider. Concurrently with the Supplemental Service, the Debtors will file with the Court a supplement to Exhibit A adding the name of the Utility Provider so served. The added Utility Provider shall have thirty (30) days from the date of service of this Motion and the Order to make a Request.

11. Finally, the Order provides that the Debtors may terminate the services of any Utility Provider by providing written notice (a "Termination Notice"). Upon receipt of a Termination Notice by a Utility Provider, pursuant to the relief requested by the Debtors herein, the Utility Provider shall immediately refund any Utility Deposit to the Debtors, without giving effect to any rights of setoff or any claims the Utility Provider may assert against the Debtors. The Debtors believe that the immediate refund of a Utility Deposit by a Utility Provider whose services are terminated is fair and appropriate under the circumstances because the Utility Provider would no longer require adequate assurance of future performance by the Debtors.

5

## Basis for Relief

12.   Congress enacted section 366 of the Bankruptcy Code to protect a debtor from utility service cutoffs upon a bankruptcy filing while, at the same time, to provide utility companies with adequate assurance that the debtor will pay for postpetition services. *See* H.R. Rep No. 95-595, at 350 (1978) *reprinted in* 1978 U.S.C.C.A.N. 5963, 6306. Accordingly, section 366 protects a debtor by enjoining utilities from altering, refusing or discontinuing services solely on account of unpaid prepetition amounts for a period of thirty (30) days after the bankruptcy filing. And it protects utilities by permitting them to alter, refuse or discontinue service after thirty (30) days if the Debtors have not furnished "adequate assurance" of payment.

13.   Section 366(c), which was enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "2005 Act"), significantly modified the existing statutory framework. It has two primary purposes. First, it permits a utility to alter, refuse or discontinue utility service if Debtors have not provided "satisfactory" adequate assurance within thirty (30) days of their bankruptcy filings, subject to the court's ability to modify the amount of adequate assurance. Second, it also restricts the factors that a court can consider when determining whether an adequate assurance payment is, in fact, adequate. Specifically, courts may no longer consider (i) the absence of a security deposit before the Debtors' petition date, (ii) the Debtors' history of timely payments, or (iii) the availability of an administrative expense priority when determining the amount of a deposit. Notwithstanding these changes, as discussed below, it does not appear that Congress intended to -- or did -- abrogate the bankruptcy court's right to determine the amount of adequate assurance necessary or change the fundamental requirement that assurance of payment must simply be "adequate."

14. First, while section 366(c) does limit the factors a court can consider when determining whether Debtors have provided adequate assurance of payment, it does not limit the court's ability to determine the amount of payment necessary, if any, to provide such adequate assurance. Instead, section 366(c) gives courts the same discretion in determining the amount of payment necessary for adequate assurance as they previously had under section 366(b). *Compare* 11 U.S.C.§ 366(b) (2005) ("On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance") *with* 11 U.S.C. § 366(c)(3)(A) (2005) ("On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance payment under paragraph (2)"); *see also* Richard Levin & Alesia Ranney-Marinelli, *The Creeping Repeal of Chapter 11: The Significant Business Provisions of the Bankruptcy Abuse Protection and Consumer Protection Act of 2005*, 79 Am. Bankr. L.J. 603, 608-09 (2005) (stating that courts would likely continue to determine the amount and form of adequate protection after the implementation of the 2005 Act). And it is well established that section 366(b) permits a court to find that no adequate assurance payment at all is necessary to provide a utility with adequate assurance of payment. *See In re Caldor*, 117 F.3d 646, 650 (2d Cir. 1997) ("Even assuming that 'other security' should be interpreted narrowly,... a bankruptcy court's authority to 'modify' the level of the 'deposit or other security' provided for under § 366(b) includes the power to require 'no deposit or other security' where none is necessary to provide a utility supplier with 'adequate assurance of payment'"). This may be particularly true in cases where the Debtors have made prepetition deposits or prepayments for services that utilities will ultimately render postpetition. 11 U.S.C. § 366(c)(1)(A)(v) (recognizing a

7

prepayment for postpetition services as adequate assurance). Accordingly, courts continue to have discretion to determine the amount and form of adequate assurance payments.

15. Additionally, section 366(c), like section 366(b), simply requires that a utility's assurance of payment be "adequate." Courts have long recognized that adequate assurance of performance does not constitute an absolute guarantee of a debtor's ability to pay. *In re Caldor, Inc.*, 199 B.R. 1, 3 (S.D.N.Y. 1996) (Section 366(b) "does not require an 'absolute guarantee of payment'"); *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002) (accord); *In re Steinbach*, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Adequate assurance of payment is not, however, absolute assurance... all § 366(b) requires is that a utility receive only such assurance of payment as is necessary to protect its interests given the facts of the debtor's financial circumstances"). Courts have also recognized that in determining the amount of adequate assurance, bankruptcy courts should focus "on the need of the utility for assurance, and to require that the Debtors supply *no more than that*, since the Debtors almost perforce have a conflicting need to conserve scarce financial resources." *In re Caldor, Inc.*, 117 F.3d at 650.

16. The essence of the Court's inquiry in determining whether a given assurance of payment is in fact "adequate" is an examination of the totality of the circumstances in making an informed judgment as to whether utilities will be subject to an unreasonable risk of nonpayment. *Id.* at 82-83. *See also In re Magnesium Corp. of Am.*, 278 B.R. 698, 714 (Bankr. S.D.N.Y. 2002) ("In deciding what constitutes adequate assurance in a given case, a bankruptcy court must focus upon the need of the utility for assurance, and to require that the debtor supply no more that than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources.")

