IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CHAMPION ENTERPRISES, INC., et al.,[1] | ) | Case No. 09-14019 (___) |
| | ) | |
| Debtors. | ) | Joint Administration Requested |
| | ) | |

## DEBTORS' APPLICATION TO EMPLOY AND RETAIN ALVAREZ & MARSAL NORTH AMERICA, LLC AS FINANCIAL ADVISORS TO DEBTORS AND DEBTORS IN POSSESSION PURSUANT TO SECTION 327(a) OF THE BANKRUPTCY CODE

The debtors in possession in the above-captioned action (collectively, the "**Debtors**" or the "**Company**") hereby move for entry of an order pursuant to section 327(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), authorizing the employment and retention of Alvarez & Marsal North America, LLC, together with employees of its affiliates (all of which are wholly-owned by its parent company and employees), its wholly owned subsidiaries, and independent contractors (collectively, "**A&M**") to serve as financial advisors to the Debtors, nunc pro tunc to the date of filing of these cases (the "**Petition Date**") (the "**Application**"). In support of the Application, the Debtors respectfully state as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Redman Homes, Inc. (4957); Champion Enterprises, Inc. (3168); Champion Home Builders Co. (4984); New Era Building Systems, Inc. (0928); North American Housing Corp. (1097); Homes of Merit, Inc. (8488); Western Homes Corporation (6910); Star Fleet, Inc. (0506); Champion Enterprises Management Co. (6726); Champion Retail, Inc. (2154); San Jose Advantage Homes, Inc. (1951); Highland Acquisition Corp. (8962); Highland Manufacturing Company LLC (6762); SSH Liquidating Corp. (6678); Champion Homes of Boaz, Inc. (3165); Iseman Corp. (5899); MHCDC, LLC (3417); HomePride Finance Corp. (4767); and Champion Development Corp. (4642). The address for all Debtors is 755 W. Big Beaver, Suite 1000, Troy, MI 48084.

13814-001\DOCS_DE:153162.3

## JURISDICTION

1. This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 327(a), 330, 331, and 1107(b) of the Bankruptcy Code, as supplemented by Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## BACKGROUND

3. On the date hereof (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in the Debtors' chapter 11 cases.

4. The Debtors and their non-debtor affiliates are leading producers of manufactured and modular housing, as well as modular buildings for government and commercial applications. The Debtors distribute these products through independent retailers, builders and developers. In addition to their manufacturing and other sale operations, Debtors also sell manufactured homes directly to certain manufactured home parks in California and transport their products from the factories to retailers.

5. The factual background relating to the Debtors' commencement of these chapter 11 cases is set forth in detail in the *Declaration of Phyllis Knight, Chief Financial Officer of the Debtors, in Support of First Day Motions* (the "Knight Declaration") filed contemporaneously with this Motion and incorporated herein by reference.

**RELIEF REQUESTED**

6. By this Application, the Debtors seek to employ and retain A&M as their financial advisors, pursuant to section 327(a) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, to perform the services set forth more fully herein, nunc pro tunc to the Petition Date.

**Retention of A&M**

7. In consideration of the size and complexity of their businesses, as well as the exigencies of the circumstances, the Debtors have determined that the services of experienced financial advisors will substantially enhance their attempts to maximize the value of their estates. A&M is well qualified to provide these services in light of their extensive knowledge and expertise with respect to chapter 11 proceedings.

8. A&M specializes in interim management, crisis management, turnaround consulting, operational due diligence, creditor advisory services, and financial and operational restructuring. A&M's debtor advisory services have included a wide range of activities targeted at stabilizing and improving a company's financial position, including developing or validating forecasts, business plans and related assessments of a business's strategic position; monitoring

and managing cash, cash flow and supplier relationships; assessing and recommending cost reduction strategies; and designing and negotiating financial restructuring packages.

9. Brian E. Cejka, the Managing Director of A&M leading this assignment, is well-suited to provide the restructuring services required by the Debtors. Mr. Cejka has an extensive background in providing services to financially distressed and/or chapter 11 debtors in the past. Certain of his Company-side representations include Kimball Hill Homes, National Energy and Gas Transmission, U.S. Office Products, and Adventure Parks Group.

