IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CHAMPION ENTERPRISES, INC., et al.,[1] | ) | Case No. 09-14019 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |

**MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (A) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION TAXES AND PREPETITION FEES AND (B) AUTHORIZING AND DIRECTING FINANCIAL INSTITUTIONS TO HONOR RELATED CHECKS AND ELECTRONIC PAYMENT REQUESTS**

Champion Enterprises, Inc. and its affiliated chapter 11 debtors, debtors and debtors in possession (collectively, the "Debtors"), move the Court for entry of an order (i) authorizing, but not requiring the Debtors to remit and pay prepetition sales, use, and franchise taxes and certain other governmental charges and regulatory fees as the Debtors, in their discretion, deem necessary; (ii) authorizing, but not requiring, the Debtors to collect from their customers and pay certain prepetition fees for licenses, permits, and other similar assessments; and (iii) authorizing financial institutions to receive, process, honor, and pay all checks issued and electronic payment requests made relating to the foregoing. In support of this motion (the "Motion"), the Debtors respectfully state as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Redman Homes, Inc. (4957); Champion Enterprises, Inc. (3168); Champion Home Builders Co. (4984); New Era Building Systems, Inc. (0928); North American Housing Corp. (1097); Homes of Merit, Inc. (8488); Western Homes Corporation (6910); Star Fleet, Inc. (0506); Champion Enterprises Management Co. (6726); Champion Retail, Inc. (2154); San Jose Advantage Homes, Inc. (1951); Highland Acquisition Corp. (8962); Highland Manufacturing Company LLC (6762); SSH Liquidating Corp. (6678); Champion Homes of Boaz, Inc. (3165); Iseman Corp. (5899); MHCDC, LLC (3417); HomePride Finance Corp. (4767); and Champion Development Corp. (4642). The address for all Debtors is 755 W. Big Beaver, Suite 1000, Troy, MI 48084.

## Jurisdiction, Venue and Governing Law

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The bases for the relief requested herein are sections 105(a), 363(b), 507(a)(8) and 541 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

3. On the date hereof (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in the Debtors' chapter 11 cases.

4. The Debtors and their non-debtor affiliates are leading producers of manufactured and modular housing, as well as modular buildings for government and commercial applications. The Debtors distribute these products through independent retailers, builders and developers. In addition to their manufacturing and other sale operations, Debtors also sell manufactured homes directly to certain manufactured home parks in California and transport their products from the factories to retailers.

5.  The factual background relating to the Debtors' commencement of these chapter 11 cases is set forth in detail in the *Declaration of Phyllis Knight, Chief Financial Officer of the Debtors, in Support of First Day Motions* (the "Knight Declaration") filed contemporaneously with this Motion and incorporated herein by reference.

### The Debtors' Tax & Fee Liabilities

6.  In the ordinary course of business, the Debtors (i) pay taxes, including, but not limited to, sales, use and franchise taxes and other taxes necessary to operate their businesses (collectively, the "Taxes") and certain regulatory fees for licenses, permits, and other similar assessments (the "Fees"), and (ii) collect such Taxes and Fees from their customers for payment on behalf of the Debtors and, in some instances, the customers. In both cases, the proceeds collected by the Debtors are remitted to various governmental bodies (the "Taxing Authorities") in accordance with the requirements of such Authorities. Specifically, the Debtors incur approximately $312,000 per month, comprised of an average of $245,000 in monthly sales and use taxes and approximately $67,000 in franchise taxes.

### Relief Requested

7.  The Debtors hereby request authority to pay the prepetition Taxes and Fees. Although the Debtors' records reflect that they are current on all of their Taxes and Fees that were due and payable as of the Petition Date, the Debtors will be liable for additional Taxes and Fees that relate to the prepetition period, but either have not yet been billed to the Debtors or are not yet due. Debtors estimate that the amount of these Taxes and Fees will not exceed $562,000, which is the sum of the budgeted $312,000 for Taxes and Fees incurred and billed in

the preceding month, an $156,000 pro-rated contingency for associated taxes incurred during the instant month as of the Petition Date, and an additional $94,000 for prepetition taxes, business license and regulatory fees that have been incurred but not yet billed. This estimate does not include additional prepetition tax liability that may later come due as a result of certain audits that are ongoing or may be commenced and remain unresolved as of the Petition Date.

