# Exhibit A

## Declaration of James D. Decker

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CHAMPION ENTERPRISES, INC., et al.,[1] | ) | Case No. 09-14019 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |

## DECLARATION OF JAMES D. DECKER IN SUPPORT OF APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF MORGAN JOSEPH & CO. INC. AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO THE DEBTORS AND DEBTORS-IN-POSSESSION

I, James D. Decker, BEING DULY SWORN, DEPOSES AND SAYS:

1.     I am a Managing Director of Morgan Joseph & Co. Inc. ("Morgan

Joseph") and am duly authorized to make this Declaration on behalf of Morgan Joseph.  The

facts set forth in this Declaration are personally known to me and, if called as a witness, I could

and would testify thereto.

2.     This Declaration is submitted in support of the application of the above-

captioned debtors and debtors in possession (the "Debtors") in these Chapter 11 cases for

authorization of the employment and retention of Morgan Joseph as investment banker and

financial advisor to the Debtors at the expense of the Debtors' estates.

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Redman Homes, Inc. (4957); Champion Enterprises, Inc. (3168); Champion Home Builders Co. (4984); New Era Building Systems, Inc. (0928); North American Housing Corp. (1097); Homes of Merit, Inc. (8488); Western Homes Corporation (6910); Star Fleet, Inc. (0506); Champion Enterprises Management Co. (6726); Champion Retail, Inc. (2154); San Jose Advantage Homes, Inc. (1951); Highland Acquisition Corp. (8962); Highland Manufacturing Company LLC (6762); SSH Liquidating Corp. (6678); Champion Homes of Boaz, Inc.(3165); and Iseman Corp. (5899).  The address for all Debtors is 755 W. Big Beaver, Suite 1000, Troy, MI 48084.

3. This Declaration is also submitted as the statement required pursuant to §§ 328(a), 329 and 504 of title 11, United States Code (the "Bankruptcy Code") and Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

4. Morgan Joseph is an international investment banking/financial advisory firm with 12 offices worldwide and more than 100 employees. Morgan Joseph has extensive experience advising corporations, creditor committees and acquirers in complex situations involving underperforming or unsuitably capitalized businesses facing difficult financing conditions, liquidity crises, out-of-court restructurings or bankruptcy proceedings. Its financial restructuring professionals apply expert technical, analytical and negotiating skills to structure transactions and resolve situations in which multiple stakeholders frequently have conflicting interests and objectives. Its senior level professionals provide hands-on advice throughout the process from the initial planning of the restructuring strategy through to the negotiation and execution of each transaction.

5. Over the past ten years, Morgan Joseph professionals have been involved with several significant bankruptcy proceedings, representing both debtors and creditor constituencies. Some notable transactions include: (i) the sale of the operating divisions of Friede Goldman Halter (NASDAQ: FGH), Friede Goldman Halter Inc., a $500 million designer and constructor of offshore drilling rigs, marine service vessels and heavy-lift marine cranes and mooring systems; (ii) the sale of Nellson Nutraceutical, Inc., a $250 million manufacturer or functional food products; the sale of Adventure Parks Group LLC, a $110 million operator of regional theme parks; (iv) advising the Steering Committee of Senior Secured Lenders of Tropicana Entertainment, LLC, a $2.3 billion casino and hotel operator; and (v) advising the

Official Committee of Unsecured Creditors of GEO Specialty Chemical, a $250 million

chemical producer. Morgan Joseph professionals have significant experience in marketing

distressed businesses, and have consummated over 40 sale transactions pursuant to Section 363

of the Bankruptcy Code.

6.     Morgan Joseph has agreed to provide financial advisory and investment

banking services to the Debtors in the above-captioned Chapter 11 cases pursuant to the terms

and conditions of the engagement letter agreement between the Debtors and Morgan Joseph (the

"Engagement Letter"), a copy of which is attached hereto as Exhibit 1 and which is incorporated

by reference.

7.     By way of further disclosure:

a) From time to time, Morgan Joseph has provided services, and likely will continue to provide services to certain attorneys, other professionals, creditors (including lenders) and/or security holders of the Debtor and various other parties, some of whom may be providing services to, or may be adverse to, or may be otherwise connected to, the Debtor, in each case in matters unrelated to this chapter 11 case.

b) In addition, Morgan Joseph provide services to a wide range of institutions and individuals and may in the past have had, and may currently or in the future have, financial advisory or other investment banking relationships with parties that may have interests with respect to the Debtor.

d) Morgan Joseph personnel may have business associations with certain creditors of the Debtor or counsel or other professionals involved in this chapter 11 case on matters unrelated to this chapter 11 case. In addition, in the ordinary course of its business, Morgan Joseph may engage counsel or other professionals in unrelated matters who now represent, or in the future may represent, creditors or other interested parties in this chapter 11 case.

8.     To determine its relationship with parties in interest in these chapter 11

cases, Morgan Joseph has researched its client database to determine whether it has any

relationships with the entities (individually, an "Interested Party" and, collectively, the

"Interested Parties") that were identified to Morgan Joseph by the Debtors. Such entities include:

   a.   The Debtors and their non-debtor affiliates;

   b.   The directors and officers of the Debtors;

   c.   The Debtors' thirty-five largest creditors;

   d.   The attorneys and other professionals of the Debtors;

   e.   The significant pre-petition lenders of the Debtors and their

professionals;

   f.   Parties believed to hold material amounts of the Debtors' stock and

other securities; and

   g.   Other potentially adverse parties.

9.     Both Wells Fargo & Company and General Electric Co. have been and are creditors in various matters where Morgan Joseph is the advisor to the borrower. It has also represented creditor groups that include these two entities. None of these engagements are related to our work on behalf of Champion.

