IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CHAMPION ENTERPRISES, INC., et al.,[1] | ) | Case No. 09-14019 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |

**DEBTORS' MOTION FOR AN ORDER AUTHORIZING, BUT
NOT DIRECTING, DEBTORS TO PAY PREPETITION CLAIMS OF
SHIPPERS AND GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby move (the "Motion") this Court for entry of an order authorizing, but not directing, payment of certain prepetition shipping charges that may be asserted by the Debtors' shippers and supporting agents (collectively, "Shippers"). In support of this Motion, the Debtors respectfully represent as follows:

**Jurisdiction, Venue and Governing Law**

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334 and 157. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Redman Homes, Inc. (4957); Champion Enterprises, Inc. (3168); Champion Home Builders Co. (4984); New Era Building Systems, Inc. (0928); North American Housing Corp. (1097); Homes of Merit, Inc. (8488); Western Homes Corporation (6910); Star Fleet, Inc. (0506); Champion Enterprises Management Co. (6726); Champion Retail, Inc. (2154); San Jose Advantage Homes, Inc. (1951); Highland Acquisition Corp. (8962); Highland Manufacturing Company LLC (6762); SSH Liquidating Corp. (6678); Champion Homes of Boaz, Inc. (3165); Iseman Corp. (5899); MHCDC, LLC (3417); HomePride Finance Corp. (4767); and Champion Development Corp. (4642). The address for all Debtors is 755 W. Big Beaver, Suite 1000, Troy, MI 48084.

2. The predicates for the relief sought herein are sections 105(a) and 363 of the Bankruptcy Code and Rules 2002, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure.

## Background

3. On the date hereof (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in the Debtors' chapter 11 cases.

4. The Debtors and their non-debtor affiliates are leading producers of manufactured and modular housing, as well as modular buildings for government and commercial applications. The Debtors distribute these products through independent dealers, builders and developers. In addition to their manufacturing and other sale operations, the Debtors also sell manufactured homes directly to certain manufactured home parks in California and transport their products from the factories to dealers.

5. The factual background relating to the Debtors' commencement of these chapter 11 cases is set forth in detail in the *Declaration of Phyllis Knight, Chief Financial Officer of the Debtors, in Support of First Day Motions* (the "Knight Declaration") filed contemporaneously with this Motion and incorporated herein by reference.

## Relief Requested

6. By this Motion, the Debtors seek the authority to pay prepetition obligations owed to common carriers, including those that give rise (or legitimately may give rise) to any statutory or common-law possessory liens on account of unpaid charges owing from the Debtors to such Shippers or any dealers or retailers that paid for shipping on behalf of the Debtors (collectively, "Shipping Obligations"). If this relief is granted, such claims will be paid when the Debtors determine, in their business judgment, that payment is necessary to avoid any potential exercise of a Shipper's self-help remedies, such as refusing to accept new shipments for delivery or to deliver products currently in transit, that would disrupt the Debtors' distribution efforts and harm the Debtors' business prospects given the competitive and seasonal nature of the manufactured housing industry.

7. Accordingly the Debtors request the authority, but not the direction, to pay, their discretion, up to $700,000 on account of such prepetition claims, as described further herein.

## The Debtors' Shipping Operations

8. As described in the Knight Declaration, the Debtors produce manufactured housing that is sold via a nationwide network of dealers. Due to the highly localized nature of the Debtors' associated shipping needs, the process is managed on a plant-by-plant basis.

9. When a shipment is ready, plant management teams select a shipper based on that prospective Shipper's skill, availability, and track record. Many aspects of the shipping process are within the control of the chosen Shippers, and given the size of the product, the

Shippers must deal with significant logistical challenges in making these deliveries. These include negotiating local regulations with respect to (a) the licenses necessary for a driver to transport such products (*e.g.*, any required certifications beyond the standard Commercial Drivers License), (b) the roads on which the homes may be transported (*e.g.*, avoiding roads that are not rated for such loads or that have clearance problems), (c) how to transport these homes on such roads (*e.g.*, with escort or tail cars), (d) who needs to be informed that such transportation is occurring (*e.g.*, local transportation and/or law enforcement authorities), and (e) the payment of customs or other similar payments. In sum, the Shippers are responsible for the mechanics associated with moving the Debtors' products from place to place, including seeing to it that the shipping process complies with the various intrastate, interstate and international regulations that are applicable.

10. Based on these practical difficulties, the value of the cargo, and the time-sensitive nature of the process, the Debtors cannot simply hire any cargo transportation service to move their goods. Instead, the Debtors depend on a specialized group of established Shippers that they know are capable of timely delivering the Debtors' products to their dealers and customers. The Debtors do not believe that these Shippers will continue accepting shipments if they are still owed prepetition amounts.

11. If these Shippers turn the Debtors away, the Debtors will be left without access to carriers that, through experience, have proven themselves able to meet the challenging objectives entailed in the delivery of the Debtors' products. The associated disruption that would ensue would severely damage the Debtors' prospects in this highly competitive industry.

Dealers typically offer homes produced by a number of manufacturers, meaning that they can shift buyers to other products, rather than waiting to find out if the Debtors' products arrive in time or at all. And the Debtors believe that they would.

