IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CHAMPION ENTERPRISES, INC., et al.,[1] | ) | Case No. 09-14019 (___) |
| | ) | |
| | ) | (Joint Administration Requested) |
| Debtors. | ) | |

## MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION FOR AN ORDER AUTHORIZING PAYMENT IN THE ORDINARY COURSE OF (I) SECTION 503(b)(9) CLAIMS AND (II) CERTAIN OBLIGATIONS FOR THE POSTPETITION DELIVERY OF GOODS AND SERVICES

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby move the Court for the entry of an order pursuant to sections 105, 363(c), 503(b)(1)(A), and 503(b)(9) of title 11 of the United States Code (the "Bankruptcy Code") (i) authorizing, but not directing, payment of all administrative expense claims arising under section 503(b)(9) of the Bankruptcy Code with respect to goods received by the Debtors in the ordinary course of business within the twenty day period immediately pending the Petition Date (as such term is defined herein); (ii) authorizing, but not directing, payment of the Debtors' obligations for the postpetition delivery of goods and provision of services received due to

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Redman Homes, Inc. (4957); Champion Enterprises, Inc. (3168); Champion Home Builders Co. (4984); New Era Building Systems, Inc. (0928); North American Housing Corp. (1097); Homes of Merit, Inc. (8488); Western Homes Corporation (6910); Star Fleet, Inc. (0506); Champion Enterprises Management Co. (6726); Champion Retail, Inc. (2154); San Jose Advantage Homes, Inc. (1951); Highland Acquisition Corp. (8962); Highland Manufacturing Company LLC (6762); SSH Liquidating Corp. (6678); Champion Homes of Boaz, Inc. (3165); Iseman Corp. (5899); MHCDC, LLC (3417); HomePride Finance Corp. (4767); and Champion Development Corp. (4642). The address for all Debtors is 755 W. Big Beaver, Suite 1000, Troy, MI 48084.

prepetition orders made in the ordinary course of their business; and (iii) granting certain related relief (the "<u>Motion</u>"). In support of this Motion, the Debtors respectfully state as follows:

## Jurisdiction

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The bases for the relief requested herein are sections 105(a) and 503 of the Bankruptcy Code and Rules 3003, 6003 and 6004 of the Federal Rules of Bankruptcy Procedure.

## Background

3. On the date hereof (the "<u>Petition Date</u>"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in the Debtors' chapter 11 cases.

4. The Debtors and their non-debtor affiliates are leading producers of manufactured and modular housing, as well as modular buildings for government and commercial applications. The Debtors distribute these products through independent retailers, builders and developers. In addition to their manufacturing and other sale operations, Debtors also sell manufactured homes directly to certain manufactured home parks in California and transport their products from the factories to retailers.

5. The factual background relating to the Debtors' commencement of these chapter 11 cases is set forth in detail in the *Declaration of Phyllis Knight, Chief Financial Officer of the Debtors, in Support of First Day Motions* (the "Knight Declaration") filed contemporaneously with this Motion and incorporated herein by reference.

6. Contemporaneously herewith, Debtors have also filed a motion for entry of an order authorizing them to pay the prepetition claims of essential trade creditors (the "Critical Vendor Motion"). The Debtors intend that this Motion and the Critical Vendor Motion work together to resolve numerous claims against these estates related to delivery of goods prior to the Petition Date.

### Relief Requested

**A.     Payment of 503(b)(9) Claims**

7. The Debtors received numerous goods in the ordinary course business during the twenty-day period immediately preceding the Petition Date. The Debtors believe that certain of the vendors and suppliers who delivered goods to the Debtors during the twenty-day period prior to the Petition Date but have not received payment for such goods (the "503(b)(9) Claimants") likely will seek the allowance and payment of those claims (the "503(b)(9) Claims") through individual motions to this Court. The 503(b)(9) Claimants, Debtors and other parties in interest will likely divert resources in these cases toward drafting, filing, prosecuting and defending such individual motions and related responses.

