IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CHAMPION ENTERPRISES, INC., et al.,[1] | ) | Case No. 09-14019 (KG) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

**DEBTORS' MOTION FOR AN ORDER: (I) APPROVING ASSET PURCHASE
AGREEMENT AND AUTHORIZING THE SALE OF ASSETS OUTSIDE THE
ORDINARY COURSE OF BUSINESS, (II) AUTHORIZING THE SALE OF ASSETS
FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS
PURSUANT TO SECTIONS 363(b), (f) AND (m) OF THE BANKRUPTCY CODE;
(III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES;
<u>AND (IV) GRANTING RELATED RELIEF</u>**

Champion Enterprises, Inc., *et al.*, the above-captioned debtors and debtors in

possession (collectively, the "Debtors"), file and seek approval of this *Motion for Entry of an*

*Order (i) Approving Asset Purchase Agreement and Authorizing the Sale of Assets Outside the*

*Ordinary Course of Business; (ii) Authorizing the Sale of Assets Free and Clear of All Liens,*

*Claims, Encumbrances and Interests Pursuant to Sections 363(b), (f) and (m) of the Bankruptcy*

*Code; (iii) Authorizing the Assumption and Assignment of Certain Executory Contracts and*

*Unexpired Leases; and (iv) Granting Related Relief* (the "Sale Motion"). Contemporaneously

with the filing of the Sale Motion, the Debtors have also filed the *Motion for Order (A)*

*Approving Bid Procedures For the Sale of the Debtors' Assets; (B) Scheduling An Auction and*

---

[1] The Debtors in these cases are Redman Homes, Inc.; Champion Enterprises, Inc.; Champion Home
Builders Co.; New Era Building Systems, Inc.; North American Housing Corp.; Homes of Merit, Inc.;
Western Homes Corporation; Star Fleet, Inc.; Champion Enterprises Management Co.; Champion Retail,
Inc.; San Jose Advantage Homes, Inc.; Highland Acquisition Corp.; Highland Manufacturing Company
LLC; Champion Homes of Boaz, Inc.; Iseman Corp.; and SSH Liquidating Corp.

*Hearing To Consider the Sale and Approve the Form and Manner of Notice Related Thereto;*
*(C) Establishing Procedures Relating to the Assumption and Assignment of Certain Contracts,*
*Including Notice of Proposed Cure Amounts; (D) Approving Certain Expense Reimbursement*
*Provisions and Breakup Fee; and (E) Granting Other Related Relief* (the "Procedures Motion"),
which seeks approval of certain sale and bidding procedures for the sale, as more particularly set
forth therein (the "Bid Procedures"). The sale, approval of which is sought by this Sale Motion
(the "Sale"), shall be to the proposed purchaser pursuant to the terms of the LOI (defined below)
(the "Purchaser") or such other higher and better bidder or bidders, if any (a "Successful
Bidder"), at the auction provided for in the Procedures Motion and the Bid Procedures (the
"Auction"), to take place on the date set forth in, and in accordance with, the order to be entered
by the Court on the Procedures Motion (the "Procedures Order").

A copy of the Letter of Intent, dated January 15, 2010 (the "LOI"), between the
Debtors and the Purchaser is attached hereto as Exhibit A. The LOI sets forth the material terms
of the asset purchase agreement (the "Agreement") that have been agreed to in principle by the
Debtors and the Purchaser.[2] The Debtors and the Purchaser intend to file a final, executed copy
of the Agreement, and a proposed form of order granting the Sale Motion (the "Sale Order")
prior to the hearing on the Procedures Motion. Upon filing, the Debtors shall serve copies of the
Agreement and Sale Order upon all of the parties that were served with the Sale Motion, and all
parties that request copies of the pleadings.

As set forth in detail below, the Sale of the Assets to the Purchaser, or the proponent of a
higher and better bid, pursuant to the Court approved Auction process is in the best interest of the

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Procedures Motion, the Bidding Procedures and/or the attached LOI.

Debtors, their estates, and creditors, and is necessary to maximize creditor outcomes in these cases. In support of the Sale Motion, the Debtors respectfully state as follows:

## Jurisdiction

1.      This Court has jurisdiction over this Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (M), (N) and (O).

2.      Venue of these proceedings and this Sale Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief sought herein are sections 105, 363, 365, 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002(a)(2), 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1(b), 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## Background

4.      On November 15, 2009 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are continuing in possession of their property and are operating and managing their businesses, as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5.      No request has been made for the appointment of a trustee or an examiner in this case.

3

6.     The factual background regarding the Debtors, including their current and historical business operations and the events precipitating the chapter 11 filings, is set forth in detail in the *Declaration of Phyllis Knight, Chief Financial Officer of the Debtors, in Support of First Day Motions* (the "Knight Declaration"), previously filed in these cases and incorporated herein by reference.

