## EXHIBIT A

## FORM OF BILL OF SALE

**THIS BILL OF SALE** dated as of _____, 2010 by Champion Enterprises, Inc., a Michigan corporation ("Champion") and the domestic subsidiaries of Champion set forth on the signature pages hereto (collectively with Champion, the "Sellers" and each, a "Seller"), in favor of _____, a _____ (the "Purchaser").

**WHEREAS**, the parties hereto have entered into an Asset Purchase Agreement dated as of February 5, 2010 (the "Purchase Agreement") providing for the purchase by the Purchaser of certain assets of Sellers, and the parties now desire to carry out such transaction by Sellers' execution and delivery to the Purchaser of this instrument evidencing the vesting in the Purchaser of all of the assets and rights of Sellers hereinafter described. Capitalized terms used but not defined herein have the meanings given them in the Purchase Agreement.

**NOW, THEREFORE**, in consideration of the premises and of other valuable consideration to Sellers in hand paid by the Purchaser, at or before the execution and delivery hereof, the receipt and sufficiency of which by Sellers are hereby acknowledged, Sellers hereby convey, grant, bargain, sell, transfer, set over, assign, remise, release, deliver and confirm unto the Purchaser, its successors and assigns forever, effective as of 12:01 a.m. EDT on the date hereof (the "Effective Time"), all of Sellers' right, title and interest in and to _____ free and clear of all Encumbrances (other than Permitted Encumbrances) to the extent provided in the Sale Order; provided that the transfer of the Foreign Subsidiary Stock shall be deemed to have occurred prior to the transfer of any other Purchased Asset.

The Sellers hereby covenant that, from time to time after the delivery of this instrument, at the Purchaser's request and sole expense and without further consideration, Sellers will do, execute, acknowledge, and deliver, or will cause to be done, executed, acknowledged and delivered, all and every such further acts, deeds, conveyances, transfers, assignments, powers of attorney and assurances as reasonably may be required to more effectively convey, transfer to and vest in the Purchaser, and to put the Purchaser in possession of, [any of the Purchased Assets]; provided that this covenant shall not include any obligation to incur any cost or expense, except in the case of the Sellers, to the extent that Purchaser agrees to reimburse Sellers, on terms and conditions reasonably acceptable to Sellers, for such costs and expenses).

Nothing in this instrument, express or implied, is intended or shall be construed to confer upon, or give to, any person, firm or corporation other than the Purchaser and its successors and assigns, any remedy or claim under or by reason of this instrument or any terms, covenants or condition hereof, and all of the terms, covenants and conditions, promises and agreements in this instrument contained shall be for the sole and exclusive benefit of the Purchaser and its successors and assigns.

This instrument is executed by, and shall be binding upon, each Seller and its successors and assigns for the uses and purposes above set forth and referred to, effective as of the Effective Time.

24217419_17.DOC

A-1

This instrument shall be governed by, interpreted under, and construed and enforceable in accordance with, the laws of the State of New York, without regard to its conflict of law principle provisions.

To the extent this Bill of Sale is inconsistent with any terms or conditions of the Purchase Agreement (including the provisions of Section 1.10 and 12.6 thereof), the terms and conditions of the Purchase Agreement shall control.

This instrument may be executed in counterpart signature pages, all of which when so executed and attached hereto shall constitute one and the same original.

**IN WITNESS WHEREOF**, Sellers have executed this Bill of Sale or caused this Bill of Sale to be executed on their behalf by a duly authorized officer of each Seller as of_____, 2010.

**SELLERS**:

**CHAMPION ENTERPRISES, INC.,**
a Michigan corporation

By:    _____
          Name:
          Title:

**EXHIBIT B**

**FORM OF ASSIGNMENT AND ASSUMPTION AGREEMENT**

This ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement") is entered into as of _____, 2010 by and among Champion Enterprises, Inc., a Michigan corporation ("Champion") and the domestic subsidiaries of Champion set forth on the signature pages hereto (collectively with Champion, the "Assignors") and New Champion Homes, Inc., a Delaware corporation (the "Assignee").

**W I T N E S S E T H:**

WHEREAS, Assignors and Assignee entered into that certain Asset Purchase Agreement dated as of February 5, 2010 (the "Purchase Agreement" capitalized terms used but not otherwise defined herein have the meanings given them in the Purchase Agreement); and

WHEREAS, pursuant to the Purchase Agreement, Assignors have agreed to assign certain rights and agreements to Assignee, and Assignee has agreed to assume certain obligations of Assignors, as set forth herein and therein.

NOW, THEREFORE, in consideration of the premises, the mutual covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto mutually covenant and agree as follows:

1.      Effective as of 12:01 a.m. EDT on the date hereof, Assignors hereby sell, transfer and assign (collectively the "Assignment") to Assignee, and Assignee hereby assumes and agrees to pay and discharge, the Assumed Liabilities, as defined in and in accordance with Section 1.3 of the Purchase Agreement.

2.      This Agreement shall be binding upon and inure to the benefit of the parties hereto and their successors and assigns.

3.      This Agreement shall be governed by, interpreted under, and construed and enforceable in accordance with, the laws of the State of New York, without regard to its conflict of law principle provisions.

4.      To the extent this Agreement is inconsistent with any terms or conditions in the Purchase Agreement, the Purchase Agreement (including the provisions of Sections 1.10 and 12.6 thereof) shall control.

5.      This Agreement may be executed in counterpart signature pages, all of which when so executed and attached hereto shall constitute one and the same original.

[Signatures appear on next page.]

24217419_17.DOC

IN WITNESS WHEREOF, the parties hereto have executed this Assignment and Assumption Agreement as of the date first set forth above.

**ASSIGNORS:**

**CHAMPION ENTERPRISES, INC.,**
a Delaware corporation

By: _____
        Name:
        Title:

**ASSIGNEE:**

**NEW CHAMPION HOMES, INC.,**
a Delaware corporation

By: _____
        Name:
        Title:

**EXHIBIT C**

**FORM OF SALE ORDER**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CHAMPION ENTERPRISES, INC., <u>et al.</u>,[1] | ) Case No. 09-14019 (KG) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |

**ORDER AUTHORIZING AND APPROVING (A) THE SALE OF
SUBSTANTIALLY ALL ASSETS OF THE DEBTORS AND (B) THE
ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES**

Upon the *Debtors' Motion for an Order: (I) Approving Asset Purchase*

*Agreement and Authorizing the Sale of Assets Outside the Ordinary Course of Business; (II)*

*Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests*

*Pursuant to Sections 363(b), (f) and (m) of the Bankruptcy Code; (III) Authorizing the*

*Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (IV)*

*Granting Related Relief [D.I. 273]* (the "Sale Motion"); and the Asset Purchase Agreement [D.I.

___] filed on February ___, 2010 (the "Agreement");[2] and the Court having entered that certain

*Order Pursuant to Bankruptcy Code Sections 363 and 365 (A) Authorizing Debtors' Entry into*

*the Asset Purchase Agreement, (B) Authorizing and Approving the Bidding Procedures, (C)*

*Authorizing and Approving a Break-Up Fee and Expense Reimbursement, (D) Approving Notice*

*Procedures, (E) Approving Procedures for the Assumption and Assignment of Contracts and*

---

[1] The Debtors in these cases are Redman Homes, Inc.; Champion Enterprises, Inc.; Champion Home Builders Co.; New Era Building Systems, Inc.; North American Housing Corp.; Homes of Merit, Inc.; Western Homes Corporation; Star Fleet, Inc.; Champion Enterprises Management Co.; Champion Retail, Inc.; San Jose Advantage Homes, Inc.; Highland Acquisition Corp.; Highland Manufacturing Company LLC; Champion Homes of Boaz, Inc.; Iseman Corp.; and SSH Liquidating Corp.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Sale Motion and/or Agreement.

*Leases, and (F) Setting a Date for the Sale Hearing [D.I. ____] on February ___, 2010 (the*
"Procedures Order"); and the Auction[3] having been held on March 1, 2010 for the consideration
of Qualified Bids and the selection of a Successful Bidder (each as defined in the Procedures
Order); and upon the Court's consideration of the Sale Motion, the record of the bidding
procedures hearing held on January 28, 2010, the Sale Hearing held on March ___, 2010 (the
"Sale Hearing") with respect to the Sale Motion, the objections thereto, if any, and the testimony
and evidence admitted at the Sale Hearing; and after due deliberation thereon, and sufficient
cause appearing therefor:

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:

A.    **Jurisdiction and Venue**.  This Court has jurisdiction to consider this Sale Motion
under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A),
(M), (N) and (O).  Venue of these cases and the Sale Motion in this District is proper under
28 U.S.C. §§ 1408 and 1409.

B.    **Statutory Predicates**.  The statutory predicates for the relief sought in the Sale
Motion are Bankruptcy Code sections 105, 363, 365, 1107 and 1008, Bankruptcy Rules
2002(a)(2), 6004, 6006 and 9014 and Rules 2002-1(b), 6004-1 and 9006-1 of the Local Rules of
Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of
Delaware (the "Local Rules").  Pursuant to Bankruptcy Rule 7052, findings of fact shall be
construed as conclusions of law and conclusions of law shall be construed as findings of fact to
the fullest extent of the law.

C.    **Notice**.  As evidenced by the affidavits of service filed with this Court that notice
was provided as required under the Procedures Order: (i) due, proper, timely, adequate and

---

[3] All capitalized terms used but not otherwise defined herein shall have the meanings assigned to them by the Motion.

sufficient notice of the Sale Motion, the Sale Hearing, and the transactions contemplated by the Agreement (the "Transaction") has been provided to all parties entitled thereto, including, without limitation, Cure Notices provided to counterparties of the Assumed Agreements; (ii) it appearing that no other or further notice need be provided; (iii) such notice was and is good, sufficient and appropriate under the circumstances of the Debtors' chapter 11 cases; and (iv) no other or further notice of the Sale Motion, the Auction, the Sale Hearing, or the Transaction is or shall be required.

