**EXHIBIT A**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
In re                              :    Chapter 11
                                   :
Champion Enterprises, Inc., et al.,:    Case No. 09-14019 (KG)
                                   :
             Debtors.  :    Jointly Administered
                                   :

## BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the proposed sale of substantially all of the Debtors' (as defined below) assets and the assumption of certain liabilities as set forth in the Agreement (as defined below) executed by the Debtors and the Purchaser (as defined below), or, as set forth in the relevant sale agreements with respect to a Successful Bidder (as defined below). Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Agreement (as defined below).

On February 5, 2010, Champion Enterprise, Inc. and certain of its subsidiaries that are debtors and debtors-in-possession (collectively, the "Debtors") executed that certain asset purchase agreement (the "Agreement") with the proposed purchasers set forth in the Agreement (the "Purchaser") to acquire substantially all of the Debtors' assets.

The Debtors have determined that: (A) the transactions contemplated by the Agreement, or, as set forth in the relevant sale agreements and ancillary agreements with respect to a Successful Bidder, (collectively, the "Transaction") should be subject to competitive bidding as set forth herein; (B) the transfer of the Debtors' rights, title and interests in and to the Assets (as defined below) should be subject to approval by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") pursuant to sections 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"); and (C) the Transaction is subject to approval by the Bankruptcy Court and certain other closing conditions as set forth in the Agreement or any other relevant sale agreements with respect to a Successful Bidder.

On January 15, 2010, the Debtors filed a *Motion for the Entry of an Order (A) Approving Bid Procedures for the Sale of the Debtors' Assets, (B) Scheduling an Auction and Hearing to Consider the Sale and Approve the Form and Manner of Notice Related Thereto, (C) Establishing Procedures Relating to the Assumption and Assignment of Certain Contracts, Including Notice of Proposed Cure Amounts, (D) Approving Certain Expense Reimbursements Provisions, and (E) Granting Related Relief [Docket No. 272]* (the "Bidding Procedures Motion").

#156516 v9 - Champion - Bidding Procedures
DOCS_DE:156516.9

On February 8, 2010, the Court entered an order [Docket No. 386] (the "Bidding Procedures Order") granting the Bidding Procedures Motion. The Bidding Procedures Order, among other things, establishes the Bidding Procedures pursuant to which the Debtors have agreed to sell the Assets to the Purchaser pursuant to the terms of the Agreement, subject to the outcome of any Auction (if applicable) and the entry of an order approving the Transaction by the Bankruptcy Court. The Bidding Procedures Order also approved the payment, in certain circumstances, of the Break-Up Fee (as defined below) and the Expense Reimbursement (as defined below).

## Bidding Process

The Bidding Procedures set forth herein describe, among other things, the process by which prospective bidders may gain access to or continue to have access to due diligence materials concerning the Assets, the manner in which bidders become Qualified Bidders (as defined below) and bids become Qualified Bids (as defined below), respectively, the receipt and negotiation of bids received, the conduct of any subsequent Auction (as defined below), the ultimate selection of the Successful Bidder, and the Bankruptcy Court's approval thereof (collectively, the "Bidding Process"). The Debtors intend to consult with, among others, the Official Committee of Unsecured Creditors in connection with the chapter 11 cases of Champion Enterprise, Inc., *et al.* (Case No. 09-14019) involving the Debtors (the "Committee") with respect to the application of these Bidding Procedures,

## Assets To Be Sold

As noted above, the Debtors are offering for sale substantially all of the Debtors' assets (including the stock of certain subsidiaries of the Debtors) as provided in the Asset Purchase Agreement (as defined below) with respect to the Purchaser, or, as set forth in the relevant sale agreements with respect to a Successful Bidder, and related schedules (i.e. the Asset). As set forth in detail below, bids may be submitted by a Potential Qualified Purchaser for some or all of the Assets.

## "As Is, Where Is" Sale

The sale of the Assets will be on an "as is, where is" basis and without surviving representations or warranties of any kind, nature, or description by the Debtors, their agents, or estates, except to the extent, if any, set forth in the relevant sale agreements of the Purchaser or another Successful Bidder, if any. Each Qualified Bidder shall be deemed to acknowledge and represent that each has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, that it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bid Procedures or the terms of the sale of the Assets that shall be set forth in the Agreement or final Marked Agreement.

