IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CHAMPION ENTERPRISES, INC., et al.,[1] | ) | Case No. 09-14019 (KG) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Re Docket No. 273 |

**ORDER AUTHORIZING AND APPROVING (A) THE SALE OF
SUBSTANTIALLY ALL ASSETS OF THE DEBTORS AND (B) THE
ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES**

Upon the *Debtors' Motion for an Order: (I) Approving Asset Purchase
Agreement and Authorizing the Sale of Assets Outside the Ordinary Course of Business; (II)
Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests
Pursuant to Sections 363(b), (f) and (m) of the Bankruptcy Code; (III) Authorizing the
Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (IV)
Granting Related Relief [D.I. 273]* (the "Sale Motion");[2] the Asset Purchase Agreement [D.I.
383 filed on February 8, 2010 (the "Agreement"); the supplement to the Sale Motion [Docket
No. 448] (the "Supplement"); and the amendment to the Agreement [Docket No. 448] (the
"Amendment"); and the Court having entered that certain *Order Pursuant to Bankruptcy Code
Sections 363 and 365 (A) Authorizing Debtors' Entry into the Asset Purchase Agreement, (B)
Authorizing and Approving the Bidding Procedures, (C) Authorizing and Approving a Break-Up*

---

[1] The Debtors in these cases are Redman Homes, Inc.; Champion Enterprises, Inc.; Champion Home
Builders Co.; New Era Building Systems, Inc.; North American Housing Corp.; Homes of Merit, Inc.;
Western Homes Corporation; Star Fleet, Inc.; Champion Enterprises Management Co.; Champion Retail,
Inc.; San Jose Advantage Homes, Inc.; Highland Acquisition Corp.; Highland Manufacturing Company
LLC; Champion Homes of Boaz, Inc.; Iseman Corp.; and SSH Liquidating Corp.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Sale Motion
and/or Agreement.

*Fee and Expense Reimbursement, (D) Approving Notice Procedures, (E) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (F) Setting a Date for the Sale Hearing [D.I. 386]* on February 8, 2010 (the "Procedures Order"); and the Auction having been held on March 1, 2010 for the consideration of Qualified Bids and the selection of a Successful Bidder (each as defined in the Procedures Order); and upon the Court's consideration of the Sale Motion, the record of the bidding procedures hearing held on January 28, 2010, the Sale Hearing held on March 2, 2010 (the "Sale Hearing") with respect to the Sale Motion, the objections thereto, if any, and the testimony and evidence admitted at the Sale Hearing; and after due deliberation thereon, and sufficient cause appearing therefor:

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:

A.      **Jurisdiction and Venue**.  This Court has jurisdiction to consider this Sale Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (M), (N) and (O).  Venue of these cases and the Sale Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B.      **Statutory Predicates**.  The statutory predicates for the relief sought in the Sale Motion are Bankruptcy Code sections 105, 363, 365, 1107 and 1008, Bankruptcy Rules 2002(a)(2), 6004, 6006 and 9014 and Rules 2002-1(b), 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules").  Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law.

C.      **Notice**.  As evidenced by the affidavits of service filed with this Court that notice was provided as required under the Procedures Order: (i) due, proper, timely, adequate and

2

sufficient notice of the Sale Motion, the Sale Hearing, and the transactions contemplated by the Agreement (the "Transaction") has been provided to all parties entitled thereto, including, without limitation, Cure Notices provided to counterparties of the Assumed Agreements; (ii) it appearing that no other or further notice need be provided; (iii) such notice was and is good, sufficient and appropriate under the circumstances of the Debtors' chapter 11 cases; and (iv) no other or further notice of the Sale Motion, the Auction, the Sale Hearing, or the Transaction is or shall be required.

D. **Opportunity to Object**. A reasonable opportunity to object and to be heard with respect to the Transaction, the Sale Motion and the relief requested therein has been given to all appropriate parties in interest, including, without limitation, the following: (i) the Office of the United States Trustee for the District of Delaware, (ii) counsel for the DIP Agent, (iii) counsel for New Holdco and the Asset Purchaser (each as defined in the Agreement and collectively, the "Purchaser"), (iv) counsel for the Official Committee of Unsecured Creditors appointed in these chapter 11 cases (the "Committee"), (v) all entities who executed non-disclosure agreements with the Debtors or Morgan Joseph in connection with a potential acquisition of any or all of the Assets or who otherwise have expressed to the Debtors an interest in purchasing the Assets, (vi) all entities known to hold, have asserted or threatened in writing to assert a claim, lien, interest or encumbrance in the Debtors' Interest (as defined below) in the Assets or the Assumed Agreements (the Debtors' interest in such property, the "Transferred Property"), (vii) all counterparties to the Assumed Agreements, both with respect to the Cure Amounts set forth in the Cure Notices and any other objections such counterparties may have, (viii) the Internal Revenue Service and applicable federal and state taxing authorities, (ix) the Securities and Exchange Commission, (x) the United States Attorney's office, (xi) all state attorneys general in

3

the states in which the Assets are located, (xii) the Pension Benefit Guaranty Corporation, (xiii) all persons, if any, who have filed objections to the Motion, (xiv) all persons who have filed a notice of appearance in these cases, and (xv) all of the Debtors' other known creditors, equity interest holders and/or parties in interest.

E. **Auction**. The Debtors adequately marketed the Assets under the facts and circumstances of their cases. The marketing process created by the Procedures Order provided potential bidders with a full and fair opportunity to submit bids and participate in the Auction. The Auction was conducted fairly and in good faith, without collusion and in accordance with the Procedures Order. At the Auction, Purchaser was selected as the Successful Bidder. The Debtors' determination that the Agreement constitutes the highest and best offer for the Transferred Property constitutes a valid and sound exercise of the Debtors' business judgment.

