IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CEI LIQUIDATION ESTATE, et al.[1] | ) | Case No. 09-14019 (KG) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**Objection Deadline: October 19, 2010, at 4:00 p.m. (prevailing Eastern time)**
**Hearing: October 26, 2010, at 2:00 p.m. (prevailing Eastern time)**

## MOTION FOR AN ORDER AUTHORIZING DEBTORS TO LIQUIDATE PREPETITION 401(K) PLAN AND PROCESS ROLLOVER OF PLAN FUNDS

The above-captioned debtors and debtors in possession (the "Debtors") hereby move (the "Motion") the Court for the entry of an order authorizing the Debtors to liquidate that certain *Champion Enterprises Inc. Savings Plan*, Plan No. 54686 (the "401(k) Plan") and to process the rollover of remaining plan funds into individual retirement accounts ("IRAs") for the benefit of former employees who are current beneficiaries under the 401(k) Plan.

### Jurisdiction and Venue

1. The Court has jurisdiction over this Motion under 28 U.S.C. §1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (L), and (O).

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: RH Liquidation Estate (f/k/a Redman Homes, Inc. (4957)); CEI Liquidation Estate (f/k/a Champion Enterprises, Inc. (3168)); CHBC Liquidation Estate (f/k/a Champion Home Builders Co. (4984)); NEBSI Liquidation Estate (f/k/a New Era Building Systems, Inc. (0928)); NAHC Liquidation Estate (f/k/a/ North American Housing Corp. (1097)); Homes of Merit, Inc. (8488); WHC Liquidation Estate (f/k/a Western Homes Corporation (6910)); SFI Liquidation Estate (f/k/a Star Fleet, Inc. (0506)); CEMC Liquidation Estate (f/k/a Champion Enterprises Management Co. (6726)); CRI Liquidation Estate (f/k/a Champion Retail, Inc. (2154)); SJAHI Liquidation Estate (f/k/a San Jose Advantage Homes, Inc. (1951)); HAC Liquidation Estate (f/k/a Highland Acquisition Corp. (8962)); HMCLLC Liquidation Estate (f/k/a Highland Manufacturing Company LLC (6762)); SSH Liquidating Corp. (6678); CHBI (f/k/a Champion Homes of Boaz, Inc. (3165)); Iseman Corp. (5899); MHCDC, LLC (3417); HomePride Finance Corp. (4767); and CDC Liquidation Estate (f/k/a Champion Development Corp. (4642)). The address for all Debtors is 3520 Lakeview Drive, Algonquin, IL 60102.

2.  Venue of the Debtors' chapter 11 cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  Section 1121(d) of the Bankruptcy Code provides the basis for the relief requested herein.

## Background

4.  On November 15, 2009 (the "Petition Date"), the Debtors commenced these cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in the Debtors' chapter 11 cases.

5.  Prior to the sale of substantially all of their assets (as described in further detail below), the Debtors and their non-debtor affiliates were leading producers of manufactured and modular housing, as well as modular buildings for government and commercial applications. The Debtors distributed these products through independent retailers, builders and developers. In addition to their manufacturing operations, the Debtors also sold manufactured homes directly to certain manufactured home parks in California and transported manufactured homes, recreational vehicles and a variety of other products, from manufacturing factories to retailers.

6.  The factual background relating to the Debtors' commencement of these chapter 11 cases is set forth in detail in the *Declaration of Phyllis Knight, Chief Financial Officer of the Debtors, in Support of First Day Motions*, filed on the Petition Date.

7. On January 15, 2010, the Debtors filed the *Debtors' Motion for an Order: (I) Approving Asset Purchase Agreement and Authorizing the Sale of Assets Outside the Ordinary Course of Business, (II) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests Pursuant to Sections 363(b), (f) and (m) of the Bankruptcy Code; (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief* (the "Sale Motion") [Docket No. 273]. The Court entered an order approving the Sale Motion (the "Sale Order") on March 2, 2010 [Docket No. 517].

8. The closing of the sale which was the subject of the Sale Motion (the "Sale") occurred on March 19, 2010 (the "Sale Closing Date").

9. Pursuant to the Sale Order, the Buyer hired substantially all of the Debtors' employees employed as of the Sale Closing Date and assumed all obligations in connection with such hired employees. Thus, as of the Sale Closing Date, the Debtors no longer maintained any employees.