8

17. Here, the Debtors propose to make Utility Deposits in order to provide adequate assurance to their Utility Providers. Under the circumstances of these cases, the Debtors believe that the proposed Utility Deposits constitute adequate assurance of payment under section 366(c) of the Bankruptcy Code. Moreover, the Debtors propose to protect the Utility Providers further by establishing the Procedures provided for herein, whereby any Utility Provider can request additional adequate assurance in the event that it believes there are facts and circumstances with respect to its providing postpetition services to the Debtors that would merit greater protection.

18. The Debtors cannot continue to operate without continued Utility Services. If any of the Utility Providers alter, refuse or discontinue service, even for a brief period, the Debtors' business operations would be severely disrupted. In contrast, the Utility Providers will not be prejudiced by the continuation of their services and will be paid all postpetition utility charges. It is therefore critical that Utility Services continue uninterrupted.

19. Additionally, this Court has the authority to grant the relief requested herein pursuant to section 105(a) of the Bankruptcy Code which provides that the Court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The purpose of section 105(a) is "to assure the bankruptcy courts [sic] power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 *Collier on Bankruptcy* ¶ 105.01, at 105-5 to 105-6 (15th rev. ed. 2001). Because the proposed Procedures protect the Debtors without materially prejudicing the Utility Providers, they carry out section 366 in a manner fully consistent therewith and are an appropriate exercise of this Court's authority under section 105(a) of the Bankruptcy Code.

20. The Debtors respectfully submit that their proposed method of furnishing adequate assurance of payment for postpetition utility service is not prejudicial to the rights of any Utility Provider and is in the best interest of the Debtors' estates. Courts have approved similar procedures in other Chapter 11 cases filed after the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. *See, e.g., In re Cooper-Standard Holdings, Inc.,* Case No. 09-12743 (PJW) (Bankr. D. Del. August 5, 2009) (approving adequate assurance of post-petition payment through a deposit equal to two weeks of utility consumption based on historical average); *In re Premier Int'l Holdings Inc.,* Case No. 09-12019 (CSS) (Bankr. D. Del. July 15, 2009) (same) ; *In re WL Homes, LLC,* Case No. 09-10571 (BLS) (Bankr. D. Del. February 20, 2009) (same); *In re SemCrude, L.P.* Case No. 08-11525 (BLS) (Bankr. D. Del. July 23, 2008) (approving adequate assurance of payment consisting of escrow of sum equal to two weeks of monthly utility consumption); *In re Western Nonwovens, Inc.,* Case No. 08-11435 (PJW) (Bankr. D. Del. July 15, 2008) (same); *In re Progressive Molded Prods. Inc.* Case No. 08-11253 (KJC) (Bankr. D. Del. June 24, 2008) (approving adequate assurance of payment consisting of escrow of sum equal to two weeks of monthly utility consumption); *ACG Holdings, Inc.,* Case No. 08-11467 (CSS) (Bankr. D. Del. August 11, 2008) (approving, on an interim basis, adequate assurance of payment consisting of escrow of sum equal to 50% of estimated costs of monthly utility consumption); *Tropicana Entm't, LLC,* Case No. 08-10856 (KJC) (Bankr. D. Del. May 6, 2008) (approving adequate assurance consisting of deposit equal to the costs of two weeks of utility service for utility companies not already paid in advance or in possession of security deposits greater or equal that amount); *In re Leiner Health Prods., Inc.,* Case No. 08-10446 (KJC) (Bankr. D. Del. Mar. 12, 2008) (adequate assurance of payment consisting of escrow of sum equal to 50% of estimated costs of monthly utility consumption); *In*

*re Global Motorsport Group, et al.*, Case No. 08-10192 (KJC) (Bankr. D. Del. February 7, 2008); *In re Buffets Holdings, Inc.*, Case No. 08-10141 (MFW) (Bankr. D. Del. Jan. 23, 2008) (approving, on interim basis, adequate assurance of payment consisting of escrow of sum equal to 50% of estimated costs of monthly utility consumption); *In re New Century TRS Holdings, Inc.*, Case No. 07-10416 (KJC) (Bankr. D. Del. Apr. 3, 2007) (deeming utilities adequately assured where debtor provided two-weeks deposit for utilities).

### Satisfaction Of Bankruptcy Rule 6003 And Waiver Of Bankruptcy Rule 6004

21.  Pursuant to Rule 6003(b) *of* the Federal Rules of Bankruptcy Procedure, "a motion to pay all or part of a claim that arose before the filing of the petition" shall not be granted by the Court within 20 days of the Petition Date "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm . . . ." Fed. R. Bankr. P. 6003(b). Because the Utilities may attempt to terminate the Debtors' postpetition utility services within the period set forth in section 366(c)(2) of the Bankruptcy Code, and for the reasons set forth in the Knight Declaration, the Debtors submit that the requirements of Rule 6003 have been met and that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

22.  To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the ten-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent these rules are applicable.

## Notice

23.     Notice of this Motion has been given to (i) the Office of the United States Trustee and (ii) the Debtors' prepetition and postpetition secured lenders or, in lieu thereof, to their counsel, if known. As the Motion is seeking "first day" relief, within two business days of the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered respecting the Motion as required by Del. Bankr. LR 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

24.     No prior motion for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that this Court enter an interim and final order, substantially in the form attached hereto, granting the relief requested herein and such other and further relief as this Court deems appropriate.

Dated: November 15, 2009

PACHULSKI STANG ZIEHL & JONES LLP

/s/ Laura Davis Jones

Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Timothy P. Cairns (Bar No. 4228)
Mark M. Billion (Bar No. 5263)
919 North Market Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
E-mail:   ljones@pszjlaw.com
          dbertenthal@pszjlaw.com
          tcairns@pszjlaw.com
          mbillion@pszjlaw.com

[Proposed] Counsel to Debtors and Debtors in Possession