10. In addition, A&M is familiar with the Debtors' businesses, financial affairs, and capital structure. Since the firm's initial engagement on September 4, 2009, the A&M personnel providing services to the Debtors (the "**A&M Professionals**") have worked closely with the Debtors' management and other professionals in assisting with the myriad requirements of these chapter 11 cases. Consequently, the Debtors believe that A&M has developed significant relevant experience and expertise regarding the Debtors and the unique circumstances of this case. For these reasons, A&M is both well qualified and uniquely suited to deal effectively and efficiently with matters that may arise in the context of these cases. Accordingly, the Debtors submit that the retention of A&M on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

## Scope of Services

11. The Debtors' prepetition engagement letter (the "**Engagement Letter**") with A&M is attached hereto as <u>Exhibit A</u>, the terms of which shall govern the Debtors' retention of A&M except as explicitly set forth herein or in any order granting this Application.

12. It is our understanding that the Debtors have chosen Morgan Joseph & Company, Inc. ("**Morgan Joseph**") to act as its investment banker. A&M will work closely with Morgan Joseph to prevent any duplication of efforts in the course of advising the Debtors.

13. Among other things, A&M will provide assistance to the Debtors with respect to management of the overall restructuring process, the development of ongoing business and financial plans and supporting restructuring negotiations among the debtors, their advisors and their creditors with respect to an overall exit strategy for their chapter 11 cases.

14. A&M will provide such restructuring support services as A&M and the Debtors shall deem appropriate and feasible in order to manage and advise the Debtors in the course of these chapter 11 cases, including, but not limited to:

(a) assistance to the Debtors in the preparation of financial-related disclosures required by the Court, including the Debtors' Schedules of Assets and Liabilities, Statements of Financial Affairs and Monthly Operating Reports;

(b) Assistance to the Company with information and analyses required pursuant to the Company's Debtor-In-Possession financing including, but not limited to, preparation for hearings regarding the use of cash collateral and DIP financing;

(c) Advisory assistance in connection with the development and implementation of key employee incentives and other critical employee benefit programs;

(d) Assistance with the identification of executory contracts and leases and performance of cost/benefit evaluations with respect to the assumption or rejection of each;

(e) Assistance to management in the preparation of financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursement analysis, analysis of various asset and liability accounts, and analysis of proposed transactions for which Court approval is sought;

(f) Attendance, as requested by the Company, at meetings and assistance in discussions, as requested by the Company, with potential investors, banks and other secured lenders, the Creditors' Committee appointed in these Chapter 11 Cases, the U.S. Trustee, other parties in interest and professionals hired by the same, as requested;

(g) Analysis of creditor claims by type, entity and individual claim, including assistance with development of a database to track such claims;

(h) Assistance in the evaluation and analysis of avoidance actions, including fraudulent conveyances and preferential transfers; and

(i) Other assistance as Company's management may deem necessary that are consistent with the role of a financial advisor and not duplicative of services provided by other professional advisors to the Company.

13814-001\DOCS_DE:153162.3

## A&M's Disinterestedness

15. To the best of the Debtors' knowledge, information, and belief, other than as set forth in the Declaration of Brian E. Cejka (the "**Cejka Declaration**"), annexed hereto as Exhibit B, A&M: (i) has no connection with the Debtors, their creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, or the United States Trustee or any person employed in the Office of the United States Trustee; (i) does not hold any interest adverse to the Debtors' estates; and (i) believes it is a "disinterested person" as defined by section 101(14) of the Bankruptcy Code.

16. Accordingly, the Debtors believe that A&M is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code.

17. In addition, as set forth in the Cejka Declaration, if any new material facts or relationships are discovered or arise, A&M will provide the Court with a supplemental declaration.

## Terms of Retention

18. Subject to approval by the Court, the Debtors propose to employ and retain A&M to serve as the Debtors' financial advisor on the terms and conditions set forth in the Engagement Letter.

19. <u>Compensation</u>. In accordance with the terms of the Engagement Letter, A&M will be paid by the Company for the services of the A&M Professionals at their customary hourly billing rates which shall be subject to the following ranges:

|  |  |
|---|---|
| Managing Director | $625-850 |
| Director | $450-625 |
| Associate | $300-450 |
| Analyst | $225-300 |

Such rates and ranges shall be subject to adjustment annually at such time as A&M adjusts its rates generally.

20. In addition, A&M will be reimbursed for the reasonable out-of-pocket expenses of the A&M Professionals incurred in connection with this assignment, such as travel, lodging, third party duplications, messenger and telephone charges. However, the parties further agree that A&M will not seek reimbursement for the travel and lodging related expenses that are incurred by Brian Cejka in conjunction with his commute to the Company's corporate headquarters. In addition, A&M shall be reimbursed for the reasonable fees and expenses of its counsel incurred in connection with the preparation and approval of this Application. All fees and expenses due to A&M will be billed in accordance with any interim compensation orders entered by this Court, and the relevant sections of the Bankruptcy Code, Bankruptcy Rules and local rules of this Court.