8. Any failure to make the requested payments could cause: (a) the Taxing Authorities to initiate audits of the Debtors that would unnecessarily divert their attention away from the reorganization process; (b) the Taxing Authorities to file liens, seek to lift the automatic stay, and pursue other remedies that will harm the Debtors' estates; and (c) certain of the Debtors' directors and officers to face personal liability – even if failure to pay such Prepetition Taxes was not a result of malfeasance on their part – that would undoubtedly distract those key employees from their duties related to the Debtors' restructuring.

9. Additionally, a failure to obtain or maintain the requisite permits, licenses, and alike could cause the Debtors' entire manufacturing operation to grind to a halt if the state and local authorities that issue them attempt to shut down the Debtors' operations for a failure to stay current on these obligations. As set forth in the Knight Declaration, in this highly competitive industry, any disruption of the supply chain, and thus the supply of homes to dealers and final homeowners would put the Debtors' reorganization efforts in substantial jeopardy.

10. Accordingly, the Debtors submit that authorization, but not direction, to pay Taxes and Fees as requested herein is both appropriate and necessary to their successful reorganization.

## Relief Requested

11.  The Debtors request entry of an order (i) authorizing, the Debtors to remit and pay prepetition sales, use, and franchise taxes and certain other governmental charges and Fees in an amount not to exceed $562,000,[2] plus such Taxes which may be assessed as a result of any audits that are ongoing or not yet commenced and remain unresolved as of the Petition Date, as the Debtors deem necessary, and (ii) authorizing the Debtors to collect from their customers (to the extent remitted by customers) and pay on their own behalf certain fees for Fees due on account of licenses, permits, and other similar assessments; and (iii) authorizing financial institutions to receive, process, honor, and pay all checks issued and electronic payment requests made relating to the foregoing.

## Basis For Relief

12.  Numerous grounds exist to authorize the payment of the prepetition Taxes and Fees, which payments are critical to the Debtors' continued and uninterrupted operations. The grounds include the following: (i) amounts collected on account of certain Taxes are not property of the estates under section 541(d) of the Bankruptcy Code; (ii) portions of the Taxes are may be entitled to priority status pursuant to section 507(a)(8) of the Bankruptcy Code; (iii) governmental entities may sue the Debtors' directors and officers, which will distract them from the Debtors' sale efforts; and (iv) sections 105(a) and 363(b) of the Bankruptcy Code permit the Court to grant the relief sought.

---

[2] In the event that the Debtors' prepetition tax liabilities, excluding audits, exceed this amount, the Debtors will not pay any such excess amounts without further order from the Court.

## A. Certain Taxes are Not Property of the Debtors' Estates

13. To the extent that the Debtors' have collected Taxes from third parties, the Debtors submit that such amounts are not part of the Debtors' estates under section 541(a) of the Bankruptcy Code; rather, such amounts constitute "trust fund" taxes that are held for the benefit of the Taxing Authorities. See *Begier v. Internal Revenue Serv.*, 496 U.S. 53 (1990) (taxes such as excise taxes, FICA taxes and withholding taxes are property held by a debtor in trust for another, and as such, do not constitute property of the estate); *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95 (3d Cir. 1994); *In re Al Copeland Enters.*, 991 F.2d 233 (5th Cir. 1993) (debtor's prepetition collection of sales taxes and interest on the tax were held subject to trust for the state and were not property of the estate). Accordingly, because payment of these does not implicate property of the estates – i.e., such funds will not otherwise be available to the Debtors' estates or their creditors – payment should be authorized.