10.    To the best of my knowledge, information and belief after reasonable inquiry, other than as disclosed in this Declaration, neither I, Morgan Joseph, nor any of our professionals or employees participating in or connected with Morgan Joseph's engagement with the Debtors: (i) is related to the Debtors or any other party in interest herein, the United States Trustee for the District of Delaware or anyone employed in the United States Trustee's Office for this District; (ii) has any connection with or holds or represents any interest adverse to the Debtors, their estates, creditors or any other Interested Party or their respective attorneys in the

matters on which Morgan Joseph is proposed to be retained; or (iii) has advised any Interested Party, except for the Debtors, in connection with this Chapter 11 case. In addition, Morgan Joseph does not believe that any relationship that Morgan Joseph or any of our professionals or employees participating in or connected with Morgan Joseph's engagement with the Debtors may have with any Interested Party in connection with any unrelated matter will interfere with or impair Morgan Joseph's representation of the Debtors in these Chapter 11 cases.

11.     To the extent Morgan Joseph discovers any facts bearing on the matters described herein during the period of Morgan Joseph's retention, Morgan Joseph undertakes to amend and supplement the information contained in this Declaration to disclose such facts.

12.     Based on all of the foregoing, Morgan Joseph is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code.

13.     No agreement presently exists to share with any other person or firm any compensation received by Morgan Joseph for its services in these cases. If any such agreement is entered into, Morgan Joseph undertakes to amend and supplement this Declaration to disclose the terms of any such agreement.

14.     No promises have been received by Morgan Joseph, or by any employee thereof, as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

15.     I am generally familiar with the Bankruptcy Code and the Bankruptcy Rules, and Morgan Joseph will comply with them, subject to the Orders of this Court.

I declare under penalty of perjury that the foregoing is true and correct.

November 15, 2009

James D. Decker
Managing Director
Morgan Joseph & Co. Inc.

## Exhibit 1

### *ENGAGEMENT LETTER*



November 10, 2009

**Personal and Confidential**

Mr. William Griffiths
Chairman, President & Chief Executive Officer
Champion Enterprises, Inc.
755 West Big Beaver Road
Suite 1000
Troy, MI 48084

Dear Mr. Griffiths:

Pursuant to an engagement letter (the "Original Engagement Letter") dated May 18, 2009 between Morgan Joseph & Co. Inc. ("Morgan Joseph") and Champion Enterprises, Inc. (the "Company"), Morgan Joseph and the Company agreed to the terms pursuant to which Morgan Joseph would provide its services. Because the engagement has now gained more clarity and because of several changed circumstances, both of us wish to restate the original agreement in its entirety. What follows is an amendment and restatement of the Original Engagement Letter, which terms will be effective as of May 18, 2009:

This letter agreement (the "Agreement") confirms our understanding of the terms and conditions under which Champion Enterprises, Inc. (the "Company") shall engage Morgan Joseph & Co. Inc. ("Morgan Joseph") to act as its exclusive financial advisor with respect to evaluating and pursuing a potential Restructuring, Financing Transaction, and/or Sale Transaction (each as defined below), effective as of the date indicated above (the "Effective Date"). For purposes hereof, the term "Company" shall include affiliates of the Company and any entity that may be formed by the Company or its affiliates to invest in or consummate a Restructuring Transaction, Financing Transaction, and/or Sale Transaction (as defined below), and shall include any successor or assignee of all or a material portion of the assets and or businesses of the Company whether pursuant to a Plan (as defined below) or otherwise.

1.  Description of Services

As part of our engagement, we will, if appropriate and requested, perform the following financial advisory and/or investment banking services:

> A.  Phase One - Financial Advisory Services. During Phase One (as defined below) Morgan Joseph will:

      i.     assist and advise the Company with the analysis of the Company's business, business plan, and strategic and financial position; and

      ii.    assist with the formulation, evaluation, implementation of various options for a restructuring, financing, reorganization, merger, or sale of the Company, or its assets or businesses.

The parties acknowledge that Phase One was completed as of June 22, 2009. Phase Two commenced as of the same date.

    B.  <u>Phase Two Restructuring Advisory Services</u>. If the Company pursues a Restructuring Transaction, Morgan Joseph will:

      i.     provide financial advisory services to the Company in connection with developing, and seeking approval for, a Restructuring Transaction;

      ii.    provide financial advisory services to Company in connection with the structuring of any new securities to be issued under the Plan;

      iii.   assist the Company in negotiations with creditors, shareholders and other appropriate parties-in-interest; and

      iv.   if necessary, participate in hearings before the bankruptcy court with respect to matters upon which Morgan Joseph has provided advice, including coordinating with the Company's counsel with respect to testimony in connection therewith.

For the purposes of this Agreement, a "Restructuring Transaction" shall be defined as any single transaction or series of transactions that effectuates any material modification, amendment to, or change in, any of the Company's obligations and/or indebtedness for borrowed money, including accrued and/or accreted interest thereon, which are outstanding as of the Effective Date ("Indebtedness"), including, without limitation, senior bank debt and subordinated debt, provided that the provision of debtor in possession financing shall not constitute a Restructuring Transaction. For clarification, senior bank debt includes monies advanced and the face amount of letters of credit issued at the request of the Company. Such modification, amendment, or change shall include, without limitation, any transaction(s) which provide for: any material modification, amendment or change of, or in, principal balance, accrued or accreted interest, payment term, other debt service requirement, and/or financial or operating covenant; or any amendment, waiver or forbearance with an initial term of at least twelve (12) months with respect to any payment obligation; conversion to equity, or some other security instrument, of any, or all, of the Indebtedness; any compromise of the existing terms of

such Indebtedness; any combination of the foregoing transactions. Each of the foregoing shall include, without limitation, any transaction in which requisite consents to a reorganization or restructuring are obtained pursuant to a tender offer, exchange offer, consent solicitation or other process, or a plan of reorganization under the United States Bankruptcy Code.