12. The damage associated with this disruption will be dramatically compounded if, as the Debtors suspect, Shippers assert possessory liens on account of the unpaid Shipping Obligations and thus refuse to deliver the homes in their possession to the Debtors' dealers and customers. Even more than the disruptions described above, this would undoubtedly alienate consumers and dealers, which in turn would jeopardize the Debtors' prospects for reorganization.

13. In sum, denying the Debtors access to established Shippers will force them to reconfigure their distribution model on the fly, which would inure to the detriment of the Debtors, their estates and creditors. To prevent any such breakdown, the Debtors seek authority to pay those Shipping Obligations that the Debtors believe are necessary to (a) obtain release of products that may be subject to possessory liens, (b) maintain a reliable, efficient and smooth distribution system, and (c) maintain the necessary relationships with Shippers so that the Debtors merchandise continues to arrive in a timely manner.

### Relief Requested

14. The Debtors believe they owe approximately $500,150 in accrued delivery expenses, which are those expenses incurred prepetition but not yet paid, plus another $200,000 in amounts currently due to dealers that have fronted shipping costs (some Shippers seek compensation from the dealers upon delivery). For the reasons set forth herein, including the

substantial disruption that is likely absent the requested relief, the Debtors seek authority to make $700,000 in payments to Shippers.[2] The Debtors further request that all applicable banks and other financial institutions be authorized to receive, process, honor, and pay all checks and electronic payments related to the prepetition Shipping Obligations, whether such checks were presented or electronic requests were submitted prior to or after the Petition Date, and to rely on the Debtors' designation of a particular check or electronic payment request as approved pursuant to this Motion.

## Basis for the Relief Requested

15. For the reasons stated above, the potential injury to the Debtors from the disruption caused by a failure to timely honor its Shipping Obligations will be far more costly than the unpaid Shipping Obligations. Consequently, section 105(a) of the Bankruptcy Code permits the relief sought herein:

> The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to prevent the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Because a bankruptcy court may use its equitable powers under section 105(a) to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtors." In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989); accord In re Just for Feet, Inc., 242 B.R. 821, 825 (D. Del. 1999).

---

[2] The relief requested herein does not apply to the intercompany transfers made to Debtor Star Fleet, Inc. for shipment of the Debtors' products.

16.     Relying on this precedential framework, Courts have routinely granted motions seeking similar relief in other large chapter 11 cases. See, e.g., In re Filene's Basement, Inc. Case No. 09-11525 (MFW) (Bankr. D. Del. May 5, 2009), In re ACG Holdings, Inc., Case No. 08-11467 (CSS) (Bankr. D. Del. July 15, 2008) (authorizing payment of prepetition shipping and warehousing charges as well as other liens); Progressive Molded Prods., Inc., Case No 08-11253 (KJC) (Bankr. D. Del. June 24, 2008); Dura Auto. Sys., Inc., No. 06-11202 (KJC) (Bankr. D. Del. Nov. 20, 2006); In re Radnor Holdings Corp., Case No. 06-10894 (PJW) (Bank. D. Del. August 23, 2006); In re Werner Holdings Co. (DE), Inc., Case No. 06-10578 (KJC) (Bank. D. Del. June 13, 2006); In re Global Home Prods., Case No. 06-10340 (KG) (Bankr. D. Del. April 11, 2006).

17.     The Debtors submit that such relief is equally appropriate here. The critical role that Shippers play in the Debtors' distribution process, and the irreparable harm that would follow from a failure to pay these Shippers, justifies the relief sought herein. The Debtors further submit that the amount that they believe is necessary to meet their Shipping Obligations, approximately $700,000 (excluding amounts paid prepetition by checks that have not yet cleared on the Petition Date), is *de minimis* compared to the losses the Debtors believe will be caused by non-payment of these obligations.

18.     The Debtors submit that the immediacy of this hearing permits waiver of Bankruptcy Rule 6003(b), providing that "a motion to pay all or part of a claim that arose before the filing of the petition" shall not be granted by the Court within 20 days of the Petition Date, because the relief sought by this Motion "is necessary to avoid immediate and irreparable harm."

Fed. R. Bankr. P. 6003(b). To implement the foregoing successfully, the Debtors seek a waiver of the requirements under Bankruptcy Rule 6004 including the ten-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent these rules are applicable.

## Notice

19. Notice of this Motion has been given to (i) the Office of the United States Trustee and (ii) the Debtors' prepetition and postpetition secured lenders or, in lieu thereof, to their counsel, if known. As the Motion is seeking "first day" relief, within two business days of the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered respecting the Motion as required by Del. Bankr. LR 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

20. No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the proposed form of order attached hereto, and grant such additional relief as is just and proper.

Dated: November 15, 2009

PACHULSKI STANG ZIEHL & JONES LLP

/s/ Laura Davis Jones
Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Timothy P. Cairns (Bar No. 4228)
Mark M. Billion (Bar No. 5263)
919 N. Market Street, 17th Floor
Wilmington, DE 19801
Telephone: 302/652-4100
Facsimile: 302/652-4400
Email: ljones@pszjlaw.com
   dbertenthal@pszjlaw.com
   tcairns@pszjlaw.com
   mbillion@pszjlaw.com

[Proposed] Counsel for the Debtors and Debtors in Possession