8. Under these circumstances, relief is necessary to permit the Debtors to pay any vendor that delivered goods in the ordinary course of business within twenty days of the

Petition Date. Under section 503(b)(9) of the Bankruptcy Code, claims for the value of goods received by the Debtors in the ordinary course of their business during the 20-day period prior to the petition date are entitled to administrative claim status. The Bankruptcy Code, however, does not specify when such claims entitled to administrative priority as a result of section 503(b)(9) are to be paid and prevailing law in this Court provides that Section 503(b)(9) Claims are not typically paid until the effective date of a confirmed plan of reorganization. *See, e.g., In re Global Home Products, LLC*, No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr. D. Del., Dec. 21, 2006).

9. In order to maintain their relationship with their vendors and to minimize any potential consequences of delaying payment of the 503(b)(9) Claims, the Debtors request an order authorizing, but not directing, them to pay the 503(b)(9) Claims immediately to the extent the Debtors determine that it is necessary to ensure the uninterrupted supply of materials to the Debtors. The Debtors estimate that the amount owing to 503(b)(9) Claimants for goods delivered in the twenty days prior to the Petition Date is approximately $6,616,000.

B. **Payment of Prepetition Purchase Orders**

10. Also in the ordinary course of the Debtors' business, numerous suppliers and service providers provide the Debtors with goods and services that are integral to the Debtors' business operations. As of the Petition Date, the Debtors had outstanding prepetition purchase orders (collectively, the "Purchase Orders") with certain suppliers (collectively, the "Suppliers") for such goods and services. As further discussed below, the delivery of goods and services by the Suppliers is critical to the continued operation of the Debtors' businesses.

11. As a result of the commencement of these chapter 11 cases, Suppliers may perceive a risk that they will be treated as prepetition general unsecured creditors for the cost of any shipments made or services provided pursuant to the Purchase Orders. As a result, the Suppliers may refuse to ship such goods to the Debtors or provide such services to the Debtors unless the Debtors issue substitute postpetition purchase orders or provide other assurances of payment. The revised postpetition purchase orders may include oppressive trade terms much more onerous on the Debtors than the terms in existing Purchase Orders. Most troubling, some Suppliers may refuse to do business with the Debtors after the Petition Date due to the failure to honor the existing Purchase Orders, thereby forcing the Debtors to find alternate suppliers with only minimal resources.

12. Moreover, issuing substitute purchase orders on a postpetition basis would be administratively burdensome, time-consuming, and counterproductive to the Debtors' reorganization. Such a requirement imposed by the Suppliers – or other requests for assurance of payment – inevitably will lead to delays in the Debtors' receipt of goods and services, ultimately resulting in the disruption of the Debtors' businesses and hindering the Debtors' ability to continue with operations. Any such disruption of the Debtors' operations would have a negative impact on the value of the Debtors' estates as a whole.

13. Under these circumstances, relief is needed to permit the Debtors to pay for the timely delivery of goods and uninterrupted provision of services from the Suppliers pursuant to the Purchase Orders. Accordingly, the Debtors seek entry of an order authorizing, but not directing, the Debtors to pay the Suppliers under any prepetition Purchase Orders for (a)

shipments of goods requested by, delivered to, and accepted by the Debtors on and after the Petition Date and (b) the provision of services to the Debtors on and after the Petition Date.[2] The Debtors estimate that the Suppliers will be owed approximately $5 million for goods and services delivered after the Petition Date pursuant to the Purchase Orders. Notwithstanding the foregoing, except to the extent that the Debtors seek relief with respect to the goods delivered by the 503(b)(9) Claimants, the Debtors do not seek authority in this Motion to pay any obligations to the Suppliers where title to the underlying goods was transferred to the Debtors prior to the Petition Date pursuant to the express terms of the legal documents governing a particular postpetition shipment.