7.     In order to maximize the value of their business and assets for the benefit of creditors, the Debtors, in the exercise of their business judgment, have determined to market and sell all or substantially all of their assets related to the Debtors' factory-built homes and modular building manufacturing business and related Star Fleet transportation assets (the "Assets"), including the assumption and assignment of certain executory contracts and unexpired leases (the "Assumed Agreements"), to the highest and best bidder(s) at auction, for the benefit of the estates and their creditors (a "Sale"). The Debtors' debtor-in-possession financing facility (the "DIP Facility") provides for certain milestones for a sale, including that the Debtors shall consummate a sale no later than March 18, 2010.

## Marketing Process

8.     In or about August 2009, the Debtors initiated a process to solicit bids ("Bids") for the Assets and engaged investment banker Morgan Joseph & Co. ("Morgan Joseph") for that purpose. As of the date of this Motion, Morgan Joseph has contacted approximately 169 parties on behalf of the Debtors, including potential financial buyers, strategic buyers, and other interested parties. Of these interested parties, around 48 have executed confidentiality agreements and obtained access to the data room set up by Morgan Joseph. Twelve parties have submitted non-binding term sheets.

4

9.     The Debtors, with the assistance of Morgan Joseph and their other professionals, intend to continue to market and seek Bids for the Assets and, pursuant to the Bid Procedures, to hold the Auction for such assets on or about March 1, 2010 at 11:00 a.m., or such other date and time as specified by the Court. The Debtors believe that such additional marketing of the Assets over the period contemplated by the Bid Procedures, combined with the approximately 4-month marketing period that has already elapsed, will result in the highest or otherwise best offer for the Assets.

10.     The Debtors believe that the consummation of a sale to the highest bidder at auction will provide their creditors and other stakeholders with the best opportunity possible for maximizing value by realizing upon the Assets through a Sale as a going concern.

### The Terms of the Agreement

11.     As noted above, the Debtors have entered into the LOI attached hereto as Exhibit A with the Purchaser. The LOI sets forth the principle terms of the Sale of the Assets to the Purchaser that will be memorialized in the terms of the Agreement that will be executed and filed with the Court prior to the hearing on the Procedures Motion. The terms of the Agreement, as currently reflected in the attached LOI, are summarized below:[3]

(a.)     **Assets**. Substantially all of the real, personal, tangible, intangible and other property, cash (other than cash specifically designated as an excluded asset) and other

---

[3] The description of the terms in the LOI only provides a summary of the terms of the Agreement that the Debtors and the Purchaser have agreed to in principle, and is completely qualified by the actual terms of the Agreement that will be executed by the Parties and filed with the Court prior to the hearing on the Procedures Motion. Only those terms and conditions set forth in the executed and filed Agreement shall be binding upon the Debtors and the Purchaser.

assets of the Debtors as a going concern (including equity interests in non-Debtor subsidiaries)

and assignment of any and all contracts and leases designated by the Purchaser.

(b.) **Purchase Price**. The purchase price for the Sale shall consist of:

(1) a credit bid of all obligations (*i.e.,* approximately $80 million principal amount plus accrued interest) under the Debtor-in-Possession Credit Agreement dated as of November 15, 2009 (the "DIP Facility") among certain of the Debtors, the lenders party thereto (the "DIP Lenders") and Credit Suisse AG as administrative and collateral agent (the "DIP Agent");

(2) a credit bid of all obligations under the Company's Amended and Restated Credit Agreement, dated as of April 7, 2006 (as amended or otherwise modified, the "Pre-Petition Credit Agreement"),

(3) the agreement of the Purchaser (as hereinafter defined) to pay any and all cure payments required for the assumption of the Designated Contracts ("Cure Costs");

(4) as will be more particularly set forth in the Agreement, the agreement of the Purchaser to fund at or after the closing of the Acquisition, up to a maximum amount to be agreed and consistent with a budget to be agreed, (i) specified administrative expenses accrued through the closing date of the Acquisition and (ii) specified post-closing wind-down expenses of the bankruptcy estates; and

(5) as will be more particularly set forth in the Agreement, the agreement of the Purchaser to assume specified administrative expenses and the other Assumed Liabilities (as defined in the LOI).

(c.) **Excluded Assets**. The following assets will not be acquired by the

Purchaser as part of the Acquisition:

(1) interests in or under contracts that are not Designated Contracts (other than Residual LC Beneficiary Rights (as defined in the LOI);

(2) the Carve-Out Account established pursuant to Section 2.11.4 of the DIP Facility and all amounts on deposit in such Carve-Out Account in accordance with the terms of the DIP Facility;

(3) avoidance actions, other than those, if any, jointly specified by the Purchaser and the Company in the Agreement (as defined hereafter);

(4) all documents, agreements, contracts and instruments, including personnel files, relating to employees that do not become employees of Purchaser (or any subsidiary thereof) upon the closing;

(5) except to the extent that any of the following are expressly included as part of the acquired assets on or prior to the date that is one business day prior to the due date for the submission of qualifying competing bids established by the Bidding Procedures Order (the "Interim Deadline"), any shares of capital stock or other equity interest of any of the Debtors or any securities convertible into, exchangeable or exercisable for shares of capital stock or other equity interest of any of the Debtors;

(6) duplicate copies of any minute books, stock ledgers, corporate seals and stock certificates of the Company, and other similar books and records that the Debtors (other than any Debtors whose equity interests are acquired pursuant to the Acquisition) are required by law to retain;

(7) any rights of the Company under the Agreement; and

(8) such assets, if any, as the Purchaser designates for exclusion on or prior to the Interim Deadline.