      D.    **Opportunity to Object**. A reasonable opportunity to object and to be heard with respect to the Transaction, the Sale Motion and the relief requested therein has been given to all appropriate parties in interest, including, without limitation, the following: (i) the Office of the United States Trustee for the District of Delaware, (ii) counsel for the DIP Agent, (iii) counsel for the Purchaser, (iv) counsel for the Official Committee of Unsecured Creditors appointed in these chapter 11 cases (the "Committee"), (v) all entities who executed non-disclosure agreements with the Debtors or Morgan Joseph in connection with a potential acquisition of any or all of the Assets or who otherwise have expressed to the Debtors an interest in purchasing the Assets, (vi) all entities known to hold, have asserted or threatened in writing to assert a claim, lien, interest or encumbrance in the Debtors' Interest (as defined below) in the Assets or the Assumed Agreements (the Debtors' interest in such property, the "Transferred Property"), (vii) all counterparties to the Assumed Agreements, both with respect to the Cure Amounts set forth in the Cure Notices and any other objections such counterparties may have, (viii) the Internal Revenue Service and applicable federal and state taxing authorities, (ix) the Securities and Exchange Commission, (x) the United States Attorney's office, (xi) all state attorneys general in the states in which the Assets are located, (xii) the Pension Benefit Guaranty Corporation, (xiii)

3

all persons, if any, who have filed objections to the Motion, (xiv) all persons who have filed a

notice of appearance in these cases, and (xv) all of the Debtors' other known creditors, equity

interest holders and/or parties in interest.

E.    **Auction**.  The Debtors adequately marketed the Assets under the facts and

circumstances of their cases.  The marketing process created by the Procedures Order provided

potential bidders with a full and fair opportunity to submit bids and participate in the Auction.

The Auction was conducted fairly and in good faith, without collusion and in accordance with

the Procedures Order.  At the Auction, Purchaser was selected as the Successful Bidder.  The

Debtors' determination that the Agreement constitutes the highest and best offer for the

Transferred Property constitutes a valid and sound exercise of the Debtors' business judgment.

F.    **Arm's-Length Sale**.  The Transaction contemplated by the Agreement and this

Order is being undertaken by the Debtors and the Purchaser at arm's-length, without collusion,

and in good faith within the meaning of section 363(m) of the Bankruptcy Code, and such parties

are entitled to the protection of section 363(m) of the Bankruptcy Code.  Neither the Purchaser

nor any of its affiliates or their respective representatives is an "insider" of any of the Debtors, as

that term is defined in Bankruptcy Code section 101(31).  None of the Debtors, the Purchaser or

their respective affiliates or representatives has engaged in any conduct that would cause or

permit the Agreement to be avoided under Bankruptcy Code section 363(n) or has acted in any

improper or collusive manner with any person.  The terms and conditions of the Agreement and

the Transaction, including without limitation the consideration provided in respect thereof, is fair

and reasonable and shall not be avoided under Bankruptcy Code section 363(n).

G.    **Good Faith Purchaser**.  The Purchaser, its affiliates and their respective

representatives have all proceeded in good faith and without collusion in all respects in

4

connection with the Transaction and this sale proceeding. Such persons are therefore entitled to all of the benefits and protections of Bankruptcy Code section 363(m). Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not affect the validity of the Transaction unless, prior to the Closing, such authorization is duly stayed pending such appeal.

H.    **Corporate Authority**. The Debtors (i) have full corporate power and authority to execute the Agreement and all other documents contemplated thereby, and, with respect to the Debtors, the Transaction has been duly and validly authorized by all necessary corporate action and/or approval by the Court, (ii) have all of the corporate power and authority necessary to consummate their obligations with respect to the Transaction, (iii) have taken all corporate action necessary to authorize and approve their entry into and performance in respect of the Agreement and the Transaction, and (iv) require no consents or approvals to consummate the Transaction, other than those expressly provided for in the Agreement and the entry of this Order.

I.    **Sale in Best Interests**. Good and sufficient reasons for approval of the Agreement and the Transaction have been articulated, and the relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest. The consideration to be paid by the Purchaser includes: (i) the Credit Bid and Release; (ii) the assumption of, and the undertaking to discharge, the Assumed Liabilities by the Purchaser; and (iii) the funding for the Debtors' wind down budget.

J.    **Business Justification**. The Debtors have demonstrated both (i) good, sufficient and sound business purposes and justifications and (ii) compelling circumstances for the Transaction other than in the ordinary course of business under Bankruptcy Code section 363(b) before, and outside of, a plan of reorganization in that, among other things, the immediate

5

approval by this Court of the Transaction is necessary and appropriate to maximize the value of the Debtors' estates.  Entry of an order approving the Sale of the Assets to the Purchaser pursuant to the terms of the Agreement and all the provisions thereof is a necessary condition precedent to the Purchaser's consummation of the Transaction.

K.    **Consideration**.  The consideration to be provided by the Purchaser to the Debtors pursuant to the Agreement will, upon delivery, constitute reasonably equivalent value or fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and the laws of the United States, any state, territory, possession thereof or the District of Columbia.  The Agreement represents a fair and reasonable offer to effectuate the terms of the Transaction under these circumstances.  Other than the Purchaser, no other person or entity or group of persons or entities has offered to purchase the Transferred Property for an amount that would provide greater value to the Debtors.  The Court's approval of the Motion, the Agreement and the Transaction is in the best interests of the Debtors, their estates, their creditors and all other parties in interest.

L.    **Credit Bid**.  A portion of the Purchase Price (as defined in the Agreement) under Article II of the Asset Purchase Agreement consists of the Credit Bid and Release.  The Credit Bid and Release (i) constitutes a valid, effective and enforceable credit bid pursuant to Bankruptcy Code sections 363(b), 363(k) and 363(n), other applicable law, the DIP Loan Documents and the First Lien Loan Documents (each as defined in the Agreement), (ii) is not subject to avoidance, equitable subordination, defense, offset, counterclaim, recharacterization or recoupment by any party in interest, (iii) is binding on the Debtors, the Debtors' estates, the Creditors' Committee, any trustee or estate representative, and all creditors and parties-in-

6

interest and any of their respective predecessors, successors or assigns; and (iv) is based on legal, valid, enforceable, perfected and non-avoidable liens against the Debtors' assets.

M.    **Prepetition Loan.** The Debtors are indebted to the lenders (the "Prepetition Lenders") under that certain Amended and Restated Credit Agreement, dated as of April 7, 2006 (as amended, restated, supplemented or otherwise modified from time to time, the "Prepetition Credit Agreement") with Credit Suisse AG, Cayman Islands Branch as Administrative Agent (the "Prepetition Agent") in the aggregate amount of approximately $[_____], as of [_____, 2010], inclusive of principal and interest but excluding fees, expenses and certain other amounts due thereunder (the "Prepetition Loan"), which indebtedness is deemed an allowed prepetition claim against the Debtors.

N.    **DIP Loan.** The Debtors are indebted to the lenders (the "DIP Lenders") under that certain Debtor-in-Possession Credit Agreement, dated as of November 15, 2009 (as amended, restated, supplemented or otherwise modified from time to time, the "DIP Credit Agreement") with Credit Suisse AG, Cayman Islands Branch as Administrative Agent (the "DIP Agent") in the aggregate amount of approximately $[_____], as of [_____, 2010], inclusive of principal and interest but excluding fees, expenses and certain other amounts due thereunder (the "DIP Loan"), which indebtedness constitutes an allowed Superpriority Claim of the kind specified in the Final DIP Order (as defined in the Procedures Order).

O.    **Required Lenders.** Pursuant to the DIP Credit Agreement, DIP Lenders holding more than 50% of the Exposure Amount (as defined in the DIP Credit Agreement) constitute "Required Lenders" as that term is used in the DIP Credit Agreement (the "DIP Required Lenders"). Pursuant to the Prepetition Credit Agreement, Prepetition Lenders holding more than 50% of the Exposure Amount (as defined in the Prepetition Credit Agreement) constitute

7

"Required Lenders" as that term is used in the Prepetition Credit Agreement (the "Prepetition Required Lenders"). The Credit Bid and Release was made at the direction of (i) various DIP Lenders who, together, constitute DIP Required Lenders (the "DIP Directing Lenders"), and (ii) various Prepetition Lenders who, together, constitute Prepetition Required Lenders (the "Prepetition Directing Lenders").