### Free Of Any And All Claims And Interests

All of the rights, title and interests of the Debtors in and to the Assets, or any portion thereof, to be acquired will be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon and there against (collectively, the "Claims and Interests") pursuant to sections 363 and 365 of the Bankruptcy Code, to the extent provided by the Asset Purchase Agreement or, with respect to a Successful Bidder, to the extent otherwise set forth in the relevant sale agreement of such Successful Bidder with the Debtors, with such Claims and Interests to attach to the net proceeds of the sale of such Assets (without prejudice to any claims or causes of action regarding the priority, validity or enforceability thereof), except, with respect to the Purchaser, to the extent otherwise set forth in the Asset Purchase Agreement or, with respect to a Successful Bidder, to the extent otherwise set forth in the relevant sale agreement of such Successful Bidder with the Debtors.

### Credit Bidding

The Agreement provides for credit bidding by the Purchaser. Additional credit bidding is allowed subject to the requirements of the Bankruptcy Code and the Agreement.

### Participation Requirements

Prior to the Bid Deadline (as defined below), in order to participate in the Bidding Process, each person, other than the Purchaser, who wishes to participate in the Bidding Process (a "Potential Bidder") must deliver, or have previously delivered, to the Debtors:

    (a)    an executed confidentiality agreement (to be delivered prior to the distribution of any confidential information by the Debtors to a Potential Bidder) in form and substance satisfactory to the Debtors;

    (b)    current audited financial statements and latest unaudited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets (or any portion thereof), current audited financial statements and latest unaudited financial statements of the equity holders of the Potential Bidder which will guarantee the obligations of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement that will allow the Debtors and their respective financial advisors to make a determination as to the Potential Bidder's financial and other capabilities to consummate the Transaction;.

A Potential Bidder that has delivered or delivers the confidentiality agreement described above, whose financial information and credit quality support or enhancement, demonstrate to the Debtors' satisfaction the financial capability of the Potential Bidder to consummate the Transaction, and that the Debtors determine in their business judgment to be able to consummate the Transaction will be deemed a "Qualified Bidder."

As promptly as practicable after a Potential Bidder delivers all of the materials required above, the Debtors will determine and will notify the Potential Bidder and the Purchaser if such Potential Bidder is a Qualified Bidder. At the same time that the Debtors notify the Bidder that it

is a Qualified Bidder, the Debtors will allow the Qualified Bidder to begin or continue to conduct due diligence as provided under the Bidding Procedures.

## Due Diligence

The Debtors may in their business judgment, and subject to competitive and other business considerations, afford each Qualified Bidder and any person seeking to become a Qualified Bidder that has executed a confidentiality agreement with the Debtors such due diligence access to materials and information relating to the Assets as the Debtors deem appropriate. Morgan Joseph, the Debtors' investment banker, will, in coordination with the Debtors, coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders. No additional due diligence will continue after the Bid Deadline (as defined below). The Debtors may, in their discretion, coordinate diligence efforts such that multiple Qualified Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections. In any event, the Purchaser shall be provided prompt access to all material due diligence materials, management presentations, on site inspections and other information provided to Qualified Bidders that were not previously made available to the Purchaser. In addition, the Debtors shall provide prompt access to each Qualified Bidder (including the Purchaser) to all material due diligence materials, management presentations, on site inspections and other information provided to any Qualified Bidder after the approval of these Bidding Procedures. The Debtors make no representation or warranty as to the information to be provided through this due diligence process or otherwise, except to the extent set forth in the Asset Purchase Agreement or any other definitive sale agreements with any Successful Bidder executed and delivered by Debtors.

## Due Diligence From Bidders

Each Qualified Bidder shall comply with all reasonable requests for additional information by the Debtors or their advisors regarding such Qualified Bidder's financial wherewithal to consummate and perform obligations in connection with the Sale. Failure by the Qualified Bidder to comply with requests for additional information may be a basis for the Debtors to determine that a bid made by the Qualified Bidder is not a Qualified Bid.

## Bid Deadline

A Qualified Bidder that desires to make a bid will deliver written copies of its bid to the Debtors' counsel: Pachulski Stang Ziehl & Jones LLP, Attn: Laura Davis Jones, 919 N. Market Street, 17th Floor, Wilmington, DE 19899-8705, Fax : 302-652-4400; so as to be received not later than February 24, 2010 (Eastern) at 12:00 p.m. (Noon) by the Debtors (the "Bid Deadline").