F. **Arm's-Length Sale**. The Transaction contemplated by the Agreement and this Order is being undertaken by the Debtors and the Purchaser at arm's-length, without collusion, and in good faith within the meaning of section 363(m) of the Bankruptcy Code, and such parties are entitled to the protection of section 363(m) of the Bankruptcy Code. Neither the Purchaser nor any of its affiliates or their respective representatives is an "insider" of any of the Debtors, as that term is defined in Bankruptcy Code section 101(31). None of the Debtors, the Purchaser or their respective affiliates or representatives has engaged in any conduct that would cause or permit the Agreement to be avoided under Bankruptcy Code section 363(n) or has acted in any improper or collusive manner with any person. The terms and conditions of the Agreement and the Transaction, including without limitation the consideration provided in respect thereof, is fair and reasonable and shall not be avoided under Bankruptcy Code section 363(n).

13814-001\DOCS_DE:156585.4
24286435_2.DOC  10

G. **Good Faith Purchaser**. The Purchaser, its affiliates and their respective representatives have all proceeded in good faith and without collusion in all respects in connection with the Transaction and this sale proceeding. Such persons are therefore entitled to all of the benefits and protections of Bankruptcy Code section 363(m). Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not affect the validity of the Transaction unless, prior to the Closing, such authorization is duly stayed pending such appeal.

H. **Corporate Authority**. The Debtors (i) have full corporate power and authority to execute the Agreement and all other documents contemplated thereby, and, with respect to the Debtors, the Transaction has been duly and validly authorized by all necessary corporate action and/or approval by the Court, (ii) have all of the corporate power and authority necessary to consummate their obligations with respect to the Transaction, (iii) have taken all corporate action necessary to authorize and approve their entry into and performance in respect of the Agreement and the Transaction, and (iv) require no consents or approvals to consummate the Transaction, other than those expressly provided for in the Agreement and the entry of this Order.

I. **Sale in Best Interests**. Good and sufficient reasons for approval of the Agreement and the Transaction have been articulated, and the relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest. The consideration to be paid by the Purchaser includes: (i) the Credit Bid and Release; (ii) the assumption of, and the undertaking to discharge, the Assumed Liabilities by the Purchaser; and (iii) the funding for the Debtors' wind down budget.

J. **Business Justification**. The Debtors have demonstrated both (i) good, sufficient and sound business purposes and justifications and (ii) compelling circumstances for the

13814-001\DOCS_DE:156585.4
24286435_2.DOC 10

Transaction other than in the ordinary course of business under Bankruptcy Code section 363(b) before, and outside of, a plan of reorganization in that, among other things, the immediate approval by this Court of the Transaction is necessary and appropriate to maximize the value of the Debtors' estates. Entry of an order approving the Sale of the Assets to the Purchaser pursuant to the terms of the Agreement and all the provisions thereof is a necessary condition precedent to the Purchaser's consummation of the Transaction.

K. **Consideration**. The consideration to be provided by the Purchaser to the Debtors pursuant to the Agreement will, upon delivery, constitute reasonably equivalent value or fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and the laws of the United States, any state, territory, possession thereof or the District of Columbia. The Agreement represents a fair and reasonable offer to effectuate the terms of the Transaction under these circumstances. Other than the Purchaser, no other person or entity or group of persons or entities has offered to purchase the Transferred Property for an amount that would provide greater value to the Debtors. The Court's approval of the Motion, the Agreement and the Transaction is in the best interests of the Debtors, their estates, their creditors and all other parties in interest.

L. **Credit Bid**. A portion of the Purchase Price (as defined in the Agreement) under Article II of the Asset Purchase Agreement consists of the Credit Bid and Release. The Credit Bid and Release (i) constitutes a valid, effective and enforceable credit bid pursuant to Bankruptcy Code sections 363(b), 363(k) and 363(n), other applicable law, the DIP Loan Documents and the First Lien Loan Documents (each as defined in the Agreement), (ii) is not subject to avoidance, equitable subordination, defense, offset, counterclaim, recharacterization or recoupment by any party in interest, (iii) is binding on the Debtors, the Debtors' estates, the

6

Creditors' Committee, any trustee or estate representative, and all creditors and parties-in-interest and any of their respective predecessors, successors or assigns; and (iv) is based on legal, valid, enforceable, perfected and non-avoidable liens against the Debtors' assets.

M.  **Prepetition Loan**.  The Debtors are indebted to the lenders (the "Prepetition Lenders") under that certain Amended and Restated Credit Agreement, dated as of April 7, 2006 (as amended, restated, supplemented or otherwise modified from time to time, the "Prepetition Credit Agreement") with Credit Suisse AG, Cayman Islands Branch as Administrative Agent (the "Prepetition Agent") in the aggregate amount as of the Petition Date of not less than (1) $39,668,600.82 in respect of revolving loans made (inclusive of $26,676,231.82 in funded debt and $12,992,369.00 in aggregate face amount of letters of credit issued under the revolver facility), (2) $42,075,505.00 in aggregate face amount in respect of letters of credit issued, and $13,000.00 in outstanding reimbursement obligations, under the synthetic letter of credit facility, (3) $45,453,144.79 in respect of U.S. term loans made, and (4) $59,961,768.74 in respect of Sterling term loans (converted at an exchange rate of 1.6686 USD/GBP as of November 13, 2009) made, in each case, by the Prepetition Lenders pursuant to, and in accordance with the terms of, the Prepetition Credit Agreement and related agreements, plus, in each case, interest thereon and fees (including (w) $954,770.85 in interest and $332,377.01 in fees in respect of the revolving facility, (x) $1,020,454.42 in fees in respect of the synthetic letter of credit facility, (y) $1,626,816.64 in interest under the U.S. term loan, and (z) $1,178,130.13 in interest under the Sterling term loan (converted at an exchange rate of 1.6686 USD/GBP as of November 13, 2009)), expenses (including any attorneys', accountants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the Prepetition Credit Agreement and related agreements), charges and other obligations incurred in connection therewith subject to reduction