10. On March 31, 2010, the Debtors filed the *Debtors' Motion for an Order Pursuant to 11 U.S.C. §363(b) Employing Jack B. Fishman as Estate Administrator nunc pro tunc to March 19, 2010* (the "Fishman Application") [Docket No. 610]. The Court approved the Fishman Application on April 20, 2010 [Docket No. 656] and authorized the employment of Jack B. Fishman as estate administrator (the "Estate Administrator").

11. On May 13, 2010, the Court granted the Debtors' request to change their corporate names and to change the caption for these cases. [Docket No. 731].

12. On September 22, 2010, the Debtors filed the *Debtors' Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 962] and their *Disclosure Statement Describing Debtors' Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 963] (the "Disclosure Statement"). A hearing to consider approval of the Disclosure Statement is currently set for October 26, 2010, at 2:00 p.m.

### Relief Requested

13. By this Motion, the Debtors seek authority to authorize the Estate Administrator, on behalf of the Debtors, to wind down and liquidate the Plan, transfer any remaining participant balances currently on deposit in the 401(k) Plan to appropriate third party administrators (for deposit into IRAs) and take other actions that may be necessary to effectuate the termination of the 401(k) Plan, all as described more fully below.

### Termination of 401(k) Plan

14. Prior to the Petition Date, the 401(k) Plan was administered by the members of the Champion Enterprises Employee Benefits Administrative Committee (the "Committee"). The 401(k) Plan was not assumed and assigned to the Buyer as part of the Sale. Hence, prior to the Sale Closing Date, on March 18, 2010, the Committee adopted a resolution to terminate the 401(k) Plan (and all then current participants in the 401(k) Plan were 100% vested in their balances in the plan). The members of the Committee also resigned their positions effective on the Sale Closing Date.

15. Subsequently, the trustee of the 401(k) Plan, Fidelity Management Trust Company ("Fidelity" or "Plan Trustee") mailed a notice to all plan participants informing them of the termination of the 401(k) Plan. This notice also informed participants in the 401(k) Plan

of their option to take either a cash distribution from the plan or make a voluntary elective transfer of their plan balance to other qualified retirements plans (such as an IRA or another 401(k) plan, including a new 401(k) plan to be established by the Buyer).

16. Most of the participants in the 401(k) Plan have given instructions to Fidelity for the disposition of their funds. Approximately 169 participants, however, have not yet instructed the Plan Trustee regarding the disposition of their plan balances. Some of these participants do not have valid, correct address on file.

17. The Plan Trustee requires instructions from the Estate Administrator with respect to the disposition of these stranded accounts. The members of the Committee have resigned; hence, there is no longer an authorized representative of the 401(k) Plan to effectuate the wind down and administration of the plan, including by directing the Plan Trustee to transfer the remaining funds out of the 401(k) Plan and open up rollover IRAs with third-party administrators on behalf of the beneficiaries of the plan (each, a "Plan Beneficiary" and, together, the "Plan Beneficiaries").

18. Fidelity will continue to accept withdrawal or voluntary transfer requests from the approximately 169 Plan Beneficiaries who have not yet given instructions with respect to the disposition of their existing plan balances. However, because of the minimum time need to process the rollover of these account balances, and in order to complete the liquidation of the 401(k) Plan by the end of 2010, all withdrawal or voluntary transfer requests from the Plan Beneficiaries must be received by Fidelity by November 10, 2010 (the "Transfer Deadline").

## Rollover of 401(k) Plan Balances

19. Fidelity is willing to accept rollovers of plan balances into individual retirement accounts in those instances where (a) the Plan Beneficiary has maintained a valid, active address on file, and (b) the Plan Beneficiary's balance exceeds $5,000. Accordingly, at the written direction of the Estate Administrator, Fidelity will open an individual rollover IRA for the benefit of each such Plan Beneficiary. The plan accounts for all other Plan Beneficiaries will be moved to a third party administrator, Millennium Trust ("Millennium").