21. <u>Indemnification</u>. As a material part of the consideration for which the A&M Professionals have agreed to provide the services described herein, the Debtors have agreed to the indemnification provisions in paragraph 10 of the Engagement Letter. Notwithstanding the foregoing, the Debtors and A&M have agreed to modify such provisions as follows, during the pendency of these Chapter 11 cases:

(a) A&M shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter for services, unless such services and the indemnification, contribution or reimbursement therefore are approved by the Court;

(b) The Debtors shall have no obligation to indemnify A&M, or provide contribution or reimbursement to A&M, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from A&M's gross negligence, willful misconduct, breach of fiduciary duty, if any, bad faith or self-dealing; (ii) for a contractual dispute in which the Debtors allege the breach of A&M contractual obligations unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to In re United Artists Theatre Company, et al., 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to A&M's gross negligence, willful misconduct, breach of fiduciary duty, or bad faith or self-dealing but determined by this Court, after notice and a hearing to be a claim or expense for which A&M should not receive indemnity, contribution or reimbursement under the terms of the Agreement as modified by this Order; and

(c) If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, A&M believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Letter (as modified by this Application), including without limitation the advancement of defense costs, A&M must file an application therefore in this Court, and the Debtors may not pay any such amounts to A&M

before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by A&M for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify A&M. All parties in interest shall retain the right to object to any demand by A&M for indemnification, contribution or reimbursement.

## Fees

22. The Debtors understand that A&M intends to apply to the Court for allowance of compensation and reimbursement of expenses for its financial advisory services in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, corresponding Local Rules, orders of this Court and guidelines established by the United States Trustee.

23. The Debtors understand that A&M intends to apply to the Court for allowance of compensation and reimbursement of expenses for its financial advisory services in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, corresponding Local Rules, orders of this Court and guidelines established by the United States Trustee.

24. A&M received $150,000 as a retainer in connection with preparing for and conducting the filing of these Chapter 11 cases, as described in the engagement Letter. In the 90 days prior to the Petition Date, A&M received retainers and payments totaling $1,014,469 in the aggregate for services performed for the Debtors. A&M has applied these funds to amounts due

for services rendered and expenses incurred prior to the Petition Date. A precise disclosure of the amounts or credits held, if any, as of the Petition Date will be provided in A&M's first interim fee application for postpetition services and expenses to be rendered or incurred for or on behalf of the Debtors. The unapplied residual retainer, which is estimated to total approximately $115,000, will not be segregated by A&M in a separate account, and will be held until the end of these Chapter 11 cases and applied to A&M's finally approved fees in these proceedings.

25. Given the numerous issues that the A&M may be required to address in the performance of their services, A&M's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services for engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtors submit that the fee arrangements set forth herein are reasonable under the standards set forth in section 327(a) of the Bankruptcy Code.

### Applicable Authority

26. The Debtors submit that the retention of A&M under the terms described herein is appropriate under sections 327(a) and 1107(b) of the Bankruptcy Code. Section 327(a) of the Bankruptcy Code empowers the trustee, with the Court's approval, to employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). Section 101(14) of the Bankruptcy Code defines a "disinterested person" as a person that: is not a creditor, an equity security holder, or an insider; is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of

the debtor; and does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason. 11 U.S.C. § 101(14).

27. Further, section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b). A&M's prepetition relationship with Debtors is therefore not an impediment to A&M's retention as Debtors' postpetition financial advisor.

28. The Debtors submit that the terms and conditions of A&M's retention as described herein, including the proposed compensation and indemnification terms, are reasonable and in keeping with the terms and conditions typical for engagements of this size and character. Since Debtors will require substantial assistance with the reorganization process, it is reasonable for Debtors to seek to employ and retain A&M to serve as its financial advisor on the terms and conditions set forth herein.

## Notice

29. Notice of this motion has been given to the following parties or, in lieu thereof, to their counsel, if known: to (i) the Office of the United States Trustee and (ii) the Debtors' prepetition and postpetition secured lenders or, in lieu thereof, to their counsel, if known. Following the first day hearing in this case, the Debtors will serve this motion on Debtors will serve this motion on (a) creditors holding the 35 largest unsecured claims against

13814-001\DOCS_DE:153162.3

the Debtors on a consolidated basis, or their legal counsel (if known); and (b) those persons who have requested notice pursuant to Bankruptcy Rule 2002.

30.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, Debtors respectfully request that the Court enter an order granting the relief requested herein and such other and further relief as the Court deems just and proper.

November 14, 2009

_____
Phyllis A. Knight
Chief Financial Officer