## B. Failure to Pay these Taxes and Fees May Leave the Debtors' Officers Personally Liable for These Taxes

14. Many state statutes, including those of certain states in which the Debtors do business, hold officers and directors of collecting entities personally liable for sales and use taxes owed by those entities. To the extent that any sales and use Taxes remain unpaid by the Debtors, the officers and directors of the Debtors may be subject to lawsuits during the pendency of these Chapter 11 cases. *See* John F. Olson, *et al.*, DIRECTOR & OFFICER LIABILITY: INDEMNIFICATION AND INSURANCE § 3.04, at 3-20.27 (rel.10-1999) ("some states hold corporate officers personally liable for any sales tax and penalty owed and not paid by the corporation, regardless of cause"); *see also* OHIO REV. CODE ANN. § 5739.33 (2005); FLA. STAT. § 213.29

(2005). Any such lawsuit (and the ensuing potential liability) would distract the Debtors and their officers and directors in their attempt to implement a successful reorganization strategy to the detriment of all parties in interest in these chapter 11 cases, and could result in indemnification claims.

### C. Certain Taxes are Entitled to Priority Status under the Bankruptcy Code

15. In addition, it is likely that some of the Taxes are entitled to priority status pursuant to 11 U.S.C. § 507(a)(8). *See* 11 U.S.C. § 507(a)(8)(A) (taxes measured on gross income); 11 U.S.C. § 507(a)(8)(C) ("trust fund" taxes); 11 U.S.C. § 507(a)(8)(E) (excise taxes). Under any plan of reorganization, these priority taxes must be paid in full and in regular cash installments over no more than a five-year period from the date of the order for relief. *See* 11 U.S.C. § 1129(a)(9)(C)(i)-(ii). Such priority taxes must be paid in the order of priority no less favorable than the treatment given to the most favored general unsecured claims. *See* 11 U.S.C. § 1129(a)(9)(C)(iii). Any plan of reorganization must provide the same treatment of those taxes that constitute secured claims that, were they unsecured, would have been priority tax claims under 11 U.S.C. § 507(a)(8). *See* 11 U.S.C. § 1129(a)(9)(D). Thus, in many cases, the payment of the Taxes that are entitled to such priority in the ordinary course of the Debtors' business only affects the timing of the payment and does not prejudice the rights of other creditors of the Debtors.

### D. Sections 363 and 105(a) Also Justify Payment

16. Courts have also authorized debtors to pay the types of Taxes and Fees described in this Motion under section 363(b)(1) of the Bankruptcy Code, which provides that

"the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Under such section, a court may authorize a debtor to pay certain prepetition claims. *See In re FV Steel & Wire Co.*, Case No. 04-22421 (Bankr. E.D. Wis. Feb. 26, 2004) (authorizing the continuation of customer programs and the payment of prepetition claims under section 363 of the Bankruptcy Code); *In re UAL Corp.*, Case No. 02-48191 (Bankr. N.D. Ill. Dec. 9, 2002) (authorizing payment of prepetition claims under section 363 of the Bankruptcy Code as an out-of-the-ordinary-course transaction); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (affirming lower court order authorizing payment of prepetition wages pursuant to section 363(b) of the Bankruptcy Code).

17. To do so, "the debtor must articulate some business justification, other than the mere appeasement of major creditors." *Ionosphere Clubs*, 98 B.R. at 175. As discussed herein, the Debtors' failure to pay these Taxes and Fees could have a material adverse impact on their ability to operate in the ordinary course of business.