    C.  <u>Phase Two Financing Advisory Services.</u>  If the Company pursues a Financing Transaction, Morgan Joseph will:

      i.  if necessary, assist in preparing a private placement memorandum (with any amendments and supplements thereto, the "Private Placement Memorandum") for distribution and presentation to prospective Investors (as defined below);

      ii.  assist in identifying and contacting prospective Investors (as defined below) as well as in soliciting indications of interest in a Financing Transaction (as defined below) among prospective Investors;

      iii.  assist in evaluating indications of interest received from prospective Investors;

      iv.  assist in negotiating the financial terms and structure of a Financing Transaction;

      v.  provide other financial advisory service and investment banking services reasonably necessary to accomplish the foregoing and consummate a Financing Transaction; and

      v.  if necessary, participate in hearings before the bankruptcy court with respect to matters upon which Morgan Joseph has provided advice, including coordinating with the Company's counsel with respect to testimony in connection therewith.

For purposes of this Agreement, each of the following transactions shall constitute a "Financing Transaction", whether or not such transaction is effectuated in-court, out-of-court, through the confirmation of a plan of reorganization or otherwise under the United States Bankruptcy Code, or whether the requisite consents to such transaction(s) are obtained in-court or out-of-court, but in each case, excluding transactions resulting in the provision of debtor in possession financing to the Company:

      a) Any refinancing of all or any material portion of the Company's existing obligations; and/or

    b) The raising or issuance of <u>any</u> form of new equity or debt financing by the Company or any formed by, or at the direction of, or which is a majority-owned subsidiary, or affiliate, of the Company, from any source including, without limitation, any of the Company's existing owners, shareholders, employees, creditors or affiliates (each such source, an "Investor").

It is understood and agreed that nothing contained herein shall constitute an expressed or implied commitment by Morgan Joseph to act in any capacity or to underwrite, place, or purchase any financing or securities.

    D. <u>Phase Two Sale Advisory Services</u>. If the Company pursues a Sale Transaction, Morgan Joseph will:

    i. if necessary, assist in preparing an offering memorandum (with any amendments and supplements thereto, the "Sale Memorandum") for distribution and presentation to prospective purchasers;

    ii. assist in soliciting interest in a transaction among prospective purchasers;

    iii. assist in evaluating proposals received from prospective purchasers;

    iv. advise the Company as to the structure of the Sale Transaction, including the valuation of any non-cash consideration;

    v. assist in negotiating the financial terms and structure of a Sale Transaction;

    vi. provide other financial advisory service and investment banking services reasonably necessary to accomplish the foregoing and consummate a Sale Transaction; and

    vii. if necessary, participate in hearings before the bankruptcy court with respect to matters upon which Morgan Joseph has provided advice, including coordinating with the Company's counsel with respect to testimony in connection therewith.

For purposes of this agreement, the term "Sale Transaction" is defined to include any of the following (whether in one or a series of transaction): (a) a merger or consolidation of

the Company and/or any of its businesses, subsidiaries or affiliates (b) a sale of at least 50% of the equity securities of the Company (whether from the Company or security holders of the Company) or any business, subsidiary or affiliate of the Company (whether from such business, subsidiary, affiliate or the Company), in any case whether by sale, exchange, tender offer or otherwise, (c) any transaction which results in a third party having the right to elect a majority of the members of the Board of Directors of the Company, (d) a sale (including, without limitation, by sale, lease, license, exchange or other acquisition) of a significant amount of the assets (tangible or intangible) of the Company or any of its businesses, subsidiaries or affiliates, (e) a liquidation of the Company or any of its businesses, subsidiaries or affiliates, provided, however, that any liquidation of the Company's assets on a non-going concern basis shall not be considered a Sale Transaction for the purposes of this Agreement, (f) any recapitalization or restructuring (including spin-off or split-off of assets) of the Company or any of its businesses, subsidiaries or affiliates, or (g) any other form of disposition which results in the effective disposition of all or a substantial amount of the business, operations, or assets of the Company or any of its businesses, subsidiaries or affiliates.

For the purposes hereof, the term "Transaction" shall include a Restructuring Transaction, Financing Transaction and/or a Sale Transaction. The Parties acknowledge that the Company may pursue a combination or one or more Transactions at the same time.

The Company agrees that neither it, its management or affiliates will initiate any discussions regarding a Transaction, during the term of this Agreement, except through Morgan Joseph. Furthermore, the Company agrees to promptly inform Morgan Joseph of any inquiry it receives regarding a Transaction. Morgan Joseph agrees that it will pursue, on behalf of the Company, any Transaction it is directed to pursue by the Company, its officers and its Board of Directors.

The Company understands that the services to be rendered by Morgan Joseph may include the preparation of projections and other forward-looking statements regarding the Company and / or its businesses, subsidiaries or affiliates, and numerous factors can affect the actual results of the Company and / or its businesses, subsidiaries or affiliates, which may materially and adversely differ from those projections.

Morgan Joseph makes no representation or guarantee that an appropriate Transaction can be formulated, that any Transaction in general or any transaction in particular is the best course of action for the Company or, if formulated, that the execution of any proposed Transaction will, if required, be accepted or approved by the Board of Directors (including any special committee of the Board of Directors) or the Company's stockholders and other constituents. Further Morgan Joseph assumes no responsibility for the selection and approval of any strategic alternative presented to the Company or the Company's Board of Directors (including any special committee of the Board of Directors), which determination shall rest with the Company and the Board.