C. **Additional Relief**

14. Prior to providing payment for 503(b)(9) Claims or Purchase Orders, the Debtors reserve the right to require each 503(b)(9) Claimant and/or Supplier to agree to (a) continue to supply goods and services to the Debtors post petition on trade terms substantially similar or better than those provided to the Debtors prior to the Petition Date, (b) execute a written acknowledgement that provides that any future purchase orders will be subject to the agreed trade terms, (c) remove any mechanics' liens, possessory liens, or similar state law trade liens obtained from the 503(b)(9) Claims and/or Purchase Orders, (d) submit to the Court's jurisdiction in resolving all disputes arising under or related to the payment of the 503(b)(9) Claim or Purchase Order, and (e) certain other provisions as agreed between the Debtors and each 503(b)(9) Claimant or Supplier. If, following receipt of payment of its 503(b)(9) Claim

---

[2] The Debtors reserve the right to contest the treatment and/or allowance of any administrative expense claim that may result from prepetition Purchase Orders and that is not paid under the relief requested by this Motion.

and/or Purchase Order, a 503(b)(9) Claimant or Supplier refuses to supply goods and services in accordance with the agreed trade terms, the Debtors seek authority to demand the repayment of the 503(b)(9) Claim and/or Purchase Order without giving effect to any rights of setoff, claims, provision for payment of reclamation or trust fund claims, or otherwise.

15. The Debtors submit that the relief sought herein is noncontroversial and entirely consistent with the applicable provisions of the Bankruptcy Code. The 503(b)(9) Claims are administrative expenses and should be payable in the ordinary course if appropriate in the Debtors' business judgment, inasmuch as such payments encourage vendors to continue business with the Debtors after the Petition Date and provide the Debtors with the best terms of sale possible. Further, obligations arising out of the postpetition delivery of goods and the provision of services to the Debtors are expenses generally incurred for the benefit of the Debtors' estates and to assist in preserving the value of the Debtors' businesses.

16. The requested relief merely confirms the treatment of such postpetition obligations under the Bankruptcy Code, providing necessary assurances of payment to the 503(b)(9) Claimants and Suppliers and ensuring the Debtors' ongoing and uninterrupted receipt of essential goods and services.

### Basis For Relief

17. The relief requested in the Motion is essential to the Debtors' efforts to maintain and maximize the value of their assets. The Suppliers' and 503(b)(9) Claimants' delivery of goods and services is critical to the continued operation of the Debtors' businesses.

Accordingly, the relief requested in the Motion is necessary to maintain a steady and dependable flow of goods from various suppliers.

19. Under section 105 of the Bankruptcy Code, the Court has broad discretion to issue orders necessary to "carry out the provisions of this title." 11 U.S.C. § 105(a). For all of the reasons described above, the Debtors submit that the relief sought herein will facilitate the Debtors' successful reorganization and therefore is appropriate under section 105 of the Bankruptcy Code.

19. Similar relief to that requested herein has been granted in other chapter 11 cases in this District and elsewhere. *See, e.g., In re Premier International Holdings, et al.*, Case No. 09-12019 (CSS) (Bankr. D. Del. June 13, 2009); *In re Linens Holding Co.*, Case No. 08-10832 (CSS) (Bankr. D. Del. May 28, 2008) (authorizing, among other things, administrative expense priority status for postpetition deliveries of suppliers and vendors and the payment of undisputed obligations arising there from in the ordinary course of business); *In re Sharper Image Corp.*, Case No. 08-10322 (KG) (Bankr. D. Del. Feb. 20, 2008) (same); *In re Buffets Holdings, Inc.*, Case No. 08-10141 (MFW) (Bankr D. Del. Feb. 13, 2008) (same); *In re ONCO Inv. Co.*, Case No. 04-10558 (JBR) (Bankr. D. Del. Feb. 24, 2004) (same); *In re Kaiser Aluminum Corp.*, Case No. 02-10429 (JKF) (Bankr. D. Del. Feb. 13, 2002) (same); *In re Brown & Cole Stores, LLC*, Case No. 06-13950 (SJS) (9th Cir. B.A.P. 2007) (affirming administrative expense priority of section 503(b)(9) claim); *In re First Magnus Fin. Corp.*, Case No. 07-01578 (JMM) (Bankr. D. Ariz. 2007) (same).