(d.) **Assumed Liabilities**. As part of the Sale, at closing the Stalking

Horse Purchaser will assume (or cause one or more subsidiaries to assume) only the following

liabilities of the Debtors:

(1) post-closing obligations under Designated Contracts (including Cure Costs);

7

(2)        such workers' compensation, IRB or other obligations, if any, as may be designated by the Stalking Horse Purchaser after the date of this LOI and prior to the Closing Date to become subject to the L/C 'rollover' replacement arrangements described in the LOI,

(3)        such other obligations and liabilities (if any) as are designated by the Stalking Horse Purchaser after the date of this LOI and prior to the Closing Date as additional liabilities to be assumed, including any administrative claims that are designated by the Stalking Horse Purchasers as assumed liabilities (and that are not covered by Stalking Horse Purchaser's backstop commitment set forth in sub-clause (d) of the section of the LOI entitled "General"); and

(4)        at the closing of the Sale, the Purchaser will also assume (or cause one or more of its subsidiaries to assume) (as part of the Assumed Liabilities) certain express contractual warranty obligations of the Debtors to third parties, certain ordinary course employee obligations, certain repurchase obligations to third parties and certain existing guarantee obligations of the Debtors made or given in connection with the Debtors' UK operations, each of the foregoing only to the extent agreed by the Company and the Purchaser and specified in the Agreement.

(e.)    **Excluded Liabilities.** All liabilities that are not an Assumed Liability shall be "Excluded Liabilities."

(f.)    **Fees and Sponsor Advisory Services / Management.** Subject to entry of the Bidding Procedures Order (defined below), Debtors shall pay or reimburse the Stalking Horse Purchaser for any and all out-of-pocket fees and expenses incurred by it (including the reasonable fees and disbursements of Latham & Watkins LLP up to a maximum amount of $75,000[4]) in connection with the Sale and the transactions contemplated by the LOI in an amount not to exceed, when taken together with the Alternative Transaction Fee, $4 million

---

[4] In the event that the Sale closes, the Stalking Horse Purchaser shall pay such reasonable fees and disbursements of Latham & Watkins LLP up to a maximum amount of $75,000.

(i.e. the Expense Reimbursement (defined below)), as a super-priority administrative expense, ahead of the DIP claims (but expressly subject and subordinate to the Carve-Outs and agent expenses and claims provided for in the DIP Facility), to be paid upon (i) termination of the LOI or Agreement by the Stalking Horse Purchaser upon the occurrence of any Buyer Termination Event other than Buyer Termination

(g.) **Alternative Transaction Fee.** An alternative transaction fee of up to $3 million (i.e.; the Breakup Fee (defined below)) payable to the Stalking Horse Purchaser or its designees (*i.e.,* $1 million each to each of Centerbridge, MAK Capital and Sankaty) in the event of consummation of a topping bid in the 363 auction or consummation of an alternative plan of reorganization (other than following consummation the Acquisition described herein) (an "Alternative Transaction"), which Breakup Fee shall be paid solely from the proceeds of a topping bid in the 363 auction or as an administrative expense in the context of an alternative plan of reorganization, and shall not otherwise prime the liens and claims of the DIP Lenders under the DIP Facility. The Alternative Transaction Fee shall be reduced to the extent that the Expense Reimbursement (defined below) and the Breakup Fee required to be paid would otherwise, in the aggregate, exceed $4 million (with any such reduction to be applied equally among Centerbridge, MAK Capital and Sankaty).

12. The Debtors seek authority to sell the Assets to the Purchaser, or to the proponent of a higher and better bidder at the Auction, conducted in accordance with the Bid Procedures, pursuant to the terms of the Sale Order.

9

13.     The Debtors believe that the sale of the Assets as a going concern to the Purchaser, or to the proponent of a higher and better bid in accordance with the Bid Procedures, is far preferable to a piecemeal liquidation of the Debtors' assets. The Debtors further believe that their obtaining the Purchaser as a stalking horse bidder, marketing their Assets with the assistance of the Debtors investment banker, Morgan Joseph, and other professionals over the five month period prior to the Auction, and conducting the Auction of such Assets on the date specified by the Court, in Bid Procedures will result in the highest and best price for the Assets.