P.    **Authority For Credit Bid**. Section 10.1 of the DIP Credit Agreement expressly authorizes and empowers the DIP Agent to credit bid any or all of the DIP Loan of all of the DIP Lenders on the DIP Lenders' behalf, as may be directed by the DIP Required Lenders. Pursuant to and in accordance with the foregoing authority of the DIP Agent, the DIP Directing Lenders directed the DIP Agent to credit bid the entire amount of the DIP Loan by letter dated [_____], 2010 (the "DIP Direction Letter"). Pursuant to section 3.2 of that certain Eighth Amendment, Consent and Direction to Amended and Restated Credit Agreement, dated as of November 8, 2009, among the Debtors, the Prepetition Agent and the Prepetition Lenders party thereto, the Prepetition Required Lenders authorized and directed the Prepetition Agent to credit bid (or to direct the Collateral Trustee (as defined in the Prepetition Credit Agreement) to credit bid) any and all of the Prepetition Loan of all of the Prepetition Lenders on the Prepetition Lenders' behalf to the extent and under such terms as the Prepetition Agent deemed appropriate. Pursuant to and in accordance with the foregoing authority of the Prepetition Agent, the Prepetition Directing Lenders directed the Prepetition Agent to credit bid the entire amount of the Prepetition Loan by letter dated [_____], 2010 (the "Prepetition Direction Letter" and together with the DIP Direction Letter, the "Direction Letters"). On [_____], 2010 the DIP Agent and the Prepetition Agent duly submitted on behalf of themselves and all of the DIP Lenders and the Prepetition Lenders the credit bids that were duly authorized by all necessary action of the

8

DIP Lenders and the Prepetition Lenders. Accordingly, neither the DIP Agent nor the Prepetition Agent shall have any obligation to, or be responsible for any claim asserted by, any DIP Lender, any Prepetition Lender or, pursuant to Paragraph 6 below, any other party on account of the submission of such bid or for taking, or failing to take, any action in connection therewith. The indemnities, exculpations, reimbursements and other protections and limitations of liability contained in the Direction Letters and agreed to by the DIP Directing Lenders and the Prepetition Directing Lenders, on behalf of themselves and the DIP Lenders and the Prepetition Lenders, respectively, are approved and binding to the extent set forth in the Direction Letters. In addition, all indemnities, exculpations, reimbursements and other protections and limitations of liability in favor of the DIP Agent, the Prepetition Agents and/or any letter of credit issuer contained in the DIP Credit Agreement, the Prepetition Credit Agreement or any related document shall survive and continue in full force and effect and remain binding upon each of the Prepetition Lenders and DIP Lenders following the Closing, without defense of any kind by reason of the Credit Bid and Release or the occurrence of the Closing.

Q. **Free and Clear**. The conveyance of the Transferred Property in accordance with the Agreement will be a legal, valid, and effective transfer of such Transferred Property, and, except as otherwise provided in the Agreement, vests or will vest the Purchaser with all right, title, and interest of the Debtors in and to the Transferred Property pursuant to section 363(f) and 365 of the Bankruptcy Code free and clear of all Liens, Claims (as defined in section 101(5) of the Bankruptcy Code), encumbrances, obligations, liabilities, demands, guarantees, options, rights, restrictions, contractual commitments, rights of first refusal, rights of setoff, or interests of any kind or nature that have been, are or could be asserted against the Debtors whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or

9

unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise, (collectively, the "Interests"), including, but not limited to, (i) those that purport to give to any party a right or option to effect a setoff against or any forfeiture, modification or termination of the Debtors' interests in the Transferred Property, or any similar rights, (ii) all Excluded Liabilities, including without limitation, any liability relating to or arising from any Seller Employee Plans of the Debtors (the "Debtor Employee Plans"), except as provided in the Agreement, or any tax liability of the Debtors arising under or out of, in connection with, or in any way relating to the cancellation of debt, (iii) those arising under all mortgages, deeds of trust, security interests, pledges, liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership; and (iv) those arising in connection with any agreements, acts, or failures to act, of any of the Debtors or any of the Debtors' predecessors, affiliates, or representatives including, but not limited to, Interests arising under any bulk-transfer laws, doctrines of successor liability or similar theories. For the avoidance of doubt, without limiting the effect of the foregoing, the assumption and assignment of any Assumed Agreement in accordance with this Order are also free and clear of all Interests. Notwithstanding anything else to the contrary set forth in this paragraph Q, the term "Interests" shall not include any Permitted Encumbrances, any Assumed Liabilities (as defined in the Agreement) and any Liens created by or through the Purchaser.

R.     **Free and Clear Findings Required by Purchaser**. The Purchaser represents that it would not have entered into the Agreement and would not consummate the Transaction, thus adversely affecting the Debtors, their estates and their creditors, (i) if the Transferred

10

Property is not being conveyed to the Purchaser free and clear of all Interests of any kind or nature as set forth in this Order, but subject to the restrictions contained herein, or if the Purchaser would, or in the future could, be liable for any of the Interests, and (ii) absent the finding regarding the allowance of the DIP Loan and Prepetition Loan and the liens related thereto.

S.    **Satisfaction of Section 363(f) Standards**. Pursuant to the terms set forth in the Agreement, the Debtors may sell their interest in the Transferred Property free and clear of any Interests of any kind or nature as set forth in this Order because in each instance, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Each person or entity with any Interest in the Transferred Property: (i) has, subject to the terms and conditions of this Order, consented to the Transaction, is deemed to have consented to the Transaction, or has had its objections to the Transaction considered and overruled by this Court; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Interest; or (iii) otherwise is subject to the provisions of section 363(f) of the Bankruptcy Code. Those holders of Interests who did not object to the Motion are deemed, subject to the terms of this Order, to have consented to the relief sought in the Motion pursuant to section 363(f)(2) of the Bankruptcy Code.

T.    **No Liability Findings Needed by Purchaser**. The Purchaser represents that it will not consummate the Transaction unless the Agreement specifically provides, and the Court specifically orders, that none of the Purchaser Releasees (as defined below) or the Transferred Property will have any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Interest or Excluded Liability.

U.    **No Fraudulent Transfer**. The Agreement was not entered into for the purpose

of hindering, delaying or defrauding present or future creditors of the Debtors under the

Bankruptcy Code and under the laws of the United States, any state, territory, possession thereof,

or the District of Columbia. Neither Sellers nor Purchaser are entering into the Transaction

contemplated by the Agreement fraudulently for the purpose of such statutory and common law

fraudulent conveyance and fraudulent transfer claims.

V.    **No Successor Liability**. Except as provided under the Agreement regarding the

Assumed Liabilities, the Debtors' conveyance of the Transferred Property to the Purchaser under

the Agreement shall not result in the Purchaser Releasees or Transferred Property being subject

to any liability or responsibility of any kind (i) for any Interest or other Excluded Liability of any

of the Debtors, or (ii) for any Claim against the Debtors or any insider of the Debtors, or (iii) for

the satisfaction in any manner, whether at law or in equity, whether by payment, setoff or

otherwise, directly or indirectly, of any Interest or Excluded Liability of any of the Debtors, or

(iv) to third parties or the Debtors, except as is expressly set forth in the Agreement; and, without

limiting the effect or scope of the foregoing, the transfer of the Transferred Property from the

Debtors to the Purchaser does not and will not subject the Purchaser Releasees or their respective

properties (including the Transferred Properties) to any liability or responsibility for Interests

against the Debtors or the Debtors' Interests in such Transferred Property by reason of such

transfer under the laws of the United States or any state, territory, possession thereof, or the

District of Columbia applicable to the Transaction, including, without limitation, any bulk-

transfer laws, successor liability or similar theories.

W.    **Cure/Adequate Assurance**. The assumption and assignment of the Assumed

Agreements, all pursuant to the terms of this Order, are integral to the Agreement, and are in the

12

best interests of the Debtors, their estates, their creditors and all other parties in interest, and represent the reasonable exercise of sound and prudent business judgment by the Debtors. Purchaser has demonstrated adequate assurance of future performance with respect to the Assumed Agreements and has satisfied the requirements of the Bankruptcy Code, including, without limitation, sections 365(b)(1) and 365(1)(2)(B), to the extent applicable. Among other things, the Purchaser's contractual obligation to pay the Cure Amounts pursuant to the terms of the Agreement, and the Purchaser's contractual obligation to perform the obligations, after the Closing, under the Assumed Agreements shall constitute adequate assurance of future performance.

NOW, THEREFORE, IT IS ORDERED THAT:

1.    **Motion is Granted**. The Sale Motion and the relief requested therein is GRANTED and APPROVED, as set forth herein.

2.    **Objections Overruled**. Any objections to the entry of this Order or the relief granted herein and requested in the Sale Motion that have not been withdrawn, waived, settled, or otherwise resolved as set forth on the record at the Sale Hearing and/or memorialized pursuant to the terms hereof, if any, hereby are denied and overruled on the merits, with prejudice.

3.    **Approval**. The Agreement and all of the terms and conditions thereto are approved. The Debtors and the Purchaser are hereby authorized to (i) perform the Agreement and execute and perform any additional instruments or documents that may be reasonably necessary or appropriate to implement the Agreement, provided that such additional documents do not materially change its terms in a manner adverse to the Debtors; (ii) consummate the Transaction in accordance with the terms and conditions of the Agreement and the other agreements contemplated thereby; (iii) assume and assign the Assumed Agreements to Purchaser

13

pursuant to the terms of the Agreement and Sale Motion; and (iv) take all other and further actions as may be reasonably necessary to implement the Transaction. The provisions of this Order authorizing the sale of the Assets free and clear of Interests, except as otherwise set forth in the Agreement or this Order, shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order. However, the Debtors and the Purchaser, and each of their respective officers, employees and agents are hereby authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtors or the Purchaser deem necessary or appropriate to implement and effectuate the terms of the Agreement and this Order.

4.    **Valid Transfer.**  Upon consummation of the Closing, (i) the Transaction effects a legal, valid, enforceable and effective sale and transfer of the Debtors' interests in Transferred Property to Purchaser, and shall vest Purchaser with title to such Transferred Property free and clear of all Interests of any kind whatsoever, except as expressly provided in this Order and the Agreement, and (ii) the Agreement, the Transaction and any instruments contemplated thereby shall be enforceable against and binding upon, and not subject to rejection or avoidance by, the Debtors or any successor trustee appointed with respect thereto

5.    **General Assignment.**  Effective as of the Closing, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Debtors' interests in the Transferred Property to the Purchaser. Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Transaction.

14

6.    **Exculpation and Release.** None of the Purchaser, the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders, their respective affiliates, successors and assigns and each of their respective officers, directors, employees, managers, partners, members, financial advisors, attorneys, agents and representatives (collectively, the "Purchaser Releasees") shall have or incur any liability to, or be subject to any action by the Debtors, the Debtors' estates, the Creditors' Committee, any trustee or estate representative, or any of their respective predecessors, successors and assigns, arising out of the negotiation, investigation, preparation, execution, delivery of the Agreement and the entry into and consummation of the Transaction, except as expressly provided in the Agreement, any other Transaction document, and this Order.