## Qualified Bids

A bid submitted for the purchase of all or some of the Assets will be considered a Qualified Bid only if the bid is submitted by a Qualified Bidder prior to the expiration of the Bid Deadline and complies with all of the following (a "Qualified Bid"):

(a) it states that the applicable Qualified Bidder offers to purchase the Assets upon the terms and conditions substantially as set forth in the Agreement, including, without limitation, with respect to certainty and timing of closing, or pursuant to an alternative structure or upon alternative terms and conditions that the Debtors determine in their sole discretion are no less favorable than the terms and conditions of the Agreement;

(b) it includes a letter stating that the bidder's offer is irrevocable until the closing of the Sale;

(c) it includes the duly authorized and executed Asset Purchase Agreement (as modified by the Qualified Bidder to reflect the terms and conditions of its bid), including the purchase price for the Assets that the Qualified Bidder seeks to acquire expressed in U.S. Dollars, together with all exhibits and schedules thereto, including, to the extent required by the terms and conditions of such bid, any ancillary agreements as described in the Asset Purchase Agreement and such additional ancillary agreements as may be required by the bidder with all exhibits and schedules thereto, as well as copies of such materials marked to show those amendments and modifications to the Asset Purchase Agreement ("Marked Agreements") and such ancillary agreements (the "Marked Ancillary Agreements") and the proposed order to approve the Sale by the Bankruptcy Court (to the extent modified from the Order submitted by the Debtors with the Sale Motion) proposed by the Qualified Bidder;

(d) it includes written evidence of a firm, irrevocable commitment for financing, or such other evidence of ability to consummate the proposed transaction acceptable to the Debtors, that will allow the Debtors to make a determination as to the Qualified Bidder's financial and other capabilities to consummate the transaction contemplated by the Marked Agreements;

(e) it is not conditioned on (i) the outcome of unperformed due diligence by the Qualified Bidder (and includes an acknowledgement and representation that the bidder has had an opportunity to conduct any and all required due diligence regarding the Assets prior to making its offer) and/or (ii) obtaining financing;

(f) it fully discloses the identity of each entity that will be bidding for the Assets or otherwise sponsoring or participating in connection with such bid, and the complete terms of any such participation;

(g) it has a value to the Debtors, in the Debtors' business judgment that either individually or, when evaluated in conjunction with any other Qualified Bid for the Assets, is greater than or equal to the sum of the value offered under the Asset Purchase Agreement, plus (i) the amount of the Break-Up Fee and Expense Reimbursement (each as defined in the Asset Purchase Agreement), plus (ii) U.S.$ 500,000.

(h) it includes an acknowledgment and representation that the Qualified Bidder will assume the Debtors' obligations under the executory contracts and unexpired leases proposed to be assigned pursuant to the Asset Purchase Agreement (or identifies

with particularity in the Marked Agreement which of such contracts and leases the Qualified Bidder wishes not to assume, or alternatively which additional executory contracts or unexpired leases the Qualified Bidder wishes to assume), contains details of the Qualified Bidder's proposal for the treatment of related cure costs; and it identifies with particularity any executory contract or unexpired lease the assumption and assignment of which is a condition to closing;

   (i) it includes an acknowledgement and representation that the Qualified Bidder: (i) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid; (ii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in any ancillary agreement; and (iii) is not entitled to any expense reimbursement or break-up fee in connection with its bid;

   (j) it includes evidence, in form and substance satisfactory to the Debtors, of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Marked Agreements and Marked Ancillary Agreements;

   (k) it is accompanied by a good faith deposit (each, together with the good faith deposit of the Purchaser, a "<u>Good Faith Deposit</u>") in the form of a wire transfer (to a bank account specified by the Debtors), certified check or such other form acceptable to the Debtors, payable to the order of the Debtors (or such other party as the Debtors may determine) in an amount equal to (i) $5 million if the Bid is for substantially all of the Assets, or (ii) the greater of ten percent of the bid purchase price (in no event greater than $5 million) or $250,000 if the Bid is for less than substantially all of the Assets, provided any such aggregation of bids shall be consistent in all respects with the requirements under the Debtors court-approved postpetition financing facility;

   (l) it includes evidence of the Qualified Bidder's ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of such Potential Bidder's ability to perform in the future the executory contracts and leases proposed in its bid to be assumed by the Debtors and assigned or subleased to the Potential Bidder, in a form that will permit the immediate dissemination of such evidence to the counterparties to such executory contracts and leases;

   (m) it contains other information reasonably requested by the Debtors; and

   (n) it is received by the Bid Deadline.