7

in the aggregate by the Roll-Up Loans described in ¶N(3) below in the original principal amount

of $40 million (the "Prepetition Loan"), which indebtedness is deemed an allowed prepetition

claim against the Debtors.

N.    **DIP Loan**. The Debtors are indebted to the lenders (the "DIP Lenders") under

that certain Debtor-in-Possession Credit Agreement, dated as of November 15, 2009 (as

amended, restated, supplemented or otherwise modified from time to time, the "DIP Credit

Agreement") with Credit Suisse AG, Cayman Islands Branch as Administrative Agent (the "DIP

Agent") in an aggregate amount not less than (1) $38,000,000 in respect of New Money Loans

(as defined in the Final DIP Order (as defined in the Procedures Order)), (2) $2,000,000 in

respect of DIP LC's (as defined in the Final DIP Order), and (3) $40,796,107.16 in respect of

Roll-Up Loans (as defined in the Final DIP Order), as of February 22, 2010, inclusive of

principal and interest but excluding fees, expenses and certain other amounts due thereunder (the

"DIP Loan"), which indebtedness constitutes, subject to the terms of the Final DIP Order, an

allowed Superpriority Claim of the kind specified in the Final DIP Order.

O.    **Required Lenders**. Pursuant to the DIP Credit Agreement, DIP Lenders holding

more than 50% of the Exposure Amount (as defined in the DIP Credit Agreement) constitute

"Required Lenders" as that term is used in the DIP Credit Agreement (the "DIP Required

Lenders"). Pursuant to the Prepetition Credit Agreement, Prepetition Lenders holding more than

50% of the Exposure Amount (as defined in the Prepetition Credit Agreement) constitute

"Required Lenders" as that term is used in the Prepetition Credit Agreement (the "Prepetition

Required Lenders"). The Credit Bid and Release was made at the direction of (i) various DIP

Lenders who, together, constitute DIP Required Lenders (the "DIP Directing Lenders"), and (ii)

various Prepetition Lenders who, together, constitute Prepetition Required Lenders (the "Prepetition Directing Lenders").

P.   **Authority For Credit Bid**. Section 10.1 of the DIP Credit Agreement expressly authorizes and empowers the DIP Agent to credit bid any or all of the DIP Loan of all of the DIP Lenders on the DIP Lenders' behalf, as may be directed by the DIP Required Lenders. Pursuant to and in accordance with the foregoing authority of the DIP Agent, the DIP Directing Lenders directed the DIP Agent to credit bid the entire amount of the DIP Loan by (other than the DIP Agent's and any letter of credit issuer's expenses (including attorneys fees) accrued and unpaid under the DIP Credit Agreement documents through the Closing) by letter dated February 5, 2010 (the "DIP Direction Letter"). Pursuant to section 3.2 of that certain Eighth Amendment, Consent and Direction to Amended and Restated Credit Agreement, dated as of November 8, 2009, among the Debtors, the Prepetition Agent and the Prepetition Lenders party thereto, the Prepetition Required Lenders authorized and directed the Prepetition Agent to credit bid (or to direct the Collateral Trustee (as defined in the Prepetition Credit Agreement) to credit bid) any and all of the Prepetition Loan of all of the Prepetition Lenders on the Prepetition Lenders' behalf to the extent and under such terms as the Prepetition Agent deemed appropriate. Pursuant to and in accordance with the foregoing authority of the Prepetition Agent, the Prepetition Directing Lenders directed the Prepetition Agent to credit bid the entire amount of the Prepetition Loan (other than the Prepetition Agent's and any letter of credit issuer's expenses (including attorneys fees) accrued and unpaid under the Prepetition Credit Agreement documents through the Closing) by letter dated February 5, 2010 (the "Prepetition Direction Letter" and together with the DIP Direction Letter, the "Direction Letters"). The aggregate consideration being provided to the DIP Lenders and the Prepetition Lenders in consideration for the

9

contribution to the Purchaser of the right to credit bid pursuant to the Direction Letters shall be (A) the issuance to the DIP Lenders, in accordance with the terms and conditions set forth in the Equityholder Arrangements Term Sheet (as defined in the Agreement), of 40% of the initial equity interests in New Holdco (as defined in the Agreement) as consideration for the right to make the Credit Bid and Release (as defined in the Agreement) in respect of the claims under the DIP Credit Agreement with respect to the NM Loans (as defined in the Agreement); and (B) the issuance to the DIP Lenders, in accordance with the terms and conditions set forth in the New Debt Facility Term Sheet (as defined in the Agreement) of $40 million in term loans by the Borrower (as defined in the New Debt Facility Term Sheet) as consideration for the right to make the Credit Bid and Release in respect of the claims under the DIP Credit Agreement with respect to the Roll-Up Loans (as defined in the Agreement) and in respect of claims under the Prepetition Credit Agreement. Neither the DIP Agent nor the Prepetition Agent shall have any obligation to, or be responsible for any claim asserted by, any DIP Lender, any Prepetition Lender or, pursuant to Paragraph 6 below, any other party on account of the submission of any such bid or for taking, or failing to take, any action in connection therewith. The indemnities, exculpations, reimbursements and other protections and limitations of liability contained in the Direction Letters and agreed to by the DIP Directing Lenders and the Prepetition Directing Lenders, on behalf of themselves and the DIP Lenders and the Prepetition Lenders, respectively, are approved and binding to the extent set forth in the Direction Letters. In addition, all indemnities, exculpations, reimbursements and other protections and limitations of liability in favor of the DIP Agent, the Prepetition Agents and/or any letter of credit issuer contained in the DIP Credit Agreement, the Prepetition Credit Agreement or any related document shall survive and continue in full force and effect and remain binding upon each of the Prepetition Lenders