20. Fidelity will not open rollover IRAs for Plan Beneficiaries with (i) invalid addresses, or (ii) balances under $5,000. Instead, at the written direction of the Estate Administrator, Millennium will open an individual rollover IRA for the benefit of these Plan Beneficiaries. The Estate Administrator must first sign the *Automatic Rollover Services Agreement* (the "Millennium Agreement") required by Millennium in order to open the rollover accounts for these beneficiaries.[2] Fidelity will then provide Millennium with the relevant indicative data for these accounts necessary for Millennium to open the new IRAs, wire Millennium the total aggregate account balance for these beneficiaries, and provide a breakdown of each beneficiary's account balance for deposit into each IRA. Millennium will contract with an outside vendor to conduct a series of searches to locate the beneficiaries with invalid addresses in an attempt to ascertain their correct address. Millenium will otherwise hold the transferred plan balances in IRAs until such time as the beneficiary is located and provides appropriate instructions for the disposition of the account. The services fees and costs of maintaining these IRAs will be deducted from the individual account balances.

---

[2] A copy of the Millennium Agreement is attached hereto as **Exhibit A**.

21. It appears that two of the beneficiaries of the 401(k) Plan are deceased. At the direction of the Estate Administrator, Fidelity will transfer the funds in these accounts to Millennium for deposit into custodial accounts on behalf of these beneficiaries pending instructions from their respective heirs or estates.

### Payment of Plan Expenses

22. Generally, there are two types of expenses paid with respect to the 401(k) Plan: expenses payable by the 401(k) Plan itself and expenses that are deducted from the accounts of the individual Plan Beneficiary's accounts. Fees and expenses that relate to the general administration of the 401(k) Plan, including administrative and recordkeeping fees owed to Fidelity, as well as legal, accounting and auditor fees, and paid by the 401(k) Plan (the "Plan Fees"). Presently, the sources of payment of Plan Fees are a suspense account, which has a current balance of $9,204.23, and a forfeiture account, which has a current balance of $2,450.56. At the time of the final liquidation of the 401(k) Plan, Fidelity will submit an invoice for its final charges which will then be satisfied by deduction from these accounts. The Estate Administrator can also pre-bill the 401(k) Plan for other wind down expenses (such as a final audit of the Plan, or the attorneys' fees associated with this Motion), and such amounts can also then be paid from the remaining funds in the suspense or forfeiture accounts.

23. Other fees are not chargeable to the 401(k) Plan and are charged to the Plan Beneficiary's account directly. Fidelity and Millennium will charge fees to the individual Plan Beneficiary, including fees attributable to tracking down Plan Beneficiaries with undeliverable addresses, and other costs identified in Fidelity's applicable service agreement or the Millennium Agreement.

## Basis for Relief

24. The relief requested herein is authorized by section 105(a) of the Bankruptcy Code, which provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The purpose of Bankruptcy Code section 105(a) is "to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 Collier on Bankruptcy ¶ 105.01, at 105-06 (15th ed. Rev. 2005). Thus, section 105 essentially codifies the bankruptcy court's inherent equitable powers. *See Management Tech. Corp. v. Pardo (In re Management Tech. Corp)*, 56 B.R. 337, 339 (Bankr. D. N. J. 1985) (indicating that court's equitable powers are derived from section 105).

25. Authority to wind down the 401(k) Plan, effectuate the rollover of 401(k) Plan balances to IRAs at Fidelity and Millennium, and reimburse the Plan Expenses are all in the best interest of the estates because they will allow the Debtors to fully administer the 401(k) Plan. The relief requested in this Motion will also benefit the Plan Beneficiaries, who will have access to their funds through the opening of new IRAs at Fidelity and Millennium while the Estate Administrator is still in place to effectuate the necessary transfers. Finally, as noted above, under the terms of the 401(k) Plan, all Plan Expenses can be paid from remaining suspense and forfeiture accounts in the 401(k) Plan.

## Notice

26. Notice of this Motion has been given to: (a) the Office of the United States Trustee; (b) counsel to the Committee; (c) those persons who have requested notice pursuant to

Rule 2002 of the Federal Rules of Bankruptcy Procedure; and (d) Fidelity. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

27. No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order granting the Motion and granting such other relief as may be fair and equitable.

Dated: October 5, 2010

PACHULSKI STANG ZIEHL & JONES LLP

*[signature]*

Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
James E. O'Neill (Bar No. 4042)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
dbertenthal@pszjlaw.com
joneill@pszjlaw.com
tcairns@pszjlaw.com

Counsel for Debtors and Debtors in Possession