18. Further, section 105(a) of the Bankruptcy Code provides that "(t)he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." See 11 U.S.C. § 105(a). The purpose of section 105(a) is "to assure the bankruptcy courts [sic] power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." *See* 2 COLLIER ON BANKRUPTCY ¶105.01, at 105-5 to 105-6 (15th ed. rev. 2001). Thus section 105 essentially codifies the bankruptcy court's inherent equitable powers. *See Mgm't Tech. Corp. v. Pardo*, 56 B.R. 337, 339 (Bankr. D. N.J. 1985) (noting that the court's equitable power is derived from section 105). Numerous courts have used section

105 equitable powers under the "necessity of payment doctrine" to authorize payment of a debtor's prepetition obligations where, as here, such payment is necessary to effectuate the "paramount purpose" of a chapter 11 reorganization. *See In re Lehigh & New England Rv. Co.*, 657 F.2d 570, 581 (3d Cir. 1981); *In re Ionosphere Clubs, Inc.*, 98 B.R. at 176-77 (*citing NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984)).

19. Indeed, in numerous chapter 11 cases, this Court has exercised its equitable powers under section 105 of the Bankruptcy Code to authorize debtors to pay a variety of prepetition claims of creditors, including claims similar to the prepetition Taxes and/or Fees described herein. *See e.g., In re Sun-Times Media Group, Inc.*, Case No. 09-11092 (CSS) (Bankr. D. Del. April 1, 2009); *In re Muzak Holdings LLC*, Case No. 09-10422 (KJC) (Bankr. D. Del. February 12, 2009); *In re ACG Holdings, Inc.*, Case No. 08-11467 (CSS) (Bankr. D. Del. July 16, 2008); *In re Portola Packaging, Inc.*, Case No. 08-12001 (CSS) (Bankr. D. Del. Aug. 29, 2008); *In re Tropicana Entm't, LLC*, Case No. 08-10856 (KJC) (Bankr. D. Del. May 6, 2008) The Debtors submit that the present circumstances warrant similar relief in this chapter 11 case to preserve the Debtors' assets and avoid business interruption.

20. In sum, payment of these Taxes and Fees is critical to the Debtors' continued, uninterrupted operations. Non-payment may cause the Taxing Authorities and regulatory agencies to take precipitous actions, including but not limited to, conducting audits, filing liens, seeking to impose liability against the Debtors and their directors and officers, and, if applicable, seeking to lift the automatic stay, all of which would disrupt the Debtors' day-to-day

operations and could potentially impose significant costs on the Debtors' estates. Payment of the Taxes and Fees will avoid these unnecessary and potentially costly governmental actions.

## Waiver of Bankruptcy Rules 6003 and 6004

21. Pursuant to new Rule 6003(b) of the Federal Rules of Bankruptcy Procedure, which became effective on December 1, 2007, "a motion to pay all or part of a claim that arose before the filing of the petition" shall not be granted by the Court within 20 days of the Petition Date "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm . . . ." Fed. R. Bankr. P. 6003(b). For the reasons described herein and as supported by the Knight Declaration, the Debtors submit that the requirements of Rule 6003 have been met and that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates. To implement the foregoing successfully, the Debtors seek a waiver of the requirements under Bankruptcy Rule 6004 including the ten-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent these rules are applicable.

## Reservation of Rights

22. Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, applicability of any law, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. The Debtors expressly reserve their rights to contest any invoice or claim with respect to the Taxes and Fees in accordance with applicable bankruptcy and non-bankruptcy law.

## Notice

23. Notice of this Motion has been given to (i) the Office of the United States Trustee and (ii) the Debtors' prepetition and postpetition secured lenders or, in lieu thereof, to their counsel, if known. As the Motion is seeking "first day" relief, within two business days of the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered respecting the Motion as required by Del. Bankr. LR 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

24. No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, granting the relief requested herein and such other and further relief as the Court deems appropriate.

Dated: November 15, 2009

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Laura Davis Jones*
Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Timothy P. Cairns (Bar No. 4228)
Mark M. Billion (Bar No. 5263)
919 N. Market Street, 17th Floor
Wilmington, DE 19801
Telephone: (302)652-4100
Facsimile: (302)652-4400
Email: ljones@pszjlaw.com
dbertenthal@pszjlaw.com
tcairns@pszjlaw.com
mbillion@pszjlaw.com

[Proposed] Counsel for the Debtors and Debtors in Possession