In connection with Morgan Joseph's engagement, the Company will furnish Morgan Joseph with all information concerning the Company which Morgan Joseph and the Company reasonably deem appropriate and will provide Morgan Joseph with access to the Company's officers, directors, employees, accountants, counsel and other representatives (collectively, the "Representatives"), it being understood that Morgan Joseph will rely solely upon such information supplied by the Company and its Representatives without assuming any responsibility for independent investigation or verification thereof. The Company will use reasonable efforts to insure that any financial projections provided to Morgan Joseph have been, or will be, prepared on bases reflecting the best currently available estimates and judgments of the future financial results and condition of the Company. The Company will, in writing, promptly notify Morgan Joseph of any material inaccuracy or misstatement in, or material omission from, any information previously delivered to Morgan Joseph or any interested party.

The Company will be solely responsible for the contents of the Private Placement Memorandum and/or Sale Memorandum and any and all other written or oral communications provided by or on behalf of the Company to any Investors and/or purchasers. If an event occurs that causes a Private Placement Memorandum and/or Sale Memorandum to contain any untrue statement of a material fact or omit to state any material fact necessary to make the statements therein not misleading, the Company, promptly upon becoming aware of such event, will promptly notify Morgan Joseph and Morgan Joseph will suspend solicitations of prospective Investors and/or purchasers until such time as the Company prepares a supplement or amendment to the Private Placement Memorandum and/or Sale Memorandum that corrects such statement(s) and/or omission(s).

2. <u>Compensation</u>

As compensation for our services hereunder, the Company agrees to pay Morgan Joseph as follows:

> A. <u>Phase One Fees</u>. The parties acknowledge that Morgan Joseph has received the sum of $75,000 for its Phase One Fees (the "Phase One Fees"). The Phase One Fees were fully earned upon payment.

> B. <u>Phase Two Monthly Fees</u>. The parties acknowledge that Morgan Joseph has received the sum of $750,000 for its Phase Two Fees through the date of this letter. In addition to the other fees provided for herein, on the date of execution of this letter and thereafter on the 22nd of each month, next commencing on November 22, 2009, and on each of the four next monthly anniversaries thereof during the term of this Agreement, the Company shall pay Morgan Joseph, without notice or invoice, a non-refundable cash fee of $150,000 per month (the "Monthly Fee"). Thereafter, no Monthly Fee shall be

due to Morgan Joseph for the remainder of the term of this Agreement, unless the process to achieve consummation of a Restructuring or Sale Transaction extends beyond March 22, 2010 for reasons beyond the control of Morgan Joseph, in which case Morgan Joseph shall receive a Monthly Fee of $50,000 per month throughout the balance of the term of this agreement. The Monthly Fees paid after the date hereof shall be the entire compensation to be received by Morgan Joseph throughout the balance of the term of this agreement, other than as expressly set forth in paragraph C below and in Section 7 below (which provide for additional compensation). One hundred per cent (100%) of the Phase Two Monthly Fees shall be credited against the Phase Two Completion Fee (defined below).

C.  Phase Two Completion Fee. Morgan Joseph shall be entitled to a completion fee (the "Completion Fee") as follows:

(i) In the event the Company consummates a Restructuring Transaction pursuant to a plan of reorganization under chapter 11 of the Bankruptcy Code that receives the requisite votes for acceptances under the Bankruptcy Code by the Company's senior secured lenders (a "Plan Restructuring"), the Company shall pay Morgan Joseph a fee equal to $1.5 million, subject to crediting in accordance with paragraph B above (the "Restructuring Transaction Fee"), which Restructuring Transaction Fee shall become due and payable upon the effective date of any such plan.

(ii) If, whether or not in connection with the consummation of a Restructuring Transaction, the Company consummates a Sale Transaction, the Company shall pay Morgan Joseph a fee (the "Sale Transaction Fee") equal to two percent (2.0%) of the Aggregate Gross Consideration of the Sale Transaction, subject to crediting in accordance with paragraph B above. For the avoidance of doubt, (x) no such Sale Transaction Fee shall be payable on account of the non-going concern sale liquidation of any of the Company's assets, and (y) subject to clause (iii) below, the Company shall pay the higher of the Restructuring Transaction Fee and Sale Transaction Fee but shall not be required to pay both a Sale Transaction Fee and a Restructuring Transaction Fee in the event the Company consummates a Sale Transaction pursuant to a plan of reorganization or liquidation.

(iii) Notwithstanding the Fees described in Sections 2C (i) and (ii), in the event that the Company consummates a Sale Transaction pursuant to Section 363(k) of the Bankruptcy Code, then no Restructuring Transaction Fee shall be due and the Sale Transaction Fee shall be equal to $1,500,000, subject to crediting in accordance with paragraph B above.

(iv) The Fees described in Section 2C(ii) and 2C(iii) shall be earned by Morgan Joseph and become immediately due and payable as a cost of the Transaction and shall be paid from the Sale Transaction proceeds concurrently with the closing of a Sale Transaction, provided, however, in the

event that the Company becomes a debtor voluntarily or involuntarily under chapter 11 of the Bankruptcy Code, payment of such Fees shall be subject to the provisions of paragraph 5 below.