A. **Immediate Payment of 503(b)(9) Claims is Justified**

20. Section 503(b)(9) does not establish the timing by which any claim allowed under such Section must be paid. Indeed, there is nothing in the text of section 503(b)(9) of the Bankruptcy Code that requires immediate payment. *See In re Bookbinders' Restaurant, Inc.*, No. 06-12302, 2006 WL 3858020, at *4 (Bankr. E.D. Pa., Dec. 28, 2006) (finding that "[t]he text of 503(b)(9) neither states nor even implies that allowance of the expense encompasses an unqualified right to immediate payment ... [n]or does the text of the provision suggest that an administrative expense allowed under § 503(b)(9) is to be treated in a more favorable manner than any other allowed § 503(b) administrative expense"); *see also In re Global Home Products, LLC*, No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr. D. Del., Dec. 21, 2006) (noting that "Section 503(b)(9) 'is a rule of priority, rather than payment.'" (citations omitted)).

21. In *Global Home*, the Court rejected a motion for immediate payment of a section 503(b)(9) claim. In so doing, the Court explained that "Section 503 does not specify a time for payment of [administrative] expenses but administrative expenses must be paid in full on the effective date of the plan...." 2006 WL 3791955, at *3. The Court went on to provide that, therefore, "[t]o qualify for exceptional immediate payment, a creditor must show that 'there is a necessity to pay and not merely that the Debtor has the ability to pay.'" *Id.* (quoting *In re Continental Airlines, Inc.*, 146 B.R. 520, 531 Bankr. D.Del.1992) (quoting *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 179 (Bankr.S.D.N.Y.1989)).

22.     Exercising their discretion with regard to the timing of payment of an administrative claim, courts have looked to three factors: (1) prejudice to the debtor, (2) hardship to the claimant, and (3) potential detriment to other creditors. *See In re Garden Ridge Corp.*, 323 B.R. 136, 143 (Bankr. D. Del. 2005); *see also In re Global Home Products, LLC*, 2006 WL 3791955, at *5 (holding that the proper exercise of its discretion required the Court to deny the motion for immediate payment under section 503(b)(9) because "prejudice to Debtors of requiring immediate payment far outweigh[ed] the prejudice, if any, to [the creditor] and Debtors' other creditors....") When determining whether it is appropriate to require immediate payment of an administrative claim, courts also consider the initial goal of a bankruptcy proceeding to create an orderly and equal distribution of recovery among creditors. *See In re Austin*, No. 85-40639, 1994 WL 245224, at *1 (Bankr. S.D. Ga. 1994), *citing In re Baptist Medical Center of New York, Inc.*, 52 B.R. 417, 421 (E.D.N.Y.1985). Procedures that provide for orderly review of claims and a process by which claims are paid are necessary to prevent a race to claim debtor's assets, and to allow such debtor a necessary breathing spell from its creditors. For these reasons, among others, courts frequently deny requests for payment of claims such as these until a plan is confirmed. *See In re Continental Airlines, Inc.*, 146 B.R. 520, 531 (Bankr. D. Del. 2002) ("Most courts postpone actual payment until confirmation of a plan.")

23.     Notwithstanding the lack of support for a motion by any 503(b)(9) Claimant for an order requiring the payment of 503(b)(9) Claims at this early stage in these cases, the Debtors submit that they should be authorized to determine, in the exercise of their business judgment, that certain 503(b)(9) Claims should be paid now to allow its business to

continue to operate as smoothly as possible. In order for their business to do so, the Debtors will need to continue purchasing goods from a broad range of unaffiliated, third-party vendors on payment and other terms that are equally or more favorable than those terms available to Debtors prior to the Petition Date. Moreover, other creditors will not be prejudiced by payment of certain 503(b)(9) claims prior to plan confirmation because (a) all such allowed administrative claims will be paid in connection with any confirmed plan of reorganization pursuant to section 1129, and (b) the Debtors will require those Creditors that obtain accelerated payment of their allowed 503(b)(9) Claims to provide acceptable trade terms to the appropriate Debtor, in the Debtors' sole discretion. Providing the Debtors with a tool to assist them in securing more favorable trade terms will help all Creditors as it will allow the Debtors to more efficiently and effectively operate their business.