14.     The Debtors have examined the alternatives to a going concern sale of the Assets and have determined that, in light of their financial situation, liquidity needs, and value of the assets as an operating unit, a viable alternative to such a sale is not available. Moreover, the Debtors' postpetition debtor in possession financing facility requires that the Debtors consummate a sale no later than March 18, 2010.

15.     For these reasons, and in light of the obvious benefits to their estates and creditors, the Debtors have determined, in the exercise of their business judgment, to sell the Assets to the Purchaser pursuant to the terms of the Agreement, or, if applicable, to the proponent of a higher and better bid after the Auction.

### Relief Requested

16.     The Debtors are requesting that this Court, *inter alia*, (i) authorize the sale of the Assets to the Purchaser pursuant to the Agreement or, alternatively, to the other Successful Bidder(s) pursuant to such competing agreement(s) with such other Successful Bidder(s) entered into in accordance with the Procedures Order, free and clear of all liens, claims, encumbrances or other interests pursuant to sections 363(b), (f) and (m) and 365 of the Bankruptcy Code, with

10

such liens, claims, rights, interests and encumbrances (collectively, the "Interests") to attach to the sale proceeds of the Assets with the same validity (or invalidity), priority and perfection as existed immediately prior to such sale; (ii) approve the assumption and assignment of the Assumed Agreements (as hereinafter defined) under Bankruptcy Code section 365, subject to, and at the time of, closing under the Agreement; and (iii) grant such other relief as may be necessary or appropriate.

## Basis for Relief

### A.     Approval of the Sale

17.     Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) provides in relevant part that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

18.     A sale of a debtor's assets should be authorized pursuant to section 363 of the Bankruptcy Code if a sound business purpose exists for doing so. *See, e.g.*, *Meyers v. Martin (In re Martin)*, 91 F. 3d 389, 395 (3rd Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F. 2d 513, 515 (7th Cir. 1991)); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F. 2d 143 (3rd Cir. 1986); *Stephens Indus., Inc. v. McClung*, 789 F. 2d 386, 390 (6th Cir. 1986); *In re Lionel Corp.*, 722 F. 2d 1063 (2nd Cir. 1983); *In re Titusville Country Club*, 128 B.R. 396 (W.D. Pa. 1991); *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 176 (D. Del. 1991). The *Delaware & Hudson Railway* court rejected the pre-Code "emergency" or "compelling

11

circumstances" standard, finding the "sound business purpose" standard applicable and, discussing the requirements of that test under *McClung* and *Lionel*, observing:

> A non-exhaustive list of factors to consider in determining if there is a sound business purpose for the sale include: the proportionate value of the asset to the estate as a whole; the amount of elapsed time since the filing; the likelihood that a plan of reorganization will be proposed and confirmed in the near future; the effect of the proposed disposition of the future plan of reorganization; the amount of proceeds to be obtained from the sale versus appraised values of the Property; and whether the asset is decreasing or increasing in value. 124 B.R. at 176.

19.     The *Delaware & Hudson Railway* court further held that "[o]nce a court is satisfied that there is a sound business reason or an emergency justifying the pre-confirmation sale, the court must also determine that the trustee has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the Buyer is proceeding in good faith." *Id.*

20.     The Debtors have proposed the sale of the Assets after thorough consideration of all viable alternatives and have concluded that the Sale is supported by a number of sound business reasons.

21.     The Debtors, with the assistance of their investment banker, Morgan Joseph, will have marketed the Assets for approximately 5 months prior to the proposed date of the Sale Hearing and have proposed Bid Procedures designed to maximize the purchase price that should be realized from the Sale.

22.     The Debtors have articulated sound business reasons, set forth above, for the Sale of the Assets on an expedited basis. *See, e.g.*, *In re Tempo Tech.*, 202 B.R. 363, 369-70 (D. Del. 1996) (approving a sale of all of the debtor's assets, within a month after the petition

12

date, where the debtor faced a cash shortfall, operated in an industry where there were few potential buyers, and anticipated continuing losses and a decline in value of the bankruptcy estates); *Delaware & Hudson Railway*, 124 B.R. at 177 (affirming the bankruptcy court's approval of a sale of substantially all of the debtor's assets where the debtor would have been "in liquidation mode if required to delay a sale until after filing a disclosure statement and obtaining approval for a reorganization plan"); *Titusville Country Club*, 128 B.R. at 400 (granting an expedited hearing on a motion to approve a sale as a result of "deterioration" of the debtor's assets); *Coastal Indus., Inc. v. Internal Revenue Service (In re Coastal Indus., Inc.)*, 63 B.R. 361, 366-69 (Bankr. N.D. Ohio 1986) (approving an expedited sale pursuant to section 363(b) just five weeks after the petition date where the debtor was suffering operating losses).

23. The Debtors believe that, as a result of the marketing efforts that have been undertaken and that they will continue to undertake through the date set forth the Auction, the highest and best offer(s) obtained through the proposed Bid Procedures and Auction will provide maximum value to the Debtors under the current circumstances. Other potential buyers will be served with this Sale Motion and/or Sale Notice.