7.    **Injunction.** Except as expressly provided in the Agreement or by this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, vendors, suppliers, employees, trade creditors, litigation claimants and other persons, holding Interests of any kind or nature whatsoever against or in the Debtors or the Debtors' interests in the Transferred Property (whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise), including, without limitation, the nondebtor party or parties to each Assumed Agreement, arising under or out of, in connection with, or in any way relating to, the Debtors, the Transferred Property, the operation of the Debtors' businesses before the Closing, before or after the Closing regarding the operation of the Debtors' businesses not subject to the Transaction, or the transfer of the Debtors' interests in the Transferred Property to the Purchaser, including, without limitation, any default existing as of the Closing Date and any

15

objection to the assumption and assignment of the Assumed Agreements, shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing Interests against the Purchaser Releasees, the Transferred Property, or the interests of the Debtors in such Transferred Property. Following the Closing, no holder of an Interest against the Debtors shall interfere with the Purchaser's title to or use and enjoyment of the Debtors' interests in the Transferred Property based on or related to such Interests. For the avoidance of doubt, the foregoing shall not prevent the Debtors, their estates, successors or permitted assigns from enforcing the terms of the Agreement against the Purchaser and/or its successors and assigns.

8.     **No Successor Liability.** Except as otherwise set forth in the Agreement and/or this Order, the Purchaser Releasees shall not as a result of the transfer, possession or operation of the Transferred Property: (i) be successors to any of the Debtors or the Debtors' estates by reason of any theory of law or equity; (ii) have, de facto or otherwise, merged or consolidated with or into any of the Debtors or the Debtors' estates; or (iii) be continuation or substantial continuation of any of the Debtors or any enterprise of the Debtors. Except as provided in the Agreement or this Order regarding the Assumed Liabilities, the conveyance of the Debtors' Interest in the Transferred Property to Purchaser under the Agreement shall not result in (i) any Purchaser Releasee or the Transferred Property having any liability or responsibility for any Interest against any of the Debtors or against any insider of the Debtors, (ii) any Purchaser Releasee or the Transferred Property having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Interest or Excluded Liability, including without limitation, any liability relating to or arising from any Debtor Employee Plans, (iii) Purchaser or the Transferred Property,

16

having any liability or responsibility to any of the Debtors or (iv) successor or vicarious

liabilities of any kind or character, including, but not limited to, federal, state or other tax

liabilities, U.S. or foreign pension liabilities, or liabilities based on any theory of antitrust,

environmental, labor law, alter ego, veil piercing, continuity of enterprise, mere continuation,

product line, de facto merger or substantial continuity, whether known or unknown, legal or

equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated,

asserted or unasserted, whether arising prior to or subsequent to the commencement of these

chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise with

respect to any of the Debtors or any obligations of the Debtors, including, but not limited to, in

the case of liabilities on account of any taxes arising, accruing or payable under, out of, in

connection with, or in any way relating to the operation of the Debtors' business prior to the

Closing or any taxes in connection with, or in any way relating to the cancellation of debt of the

Debtors or their affiliates,

     9.    **Assumption and Assignment.** Pursuant to Bankruptcy Code sections 105(a),

363 and 365, and subject to, conditioned on, and effective as of the Closing Date, the Debtors'

assumption and assignment to the Purchaser of the Assumed Agreements, and the Purchaser's

acceptance of such assignments on the terms set forth in the Agreement, are hereby approved.

On the Closing Date, the Assumed Agreements, whether entered into or amended before or after

the Petition Date, shall be assumed and assigned to the Purchaser, free and clear of all Interests

of any kind or nature whatsoever other than the Assumed Liabilities on the terms set forth in the

Agreement, and shall remain in full force and effect for the benefit of the Purchaser in

accordance with their respective terms, notwithstanding any provision in any such Assumed

Agreements (including those of the type described in sections 365(b)(2) and (f) of the

Bankruptcy Code) that prohibits, restricts, limits or conditions such assignment. Debtors are hereby authorized, at Closing to execute and perform under any other agreement executed in connection with the transfer of the Transferred Property to the Purchaser, and to execute and deliver to the Purchaser such documents or other instruments as may be reasonably necessary to assign to Purchaser the Assumed Agreements. The Debtors and their estates shall be relieved of any liability for any breach of any of the Assumed Agreements occurring from and after Closing, pursuant to and in accordance with Bankruptcy Code section 365(k),

   10.    **Payment of Cure Amounts.** In accordance with the allocation of responsibility set forth in the Agreement, the Purchaser shall be obligated to pay or cause to be paid any and all amounts accrued or otherwise owed (collectively, the "Cure Amounts") under any Assumed Agreement, as soon as reasonably practicable on or after Closing in the amount as to which (i) the contracting counterparty consents in writing, (ii) the counterparty is deemed to have consented, or (iii) the Court enters an order determining the Cure Amount. To the extent any Cure Amount has not been either agreed to or remains subject to the entry of a Final Order, the Purchaser retains its rights to exclude such contract or lease as an Assumed Agreement provided that the Purchaser continues to pay all costs incident to the maintenance of such Agreement(s) pending the entry of such Final Order. The Purchaser and Debtors' respective obligations to pay the Cure Amounts, the Purchaser's promise to perform the future obligations under the Assumed Agreements after the Closing, and the evidence of the Purchaser's financial ability to pay the Cure Amounts as set forth on the record at the Sale Hearing constitute adequate assurance of future performance within the meaning of Bankruptcy Code sections 365(b)(1)(C) and 365(f)(2)(B).

18

11.     **Cure Amounts for Assumed Agreements.** As set forth in the Procedures Order, the Cure Amounts with respect to each Assumed Agreement shall be determined in accordance with the Assumption and Assignment Procedures (as defined in Exhibit F to the Bidding Procedures Order) and, upon such determination, shall constitute findings of the Court and shall be final and binding on parties to such Assumed Agreements (and their successors and designees), and shall not be subject to further dispute or audit based on performance prior to the time of assumption and assignment or sublease, irrespective of the terms and conditions of such Assumed Agreements.  Upon assumption and assignment of the Assumed Agreements in accordance with the Assumption and Assignment Procedures, each counterparty to an Assumed Agreement shall be forever barred, estopped and permanently enjoined from (i) asserting against the Debtors or the Purchaser, or the property of either of them, any default existing as of Closing; and (ii) imposing or charging against the Purchaser Releasees any accelerations, assignment fees, increases or any other fees as a result of the Debtors' assumption and assignments to Purchaser of the Assumed Agreements. To the extent that any counterparty failed to object to the Cure Amount with respect to an Assumed Agreement in accordance with the Assumption and Assignment Procedures, such counterparty shall be deemed to have consented to the applicable Cure Amount, and the assignments to Purchaser of such Assumed Agreement.

12.     **Wind-Down Provisions.** Pursuant to and in accordance with section 8.1(d) of the Agreement, the Purchaser shall make its employees available to assist the Debtors, at the direction of the Estate Administrator, to satisfy certain functions stipulated in the Agreement during the Wind-Down Period; provided that in no event shall such employees be deemed to be employees of the Debtors during such period.  In any and all regards, with regard to the Debtors, the Debtor' estates, creditors, employees and Interest holders, and any trustee or estate

19

representative, the Purchaser Releasees shall, in every regard, have no fiduciary duty, responsibility or other liability, including, but not limited to, any liability arising out of any work performed by, or actions, omissions or otherwise, taken by such employees; provided, that the foregoing shall not be deemed to impair or reduce the enforceability against the Purchaser of the Purchaser's obligations pursuant to section 8.1(d) of the Purchase Agreement.

13.    **Wind-Down Budget.**  The Purchaser shall fund, from time to time, through December 31, 2010, an amount of not more than $[2,400,000] (the "Wind-Down Cap Amount"), to be used solely to pay post-closing Liabilities of the Sellers consistent with the Wind-Down Budget (the "Wind-Down Liabilities").

14.    **Ipso Facto Clauses Ineffective.**  Upon the Debtors' assignment to Purchaser of the Assumed Agreements under the provisions of this Order, including Purchaser satisfaction of all Cure Amounts due in connection with such Agreements, no default by a Debtor or Purchaser shall exist under any Assumed Agreement, and no counterparty to any Assumed Agreement shall be permitted to declare a default by any of the Debtors or Purchaser thereunder or otherwise take action against the Purchaser as a result of any Debtors' financial condition, bankruptcy or failure to perform any of its obligations under the relevant Assumed Agreement prior to the assignment of such Assumed Agreements. Any provision in an Assumed Agreement that prohibits or conditions the assignment of such Assumed Agreement (including, without limitation, the granting of a lien thereon) or allows the counterparty thereto to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon such assignment or sublease, constitutes an unenforceable anti-assignment provision that is void and of no force and effect as against the Debtors. The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Assumed Agreement shall not be a

waiver of such terms or conditions, or of the rights of the Debtors or Purchaser to enforce every term and condition of the Assumed Agreement.

15.    **Binding Effect of Order.**  This Order shall be binding upon and shall govern the acts of all entities, including without limitation all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets.  The terms and provisions of the Agreement and this Order shall be binding in all respects upon the Debtors, the Debtors' estates, all creditors of (whether known or unknown) and holders of equity interests in the Debtors and the Purchaser and their respective affiliates, successors and assigns, and any third parties, notwithstanding any subsequent appointment of any trustee of any of the Debtors under any chapter of the Bankruptcy Code.