  The Debtors may waive non-material compliance with any of the foregoing provisions, and may waive material compliance with any of the foregoing provisions with the consent of the Purchaser or pursuant to order of the Court. The Debtors expressly reserve the right to reject any and all Qualified Bids (other than the Agreement). The Purchaser will be deemed a Qualified

Bidder, and the Agreement will be deemed a Qualified Bid, for all purposes in connection with the Bidding Process, the Auction and the Sale.

The Debtors shall deliver copies of any Bids to the Purchaser and counsel for the DIP Agent within 24 hours after the Debtors' receipt of such bids. By no later than February 26, 2010 at 12:00 p.m. (Noon), the Debtors shall determine which bids constitute Qualified Bids, and notify the Purchaser, counsel for the DIP Agent and all Qualified Bidders (or their representatives) of such determination by delivering copies of such Qualified Bid to them via email, facsimile, or overnight delivery.

## Evaluation of Competing Bids

The Debtors reserve the right to accept Qualified Bids for less than all of the Assets and combinations of Bids for, in the aggregate, all of the Assets and/or to consider the value of Assets excluded from the Bid for the purpose of determining the highest Qualified Bid(s). The Debtors further reserve the right to reject any Qualified Bid (other than the Agreement) and to declare at the conclusion of the Auction that no acceptable Qualified Bids (other than the Agreement) were submitted.

## No Qualified Bids

If the Debtors do not receive any Qualified Bids other than the Agreement of the Purchaser, the Debtors shall note same on the record at the Auction, and the Debtors shall report the same to the Bankruptcy Court and subject to requiring and obtaining approval of the Bankruptcy Court and satisfaction of the conditions set forth in the Agreement, the Debtors and the Purchaser shall promptly proceed to complete the transactions contemplated by the terms of the Agreement, pursuant to the terms of the Agreement.

## Break-Up Fee and Expense Reimbursement

Recognizing the value and benefits that Purchaser has provided to the Debtors by entering into the Asset Purchase Agreement, as well as the Purchaser's expenditure of time, energy and resources, the Debtors have agreed that the Purchaser is entitled to a Break-Up Fee and Expense Reimbursement in amounts and under the circumstances set forth in the Asset Purchase Agreement and as set forth in the Bidding Procedures Order.

## Auction

If the Debtors receive one or more Qualified Bids, in addition to the Agreement, the Debtors will conduct an auction (the "Auction") of the Assets, which shall be transcribed or recorded on video to the extent required under Delaware local practice, at 11:00 a.m. on March 1, 2010, at the offices of Pachulski Stang Ziehl & Jones LLP located at 919 North Market Street, 17th Floor, Wilmington, Delaware 19801 or such other location as the Debtors determine and which shall be timely communicated to all entities entitled to attend the Auction, which Auction may be cancelled or adjourned without the prior written consent of the Purchaser, subject to the terms of the Agreement and the Bidding Procedures Order. The Auction shall be run by the Debtors in accordance with the following procedures, each of which may be modified by the Debtors in their discretion:

(a) Only the Debtors, the Purchaser, the Committee, the DIP Agent (and the advisors to each of the foregoing), the Joint Bidders (as defined in the Letter of Intent by and among the Debtors, the New Equity Investors and the Supporting Lenders dated as of January 15, 2010), and any other Qualified Bidder that has timely submitted a Qualified Bid (and the advisors of such Qualified Bidder), may attend the Auction in person, and only the Purchaser and such other Qualified Bidders who have submitted Qualified Bids will be entitled to make any subsequent bids at the Auction.

(b) Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

(c) At least one (1) Business Day prior to the Auction, each Qualified Bidder which has timely submitted a Qualified Bid must inform the Debtors whether it intends to attend the Auction; provided that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until the Closing of the Sale to a Successful Bidder. Prior to the commencement of the Auction, the Debtors will provide, to the Purchaser and all other Qualified Bidders, copies of the Qualified Bid or combination of Qualified Bids which the Debtors believe, in their business judgment, is the highest or otherwise best offer (the "Starting Bid").