10

and DIP Lenders following the Closing, without defense of any kind by reason of the Credit Bid and Release or the occurrence of the Closing.

Q. **Free and Clear**. The conveyance of the Transferred Property in accordance with the Agreement will be a legal, valid, and effective transfer of such Transferred Property, and, except as otherwise provided in the Agreement, vests or will vest the Purchaser with all right, title, and interest of the Debtors in and to the Transferred Property pursuant to section 363(f) and 365 of the Bankruptcy Code free and clear of all Encumbrances (as defined in the Agreement and to the extent defined in the Agreement), Liens, Claims (as defined in section 101(5) of the Bankruptcy Code), obligations, liabilities, demands, guarantees, options, rights, restrictions, contractual commitments, rights of first refusal, rights of setoff, or interests of any kind or nature that have been, are or could be asserted against the Debtors whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise, (collectively, the "Interests"), including, but not limited to, (i) those that purport to give to any party a right or option to effect a setoff against or any forfeiture, modification or termination of the Debtors' interests in the Transferred Property, or any similar rights, (ii) all Excluded Liabilities, including without limitation, any liability relating to or arising from any Seller Employee Plans of the Debtors (the "Debtor Employee Plans"), except as provided in the Agreement, or any tax liability of the Debtors arising under or out of, in connection with, or in any way relating to the cancellation of debt, (iii) those arising under all mortgages, deeds of trust, security interests, pledges, liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, if any, including, but not limited to, any restriction on the use,

11

voting, transfer, receipt of income or other exercise of any attributes of ownership; and (iv) those

arising in connection with any agreements, acts, or failures to act, of any of the Debtors or any of

the Debtors' predecessors, affiliates, or representatives including, but not limited to, Interests

arising under any bulk-transfer laws, doctrines of successor liability or similar theories. For the

avoidance of doubt, without limiting the effect of the foregoing, the assumption and assignment

of any Assumed Agreement in accordance with this Order are also free and clear of all Interests.

Notwithstanding anything else to the contrary set forth in this paragraph Q, the term "Interests"

shall not include any Permitted Encumbrances, any Assumed Liabilities (as defined in the

Agreement) and any Liens created by or through the Purchaser.

R.   **Free and Clear Findings Required by Purchaser**. The Purchaser represents

that it would not have entered into the Agreement and would not consummate the Transaction,

thus adversely affecting the Debtors, their estates and their creditors, (i) if the Transferred

Property is not being conveyed to the Purchaser free and clear of all Interests of any kind or

nature as set forth in this Order, but subject to the restrictions contained herein, or if the

Purchaser would, or in the future could, be liable for any of the Interests, and (ii) absent the

finding regarding the allowance of the DIP Loan and Prepetition Loan and the liens related

thereto.

S.   **Satisfaction of Section 363(f) Standards**. Pursuant to the terms set forth in the

Agreement, the Debtors may sell their interest in the Transferred Property free and clear of any

Interests of any kind or nature as set forth in this Order because in each instance, one or more of

the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Each

person or entity with any Interest in the Transferred Property: (i) has, subject to the terms and

conditions of this Order, consented to the Transaction, is deemed to have consented to the

12

Transaction, or has had its objections to the Transaction considered and overruled by this Court; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Interest; or (iii) otherwise is subject to the provisions of section 363(f) of the Bankruptcy Code. Those holders of Interests who did not object to the Motion are deemed, subject to the terms of this Order, to have consented to the relief sought in the Motion pursuant to section 363(f)(2) of the Bankruptcy Code.

T. **No Liability Findings Needed by Purchaser**. The Purchaser represents that it will not consummate the Transaction unless the Agreement specifically provides, and the Court specifically orders, that none of the Purchaser Releasees (as defined below) or the Transferred Property will have any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Interest or Excluded Liability.

U. **No Fraudulent Transfer**. The Agreement was not entered into for the purpose of hindering, delaying or defrauding present or future creditors of the Debtors under the Bankruptcy Code and under the laws of the United States, any state, territory, possession thereof, or the District of Columbia. Neither Sellers nor Purchaser are entering into the Transaction contemplated by the Agreement fraudulently for the purpose of such statutory and common law fraudulent conveyance and fraudulent transfer claims.