For purposes of this agreement, the term "Aggregate Gross Consideration" shall mean the total fair market value (at the time of closing) of all consideration including, without duplication or limitation, cash, notes, securities and property; payments made in installments; amounts payable under above-market consulting agreements, above-market employment contracts, non-compete agreements or similar arrangements; and Contingent Payments (as defined below), paid or payable, or otherwise to be distributed, directly or indirectly, to the Company, the Company's subsidiaries or affiliates or the Company's stockholders, plus all indebtedness (including letters of credit) assumed by the purchaser of assets of the Company and / or any of its businesses, subsidiaries or affiliates or from which the Company or any of its businesses, subsidiaries or affiliates is relieved in connection with a Sale Transaction. If any portion of the Aggregate Gross Consideration is payable in the form of securities, the value of such securities, for purposes of calculating our Sale Transaction Fee, will be determined based on the average closing price for such securities for the five trading days prior to the closing of the Sale Transaction. In the case of securities that do not have an existing public market, Aggregate Gross Consideration will be determined based on the fair market value of such securities as mutually agreed upon in good faith by Morgan Joseph and the party(ies) receiving such securities prior to the closing of the Sale Transaction. Fees on amounts paid into escrow will be payable upon release of such escrow (or the relevant portion thereof). Contingent Payments, other than escrowed amounts, will be calculated based on the present value of the reasonably expected maximum amount of such contingent payments as determined in good faith by Morgan Joseph and the party(ies) receiving such payments prior to the closing of the Sale Transaction, utilizing a discount rate equal to the prime rate published in The Wall Street Journal on the last business day preceding the closing of the Sale Transaction. If the parties cannot reach such an agreement, an additional Sale Transaction Fee(s) shall be paid to Morgan Joseph in the same proportions and at the same times as the Contingent Payments are paid or received. Contingent Payments shall be defined as the fair market value of consideration received or receivable by the Company, its employees, former or current equity holders and/or other parties, in the form of deferred, performance-based payments, "earn-outs", or other contingent payments based on future performance of the Company or any of its businesses or assets. Notwithstanding the foregoing provisions of this paragraph, the term Aggregate Gross Consideration shall not include the assumption or payment by any buyer of prepetition obligations (except for prepetition claims entitled to administrative expense treatment under section 503(b)(9) of the Bankruptcy Code) in the event the Company files for bankruptcy protection.

3.   Term

This Agreement shall have an initial term of twelve (12) months and thereafter, shall be automatically extended on a monthly basis. The Agreement may be terminated by either

party without cause by giving 30 days' written notice to the other party. In the event of any such termination, any fees and expenses due to Morgan Joseph shall be remitted to Morgan Joseph promptly (including fees and expenses that accrued prior to but were invoiced subsequent to such termination).

If, within twelve (12) months of the expiration of this Agreement, or the termination of this Agreement for any reason other than Morgan Joseph's resignation, the Company consummates, or enters into an agreement in principle to engage in, a Restructuring Transaction, Financing Transaction, Sale Transaction (which subsequently closes at any time), with any party, or any affiliate, employee, investor in such party, which (i) Morgan Joseph identified or contacted, and with whom the Company had discussions regarding a potential Restructuring Transaction, Financing Transaction or Sale Transaction during the term of this Agreement, or (ii) reviewed written materials prepared by Morgan Joseph concerning the Company and/or the proposed Restructuring Transaction, Financing Transaction or Sale Transaction, Morgan Joseph shall be entitled to receive its Phase Two Completion Fee, subject to crediting for Monthly Fees as set forth above, upon the consummation of such Restructuring Transaction, Financing Transaction or Sale Transaction as if no expiration or termination had occurred.

No expiration or termination of this Agreement shall affect (a) the Company's indemnification, reimbursement, contribution or other obligations as set forth in this Agreement, (b) Morgan Joseph's right to receive, and the Company's obligation to pay, any and all fees and expenses due, whether or not any Restructuring Transaction, Financing Transaction or Sale Transaction is consummated prior to or subsequent to the effective date of termination of this Agreement.

4.    Expenses

In addition to the fees described above, and regardless of whether or not any transaction contemplated by this Agreement shall be proposed or consummated, the Company agrees to promptly reimburse Morgan Joseph, on a monthly basis, for all reasonable out-of-pocket expenses incurred by Morgan Joseph in connection with the matters contemplated by this Agreement; such expenses shall be charged at cost for itemized categories such as travel, lodging and meals, and shall be charged in accordance with the then effective Morgan Joseph policy for duplicating, information services, research, messenger, telephone charges. Morgan Joseph shall also be reimbursed for the reasonable fees and expenses of its counsel incurred in connection with the enforcement of this Agreement. All fees and expenses will be billed on a monthly basis and will be payable within ten days of receipt of the bill therefore.

5.     Bankruptcy Court Approval

In the event that the Company is, or becomes, a debtor under Chapter 11 of the Bankruptcy Code, whether voluntarily or involuntarily, the Company shall promptly apply to the bankruptcy court having jurisdiction over the Chapter 11 case or cases (the "Bankruptcy Court") for the approval pursuant to sections 327 and 328 of the Bankruptcy Code of (i) this Agreement, including the attached indemnification, and (ii) Morgan Joseph's retention by the Company under the terms of this Agreement and subject to the standard of review of Section 328(a) of the Bankruptcy Code and not subject to any other standard of review under section 330 of the Bankruptcy Code, other than by the Office of the United States Trustee, which will be entitled to review the compensation provided to Morgan Joseph under this Agreement pursuant to the standard of section 330 of the Bankruptcy Code.   The Company shall supply Morgan Joseph with a draft of such application and any proposed order authorizing Morgan Joseph's retention sufficiently in advance of the filing of such application and proposed order to enable Morgan Joseph and its counsel to review and comment thereon.  Morgan Joseph shall have no obligation to provide any services under this Agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Morgan Joseph's retention under the terms of this Agreement is approved under section 328(a) of the Bankruptcy Code by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is acceptable to Morgan Joseph and the Company in all respects.  Morgan Joseph acknowledges that in the event that the Bankruptcy Court approves its retention by the Company, Morgan Joseph's fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under section 328(a) of the Bankruptcy Code and any applicable fee and expense guideline orders provided however, that Morgan Joseph shall only be required to maintain time records as requested by the U.S. Trustee or the Court.  In the event that the Company becomes a debtor under the Bankruptcy Code and Morgan Joseph's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Morgan Joseph hereunder as promptly as possible in accordance with the terms of this Agreement, the order of the Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders, and will work with Morgan Joseph to promptly file any and all necessary applications regarding such fees and expenses with the Bankruptcy Court.  If the order authorizing the employment of Morgan Joseph is not obtained, or is later reversed or set aside for any reason, Morgan Joseph may terminate this Agreement, and the Company shall reimburse Morgan Joseph for all fees and expenses reasonably incurred prior to the date of termination, subject to the requirements of the Bankruptcy Code, Bankruptcy Rules and applicable local rules and orders.