24. Any prejudice suffered by section 503(b)(9) Claimants who are required to wait until the conclusion of these Cases to receive payment of their allowed 503(b)(9) Claims is minimal at best. Conversely, to require all 503(b)(9) claimants to have each claim adjudicated separately would needlessly waste estate resources – whereas allowing the Debtors to accelerate payment of only certain allowed 503(b)(9) Claims will not only ensure that the Debtors receive the breathing spell intended by the Bankruptcy Code, but will also ensure that creditors will receive equality of treatment with respect to their recovery. For the foregoing reasons, the relief proposed in this Motion is appropriate and in the best interest of the Debtors and all creditors.

B.  **Payment of Suppliers for Purchase Orders is Appropriate**

25. Under the provisions of Bankruptcy Code section 503(b)(1)(A), all undisputed obligations that arise in connection with the postpetition delivery of goods to the Debtors are, upon acceptance, arguably, administrative expenses. Although the Debtors believe that they therefore may have the authority to make payment for any goods received postpetition (irrespective of the time the orders were first placed), confirmation of that authority is appropriate and necessary. The Debtors' relationship with their Suppliers is so essential that it is important to give the Suppliers the utmost reassurance that their valid claims will be given administrative expense priority status, and that they will continue to be paid by the Debtors in the ordinary course of business. Furthermore, any attempt by the Suppliers to interrupt goods in transit will create unanticipated supply shortages and potential work stoppages detrimental to the going concern value of the Debtors' business.

26. Absent the relief requested in this motion, the Debtors would be required to expend substantial time and resources convincing Suppliers of the Debtors' authority to make certain payments, reissuing Purchase Orders, and/or establishing the Debtors' right to retain the goods supplied under the Purchase Orders. The disruption in the supply of goods and services to the estate could significantly hinder the Debtors' operations and subject the Debtors to tremendous expense. Without the goods and services supplied through the Purchase Orders, the Debtors' businesses would rapidly deteriorate, and the Debtors opportunity to preserve the value of their assets would be jeopardized.

27. Given the nature and scale of the Debtors' operations, the volume of goods and services consumed in the Debtors' operations, and the potential impact of any interruption in the flow of goods and services to the Debtors, the Debtors have a clear need to honor the Purchase Orders from the Suppliers. Accordingly, the Debtors request the relief set forth herein.

## Satisfaction Of Bankruptcy Rule 6003 And Waiver Of Bankruptcy Rule 6004

28. Pursuant to Rules 6003(b) and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtors seek (a) immediate entry of an order granting the relief sought herein and (b) a waiver of any stay of the effectiveness of such an order. Bankruptcy Rule 6003(b) provides, in relevant part, that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 20 days after the filing of the petition, grant relief regarding ... a motion to pay all or part of a claim that arose before the filing of the petition." Accordingly, where the failure to grant any such requested relief would result in immediate and irreparable harm to the Debtors' estates, the Court may allow the Debtors to pay all or part of a claim that arose before the Petition Date prior to the twenty-first day following the Petition Date for goods and prior to the sixteenth day following the Petition Date for services.

29. Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise."

30. As set forth above and in the Knight Declaration, the payment of Purchase Orders and 503(b)(9) Claims is necessary to prevent the immediate and irrevocable damage to the Debtors' operations, distribution system, and reorganization. Accordingly, cause exists to justify (a) the immediate entry of an order granting the relief sought herein and (b) a waiver of the ten-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

## Notice

31. Notice of this Motion has been given to (i) the Office of the United States Trustee and (ii) the Debtors' prepetition and postpetition secured lenders or, in lieu thereof, to their counsel, if known. As the Motion is seeking "first day" relief, within two business days of the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered respecting the Motion as required by Del. Bankr. LR 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

32. No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request the entry of an order, substantially in the form attached hereto, (i) granting the relief sought herein and (ii) granting such other and further relief as may be just and proper.

Dated: November 15, 2009

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Laura Davis Jones*

Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Timothy P. Cairns (Bar No. 4228)
Mark M. Billion (Bar No. 5263)
919 North Market Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
E-mail: ljones@pszjlaw.com
dbertenthal@pszjlaw.com
tcairns@pszjlaw.com
mbillion@pszjlaw.com

[Proposed] Counsel to Debtors and
Debtors in Possession