24. The fairness and reasonableness of the consideration to be paid by the Successful Bidder(s) is demonstrated by the marketing efforts that the Debtors will undertake, followed by a fair and reasonable sale process including the Auction, and culminating in one or more proposed sales.

25. The sale of the Assets is supported by sound business reasons and is in the best interests of the Debtors, their estates, and creditors. Accordingly, the Debtors request

approval of the Sale under section 363(b) of the Bankruptcy Code to the Successful Bidder(s), as

set forth herein.

**The Proposed Sale Satisfies the Requirements of Section 363(f) of the**
**Bankruptcy Code For a Sale Free and Clear of Liens, Claims, and Interests**

26.     Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell Property under subsection (b) or (c) of this section
> free and clear of any interest in such Property of an entity other than the
> estate, only if –
>
> (1) applicable nonbankruptcy law permits sale of such Property free and
> clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such Property is to be sold
> is greater than the aggregate value of all liens on such Property;
>
> (4) such interest is in a bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to
> accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

27.     Section 363(f) of the Bankruptcy Code provides for the sale of assets "free

and clear of any interests." The term "any interest," as used in section 363(f), is not defined

anywhere in the Bankruptcy Code. *Folger Adam Security v. DeMatteis/MacGregor, JV*, 209 F.

3d 252, 259 (3rd Cir. 2000). In *Folger Adam*, the Third Circuit specifically addressed the scope

of the term "any interest." 209 F. 3d at 258. The Third Circuit observed that while some courts

have "narrowly interpreted that phrase to mean only *in rem* interests in Property," the trend in

modern cases is towards "a broader interpretation which includes other obligations that may flow

from ownership of the Property." *Id.* at *258* (citing 3 *Collier on Bankruptcy* ¶ 363.06[1]). As

determined by the Fourth Circuit in *In re Leckie Smokeless Coal Co.*, 99 F. 3d 573, 581-582 (4th

14

Cir. 1996), a case cited approvingly and extensively by the Third Circuit in *Folger Adam*, the scope of 11 U.S.C. § 363(f) is not limited to *in rem* interests. Thus, the Third Circuit in *Folger Adam* stated that *Leckie* held that the debtors "could sell their assets under §363(f) free and clear of successor liability that otherwise would have arisen under federal statute." *Folger Adam*, 209 F. 3d at 258.

28.     Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the sale of the Assets free and clear of all the Interests, except with respect to any Interests that constitute Assumed Liabilities under the Agreement. *See Citicorp Homeowners Services, Inc. v. Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988). The Debtors submit that each Interest that is not an assumed liability satisfies at least one of the five conditions of section 363(f) of the Bankruptcy Code, and that any such Interest will be adequately protected by either being paid in full at the time of closing, or by having it attach to the proceeds of the sale, subject to any claims and defenses the Debtors may possess with respect thereto. The Debtors accordingly request authority to convey the Assets to the Successful Bidder(s), free and clear of all Interests except for the Interests that are Assumed Liabilities under the express terms of the Agreement, with such Interests to attach to the proceeds of the Sale, with the same validity (or invalidity), priority and perfection as existed immediately prior to the Sale, subject to the terms of the Agreement and the proposed Sale Order.

29.     The Debtors have conducted a UCC search of other purported lienholders of its assets in conjunction with the proposed Sale of the Assets. The Debtors have served such purported lienholders notice of this Sale Motion, and will serve notice of any Sale Order approving the relief requested by this Sale Motion.

15

30.     Accordingly, except as otherwise provided in the Agreement or the

Agreement of the Successful Bidder, this Court should approve the Sale of the Assets to the

Successful Bidder(s) free and clear of Interests under Bankruptcy Code section 363(f), and any

potential claimants should be compelled to look exclusively to the proceeds of the Sale for

satisfaction of their claims.  In the event that the Purchaser's credit bid under the Agreement is

the winning bid, there will be no proceeds from the Sale.

### Good Faith Under Section 363(m) of the Bankruptcy Code; Sale Not In Violation of Section 363(n) of the Bankruptcy Code

31.     Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under
> subsection (b) or (c) of this section of a sale or lease of Property
> does not affect the validity of a sale or lease under such
> authorization to an entity that purchased or leased such Property in
> good faith, whether or not such entity knew of the pendency of the
> appeal, unless such authorization and such sale or lease were
> stayed pending appeal.

11 U.S.C. § 363(m).  Section 363(n) of the Bankruptcy Code, among other things, provides, in

turn, that a trustee may avoid a sale under such section if the sale price was controlled by an

agreement among potential bidders as the sale.  *See* 11 U.S.C. § 363(n).  While the Bankruptcy

Code does not define "good faith," the Third Circuit in *In re Abbotts Dairies of Pennsylvania,*

*Inc.*, 788 F. 2d 143 (3rd Cir. 1986) has held that:

> [t]he requirement that a Buyer act in good faith . . speaks to the
> integrity of his conduct in the course of the sale proceedings.
> Typically, the misconduct that would destroy a Buyer's good faith
> status at a judicial sale involves fraud, collusion between the Buyer
> and other bidders or the trustee, or an attempt to take grossly unfair
> advantage of other bidders.