16.    **Sale Free and Clear of Interests.**  This Order (i) shall vest the Purchaser with all right, title and interest in the Transferred Property free and clear of any and all Interests, except as otherwise provided in the Agreement or this Order, and (ii) shall be binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of

21

the Transferred Property of the Debtors. Upon the occurrence of the Closing, the Debtors and persons holding an Interest in the Transferred Property of the Debtors immediately prior to the Closing are authorized to execute such documents and take all other actions as may be reasonably necessary to release their Interests in the Transferred Property of the Debtors, if any, as such Interests may have been recorded or may otherwise exist.]

17.    **Retention of Jurisdiction.** This Court retains exclusive jurisdiction to interpret, construe, implement, and enforce the terms and provisions of, and to resolve any and all disputes that may arise under or in connection with this Order, all amendments thereto and any waivers and consents thereunder, including, but not limited to, retaining jurisdiction to (i) compel delivery of the Transferred Property of the Debtors to Purchaser; (ii) interpret, implement and enforce the provisions of this Order and any related order; (iii) protect Purchaser Releasees against any Interests against or in the Debtors or the Transferred Property of any kind or nature whatsoever, attaching to the proceeds of the Transaction, and (iv) resolve any and all disputes that may arise under or in connection with the assumption and assignment of any Assumed Agreement or under the Agreement or the Order, in all respects, and further to hear and determine any and all disputes among the Sellers, the Sellers' affiliates, the Purchaser or its affiliates, as the case may be, that may arise in connection with the Excluded Liabilities of the Debtors.

18.    **Retention of Rights By the Government.** Nothing in this Order or in the Agreement (i) releases, nullifies, or enjoins the enforcement of any liability to a governmental unit of the United States or any state or municipality of the United States under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order; or (ii) should be construed to give Purchaser any

22

more protection against any governmental unit of the United States or any state or municipality of the United States than Purchaser is otherwise entitled to under Bankruptcy Code section 363(f). Nothing in this paragraph should be construed to create for any governmental unit any substantive right that does not otherwise exist under law.

19.    **No Material Modifications.**  The Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court; provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates and has been agreed to between the Debtors and the Purchaser.

20.    **Subsequent Orders and Plan Provisions.**  Nothing contained in any subsequent order of this Court (including without limitation, an order authorizing the sale of assets pursuant to sections 363, 365 or any other provision of the Bankruptcy Code or any order entered after any conversion of a chapter 11 case of the Debtors to a case under chapter 7 of the Bankruptcy Code) or any chapter 11 plan of reorganization confirmed in any of the Debtors' bankruptcy cases or any order confirming any such plan shall nullify, alter, conflict with or derogate from the provisions of this Order, and the provisions of this Order shall survive and remain in full force and effect.

21.    **Failure to Specify Provisions.**  The failure specifically to include any particular provisions of the Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

13814-001\DOCS_DE:156585.4
24286435_2.DOC  2

22.    **No Stay of Order.**  Notwithstanding the provisions of Bankruptcy Rule 6004 and Bankruptcy Rule 6006 or any applicable provisions of the Local Rules, this Order shall not be stayed for fourteen (14) days after the entry hereof, but shall be effective and enforceable immediately upon entry.  Time is of the essence in approving the Transaction, and the Debtors and the Purchaser intend to close the Transaction as soon as practicable. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

23.    **Inconsistencies with Prior Orders, Pleadings or Agreement.**  To the extent this Order is inconsistent with any prior order or pleading with respect to the Motion in these chapter 11 cases, the terms of this Order shall govern.  To the extent there is any inconsistency between the terms of this Order and the terms of the Agreement (including all ancillary documents executed in connection therewith), the terms of the Order shall govern.

Dated: Wilmington, Delaware
       March ___, 2010

                    HONORABLE KEVIN GROSS
                    UNITED STATES BANKRUPTCY JUDGE

13814-001\DOCS_DE:156585.4
24286435_2.DOC  2

**EXHIBIT D**

**FORM OF BIDDING PROCEDURES ORDER**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------x

In re                                          :    Chapter 11
                                               :
Champion Enterprises, Inc., et al.,            :    Case No. 09-14019 (KG)
                                               :
                    Debtors.                   :    Jointly Administered
                                               :
-------------------------------------------------------x    **Related Docket No. 272**

### ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 363 AND 365 (A) AUTHORIZING DEBTORS' ENTRY INTO THE ASSET PURCHASE AGREEMENT, (B) AUTHORIZING AND APPROVING THE BIDDING PROCEDURES, (C) AUTHORIZING AND APPROVING A BREAK-UP FEE AND EXPENSE REIMBURSEMENT, (D) APPROVING NOTICE PROCEDURES, (E) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, AND (F) SETTING A DATE FOR THE SALE HEARING

Upon consideration of the *Motion for the Entry of an Order Pursuant to Bankruptcy Code Sections 363 and 365 (A) Authorizing Debtors' Entry into the Asset Purchase Agreement, (B) Authorizing and Approving the Bidding Procedures, (C) Authorizing and Approving a Break-Up Fee and Expense Reimbursement, (D) Approving the Notice Procedures, (E) Approving the Assumption and Assignment Procedures, and (F) Setting a Date for the Sale Hearing* (the "Motion")[1] filed by Champion Enterprises, Inc. ("Champion") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors") for the entry of an order pursuant to sections 363 and 365 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), granting

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

the Motion; and the Court having reviewed the Motion; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and a hearing on the Motion, and objections thereto, if any, having been held on February 8, 2010 (the "Hearing"); and upon the evidence presented at, the arguments of counsel at, and the entire record of the Hearing; and after due deliberation thereon, and any objections filed having been considered and overruled; and good and sufficient cause appearing therefore, it is hereby

**FOUND AND DETERMINED THAT:**

A.      The court has jurisdiction over the Motion pursuant to 28 U.S.C. § 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue of these cases and the Motion in this district is proper under 28 U.S.C. § 1408 and 1409.

B.      The relief requested in the Motion is authorized and in accordance with Bankruptcy Code sections 363 and 365, Bankruptcy Rules 2002, 6004, and 6006, and Delaware Local Bankruptcy Rule 6004-1.

C.      Good and sufficient notice of the relief granted by this Order has been given and no further notice is required. A reasonable opportunity to object or be heard regarding the relief granted by this Order (including, without limitation, with respect to the proposed Bidding Procedures and Bid Protections, as defined below) has been afforded to those parties entitled to notice pursuant to Local Rule 2002-1(b).

D.      The Debtors' proposed sale notice, substantially in the form attached hereto as Exhibit A (the "Sale Notice"), the auction and hearing notice (the "Creditor Notice"), substantially in the form attached hereto as Exhibit B, and the notice substantially in the form

2

attached hereto as <u>Exhibit C</u> to be served on counterparties to the Assumed Executory Contracts (the "<u>Cure Notice</u>"), each provide due and adequate notice of the proposed sale of the Assets and/or the proposed assumption and assignment of the Assumed Executory Contracts, and that no other or further notice is required.

E.    The Bidding Procedures, substantially in the form attached hereto as <u>Exhibit D</u>, are fair, reasonable and appropriate, and are designed to maximize recovery with respect to the sale of the Assets.

F.    The Debtors have demonstrated compelling and sound business justifications for authorizing the sale of the Debtors' Assets, entry into the Asset Purchase Agreement (the "<u>Agreement</u>") as a "stalking horse" sale agreement and the payment of the Bid Protections under the circumstances, timing, and procedures set forth herein, in the Motion and in the Agreement.

G.    Entry into the Agreement with a new entity formed to consummate the Acquisition (as defined in the Letter of Intent, defined below) (the "<u>Purchaser</u>"), a copy of which is attached hereto as <u>Exhibit E</u>, as a "stalking-horse" sale agreement is in the best interest of the Debtors and the Debtors' estates and creditors.  The Agreement will enable the Debtors to secure an adequate floor for the Auction and will provide a clear benefit to the Debtors' estates.

H.    The Break-up Fee and Expense Reimbursement (each as defined below) are fair and reasonable, and provide a benefit to the Debtors' estates and creditors.

I.    The Debtors' payment of the Bid Protections under the conditions set forth in, and in accordance with the terms of, the Agreement, the Motion and this Order is (a) an actual and necessary cost of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code, (b) of substantial benefit to the Debtors' estates and creditors and all parties in

3

interest herein, (c) reasonable and appropriate, and (d) necessary to ensure that the Purchaser will continue to pursue the proposed Agreement to undertake the sale of the Assets.

The entry of this Order is in the best interests of the Debtors and their estates, creditors, and interest holders and all other parties in interest herein; and it is therefore

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED.

2.      Except as expressly provided herein, nothing herein shall be construed as a determination of the rights of any party in interest in these chapter 11 cases.

### The Bidding Procedures

3.      The Bidding Procedures are APPROVED in their entirety and incorporated hereby by reference. The Debtors are authorized to conduct a Sale by auction of the Assets pursuant to the Bidding Procedures and the terms of this Order. The proposed sale of the Assets, the proposed assumption and assignment of the Assumed Executory Contracts, the Auction (as defined below) and the Sale Hearing shall be conducted in accordance with the provisions of this Order and the Bidding Procedures.

4.      The Purchaser shall, subject to the terms of the Agreement, be deemed a Qualified Bidder pursuant to the Bidding Procedures.

### The Assignment Procedures

5.      The Assignment Procedures attached hereto as <u>Exhibit F</u> are hereby authorized, approved and made part of this Order as if fully set forth herein.

6.      Recognizing that providing individual notice to each contract and lease counterparty will ensure that such parties will receive adequate notice, the Court hereby waives the requirements of Bankruptcy Rule 6006(f)(6).