(d) All Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids (as defined below) at the Auction with the understanding that the true identity of each Qualified Bidder at the Auction will be fully disclosed to all other Qualified Bidders at the Auction and that all material terms of each Subsequent Bid will be fully disclosed to all other bidders throughout the entire Auction; provided that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person.

(e) Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder that (i) improves upon such Qualified Bidder's immediately prior Qualified Bid (a "Subsequent Bid") and (ii) the Debtors determine, in consultation with their advisors that such Subsequent Bid is (A) for the first round, a higher or otherwise better offer than the Starting Bid, and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below). Each incremental bid shall provide net value to the estate of at least U.S. $250,000. After the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the bid or combination of bids (and the value of such bid(s)) that it believes to be the highest or otherwise better offer (the "Leading Bid"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid. Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by the Purchaser), the Debtors will, at each round of bidding, give effect to the Break-Up Fee and Expense Reimbursement that may be payable to the Purchaser under the Agreement.

(f) All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction, and the construction and enforcement of each Qualified Bidder's contemplated transaction documents, as applicable.

### Selection Of Successful Bid

Upon the conclusion of the bidding, the Auction shall be closed and the Debtors, in consultation with their advisors, will (a) review each Qualified Bid that is either the Leading Bid or submitted subsequent to and as an improvement to the submission of the Leading Bid, (b) identify in their discretion the highest or otherwise best offer or offers for the Assets (which, as described above, may be an aggregate of bids for less than all of the Assets) received at the Auction (one or more such bids, collectively the "Successful Bid" and the bidder(s) making such bid, collectively, the "Successful Bidder") and the next highest or otherwise best offer(s) after the Successful Bid (the "Next Highest Bid"), and (c) communicate to the Purchaser and the other Qualified Bidders the identity of the Successful Bidder, and the details of the Successful Bid, the identity of the Back-Up Bidder making the Next Highest Bid, and the details of the Next Highest Bid. Immediately upon selection of the Successful Bid(s), if the Good Faith Deposit(s) do or does not equal ten percent (10%) of the purchase price in the case of a bid(s) for less than all of the Assets, the Successful Bidder(s) shall provide the Debtors with immediately available funds so that its Minimum Deposit is equal to ten percent (10%) of the purchase price in the case of a bid(s) for less than all of the Assets, unless waived by the Debtors.

The Debtors' presentation of particular Successful Bid to the Bankruptcy Court for approval does not constitute the Debtors' acceptance of such Successful Bid. The Debtors will be deemed to have accepted a Successful Bid only when the Successful Bid has been approved by the Bankruptcy Court at the Sale Hearing (as defined below).

The Sale the Assets to the Successful Bidder will be pursuant to the terms of the Successful Bid upon the approval of such Successful Bid by the Bankruptcy Court at the Sale Hearing (as defined below).

### Sale Hearing

The sale hearing to authorize the Debtors to enter into agreements with respect to the Successful Bid (the "Sale Hearing") will be held before the Honorable Judge Kevin Gross (or any substitute therefor) in the United States Bankruptcy Court for the District of Delaware, located at 824 Market Street, 6th Floor, Court Room No. 6, Wilmington, Delaware, on March 2, 2010 at 1:00 p.m. (prevailing Eastern Time). The Sale Hearing may be adjourned or rescheduled by the Debtors without further notice by an announcement of the adjourned date at the Sale Hearing or, or by the filing of a notice of adjournment with the Court prior thereto. If the Debtors do not receive any Qualified Bids (other than the Qualified Bid of the Purchaser), the Debtors shall proceed as set forth in the "No Qualified Bids" section above. If the Debtors receive one or more additional Qualified Bid(s), then, at the Sale Hearing the Debtors will seek approval of the Successful Bid. All Qualified Bids shall remain open pending the Debtors on the Closing of the Sale. In the event that, for any reason, a Successful Bidder fails to close the Sale

Transaction contemplated by its Successful Bid, then, without notice to any other party or further court order, the Debtors shall be authorized to close with the Qualified Bidder that submitted the Next Highest Bid.

## Good Faith Deposits

The Good Faith Deposits of Qualified Bidders not selected as the Successful Bidder shall be returned to such bidders within three (3) business days after the Closing on the Sale to the Successful Bidder.

## Modifications

The Bidding Procedures may not be modified except with the express written consent of the Debtors. The Debtors may make non-material modifications to the Bidding Procedures without further order of the Court, and may make material modifications to the Bidding Procedures with the consent of the Purchaser, or pursuant to Court order.