V. **No Successor Liability**. Except as provided under the Agreement regarding the Assumed Liabilities, the Debtors' conveyance of the Transferred Property to the Purchaser under the Agreement shall not result in the Purchaser Releasees or Transferred Property being subject to any liability or responsibility of any kind (i) for any Interest or other Excluded Liability of any of the Debtors, or (ii) for any Claim against the Debtors or any insider of the Debtors, or (iii) for

13

the satisfaction in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, of any Interest or Excluded Liability of any of the Debtors, or (iv) to third parties or the Debtors, except as is expressly set forth in the Agreement; and, without limiting the effect or scope of the foregoing, the transfer of the Transferred Property from the Debtors to the Purchaser does not and will not subject the Purchaser Releasees or their respective properties (including the Transferred Properties) to any liability or responsibility for Interests against the Debtors or the Debtors' Interests in such Transferred Property by reason of such transfer under the laws of the United States or any state, territory, possession thereof, or the District of Columbia applicable to the Transaction, including, without limitation, any bulk-transfer laws, successor liability or similar theories.

W. **Cure/Adequate Assurance**. The assumption and assignment of the Assumed Agreements, all pursuant to the terms of this Order, are integral to the Agreement, and are in the best interests of the Debtors, their estates, their creditors and all other parties in interest, and represent the reasonable exercise of sound and prudent business judgment by the Debtors. Purchaser has demonstrated adequate assurance of future performance with respect to the Assumed Agreements and has satisfied the requirements of the Bankruptcy Code, including, without limitation, sections 365(b)(1) and 365(1)(2)(B), to the extent applicable. Among other things, the Purchaser's contractual obligation to pay the Cure Amounts pursuant to the terms of the Agreement, and the Purchaser's contractual obligation to perform the obligations, after the Closing, under the Assumed Agreements shall constitute adequate assurance of future performance.

NOW, THEREFORE, IT IS ORDERED THAT:

14

1.     **Motion is Granted.**  The relief requested in the Sale Motion is GRANTED and APPROVED, as set forth herein.

2.     **Objections Overruled.**  Any objections to the entry of this Order or the relief granted herein and requested in the Sale Motion that have not been withdrawn, waived, settled, or otherwise resolved as set forth on the record at the Sale Hearing and/or memorialized pursuant to the terms hereof, if any, hereby are denied and overruled on the merits, with prejudice.

3.     **Approval.**  The Agreement, and all of the terms and conditions thereto, as amended, are approved.  The Debtors and the Purchaser are hereby authorized to (i) perform the Agreement, as amended, and execute and perform any additional instruments or documents that may be reasonably necessary or appropriate to implement the Agreement, as amended, provided that such additional documents do not materially change its terms in a manner adverse to the Debtors; (ii) consummate the Transaction in accordance with the terms and conditions of the Agreement, as amended, and the other agreements contemplated thereby; (iii) assume and assign the Assumed Agreements to Purchaser pursuant to the terms of the Agreement, as amended, and Sale Motion; and (iv) take all other and further actions as may be reasonably necessary to implement the Transaction.  The provisions of this Order authorizing the sale of the Assets free and clear of Interests, except as otherwise set forth in the Agreement or this Order, shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order.  However, the Debtors and the Purchaser, and each of their respective officers, employees and agents are hereby authorized and empowered to take all actions and execute and deliver any and all documents and instruments

that either the Debtors or the Purchaser deem necessary or appropriate to implement and effectuate the terms of the Agreement and this Order.

4. **Valid Transfer.** Upon consummation of the Closing, (i) the Transaction effects a legal, valid, enforceable and effective sale and transfer of the Debtors' interests in Transferred Property to Purchaser, and shall vest Purchaser with title to such Transferred Property free and clear of all Interests of any kind whatsoever, except as expressly provided in this Order and the Agreement, and (ii) the Agreement, the Transaction and any instruments contemplated thereby shall be enforceable against and binding upon, and not subject to rejection or avoidance by, the Debtors or any successor trustee appointed with respect thereto

5. **General Assignment.** Effective as of the Closing, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Debtors' interests in the Transferred Property to the Purchaser. Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Transaction.

6. **Exculpation and Release.** None of the Purchaser, the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders, their respective affiliates, successors and assigns and each of their respective officers, directors, employees, managers, partners, members, financial advisors, attorneys, agents and representatives (collectively, the "Purchaser Releasees") shall have or incur any liability to, or be subject to any action by the Debtors, the Debtors' estates, the Creditors' Committee, any trustee or estate representative, or any of their respective predecessors, successors and assigns, arising out of the negotiation, investigation, preparation,

16

execution, delivery of the Agreement and the entry into and consummation of the Transaction, except as expressly provided in the Agreement, any other Transaction document, and this Order.

7.    **Injunction.** Except as expressly provided in the Agreement or by this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, vendors, suppliers, employees, trade creditors, litigation claimants and other persons, holding Interests of any kind or nature whatsoever against or in the Debtors or the Debtors' interests in the Transferred Property (whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise), including, without limitation, the nondebtor party or parties to each Assumed Agreement, arising under or out of, in connection with, or in any way relating to, the Debtors, the Transferred Property, the operation of the Debtors' businesses before the Closing, before or after the Closing regarding the operation of the Debtors' businesses not subject to the Transaction, or the transfer of the Debtors' interests in the Transferred Property to the Purchaser, including, without limitation, any default existing as of the Closing Date and any objection to the assumption and assignment of the Assumed Agreements, shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing Interests against the Purchaser Releasees, the Transferred Property, or the interests of the Debtors in such Transferred Property. Following the Closing, no holder of an Interest against the Debtors shall interfere with the Purchaser's title to or use and enjoyment of the Debtors' interests in the Transferred Property based on or related to such Interests. For the avoidance of doubt, the foregoing shall not prevent the Debtors, their estates, successors or permitted assigns

17

from enforcing the terms of the Agreement against the Purchaser and/or its successors and assigns.