With respect to Morgan Joseph's retention under sections 327 and 328 of the Bankruptcy Code, the Company acknowledges and agrees that Morgan Joseph's restructuring expertise, as well as its capital markets knowledge, financial skills and mergers and acquisitions capabilities, some or all of which may be required by the Company during the term of Morgan Joseph's engagement hereunder, were important factors in

determining the amount of the various fees set forth herein, and that the ultimate benefit to the Company of Morgan Joseph's services hereunder could not be measured merely by reference to the number of hours expended by Morgan Joseph professionals in the performance of such services. The Company also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Morgan Joseph and its professionals hereunder over the term of the engagement, and in light of the fact that such commitment may foreclose other opportunities for Morgan Joseph and that actual time and commitment required of Morgan Joseph and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for Morgan Joseph. In addition, given the numerous issues which Morgan Joseph may be required to address in the performance of its services hereunder, Morgan Joseph's commitment to the variable level of time necessary to address all such issues as they arise, and the market prices for Morgan Joseph's services for engagements of this nature in an out-of-court context, the Company agrees that the fee arrangements hereunder (including Monthly Fee and the various Transaction Fees) are reasonable under the standards set forth in 11 U.S.C. Section 328(a).

6. <u>Relationship of the Parties</u>

The parties intend that an independent contractor relationship will be created by this Agreement in order to provide the services described above to the Company. Neither Morgan Joseph nor any of its personnel or subcontractors is acting as a fiduciary of the Company, the security holders or creditors of the Company or any other persons in connection with this engagement. Furthermore, neither Morgan Joseph nor any of its personnel or subcontractors is to be considered an employee of the Company and the personnel and subcontractors of Morgan Joseph are not entitled to any of the benefits that the Company provides for the Company's employees.

7. <u>Other Services</u>

In the event that Morgan Joseph is requested by the Company to perform any financial advisory or investment banking services outside the scope of this Agreement, such as a fairness opinion, fees for such services shall be mutually agreed upon by Morgan Joseph and the Company, in writing, in advance, and shall be in addition to the fees and expenses described above. Notwithstanding the foregoing, if Morgan Joseph is required to render services directly or indirectly relating to the subject matter of this Agreement in connection with third party disputes, the Company shall pay Morgan Joseph's then-current rates for rendering such services, including, but not limited to, time for meetings, conferences, preparation and travel, and all related reasonable out-of-pocket costs and expenses, including without limitation, the reasonable legal fees and expenses of Morgan Joseph's legal counsel in connection therewith, provided, however, that the Company's obligation to reimburse Morgan Joseph in connection with third party disputes shall be

subject to the limitations on the Company's indemnification obligations as reflected on the indemnification provisions attached hereto on Schedule A.

8.    No Third Party Beneficiary

The Company acknowledges that all advice (written or oral) given by Morgan Joseph to the Company in connection with this engagement is intended solely for the benefit and use of the Company in considering the matters to which this engagement relates. The Company agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose without Morgan Joseph's prior approval (which shall not be unreasonably withheld), except as required by law.

9.    Confidentiality

During the term of the Agreement, Morgan Joseph will keep confidential any material non-public information about the Company made available to Morgan Joseph by the Company in connection with its engagement hereunder and will not use such confidential information other than in connection with its engagement hereunder or related engagements with Company; provided, such confidential information shall not include: (i) any information already available to or in possession of Morgan Joseph prior to the date of its disclosure to Morgan Joseph by the Company; provided that such information was not obtained in contravention of (iii), below, (ii) any information that is or becomes generally available to the public without breach of this Agreement; or (iii) any information which becomes available to Morgan Joseph after reasonable investigation on a non-confidential basis from a third party who is not known by Morgan Joseph to be bound by a confidentiality obligation to the Company and provided further, that such confidential information may be disclosed: (a) to Morgan Joseph partners, employees, agents, advisors and representatives in connection with its engagement hereunder who shall be informed of the confidential natures of the information; (b) to any person with the consent of the Company; (c) if Morgan Joseph is required to disclose such information pursuant to law, judicial or administrative process or regulatory demand or request of any body having jurisdiction over Morgan Joseph upon prior notice to the Company which is reasonably sufficient to allow the Company a meaningful opportunity to take action to protect such information; or (d) if such disclosure is reasonably deemed necessary by Morgan Joseph in litigation or any other proceeding in which ot or any of its current or former directors, officers, employees, agents, representatives, affiliates or any person who controls Morgan Joseph is, or is threatened to be made, a party, provided that Morgan Joseph will (x) seek the entry of a protective or similar order to protect the confidentiality of the information to be disclosed and (y) provide the Company with reasonable prior notice of the intent to use such information which allows the Company a meaningful opportunity to object to such use and seek relief from the appropriate court or other body. This paragraph supercedes any prior agreement between the Company and

Morgan Joseph respecting confidentiality and shall terminate and be of no further force and effect one (1) year from the date of termination of Morgan Joseph's engagement.

10.   Indemnification

The Company agrees to provide indemnification, contribution, and reimbursement to Morgan Joseph in accordance with, and the Company further agree to be bound by the provisions set forth in Schedule A of the Original Engagement Lettter, which is incorporated herein and made a part hereof. Termination of this engagement shall not affect these indemnification provisions, which shall remain in full force and effect.