788 F. 2d at 147 (citations omitted).

32.     The Agreement was a negotiated, arm's-length transaction, in which the Purchaser has acted in good faith, without collusion or fraud of any kind, and in compliance with the *Abbotts Dairies* standards.  The Purchaser is not an "insider" or "affiliate" of the Debtors as those terms are defined in the Bankruptcy Code.  Neither the Debtors nor the Purchaser has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code, or cause the application, or implication, of section 363(n) of the Bankruptcy Code to the Agreement, or with respect to the consummation of the sale transaction or the transfer of the Assets and the Assumed Agreements to the Purchaser.  In addition, if a party other than the Purchaser is the Successful Bidder, the Debtors intend to make an appropriate showing at the Sale Hearing that the purchase agreement with the other Successful Bidder is a negotiated, arm's-length transaction, in which the Successful Bidder at all times has acted in good faith under and otherwise in accordance with such standards.

33.     The Debtors thus request that the Court find that the Purchaser or the Successful Bidder has purchased the Assets in good faith within the meaning of section 363(m) of the Bankruptcy Code, and is entitled to the protections of sections 363(m) and (n) of the Bankruptcy Code.

**B.    Authorization of Assumption and Assignment of Assumed Executory Contracts**

34.     In order to enhance the value to the Debtors' estate, the Debtors request approval of the assumption and assignment of those executory contracts and unexpired leases identified in the Agreement (the "Assumed Agreements")[5] to the Purchaser, or Successful

---

[5] The inclusion of any agreement as an Assumed Agreement does not constitute an admission by the Debtors that such agreement actually constitutes an executory contract or unexpired lease under section

17

Bidder(s) in the event that higher and better offers are received, upon the Closing of the transactions contemplated under the Agreement and payment of the cure costs for the Assumed Agreements (the "Cure Costs" or "Cure Amounts"), which amounts, if any, are what the Debtors believe are owed to each counterparty (each a "Counterparty," and collectively, the "Counterparties") to an Assumed Agreement in order to cure any defaults that exist under such contract or lease.

35.     If a contract or lease is assumed and assigned pursuant to the Court's order approving same, then unless the affected counterparty properly files and serves an objection to the Cure Costs, the Counterparty will receive at the time of the closing (or as soon as reasonably practicable thereafter), the Cure Costs, with payment made pursuant to the terms of the Agreement, or the agreement of the applicable Successful Bidder.

36.     The Successful Bidder(s), on behalf of the Debtors, shall promptly pay or cause to be paid the Cure Costs with respect to the Assumed Agreements after the closing on the Sale. Certain Cure Costs are to be paid by the Debtors as set forth in the Agreement. The Successful Bidder(s) shall be responsible for satisfying any requirements regarding adequate assurances of future performance that may be imposed under section 365(b) of the Bankruptcy Code in connection with the proposed assignment of any Assumed Agreements, which the Purchaser shall satisfy through its promise to perform following the Closing obligations under the Assumed Agreements. The Debtors propose that the Court make its determinations concerning adequate assurance of future performance under the Assumed Agreements pursuant

---

365 of the Bankruptcy Code, and the Debtors expressly reserve the right to challenge the status of any agreement included as an Assumed Agreement up until the time of the Sale Hearing.

to section 365(b) of the Bankruptcy Code at the Sale Hearing or in the case of any Assumed

Agreements not assumed and assigned to the Successful Bidder(s) at the Sale Hearing, at such

other hearing to approve assumption and assignment of such Assumed Agreement to the

Successful Bidder(s). The Debtors request that Cure Costs disputed by any Counterparty be

resolved by the Court at a hearing to be scheduled by the Debtors following the deadline for the

Counterparties to file objections to the Cure Costs or, if the Debtors do not request such a

hearing date, at the Sale Hearing or at such other hearing to approve assumption and assignment

of the relevant contract or lease.

       37.     Except to the extent otherwise provided in the agreement(s) entered into

with the Successful Bidder(s), subject to the payment of any Cure Costs, the assignee of an

Assumed Agreements will not be subject to any liability to the assigned contract or lease

counterparty that accrued or arose before the closing date of the sale of the Assets and the

Debtors shall be relieved of all liability accruing or arising thereafter pursuant to section 365(k)

of the Bankruptcy Code.

       38.     The Debtors further request that the Sale Order provide that the Assumed

Agreements will be assigned to, and remain in full force and effect for the benefit of the

applicable Purchaser or other Successful Bidder, notwithstanding any provisions in the Assumed

Agreements, including those described in sections 365(b)(2) and (f)(1) and (3) of the Bankruptcy

Code, that prohibit such assignment.