### Break-Up Fee and Expense Reimbursement

7.      To the extent due under the Agreement, the Debtors are authorized to pay:  (i) to the New Equity Investors (as defined in the Letter of Intent) and their designees a fee of $3 million (the "Break-Up Fee"), which shall be reduced to the extent that the Expense Reimbursement and the Break-Up Fee required to be paid would, in the aggregate, exceed $4 million; and (ii) reimburse the Purchaser and the New Equity Investors an amount not to exceed, when taken together with the Break-Up Fee, $4 million, equal to the total amount of all reasonable and documented fees, costs and expenses incurred by the Purchaser in connection with the preparation, execution and performance of the Agreement and the transactions contemplated thereby, including all filing and notification fees, and all fees and expenses of the representatives of the Purchaser and the Joint Bidders (as each such term is defined in the Letter of Intent among Centerbridge Capital Partners L.P., MAK Capital Fund LP, Sankaty Credit Opportunities II, L.P., Sankaty Credit Opportunities III, L.P., Sankaty Credit Opportunities IV, L.P., Sankaty Credit Opportunities IV (Offshore Master), L.P. and the Supporting DIP Lenders, dated as of January15, 2010 (the "Letter of Intent")) (the "Expense Reimbursement, and together with the Break-Up Fee, the "Bid Protections").

8.      The Debtors' obligation to pay the Break-Up Fee and Expense Reimbursement, under the conditions set forth in, and in accordance with the terms of the Agreement, shall survive termination of the Agreement to the extent permitted by the Agreement and shall constitute allowed claims against the Debtors with priority over any and all administrative expenses, diminution claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, provided however that only the Expense Reimbursement shall have priority *pari passu* with Superpriority Claims of the kind specified in the Court's Final

5

Order (I) Authorizing Debtors (A) to Obtain Postpetition Financing under 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (B) to Utilize Cash Collateral under 11 U.S.C. § 363, (II) Granting Adequate Protection to Prepetition Secured Parties under 11 U.S.C. §§ 361, 362, 363 and 364, and (III) Grating Related Relief [Docket No. 244 ] ("the Final DIP Order"), provided further that the Expense Reimbursement shall have priority over the DIP Liens (defined in the Final DIP Order) and that the priorities for payment of the Expense Reimbursement and Break-Up Fee set forth herein shall in all events be subject and subordinate to the Carve Out, including all funds contained in or added to the Carve Out Account, and the expenses and claims of the Administrative Agent as provided for in the Final DIP Order and associated Debtor in Possession Financing Agreement.  The Break-Up Fee shall only be payable by the Debtors upon the closing of an Alternative Transaction (as defined in the Letter of Intent).  The Expense Reimbursement shall be payable only upon (i) termination of the Agreement by the Purchaser or the New Equity Investors upon the occurrence of a Buyer Termination Event, other than Buyer Termination Events specified in sub-clauses a., b., c. g. and i. of the definition thereof and subject in the case of the Buyer Termination Events specified in sub-clauses d., e., f. and j. of the definition thereof to the Purchaser having used commercially reasonable efforts to endeavor that the requirements of the applicable sub-clause are satisfied or (ii) consummation of an Alternative Transaction (each as defined in the Letter of Intent).

9.       Under no circumstances shall any party to the Agreement or the Letter of Intent be liable for consequential, punitive (including multiple damages assessed as a punitive measure) or special damages arising out of, or in connection with, the Agreement, the Letter of Intent or the transactions contemplated thereby or any breach or alleged breach of any of the terms thereof, including damages alleged as a result of tortious conduct, or for specific performance of

6

the obligations it is to perform thereunder at or prior to the Closing nor shall any Debtor be liable for tortious interference with the Purchaser's rights under the Agreement nor shall the Purchaser or the Joint Bidders be liable for tortious interference with the Debtors' rights under the Agreement.

### Notice Procedures

10.     The notices, in substantially the same forms as annexed hereto as Exhibit A (the "Sale Notice"), Exhibit B (the "Creditor Notice") and Exhibit C (the "Cure Notice") are sufficient to provide effective notice to all interested parties of the Bidding Procedures, the Auction, the Sale Hearing and the Assignment Procedures, pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006, and are hereby approved.

11.     Within two (2) business days after the entry of this Order, the Debtors (or their agents) shall serve the Sale Notice by first-class mail upon:  (a) the United States Trustee for the District of Delaware, (b) counsel to the Purchaser, (c) counsel to the Official Committee of Unsecured Creditors, (d) the Debtors' prepetition and postpetition lenders; (e) all parties known to be asserting a lien on any of the Debtors' assets; (f) all entities known to have expressed an interest in acquiring any of the Assets; (f) Office of the United States Attorney for the District of Delaware; (h) all state attorney generals in states in which the Debtors do business; (i) various federal and state agencies and authorities asserting jurisdiction over the Assets, including the Internal Revenue Service and applicable state and local taxing authorities; and (j) those persons who have requested notice pursuant to Bankruptcy Rule 2002.

12.     Within two (e) business days after the entry of this Order, the Debtors shall serve the Creditor Notice on all of the parties set forth on the Debtors' creditor matrix who were not served with the Sale Notice.

## Objection Procedures

### A. Objections to Assumption and Assignment

13.    The procedures for objecting to the assumption and assignment of executory contracts and unexpired leases are set forth on Exhibit F hereto.

### B. Objections to the Sale

14.    All parties objecting to the Sale of the Assets must file a formal, written objection. Each such objection must: (i) state the legal and factual bases of such objection; (ii) be in writing; (iii) be signed by counsel or attested to by the objecting party; (iv) be in conformity with the Bankruptcy Code, Bankruptcy Rules and the Local Rules, (v) be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801 by no later than **4:00 p.m. (prevailing Eastern Time ) on February 23, 2010** (the "Objection Deadline"); and (vi) be served so as to be received on or before the Objection Deadline by the following parties: (a) counsel to the Debtors: Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, DE 19899-8705, Fax: (302) 652-4400 (Attention: Laura Davis Jones); (b) counsel to the New Equity Investors (as defined in the Letter of Intent): Ropes & Gray LLP, 1211 Avenue of the Americas, New York, New York 10036, Fax: (646) 728-1662 (Attention: Mark Bane); (c) counsel to the Creditors' Committee: Landis Rath & Cobb LLC, 919 North Market Street, Suite 1800, Wilmington, DE 19801, Fax: (302) 467-4450 (Attention: William E. Chipman, Jr.) and LeClair Ryan, Riverfront Plaza, East Tower, 951 East Byrd Street, Eighth Floor, Richmond, VA 23219 (Attention: Bruce H. Matson); (d) counsel to Credit Suisse AG, Cayman Island Branch: Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10036, Fax: (212) 728-9764 (Attention: Paul V. Shalhoub); (e) counsel to General Electric Capital Corporation and Credit Suisse Asset

8

Management:  Latham & Watkins LLP, 233 S. Wacker Drive, Suite 5800, Chicago, IL 60606

(Attention:  Richard A. Levy); and (f) the U.S. Trustee, 844 King Street, Suite 2207,

Wilmington, Delaware 19801.

15.     The foregoing requirements are collectively referred to herein as the "Objection

Procedures."  Only those objections made in compliance with the Objection Procedures will be

considered by the Court at the Sale Hearing.  The failure of any objecting person or entity to file

its objections by the Objection Deadline and in accordance with the Objection Procedures will be

a bar to the assertion, at the Sale Hearing or thereafter, of any objection pertaining to the Auction

or the Sale (excluding, however, objections relating to the assumption and assignment of any

Designated Agreement, which must be filed in accordance with the Assignment Procedures.).

### The Auction

16.     If the Debtors receive more than one Qualified Bid (as defined in the Bidding

Procedures), an auction (the "Auction") will be held on **March 1, 2010, at 11:00 a.m.**

**(prevailing Eastern Time)**, at the offices of Pachulski Stang Ziehl & Jones LLP, 919 North

Market Street, 17th Floor, Wilmington, DE 19899, or at any such other location as the Debtors

may hereafter designate.  Counsel to the Debtors are authorized to hold and conduct the Auction

in accordance with the Bidding Procedures.

### The Sale Hearing

17.     The Sale Hearing shall be held on **March 2, 2010 at 1:00 p.m. (prevailing**

**Eastern Time)** before the Honorable Kevin Gross, United States Bankruptcy Judge, in the

United States Bankruptcy Court for the District of Delaware, 824 Market Street, 6th Floor, Court

Room No. 3, Wilmington, Delaware 19801, to consider the approval of the Sale of the Assets.  In

accordance with the terms of the Agreement, the Debtors may adjourn the Sale Hearing one or

9

more times without further notice by making an announcement in open court or by the filing of a hearing agenda, or other notice, announcing the adjournment of the Sale Hearing.

### Other Relief Granted

18.    In the event there is a conflict between this Order and the Motion or the Agreement, this Order shall control and govern.

19.    Nothing in this Order, the Agreement or the Motion shall be deemed to or constitute the assumption or assignment of an executory contract or unexpired lease.

20.    The Debtors are authorized and empowered to take such steps, expend such sums of money, and do such other things as may be necessary to implement and effect the terms and requirements established by this Order.

21.    The Debtors are hereby authorized to conduct the Sale (as defined in the Bidding Procedures) without the necessity of complying with any state or local bulk transfer laws or requirements.

22.    Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its entry, (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

23.    All objections to the Motion or the relief requested therein (and all reservations of rights included therein), as they pertain to the entry of this Order, are overruled to the extent they have not been withdrawn, waived or otherwise resolved.