8. **No Successor Liability.** Except as otherwise set forth in the Agreement and/or this Order, the Purchaser Releasees shall not as a result of the transfer, possession or operation of the Transferred Property: (i) be successors to any of the Debtors or the Debtors' estates by reason of any theory of law or equity; (ii) have, de facto or otherwise, merged or consolidated with or into any of the Debtors or the Debtors' estates; or (iii) be continuation or substantial continuation of any of the Debtors or any enterprise of the Debtors. Except as provided in the Agreement or this Order regarding the Assumed Liabilities, the conveyance of the Debtors' Interest in the Transferred Property to Purchaser under the Agreement shall not result in (i) any Purchaser Releasee or the Transferred Property having any liability or responsibility for any Interest against any of the Debtors or against any insider of the Debtors, (ii) any Purchaser Releasee or the Transferred Property having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Interest or Excluded Liability, including without limitation, any liability relating to or arising from any Debtor Employee Plans, (iii) Purchaser or the Transferred Property, having any liability or responsibility to any of the Debtors or (iv) successor or vicarious liabilities of any kind or character, including, but not limited to, federal, state or other tax liabilities, U.S. or foreign pension liabilities, or liabilities based on any theory of antitrust, environmental, labor law, alter ego, veil piercing, continuity of enterprise, mere continuation, product line, de facto merger or substantial continuity, whether known or unknown, legal or equitable, matured or unrmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these

18

chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise with respect to any of the Debtors or any obligations of the Debtors, including, but not limited to, in the case of liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Debtors' business prior to the Closing or any taxes in connection with, or in any way relating to the cancellation of debt of the Debtors or their affiliates,

9.     **Assumption and Assignment.** Pursuant to Bankruptcy Code sections 105(a), 363 and 365, and subject to, conditioned on, and effective as of the Closing Date, the Debtors' assumption and assignment to the Purchaser of the Assumed Agreements, and the Purchaser's acceptance of such assignments on the terms set forth in the Agreement, are hereby approved. On the Closing Date, the Assumed Agreements, whether entered into or amended before or after the Petition Date, shall be assumed and assigned to the Purchaser, free and clear of all Interests of any kind or nature whatsoever other than the Assumed Liabilities on the terms set forth in the Agreement, and shall remain in full force and effect for the benefit of the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Assumed Agreements (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, limits or conditions such assignment. Debtors are hereby authorized, at Closing to execute and perform under any other agreement executed in connection with the transfer of the Transferred Property to the Purchaser, and to execute and deliver to the Purchaser such documents or other instruments as may be reasonably necessary to assign to Purchaser the Assumed Agreements. The Debtors and their estates shall be relieved of any liability for any breach of any of the Assumed Agreements occurring from and after Closing, pursuant to and in accordance with Bankruptcy Code section 365(k),

19

10. **Payment of Cure Amounts.** In accordance with the allocation of responsibility set forth in the Agreement, the Purchaser shall be obligated to pay or cause to be paid any and all amounts accrued or otherwise owed (collectively, the "Cure Amounts") under any Assumed Agreement, as soon as reasonably practicable on or after Closing in the amount as to which (i) the contracting counterparty consents in writing, (ii) the counterparty is deemed to have consented, or (iii) the Court enters an order determining the Cure Amount. To the extent any Cure Amount has not been either agreed to or remains subject to the entry of a Final Order, the Purchaser retains its rights to exclude such contract or lease as an Assumed Agreement provided that the Purchaser continues to pay all costs incident to the maintenance of such Agreement(s) pending the entry of such Final Order. The Purchaser and Debtors' respective obligations to pay the Cure Amounts, the Purchaser's promise to perform the future obligations under the Assumed Agreements after the Closing, and the evidence of the Purchaser's financial ability to pay the Cure Amounts as set forth on the record at the Sale Hearing constitute adequate assurance of future performance within the meaning of Bankruptcy Code sections 365(b)(1)(C) and 365(f)(2)(B).

11. **Cure Amounts for Assumed Agreements.** As set forth in the Procedures Order, the Cure Amounts with respect to each Assumed Agreement shall be determined in accordance with the Assumption and Assignment Procedures (as defined in Exhibit F to the Bidding Procedures Order) and, upon such determination, shall constitute findings of the Court and shall be final and binding on parties to such Assumed Agreements (and their successors and designees), and shall not be subject to further dispute or audit based on performance prior to the time of assumption and assignment or sublease, irrespective of the terms and conditions of such Assumed Agreements. Upon assumption and assignment of the Assumed Agreements in

20

accordance with the Assumption and Assignment Procedures, each counterparty to an Assumed Agreement shall be forever barred, estopped and permanently enjoined from (i) asserting against the Debtors or the Purchaser, or the property of either of them, any default existing as of Closing; and (ii) imposing or charging against the Purchaser Releasees any accelerations, assignment fees, increases or any other fees as a result of the Debtors' assumption and assignments to Purchaser of the Assumed Agreements. To the extent that any counterparty failed to object to the Cure Amount with respect to an Assumed Agreement in accordance with the Assumption and Assignment Procedures, such counterparty shall be deemed to have consented to the applicable Cure Amount, and the assignments to Purchaser of such Assumed Agreement.