11.   Miscellaneous

No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby. This Agreement, and any claim related directly or indirectly to this agreement, shall be governed by, and construed in accordance with, the laws of the State of New York applicable to agreements executed and to be fully performed therein without regard to principles of conflicts of laws that would defer to the laws of another jurisdiction. The parties hereby irrevocably and unconditionally submit (to the extent permitted by law) to the exclusive jurisdiction of the courts of the State of New York located in the City and County of New York and the United States District Court for the Southern District of New York for any legal action or proceeding arising out of this Agreement, and agree to bring (to the extent permitted by law) any such action or proceeding in such courts, provided, however, that in the event the Company becomes a debtor under Chapter 11 of the Bankruptcy Code, the parties hereby irrevocably and unconditionally submit (to the extent permitted by law) to the exclusive jurisdiction of the the Bankruptcy Court. Each of the parties hereby irrevocably consents to service of process in any such action or proceeding by certified or registered mail at the address for such party set forth above. The parties waive all right to trial by jury in any action or proceeding (whether based upon contract, tort or otherwise) related to or arising out of this Agreement. This Agreement may not be assigned nor may the obligations of a party hereunder be delegated without the prior written consent of the other party hereto. The obligations of this Agreement shall be binding upon and shall only inure to the benefit of the parties hereto, the Indemnified Parties (as defined in Schedule A attached hereto) and any of their successors, permitted assigns, heirs and personal representatives.

The Company acknowledges that Morgan Joseph may, at its option and expense, place announcements and advertisements or otherwise publicize its services to the Company hereunder (which may include the reproduction of the Company's corporate logo). Morgan Joseph will provide the Company a draft of any contemplated announcement prior to its publication and make reasonable modifications to such announcement as

requested by the Company. Furthermore, if requested by Morgan Joseph, the Company shall include a mutually acceptable reference to Morgan Joseph in any press release made by the Company regarding the matters described in this letter.

The invalidity or unenforceability of any provision in this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect pursuant to the terms hereof.

The Company agrees that it will be solely responsible for ensuring that any Restructuring Transaction, Financing Transaction, or Sale Transaction complies with applicable law. The Company understands that Morgan Joseph is not undertaking to provide any legal, regulatory, accounting, insurance, tax or similar professional advice.

This Agreement has been reviewed by the signatories hereto and their counsel. There shall be no construction of any provision against Morgan Joseph because this Agreement was drafted by Morgan Joseph, and the parties waive any statute or rule of law to such effect.

The Company has the requisite power and authority to enter into this Agreement and the transactions contemplated hereby. This Agreement has been duly and validly authorized by all necessary action on the part of the Company and has been duly executed and delivered by the Company and constitutes a legal, valid and binding agreement of the Company, enforceable in accordance with its terms.

This Agreement sets forth the entire understanding of the parties relating to the subject matter hereof and supersedes and cancels any prior communications, understandings and agreements between the parties relating to the subject matter hereof.

Morgan Joseph is delighted to accept this engagement and looks forward to working with you on this assignment. If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms and return an executed copy of this agreement, whereupon, after execution by Morgan Joseph, it shall become a binding agreement between the parties hereto. A telecopy of a signed original of this Agreement shall be sufficient to bind the parties whose signatures appear hereon.

Very truly yours,

MORGAN JOSEPH & CO. INC.

By:_____
     Name: James D. Decker
     Title: Managing Director

Accepted and agreed to as of the date first written above:

CHAMPION ENTERPRISES, INC.

By:_____
     Name: WILLIAM CLRIFFITHS
     Title: PRES & CEO

<u>Schedule A</u>

This Schedule A is incorporated by reference into Morgan Joseph & Co. Inc.'s letter agreement dated November 10, 2009 (the "Agreement") with Champion Enterprises, Inc. (the "Company") in connection with the matter or matters described in such Agreement.

The Company agrees to indemnify and hold harmless Morgan Joseph and its affiliates and their respective directors, managers, officers, employees, agents and controlling persons (each, with Morgan Joseph, an "Indemnified Person") from and against all losses, claims, damages, liabilities or expenses (or actions or proceedings, including security holder actions or proceedings, in respect thereof), joint and several, related to or arising out of such engagement or the rendering of additional services by Morgan Joseph as requested by the Company that are related to the services rendered under the Agreement, or Morgan Joseph's role in connection therewith (collectively, a "Claim" and/or "Loss"), and will reimburse each Indemnified Person promptly for all expenses (including counsel fees and expenses) as they are incurred by an Indemnified Person in connection with the investigation of, preparation for, or defense of any pending or threatened Claim, or any such action or proceeding arising therefrom, whether or not such Indemnified Person is a formal party to any such lawsuit or other proceeding ("Proceeding") and whether or not such Proceeding is initiated by or brought on the Company's behalf.

An Indemnified Person is not entitled to the foregoing indemnification to the extent such Claim is finally judicially determined to have resulted solely from such Indemnified Person's gross negligence or willful misconduct.

The Company also agrees that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or any person asserting claims on the Company's behalf or in the Company's right for or in connection with such engagement, except to the extent that such Claim is finally judicially determined to have resulted solely from such Indemnified Person's gross negligence or willful misconduct. In no event, regardless of the legal theory advanced, shall any Indemnified Person be liable for any consequential, indirect or incidental or special damages of any nature.

If the indemnity or reimbursement referred to above is, for any reason whatsoever, unenforceable, unavailable or otherwise insufficient to hold each Indemnified Person harmless, the Company agrees to contribute to amounts paid or payable by an Indemnified Person in respect of such Indemnified Person's Losses so that each Indemnified Person ultimately bears only a portion of such Losses as is appropriate (i) to reflect the relative benefits received by each such Indemnified Person, respectively, on the one hand and the Company (and the Company security holders) on the other hand, or (ii) if the allocation on that basis is not permitted by applicable law, to reflect not only the relative benefits referred to in clause (i) above but also the relative fault of each such Indemnified Person, respectively, and the Company as well as any other relevant equitable considerations; provided, however, that in no event shall the aggregate contribution of all Indemnified Persons to all Losses exceed the amount of the fee actually received by Morgan Joseph pursuant to the Agreement; provided, further, that

the limitation of liability to the fee actually received by Morgan Joseph provided by the preceding clause shall not apply in the event the Company becomes a debtor under Chapter 11 of the Bankruptcy Code, whether voluntarily or involuntarily.