       39.     Section 365(f) of the Bankruptcy Code provides, in pertinent part, that:

19

The trustee may assign an executory contract or unexpired lease of the
debtor only if –

(A)     the trustee assumes such contract or lease in accordance with the
provisions of this section; and

(B)     adequate assurance of future performance by the assignee of such
contract or lease is provided, whether or not there has been a default in
such contract or lease.

11 U.S.C. § 365(f)(2). Under section 365(a), a debtor "subject to the court's approval, may

assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

Section 365(b)(1), in turn, codifies the requirements for assuming an unexpired lease or

executory contract of a debtor, providing that:

(b)(1)  If there has been a default in an executory contract or unexpired
lease of the debtor, the trustee may not assume such contract or lease
unless, at the time of assumption of such contract or lease, the trustee --

(A) cures, or provides adequate assurance that the trustee will promptly
cure, such default;

(B) compensates, or provides adequate assurance that the trustee will
promptly compensate, a party other than the debtor to such contract or
lease, for any actual pecuniary loss to such party resulting from such
default; and

(C) provides adequate assurance of future performance under such
contract or lease.

11 U.S.C. § 365(b)(1).

40.     Although section 365 of the Bankruptcy Code does not set forth standards

for courts to apply in determining whether to approve a debtor in possession's decision to

assume an executory contract, courts have consistently applied a "business judgment" test when

reviewing such a decision. *See, e.g.*, *Group of Institutional Investors v. Chicago, Milwaukee, St.*

*Paul & Pacific Railroad Co.*, 318 U.S. 523, 550 (1953); *In re Talco, Inc.*, 558 F. 2d 1369, 1173

(10th Cir. 1977). A debtor satisfies the "business judgment" test when it determines, in good

20

faith, that assumption of an executory contract will benefit the estate and the unsecured creditors. *In re FCX, Inc.*, 60 B.R. 405, 411 (Bankr. E.D. N.Y. 1986). The assumption and assignment of the Assumed Agreements, or any of them, will be a necessary part of the proposed Sale and, as stated above, will benefit the estates of the Debtors.

41.     As set forth above with respect to Assumed Agreements to be assumed and assigned pursuant to the Sale, the Debtors have sent a copy of the Sale Notice and Cure Notice to all Counterparties to the Assumed Agreements, notifying such Counterparties of the potential assumption by the Debtors and assignment to the Purchaser or Successful Bidder(s) of the Assumed Agreements at the Sale Hearing.

42.     The Counterparties will have had a sufficient opportunity to file an objection pursuant to the terms of the Cure Procedures to the proposed cure amounts (the "Cure Amounts" or "Cure Costs") set forth in the Cure Notice. To the extent no objection is filed with regard to a particular Cure Amount, such Cure Amount shall be binding on the applicable contract or lease Counterparty. The payment of the Cure Costs set forth in the Cure Notice (or a different amount either agreed to by the Debtors or resolved by the Court as a result of a timely-filed objection filed by a contract or lease Counterparty) will be in full and final satisfaction of all obligations to cure defaults and compensate the Counterparties for any pecuniary losses under such contracts or leases pursuant to section 365(b)(1) of the Bankruptcy Code, unless the Debtors determine that a particular contract is not truly executory, and does not need to be cured to transfer the Assets to the Purchaser or Successful Bidder or, alternatively, the Purchaser or Successful Bidder subsequently elects not to have that Assumed Agreements assumed or assigned to it prior to the Sale Hearing.

43.     Cure Costs disputed by any Counterparties, with respect to any Assumed Agreements to be assumed and assigned to the Purchaser or Successful Bidder at Closing, will be resolved by the Court at the Sale Hearing or other hearing as set forth above.

44.     The Purchaser or other Successful Bidder is responsible for providing evidence of "adequate assurances of future performance" to the extent required in connection with the assumption and assignment of any Assumed Agreements. The meaning of "adequate assurance of future performance" for the purpose of the assumption of executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean an absolute assurance that debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985). If necessary, the Stalking Horse Purchaser or Successful Bidder shall provide evidence of its ability to provide adequate assurances to Counterparties at the Sale Hearing.

### Notice

45.     Notice of this Sale Motion, after approval of and pursuant to the terms of the Procedures Motion, will be provided – either by way of service of the Sale Motion, the Sale Notice or the Creditor Notice – to (a) the Office of the United States Trustee; (b) counsel to the DIP Agent; (c) counsel to the Committee; (d) all parties who have timely filed requests for notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure; (e) all parties who assert liens with respect to the Assets; (f) all entities who executed non-disclosure agreements with the

22

Debtors or Morgan Joseph in connection with a potential acquisition of any or all of the Assets

or who otherwise have expressed to the Debtors an interest in purchasing the Assets; (g) all

counterparties to Assumed Agreements; (h) all of the Debtors' other known creditors and equity

interest holders; (i) the United States Attorney's office; (j) all state attorneys general in states in

which the Assets are located; (k) the Internal Revenue Service; and (l) for each state in which the

Assets are located, the applicable taxing authorities. The Debtors respectfully submit that such

notice is sufficient, and request that the Court find that no further notice of the relief requested

herein is required.