24.    Nothing in this Order or the related bid procedures (specifically, among other things, the Debtors' designation of the credit bid by Centerbridge Capital Partners, L.P., MAK

Capital Fund LP and Sankaty Credit Opportunities II, L.P., Sankaty Credit Opportunities III, L.P., Sankaty Credit Opportunities IV, L.P. and Sankaty Credit Opportunities IV (Offshore Master), L.P. (the "Credit Bid") as a Qualified Bid) shall, in any respect, limit, modify, preclude or otherwise adversely affect the Committee's rights to investigate, and challenge if necessary, any Claims and Defenses (as defined in the Final DIP order) as referenced in, and permitted by, paragraph 21 of the *Final Order (I) Authorizing Debtors (A) To Obtain Postpetition Financing Under 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (B)To Utilize Cash Collateral Under 11 U.S.C. § 363, (II) Granting Adequate Protection to Prepetition Secured Parties Under 11 U.S.C. § 361, 362, 363 and 364, and (III) Granting Related Relief* (the "Final DIP Order"). To the extent that this Order conflicts in any respect with, or in any way modifies or limits, the investigation and challenge rights afforded the Committee pursuant to paragraph 21 of the Final DIP Order, the Final DIP Order, and the rights afforded the Committee thereunder, shall control.

25.     The provisions of Bankruptcy Rules 6004(h) and 6006(d) staying the effectiveness of this Order for ten (10) days are hereby waived, and this Order shall be effective immediately upon entry of this Order.

26.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: February __, 2010

_____
THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

EXHIBIT E

## FORM OF ASSIGNMENT AND ASSUMPTION AGREEMENT
## (REAL PROPERTY LEASES)

This ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement") is entered into as of _____, 2010 by [Seller], a [•] (the "Assignor") and New Champion Homes, Inc., a Delaware corporation (the "Assignee").

### W I T N E S S E T H :

WHEREAS, Assignor [and certain of its Affiliates] and Assignee entered into that certain Asset Purchase Agreement dated as of February 5, 2010 (the "Purchase Agreement" capitalized terms used but not otherwise defined herein have the meanings given them in the Purchase Agreement); and

WHEREAS, pursuant to the Purchase Agreement, Assignor has agreed to assign Assignor's right, title and interest as [tenant] under that certain [IDENTIFY LEASE AGREEMENT] (the "Lease") to Assignee, and Assignee has agreed to assume certain obligations of Assignor which are applicable to the period, and required to be performed, from and after the date hereof, as set forth herein and therein.

NOW, THEREFORE, in consideration of the premises, the mutual covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto mutually covenant and agree as follows:

1.      Effective as of 12:01 a.m. EDT on the date hereof, Assignor hereby sells, transfers and assigns (collectively the "Assignment") to Assignee all of the right, title and interest of Assignor in, to and under the Lease, including all of the right, title and interest of Assignor in and to any security deposits, prepaid rents and any other sums paid or deposited by Assignor to or with the landlord under the Lease, and Assignee hereby accepts the within assignment and assumes and agrees to perform and comply with and to be bound by all the terms, covenants, agreements, provisions and conditions of the Lease on the part of the tenant thereunder which are applicable to the period, and required to be performed, from and after the date hereof.

2.      This Agreement shall be binding upon and inure to the benefit of the parties hereto and their successors and assigns.

3.      This Agreement shall be governed by, interpreted under, and construed and enforceable in accordance with, the laws of the State of New York, without regard to its conflict of law principle provisions.

4.      To the extent this Agreement is inconsistent with any terms or conditions in the Purchase Agreement, the Purchase Agreement (including the provisions of Sections 1.10 and 12.6 thereof) shall control.

5.      This Agreement may be executed in counterpart signature pages, all of which when so executed and attached hereto shall constitute one and the same original.

[Signatures appear on next page.]

IN WITNESS WHEREOF, the parties hereto have executed this Assignment and Assumption Agreement as of the date first set forth above.

**ASSIGNOR:**

_____

a _____  _____

By:     _____
           Name:
           Title:

**ASSIGNEE:**

_____

a _____  _____

By:     _____
           Name:
           Title:

**EXHIBIT F**

**SUMMARY OF EQUITYHOLDER ARRANGEMENTS**

*February 5, 2010*

## NEW HOLDCO

## SUMMARY OF EQUITYHOLDER ARRANGEMENTS

The following is a description of proposed terms of agreements to be entered into among a new holding company, to be established as a corporation, limited liability company or limited partnership ("New Holdco"), and its equityholders at the closing of the transaction contemplated by the Letter of Intent, dated as of January 15, 2010, by and among Champion Enterprises, Inc. ("Champion") and the other parties listed on the signature page thereto ("Letter of Intent") and the Asset Purchase Agreement, dated as of February [5], 2010, by and among New Holdco, Champion and any other parties thereto, pursuant to which New Holdco or one or more of its subsidiaries have agreed to acquire, on the terms and subject to the conditions set forth therein, substantially all of the assets of Champion. This proposal presumes substantially equal initial investments by each of the three sponsor groups (Centerbridge, MAK Capital and Sankaty). Capitalized terms used in this term sheet and not otherwise defined herein shall have the respective meanings ascribed to such terms in the Letter of Intent.

These terms will be embodied in the certificate of incorporation or limited liability company operating agreement or limited partnership agreement, as applicable, of New Holdco and in one or more separate stockholder, securityholder, registration rights or other agreements to be entered into at closing.

### *Certain Definitions*

| | |
|---|---|
| **Certain Defined Terms:** | These capitalized terms are used with the following meanings: |
| | "Affiliate" means, with respect to any specified person or entity, any other person or entity that directly or indirectly controls, or is controlled by, or is under common control with, such specified person or entity. |
| | "Affiliated Fund" means, with respect to any Lead Investor or Other Initial Holder or other Equityholder that is an investment fund: (i) any affiliated investment funds (including entities investing on behalf of such holder and any investment funds and entities with common general partner or principal advisor) or (ii) any entity that is directly or indirectly controlled, controlling or under common control with such Lead Investor, Other Initial Holder or other Equityholder. |
| | "Change of Control" will mean any of the following: (i) any consolidation or merger of New Holdco with or into any other entity, sale of Shares, or any other transaction (including the issuance of new Shares), whether or not New Holdco is a party thereto, as a result of which the Equityholders of New Holdco immediately prior to such consolidation, merger, sale or transaction and their Affiliated Funds and Affiliates no longer own Shares or other capital representing a majority |

of the economic equity interests in and voting power of New Holdco or other surviving entity (including the right to elect a majority of the entire board of directors of New Holdco or other surviving entity), excluding, in any case, any IPO or bona fide primary or secondary public offering as part of or following the occurrence of an IPO; or (ii) a sale, lease or other disposition of all or substantially all of the assets of New Holdco.

"Closing" means closing of the transfer of substantially all of Champion's assets and related transactions contemplated by the Letter of Intent.

"Equityholder" means any holder of Shares (including the Lead Investors and the Other Initial Holders and any subsequent holder(s)).

"Initial Equityholder" means any holder of Shares that receives Shares as part of the transactions contemplated by the LOI (including the Lead Investors and the DIP Lenders who receive Shares as part of the DIP Equitization Shares and/or Equity Kicker Shares).

"IPO" means the initial public offering of Shares pursuant to an effective registration statement; If New Holdco is established as a limited liability company or limited partnership, the equityholder arrangements will provide for it to be converted into (or replaced with) a corporate entity prior to the effectiveness of any IPO and references in this term sheet to "New Holdco" in any post-IPO period shall be deemed to mean references to the corporation into which New Holdco is converted or with which New Holdco is replaced.

"Lead Investors" means Centerbridge, MAK Capital, Sankaty (in each case including their respective Affiliated Funds) and any other transferee to whom one or more of them assign board of director designation rights (as described herein) as part of a transfer of Shares, in each case for so long as they hold Shares.

"Lead Investor Majority" means holders of a majority of Shares held by Lead Investors (including transferees to whom director designation rights of any Lead Investor have been transferred in accordance with "Transfer of Board Seats" below for so long as such transferees have such director designation rights).

"Organizational Documents" means, with respect to any entity, the certificate or articles of incorporation and bylaws, limited liability company agreement, limited partnership agreement or equivalent organizational documents of such enmity.

"<u>Other Initial Holder</u>" means any Initial Equityholder other than the Lead Investors.

"<u>Permitted Transferee</u>" means: (i) with respect to any Equityholder, such entity's Affiliated Funds or Affiliates and (ii) with respect to any natural person, such person's estate or members of the immediate family of such person, and any trust or other entity formed for estate planning purposes that is controlled by such natural person; *provided* that such Affiliated Fund, Affiliate or other person or entity is an accredited investor (as defined in Reg. D under the Securities Act of 1933, as amended) and agrees to join and be bound by any equityholder arrangements (stockholders' / securityholders' agreement, limited liability company agreement, etc., as applicable) to the same extent as the transferor Equityholder.

"<u>Registrable Securities</u>" means, in the context of registration rights described herein, any Share held by an Equityholder, in each case until the earliest to occur of: (i) such time as the Share ceases to be subject to the registration rights arrangements described herein, (ii) when the Share is sold under an effective registration statement, (iii) when the Share is sold under Rule 144 or 145, (iv) when disposition of such Share is permitted under Rule 144 or 145 and the holder, together with its Affiliates, holds no more than one-half of one percent (0.5%) of the applicable class, (v) when the Share has been otherwise transferred, an unlegended certificate for the Share has been issued and the Share can thereafter be sold without registration or (vi) when the holder thereof has withdrawn from the registration rights and other equityholder arrangements described herein in accordance with the withdrawal terms described herein, provided that such holder will continue to be subject to applicable lockup obligations described below under "Lockup / Market Stand off".

"<u>Requisite Lead Investor Representatives</u>" means, (i) from and after the Closing for so long as there are three Lead Investors entitled to designate three directors individually and one director collectively, at least two of the three directors designated or appointed individually by Lead Investors; (ii) at any time during which there are only two Lead Investors, a majority of the directors designated (either individually or collectively) by the Lead Investors and (iii) at any time during which there is only one Lead Investor and such Lead Investor holds at least eighteen percent (18%) of outstanding Shares, one director designated individually by such Lead Investor.