12.    **Wind-Down Provisions.** Pursuant to and in accordance with section 8.1(d) of the Agreement, the Purchaser shall make its employees available to assist the Debtors, at the direction of the Estate Administrator, to satisfy certain functions stipulated in the Agreement during the Wind-Down Period; provided that in no event shall such employees be deemed to be employees of the Debtors during such period. In any and all regards, with regard to the Debtors, the Debtor' estates, creditors, employees and Interest holders, and any trustee or estate representative, the Purchaser Releasees shall, in every regard, have no fiduciary duty, responsibility or other liability, including, but not limited to, any liability arising out of any work performed by, or actions, omissions or otherwise, taken by such employees; provided, that the foregoing shall not be deemed to impair or reduce the enforceability against the Purchaser of the Purchaser's obligations pursuant to section 8.1(d) of the Purchase Agreement.

13.    **Wind-Down Budget.** The Purchaser shall fund, from time to time, through December 31, 2010, an amount of not more than $2,516,000 (the "Wind-Down Cap Amount"),

13814-001\DOCS DE:156585.4
24286435_2.DOC 10

to be used solely to pay post-closing Liabilities of the Sellers consistent with the Wind-Down Budget (the "Wind-Down Liabilities").

14.     **Agent Expense.**  At or before the Closing, all fees and expenses incurred prior to or through the Closing by the Prepetition Agent, the DIP Agent or any letter of credit issuer that are chargeable or reimbursable under the Prepetition Credit Agreement, the DIP Credit Agreement, or the Final DIP Order or otherwise required to be paid by the Direction Letters, as *may be* amended, shall be paid in accordance with the respective terms of such documents in connection with and as a condition precedent to the consummation of the Sale.

15     **Ipso Facto Clauses Ineffective.**  Upon the Debtors' assignment to Purchaser of the Assumed Agreements under the provisions of this Order, including Purchaser satisfaction of all Cure Amounts due in connection with such Agreements, no default by a Debtor or Purchaser shall exist under any Assumed Agreement, and no counterparty to any Assumed Agreement shall be permitted to declare a default by any of the Debtors or Purchaser thereunder or otherwise take action against the Purchaser as a result of any Debtors' financial condition, bankruptcy or failure to perform any of its obligations under the relevant Assumed Agreement prior to the assignment of such Assumed Agreements.  Any provision in an Assumed Agreement that prohibits or conditions the assignment of such Assumed Agreement (including, without limitation, the granting of a lien thereon) or allows the counterparty thereto to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon such assignment or sublease, constitutes an unenforceable anti-assignment provision that is void and of no force and effect as against the Debtors.  The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Assumed Agreement shall not be a

13814-001\DOCS_DE:156585.4
24286435_2.DOC    10

waiver of such terms or conditions, or of the rights of the Debtors or Purchaser to enforce every term and condition of the Assumed Agreement.

16. **Binding Effect of Order.** This Order shall be binding upon and shall govern the acts of all entities, including without limitation all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets. The terms and provisions of the Agreement and this Order shall be binding in all respects upon the Debtors, the Debtors' estates, all creditors of (whether known or unknown) and holders of equity interests in the Debtors and the Purchaser and their respective affiliates, successors and assigns, and any third parties, notwithstanding any subsequent appointment of any trustee of any of the Debtors under any chapter of the Bankruptcy Code.

17. **Sale Free and Clear of Interests.** This Order (i) shall vest the Purchaser with all right, title and interest in the Transferred Property free and clear of any and all Interests, except as otherwise provided in the Agreement or this Order, and (ii) shall be binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of

13814-001\DOCS_DE:156585.4
24286435_2.DOC 10

the Transferred Property of the Debtors. Upon the occurrence of the Closing, the Debtors and

persons holding an Interest in the Transferred Property of the Debtors immediately prior to the

Closing are authorized to execute such documents and take all other actions as may be

reasonably necessary to release their Interests in the Transferred Property of the Debtors, if any,

as such Interests may have been recorded or may otherwise exist.]

18.     **Retention of Jurisdiction.**  This Court retains exclusive jurisdiction to interpret,

construe, implement, and enforce the terms and provisions of, and to resolve any and all disputes

that may arise under or in connection with this Order, all amendments thereto and any waivers

and consents thereunder, including, but not limited to, retaining jurisdiction to (i) compel

delivery of the Transferred Property of the Debtors to Purchaser; (ii) interpret, implement and

enforce the provisions of this Order and any related order; (iii) protect Purchaser Releasees

against any Interests against or in the Debtors or the Transferred Property of any kind or nature

whatsoever, attaching to the proceeds of the Transaction, and (iv) resolve any and all disputes

that may arise under or in connection with the assumption and assignment of any Assumed

Agreement or under the Agreement or the Order, in all respects, and further to hear and

determine any and all disputes among the Sellers, the Sellers' affiliates, the Purchaser or its

affiliates, as the case may be, that may arise in connection with the Excluded Liabilities of the

Debtors.

19.     **Retention of Rights By the Government.**  Nothing in this Order or in the

Agreement (i) releases, nullifies, or enjoins the enforcement of any liability to a governmental

unit of the United States or any state or municipality of the United States under police and

regulatory statutes or regulations that any entity would be subject to as the owner or operator of

property after the date of entry of this Order; or (ii) should be construed to give Purchaser any

24

more protection against any governmental unit of the United States or any state or municipality of the United States than Purchaser is otherwise entitled to under Bankruptcy Code section 363(f). Nothing in this paragraph should be construed to create for any governmental unit any substantive right that does not otherwise exist under law.

20. **No Material Modifications.** The Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court; provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates and has been agreed to between the Debtors and the Purchaser.