The Company agrees that without Morgan Joseph's prior written consent the Company will not enter into any settlement or compromise of, or consent to, any judgment in a Proceeding arising out of the transactions contemplated by the Agreement and in which Morgan Joseph or any other Indemnified Person could reasonably be likely to be an actual or potential party to such Proceeding, unless such settlement, compromise or judgment (i) includes an explicit and unconditional release from the party bringing such Proceeding of all Indemnified Persons from all liability arising therefrom and (ii) the amount involved in any such settlement, compromise, consent or termination is paid in full directly by the Company or on behalf of the Company, and such compromise settlement, consent or termination does not (x) acknowledge any liability of or wrongdoing by an Indemnified Person, (y) adversely affect the business of an Indemnified Person, or (z) limit the future conduct of an Indemnified Person whether by injunction, consent decree or other decree or otherwise.

Promptly after an Indemnified Person's receipt of notice of the commencement of any Proceeding, an Indemnified Person shall notify the Company in writing of the commencement thereof, but omission so to notify the Company will not relieve the Company from any liability which the Company may have to such Indemnified Person, except the Company's obligations to indemnify to the extent that the Company suffers actual prejudice as a result of such failure, but shall not relieve the Company from the Company's obligation to provide reimbursement of expenses (including counsel fees and expenses). The Company further agrees that the Indemnified Persons are entitled to retain separate counsel of their choice in connection with any of the matters in respect of which indemnification, reimbursement or contribution may be sought under this Agreement, and the reasonable fees and expenses of such counsel shall be included in the indemnification hereunder.

The Company will pay to Morgan Joseph and each Indemnified Person, in addition to the other fees and expenses payable to it, the charges as incurred and as reasonably determined by Morgan Joseph for any time of any officers, directors or employees of Morgan Joseph devoted to appearing and preparing to appear as witnesses, assisting in preparation for hearings, trials or pretrial matters or otherwise with respect to hearings, trials, pretrial matters and other proceedings in any way relating to, or referred to in, or arising out of the Agreement or Morgan Joseph's role in connection therewith. The Company will also pay the fees and expenses of the Indemnified Person's counsel in connection with the matters referred to in this paragraph.

The foregoing shall be in addition to any rights that Morgan Joseph may have at common law or otherwise. The Agreement including this Schedule A shall be binding upon and inure to the benefit of Company's successors, assigns, heirs, and personal

representatives, and upon Morgan Joseph and any other Indemnified Person and their respective successors, assigns, heirs and personal representatives.

It is understood that, in connection with Morgan Joseph's engagement, Morgan Joseph may also be requested to act for the Company in one or more additional capacities, and that the terms of any such additional engagement may be embodied in one or more separate written or oral agreements. The obligations set forth in this Schedule A shall apply to each of Morgan Joseph's engagements by the Company and any modification of any of such engagements, and shall remain in full force and effect following their completion or termination.

The provisions of this Schedule A may not be amended or modified except in writing by Morgan Joseph and the Company and shall be governed by and construed in accordance with the laws of the State of New York. The Company hereby consents to personal jurisdiction and service and venue in any court in which any claim which is subject to the provisions of this Schedule A is brought against an Indemnified Person. MORGAN JOSEPH HEREBY AGREES, AND THE COMPANY HEREBY AGREES FOR ITSELF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF THE COMPANY'S SECURITYHOLDERS, TO WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM, COUNTERCLAIM OR ACTION ARISING OUT OF THIS AGREEMENT, INCLUDING THE PROVISIONS OF THIS SCHEDULE A, OR MORGAN JOSEPH'S PERFORMANCE THEREUNDER.

[CONTINUED ON NEXT PAGE]

Notwithstanding any of the foregoing provisions in this Schedule A or in the Agreement, in the event the Company becomes a debtor under Chapter 11 of the Bankruptcy Code, whether voluntarily or involuntarily, the following provisions will apply to the indemnification provided by this Schedule A:

(a) Morgan Joseph shall not be entitled to indemnification, contribution, or reimbursement for services other than the services provided under the Agreement, unless such services and the indemnification, contribution, or reimbursement therefore are provided for in the Agreement and approved by the Bankruptcy Court.

(b) The Company shall have no obligation to indemnify any person, or provide contribution or reimbursement to Morgan Joseph, for any claim or expense to the extent that it is either (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from Morgan Joseph's gross negligence or willful misconduct; (ii) for a contractual dispute in which the Company alleges the breach of Morgan Joseph's contractual obligations unless the Bankruptcy Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii), but determined by the Bankruptcy Court, after notice and a hearing, to be a claim or expense for which Morgan Joseph should not receive indemnity, contribution, or reimbursement under the terms of the Agreement; and

(c) If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in any chapter 11 cases filed by the Company (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing any chapter 11 cases filed by the Company, Morgan Joseph believes that it is entitled to the payment of any amounts by the Company on account of the Company's indemnification, contribution, or reimbursement obligations under the Agreement, including without limitation the advancement of defense costs, Morgan Joseph must file an application before the Bankruptcy Court, and the Company will not pay any such amounts to Morgan Joseph before the entry of an order by the Bankruptcy Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Bankruptcy Court shall have jurisdiction over any request for payment by Morgan Joseph for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Company's obligation to indemnify Morgan Joseph.