46.     Several sections of the Bankruptcy Code and Bankruptcy Rules dictate the

sufficiency of notice and adequacy of service. As discussed below, the content and manner of

service of this Sale Motion as contemplated in the Procedures Motion and the related notices

satisfies all such requirements:

> Section 363 Notice: Section 363 of the Bankruptcy Code provides that a
> trustee may sell property "after notice and hearing." Under section 102(1)
> of the Bankruptcy Code, the phrase "after notice and hearing" means
> "notice as is appropriate in the particular circumstances, and such
> opportunity for a hearing as is appropriate in the particular
> circumstances." 11 U.S.C. § 102(1)(A). As set forth above, creditors
> have been or will be provided notice of the salient details regarding this
> Sale Motion and the Sale Hearing. Accordingly, notice is sufficient under
> section 363 of the Bankruptcy Code.
>
> Federal Rule of Bankruptcy Procedure 2002: Bankruptcy Rule 2002
> requires twenty days' notice of proposed sales of Property other than in
> the ordinary course of business. In addition, Bankruptcy Rule 2002
> provides that notice of a sale shall "include the time and place of any
> public sale, the terms and conditions of any private sale and the time fixed
> for filing objections." Fed. R. Bankr. P. 2002. Local Rule 2002-1(b)
> specifies the parties on whom a motion for a sale other than in the ordinary
> course of business must be served in cases pending in this jurisdiction. As
> set forth in the proposed Procedures Order, the Debtors shall provide
> sufficient notice of the Auction and of the Sale Hearing to the appropriate
> parties.

23

<u>Federal Rules of Bankruptcy Procedure 6004 and 6006</u>: Bankruptcy Rule 6004 requires that notices of sales of Property out of the ordinary course of business comply with Rule 2002. As set forth above, the Debtors have complied with Bankruptcy Rule 2002. Bankruptcy Rule 6006 requires notice of a motion to assume or assign an executory contract or unexpired lease to be served on the counterparty to such contract or lease, as well as on other parties in interest as this Court may direct. The Cure Notices and notice of the Sale Motion have been or will be served on counterparties to the Assumed Agreements as provided in the Procedures Order entered by the Court, and thus satisfies this requirement.

<u>Procedural Due Process</u>: The notice of this Sale Motion that is being provided is "reasonably calculated" to apprise interested parties of the pendency of the matter and to afford them an opportunity to object. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950). Parties in interest have been and should be found to have been afforded adequate notice of this Sale Motion and the Sale Hearing.

47.     The Debtors submit that the notice that they have provided and intend to provide of this Sale Motion and the Sale Hearing pursuant to the Procedures Motion is reasonable and appropriate and should be approved by this Court as adequate and sufficient notice.

### Relief from Bankruptcy Rules 6004(h) and 6006(d)

48.     Finally, the Debtors request, pursuant to Bankruptcy Rules 6004(h) and 6006(d), that the order approving this Sale Motion become effective immediately upon its entry. The Debtors submit that such relief is appropriate and necessary under the facts and circumstances of their cases, so that proposed Sale may close promptly. Moreover, the Debtors submit that such relief is appropriate because all parties in interest will have received ample notice and opportunity to object to such relief at the Sale Hearing

24

## Conclusion

49.     The Debtors' proposed sale of the Assets as described in this Sale Motion, including the assumption and assignment of the Assumed Agreements, is supported by sound business reasons, as set forth herein. The proposed Sale is proper, necessary, and serves the best interests of the Debtors, their estates, creditors, and parties in interest in these cases. The Debtors thus request that the Court approve the proposed Sale of the Assets free and clear of all interests, liens, claims, and encumbrances including successor liabilities, as requested, including, without limitation, the assumption and assignment of the Assumed Agreements, to the Purchaser or other Successful Bidder.

## No Prior Request

50.     No prior request for the relief sought in this Sale Motion has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Sale Motion and authorize the sale of the Assets to the Purchaser or other Successful Bidder and approve the proposed Agreement in substantially the form attached to this Sale Motion, pursuant to the Sale Order; (ii) approve the assumption and assignment of the Assumed Agreements in accordance with the Agreement; and (iii) grant such other and further relief as is just and proper.

Dated: January 15 2010

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Curtis A. Hehn (DE Bar No. 4264)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: 302-652-4100
Facsimile: 302-652-4400

email: ljones@pszjlaw.com
dbertenthal@pszjlaw.com
chehn@pszjlaw.com
tcairns@pszjlaw.com

Counsel for Debtors and Debtors in Possession