"<u>Requisite Majority Holders</u>" means holders of at least 65% of all voting Shares held by the Equityholders at any relevant time.

"Shares" means shares, limited liability interests or other equity interests in New Holdco and also includes any shares or other equity interests in any successor entity (including, in the case where New Holdco is a limited liability company or limited partnership, the shares of any corporation into which New Holdco is merged or the shares that are distributed to members of New Holdco in connection with any conversion of New Holdco to corporate form or replacement of New Holdco with a corporate entity in connection with any IPO).

## *Ownership*

**Shares /**
**Initial Splits:**
All Shares will have the same relative per Share economic rights, interests and priorities (*e.g.*, with respect to dividends, distributions, liquidations, etc.) and, subject to the terms described herein, voting rights. As described in the Letter of Intent:

- 60% of initial primary Shares will be issued to investors (including the Lead Investors) in exchange for $50 million cash investment;

- 35% of initial primary Shares will be issued to DIP Lenders as DIP Loan Equitization Shares (as part of the credit bid contemplated by the Letter of Intent); and

- 5% of initial primary Shares will be issued to DIP Lenders as Debt Equity Kicker Shares (as part of the credit bid contemplated by the Letter of Intent).

All such shares will be subject to potential dilution as a result of any future issuances of equity by New Holdco, including (without limitation) any issuances pursuant to any management equity incentive program adopted by the Purchaser. Certain issuances of Shares will be subject to preemptive rights as described further below.

## *Governance*

**Board of**
**Directors:**
New Holdco will be managed by a board of directors, which shall initially have seven members designated and elected as follows:

- One member designated by Centerbridge for so long as it holds at least ten percent (10%) of outstanding Shares, after which time (subject to "Transfer of Board Seats" below) such member will be elected by holders of a majority of all outstanding Shares;

- One member designated by MAK Capital for so long as it holds at least ten percent (10%) of outstanding Shares, after which time (subject to "Transfer of Board Seats" below) such member will be elected by holders of a majority of all outstanding Shares;

- One member designated by Sankaty for so long as it holds at least ten percent (10%) of outstanding Shares, after which time (subject

to "Transfer of Board Seats" below) such member will be elected by holders of a majority of all outstanding Shares;

- One member jointly designated by the Lead Investors for so long as they, together with their respective Affiliates and Affiliated Funds (including transferees to whom their director designation rights have been transferred in accordance with "Transfer of Board Seats" below for so long as such transferees have such director designation rights), hold in the aggregate at least ten percent (10%) of outstanding Shares (such designation to be as mutually agreed by them or, in the absence of consensus, by the Lead Investor Majority), after which time such member will be elected by holders of a majority of all outstanding Shares;

- One management representative (*i.e.,* the CEO or other chief executive, *ex officio*);

- One member designated by holders of a majority of the Shares held by Other Initial Holders or their Permitted Transferees or other transferees to which any of them transfer Shares in accordance with the transfers permitted under the provisions described herein (but excluding any Lead Investors that may purchase such Shares under the ROFO provisions described below), for so long as such holders, together with their Affiliates and Affiliated Funds, hold in the aggregate at least ten percent (10%) of outstanding Shares (provided that such designee is reasonably acceptable to and approved by the Lead Investors Majority, which approval may be withheld only on the basis of good faith concerns regarding the disinterestedness, independence and qualifications of such member), after which time such board member will be elected by holders of a majority of all outstanding Shares; and

- One member designated by holders of a majority of the Shares held by Other Initial Holders or their Permitted Transferees or other transferees to which any of them transfer Shares in accordance with the transfers permitted under the provisions described herein (including any Lead Investors that may purchase such Shares under the ROFO provisions described below or otherwise to the extent that they acquire Shares originally issued to or at any time held by any Other Initial Holder (and for purposes of participating in this designation, only with respect to such Shares acquired from any Other Initial Holder or their respective transferees)), for so long as Other Initial Holders, together with their Affiliates and Affiliated Funds, hold in the aggregate at least ten percent (10%) of outstanding Shares (provided that such designee is reasonably acceptable to and approved by the Lead Investors Majority), after which time such board member will be elected by holders of a majority of all outstanding Shares.

For these purposes, a Lead Investor's holdings will be aggregated with those of its Affiliates and Affiliated Funds (including transferees to whom their director designation rights have been transferred in accordance with "Transfer of Board Seats" below for so long as such transferees have such director designation rights). The definitive agreement will include procedures for annual designation and election, removal and replacement rights (*e.g.,* entities with rights to designate a director have right to remove and replace, and in the absence of cause such designated directors cannot be removed by the board generally before the end of their one-year terms) and mechanics.

**Transfer of Board Seats:**  A Lead Investor's respective rights to designate members of the board will be transferable by a Lead Investor to any Affiliated Fund that holds Shares. In the event of a transfer of a Lead Investor's Shares in connection with which the transferor's director designation right will otherwise be lost and as a result of ROFO exercises the other Lead Investors purchase at least 50% of the Shares being transferred, the transferor's director designation rights will automatically transfer as follows: If the other Lead Investors acquire such Shares relatively proportionately (i.e., one Lead Investor does not acquire more than twice the number of Shares acquired by the other Lead Investor), the individual designation right of the transferor Lead Investor will be shared by such other Lead Investors. If one of the other Lead Investors acquires more than twice the number of shares acquired by the other Lead Investor, the first such Lead Investor will succeed to such individual director designation right. If the other Lead Investors purchase less than half of the shares being transferred by a Lead Investor, the director designation rights of the transferring Lead Investor will be transferable subject to the consent of the other Lead Investors who continue to hold individual director designation rights.

**Board / Committees / Quorum:**  New Holdco will be managed by a board of directors. Subject to the special approval requirements described below under the section captioned "*Certain Actions*" with respect to certain specified matters, board action may be taken either by unanimous written consent or by majority vote of directors present (in person or by telephonic or other approved means) at a meeting at which a quorum is present. The board may, in its discretion, delegate authority to one or more committees (*e.g.,* an Executive Committee, Audit Committee, Compensation Committee, etc.); *provided* that so long as any Lead Investor (including transferees to whom their director designation rights have been transferred in accordance with "Transfer of Board Seats" below for so long as such transferees have such director designation rights) has a right to delegate a member of the board it may, at its discretion, designate a member of each committee for which such Lead Investor or such transferee wants its designee to participate; and *provided further*

that the composition of each committee is approved by at least two-thirds of the directors then in office; and *provided further* that if any such committee does not include at least one of the two directors designated by Other Initial Holders (each, an "Other Initial Holder Designee") at a time when the Other Initial Holders are entitled to designate two directors as provided above, then the Other Initial Holders will have the right to designate an Other Initial Holder Designee to serve as a non-voting observer of such committee with the right to receive notice of, attend and observe meetings of such committees.

A quorum for any meeting of the board or any committee thereof shall be two-thirds of entire board or applicable committee; *provided* that if a director is present at any such meeting of the board or committee then at any adjourned continuation of such meeting, the foregoing rule shall not apply (subject to appropriate prior notice) and a majority of directors on the board or applicable committee shall constitute a quorum.

**Certain Actions:**

Prior to an IPO or a Change of Control, the following actions shall require, in addition to the approval of the board as described above, the approval of the Requisite Lead Investor Representatives:

- approval of business plan and annual budget, and approval of any material variances thereto;

- mergers, consolidations, acquisitions or dispositions, in each case involving consideration or transaction value in excess of $10 million;

- issuance of stock or other equity or equity-linked securities (other than issuances of management equity incentives pursuant to equity incentive plans approved by the Board);

- incurrence, prepayment or material amendments to the terms of debt, in each case involving debt in excess of $10 million;

- declaration or payment of dividends or distributions to equity holders or repurchases or redemptions of Shares (other than retirement related redemptions or repurchases of up to an aggregate of $2.5 million of Shares held by management);

- initial public offering or other transaction which would result in New Holdco having a class of publicly traded equity securities;

- expansion of the size of the board of directors if, as a result of such expansion, the Lead Investors would no longer have the ability to appoint more than 50% of the directors;

- hiring or firing of CEO or CFO;
- exercising drag along rights (as described below);
- effecting a Change of Control;
- adopting or materially modifying any management compensation plan (including any management equity plan); and
- amending or waiving material provisions of the Organizational Documents of New Holdco.

The following actions shall require, in addition to the approval of the board (as described above) and the approval of the Requisite Lead Investor Representatives, the approval of holders of a majority of the Shares held by any holders that would be disproportionately and adversely affected thereby (in their capacity as a holder of Shares, relative to the treatment of other holders of Shares):

- amending in any material respect adverse to certain holders of Shares relative to the treatment of other holders of Shares provisions related to transfer restrictions;
- amending in any material respect adverse to certain holders of Shares relative to the treatment of other holders of Shares the drag-along, tag-along and ROFO provisions described herein;
- amending in any material respect adverse to certain holders of Shares relative to the treatment of other holders of Shares provisions affecting piggyback registration rights to participate in registered offerings;
- amending in any material respect adverse to certain holders of Shares relative to the treatment of other holders of Shares the Preemptive Rights described herein;
- reducing at any time prior to an IPO or Change of Control the number of directors that holders (or any sub-sets of holders) are entitled to elect; and
- narrowing in any material respect the information and access rights described in the section captioned "Information Rights" below.

The following action shall require the approval of at least 70% of the board (*e.g.,* five of seven board members) and the approval of the Requisite Lead Investor Representatives:

- eliminating or reducing the scope of prohibitions on certain interested party transactions as described in the section captioned "Prohibition on Certain Transactions" below.