21. **Subsequent Orders and Plan Provisions.** Nothing contained in any subsequent order of this Court (including without limitation, an order authorizing the sale of assets pursuant to sections 363, 365 or any other provision of the Bankruptcy Code or any order entered after any conversion of a chapter 11 case of the Debtors to a case under chapter 7 of the Bankruptcy Code) or any chapter 11 plan of reorganization confirmed in any of the Debtors' bankruptcy cases or any order confirming any such plan shall nullify, alter, conflict with or derogate from the provisions of this Order, and the provisions of this Order shall survive and remain in full force and effect.

22. **Failure to Specify Provisions.** The failure specifically to include any particular provisions of the Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

23. **No Stay of Order.** Notwithstanding the provisions of Bankruptcy Rule 6004 and Bankruptcy Rule 6006 or any applicable provisions of the Local Rules, this Order shall not be stayed for fourteen (14) days after the entry hereof, but shall be effective and enforceable immediately upon entry. Time is of the essence in approving the Transaction, and the Debtors and the Purchaser intend to close the Transaction as soon as practicable. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

24. **Inconsistencies with Prior Orders, Pleadings or Agreement.** To the extent this Order is inconsistent with any prior order or pleading with respect to the Motion in these chapter 11 cases, the terms of this Order shall govern. To the extent there is any inconsistency between the terms of this Order and the terms of the Agreement (including all ancillary documents executed in connection therewith), the terms of the Order shall govern.

25. **Approval of Effectuation of Transfer of Certain Star Fleet Assets Pursuant to the Supplement**. Prior to the Closing Date, the Debtors are authorized to: (a)(i) form a wholly owned subsidiary (the "Subsidiary") and (ii) deliver a Name Change Petition (the form of which shall be mutually agreed upon by the Purchaser and the Debtors) to the Federal Motor Carrier Safety Administration (the FMCSA") requesting (A) the approval of the name change for the applicable permits set forth on Schedule 1.9 (the "Interstate Authority Permits") to show the Subsidiary as the holder of the Interstate Authority Permits, and (B) that the name of the applicable Subsidiary be reflected in the FMCSA's records as the holder of the applicable Interstate Authority Permits. Upon the granting of the FMCSA petition, the Debtors shall file a Form MCS 150 with the FMCSA to reflect Subsidiary's name and address with respect to the applicable Interstate Authority Permit.

At the Closing, the Debtors are authorized to transfer all of the equity interests of the Subsidiary to the Purchaser as Purchased Assets (unless the Purchaser previously elected to exclude such Assets on a timely basis pursuant to the terms of the Agreement). For the avoidance of doubt, the Subsidiary is entitled to, and hereby granted, the same rights, benefits and protections as the Purchaser in respect of the Purchased Assets under this Order (provided that the Closing occurs and the Purchaser does not elect to exclude such Subsidiary pursuant to Section 1.8 of the Asset Purchase Agreement). If the closing of the Sale to the Purchaser does not occur, Star Fleet will continue to own the equity in the Subsidiary, and is authorized to reverse the transfers described above, without the need of further order by the Court, unless otherwise determined by the Debtors in the exercise of their business judgment.

This order expressly authorizes the Debtors to transfer permits, licenses and registrations, as to the extent set forth in the Agreement, to the Purchaser, and all federal, state, and local governmental agencies or departments are authorized to rely upon and honor such transfers.

26.     Reservation of Rights Regarding Certain Contracts. Nothing in this Order authorizes or otherwise provides for the assumption, assignment or rejection, in whole or in part, of any contract between the Debtors and Union Pacific Railroad Company ("Union") (the "Union Contracts"). Other than the rights and obligations between the parties to the Agreement, nothing herein or in the Agreement shall affect the rights of any party regarding a Union Contract, all of which such rights of Union are hereby preserved, including without limitation the right to seek, oppose or support (a) any assumption, assignment or rejection of any Union Contract on any legal or factual basis, (b) adequate assurance of future performance, (c) the estimating or assertion of any proposed cure amount, (d) the assumption by the Purchaser of all

27

obligations and liabilities under any Union Contract by virtue of the assumption and assignment

of the Union Contract under Section 365 and other applicable law, including contingent,

unmatured, or unliquidated claims and whether such claims arise or arose pre- or post-closing,

and (e) adequate assurance for payment of such contingent, unmatured, or unliquidated claims.

Nothing in this Order or the Agreement shall prejudice, estop, bar, impair or otherwise limit in

any respect any party's rights under Section 365 of the Bankruptcy code with respect to the

Union Contracts. *notwithstanding anything to the contrary in this Order or the Agreement,*

27.     Ordered that for the avoidance of doubt, Western Showcase Homes, Inc. and

Western Showcase ~~Homes~~ Buyers Group, LLC ~~("Western Showcase")~~ and Country Hills Homes

Sales Inc. ~~("Country Hills")~~ retain (i) all set off and recoupment rights, if any, subject to all

defenses thereto, and (ii) all rights to any applicable insurance that is transferred to the

Purchaser, subject to all defenses thereto.

Dated: Wilmington, Delaware
       March 2, 2010

_____
The Honorable Kevin Gross
United States Bankruptcy Judge

28.) *Notwithstanding anything contained herein to the contrary, no finding of fact or conclusion of law contained in this Order, shall be construed to impair or affect in any manner, and shall be without prejudice to, the rights, allegations, claims, causes of action and other allegations asserted in the Complaint filed by the Committee in adversary proceeding 10—50504, as may be amended from time to time to the extent permitted by the Court and the Federal Rules of Bankruptcy Procedure (the "Complaint") or shall affect or cause any release or satisfaction of any claims in such Complaint, Except for the purpose posited in this paragraph, the Findings and Conclusions shall be applicable in all regards.*