# Exhibit A



820 Jorie Blvd. Suite 420
Oak Brook, IL. 60523
630.368.5675 Telephone
630.368.5699 Fax

www.mtrustcompany.com

# AUTOMATIC ROLLOVER SERVICES AGREEMENT

TPA:

This Automatic Rollover Services Agreement ("Agreement") by and between Millennium Trust Company, LLC, an Illinois limited liability company ("Custodian"), and ("Plan Fiduciary")

which is the Plan Sponsor or the Plan Administrator (as that term is defined in Section 3(16) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") of the ("Plan")

The Agreement is effective as of .
As used in this Agreement the term Plan also refers to each plan listed on an attached Exhibit A or added to the Agreement by the Plan Fiduciary upon written notice to the Custodian.

**1. Purpose** The Plan provides for (a) involuntary distributions of small amounts if an ongoing plan, or (b) the distribution of a participant's entire interest if the Plan is a terminated plan, provided that in either case the Plan participant may elect to have such distribution paid directly to an eligible retirement plan in a direct rollover or to receive the distribution directly in accordance with the terms of the Plan (a "Participant Election"). The Plan Fiduciary has selected the Custodian and the Custodian has agreed to provide services related to automatic rollover distributions from the Plan to individual retirement accounts ("IRAs") sponsored by the Custodian as provided in this Agreement for participants who have not made a Participant Election. The adoption of this Agreement is intended by the Plan Fiduciary to satisfy applicable fiduciary responsibility and other provisions of ERISA, the Code of Federal Regulations and the Internal Revenue Code of 1986, as amended, ("Code").

**2. Scope of Agreement** This Agreement sets forth the terms and conditions by which the Custodian agrees to provide and the Plan Fiduciary agrees to secure from the Custodian services related to automatic rollovers from the Plan to the IRAs.

**3. Plan Fiduciary Responsibilities** The Plan Fiduciary shall direct the Custodian to open IRAs to receive automatic rollover distributions from the Plan on behalf of former participants in the Plan who did not submit a Participant Election. Direction from the Plan Fiduciary shall be made by an individual authorized to act for the Plan Fiduciary, and shall include:

(a) The information requested by the Custodian as necessary to establish an IRA for each former Plan participant ("Account Opening Information").

(b) Information on the amount of the distribution, including, if applicable, and providing the Custodian has specifically agreed to accept in-kind distributions from the Plan, an asset description and valuation of any in-kind distributions, from the most recent records of the Plan.

(c) The Plan Fiduciary shall identify to the Custodian each Plan that has been terminated or that is in the process of termination. The Custodian shall treat each Plan not so identified as an ongoing plan. The Plan Fiduciary shall identify each Plan that includes Roth 401(k) accounts to the Custodian as such. The Custodian shall treat each Plan not so identified as not including Roth 401(k) accounts. For rollovers from Roth 401(k) accounts, the Plan Fiduciary shall identify (i) any distribution to the Custodian for a rollover IRA which is a qualified distribution under holding rules of the Code and Laws (as defined in Section 8) applicable to Roth 401(k) distributions (ii) for distributions that are not qualified distributions under such holding rules, the date of the terminated participant's initial contribution to the Roth 401(k) account under the Plan and (iii) any portion of the rollover which is to be placed into a separate Traditional IRA.

The Plan Fiduciary shall provide additional information and data as shall be reasonably requested by the Custodian, regarding the former Plan participants for whom the Custodian is being directed to open an IRA. The Account opening information, other information and the funds to be placed in each IRA shall be delivered to the Custodian as provided in Section 10.

**4. Custodian Responsibilities** Upon receipt of directions from the Plan Fiduciary or its authorized agent, including the Account Opening Information and the funds for the account, the Custodian will open an IRA on behalf of each identified former participant based upon the information provided. The Custodian shall have no responsibility to ascertain whether any direction received by the Custodian is in compliance with the terms of the Plan or applicable Laws. The Custodian shall not be liable for any action taken by it in good faith made in accordance with any direction from the Plan Fiduciary, or its authorized agent. The Custodian will not confirm receipt of information to open the IRA, but will advise the Plan Fiduciary or its authorized agent of information needed to proceed. Once funds and all necessary Account Opening Information are received, the Custodian relying on such directions of the Plan Fiduciary or its authorized agents will open the IRA.

Upon opening the IRA account, the Custodian will provide the following information to the individual for whom the direct rollover is made ("Account Owner") in accordance with the notification and other applicable requirements of the Code and other applicable rules, laws, Department of Labor regulations and Field Assistance Bulletins, and other regulations (collectively "Laws"):

(a) An Adoption Agreement completed with the Account Opening Information as provided by the Plan Fiduciary or its authorized agent, including an IRA Fee Schedule; and

(b) An Automatic Rollover Traditional Individual Retirement or Roth Custodial Account Agreement, as applicable ("Custodial Agreement"); and

(c) A Disclosure Statement - Automatic Rollover IRA ("Disclosure Statement").



ARP-008

05-10

The Custodian's Adoption Agreement, Custodial Agreement and Disclosure Statement (collectively the "IRA Agreements") are available to the Plan Fiduciary upon request.

The Custodian will update the IRA information with any corrected or updated information as provided by the Account Owner from time to time. The Custodian shall have no obligation to verify the accuracy of the information as provided by the Plan Fiduciary or its authorized agent or the Account Owner. Where the Opening Account Information does not provide a current accurate address for the Account Owner, Custodian will attempt to locate Account Owner pursuant to its standard policies and procedures.

The Custodian retains the right to reject any proposed rollover IRA by returning the funds and assets earmarked for any potential Account Owner to the Plan Fiduciary or its authorized agent. If after attempting to set up a rollover IRA for an individual, it is discovered that the individual died prior to the establishment of the IRA, the parties hereto recognize and agree that the funds/assets supplied for such rollover IRA, remain assets of the Plan. After being notified of the prior death of such individual, the Plan Fiduciary may direct the Custodian to distribute such funds/assets pursuant to the provisions of the Plan and the applicable beneficiary designation and such direction will authorize the Custodian to act as an agent for the Plan Fiduciary. The Custodian may return such funds/assets to the Plan Fiduciary if either (a) the Plan Fiduciary does not provide such distribution directions or (b) the Custodian chooses not to act in regards to the distribution of such funds/assets.

**5. IRA** The IRA to be established by the Custodian for each automatic rollover distribution from the Plan shall be a Traditional IRA unless the proceeds are from an account identified as a Roth 401(k) account pursuant to Section 3 (c) above, and are not specifically directed into a Traditional IRA pursuant to Section 3 (c) (iii), in which case a Roth IRA shall be established. The Custodial Agreement will be between the Custodian and the Account Owner, and its terms will be fully enforceable by the Account Owner.

**6. Initial Investment of IRA** As described in the Custodial Agreement, the IRA proceeds shall be invested in an FDIC Insured Bank Money Market Demand Account. After such initial investment, the Account Owner will have discretion to designate the investment of the IRA.

**7. Fees and Expenses** The Fee Schedule applicable to the IRA may be amended by the Custodian in its sole discretion from time to time, and shall be changed as described in the Custodial Agreement.

**8. Representations and Warranties** The Plan Fiduciary represents and warrants:

(a) This Agreement has been duly authorized, executed and delivered by the Plan Fiduciary and constitutes a valid and binding agreement of the Plan Fiduciary and the Plan. To the best of the Plan Fiduciary's knowledge, neither the execution and delivery of this Agreement nor the transaction contemplated hereby, will result in any breach of any charter, bylaw, partnership agreement, order, or Laws, to which the Plan Fiduciary or Plan is a party or if otherwise applicable to the Plan Fiduciary or Plan.

(b) The Plan is intended to be either (a) a tax-qualified retirement plan, (b) a 403(b) plan subject to ERISA, (c) a 403(b) plan of a church or a governmental entity exempt from ERISA or (d) 457(b) governmental plan exempt from ERISA. The Plan Fiduciary has no reason to believe that the Plan would not be treated as a tax-qualified Plan and the Plan Fiduciary has no reason to believe that the Plan would not satisfy the applicable requirements of the Code.

(c) Any automatic rollover distribution made to the Custodian shall be made pursuant to the terms of the Plan, the Code and applicable Laws.

(d) The Account Opening Information provided to the Custodian is the most recent and accurate information available to the Plan and the Plan Fiduciary or employer.

(e) The Plan Fiduciary has taken all steps necessary in order that the Custodian may open the IRAs based solely upon the Opening Account Information. To the extent such compliance is appropriate, the Plan Fiduciary has taken or will take all steps necessary to ensure that the establishment of the IRAs satisfies the safe harbor requirements for an automatic rollover contribution as described in Title 29 of the Code of Federal Regulations Sections 2550.404a-2 and 404a-3 and Section 401(a) (31) (B) of the Code as applicable and any successor provisions or additional regulatory guidance or Laws that may govern the Plan Fiduciary's responsibilities with respect to opening IRAs hereunder for ongoing and terminated Plans (collectively the "Safe Harbor").

(f) The information provided to the Custodian pursuant to Section 3 (c) of this Agreement is true and correct.

(g) The Plan Fiduciary has relied on its own legal counsel or other tax/employee benefit professionals for advice in taking actions under the Plan, taking actions to meet the Safe Harbor Requirements and in executing this Agreement.

The Custodian represents and warrants:

(h) This Agreement has been duly authorized, executed and delivered by the Custodian and constitutes a valid and binding agreement of the Custodian. Neither the execution nor delivery of this Agreement nor the transaction contemplated hereby will result in any breach of any charter, bylaw, partnership agreement, order, Law, rule or regulation to which the Custodian is a party or otherwise applicable to the Custodian.

(i) Each IRA is intended to be a Traditional IRA account or a Roth IRA account under the Code, as applicable.

(j) The IRA Agreements will conform to the requirements of the Code and Laws as applicable to such rollover IRAs. The IRA Agreements may contain additional information and provisions as determined by the Custodian and may be modified by the Custodian from time to time in its sole discretion so long as the modified form continues to qualify under the then requirements for an IRA.

(k) The IRA fees and expenses on these rollover IRAs shall at all times be comparable to fees and expenses for similar IRAs provided by the Custodian in circumstances other than automatic rollover contributions.

(l) The IRAs and the services provided under this Agreement are designed to satisfy applicable Safe Harbor requirements for such automatic rollovers from the Plans to the IRAs. Qualifying under such Safe Harbor requirements requires certain actions be taken by the Plan Fiduciary.

Except as expressly set forth in this Agreement, the Custodian makes no representations or warranties and specifically disclaims all other representations or warranties, expressed or implied, including, without limitation, any implied warranties of merchantability and fitness for a particular purpose.

**9. Confidentiality** The Plan Fiduciary and the Custodian agree that all confidential information, including all Account Owner information, communicated to each other during the term of this Agreement shall be received in strict confidence, will be used only for the purposes of this Agreement, and no such information will be disclosed to third parties by the recipient party, its employees or its agents without the prior written consent of the other party except the Plan Fiduciary and Custodian may each share with its respective vendors and agents such confidential information as required for those vendors or agents to carry out their responsibilities with regard to services involving this Agreement and the IRAs. Each party agrees to take all reasonable precautions to prevent the disclosure to other third parties of such information, including without limitation, the provisions of this Agreement and all of the IRA Agreements except as expressly provided herein or as may be necessary by reason of legal, accounting or regulatory requirements.

These confidentiality provisions survive the expiration or termination of this Agreement and continue for so long as either party is in possession of data or information protected hereunder. Notwithstanding anything herein to the contrary, neither party will be bound under these confidentiality terms to the extent that it acts under the compulsion of law, court order, or in accordance with the requirements of any applicable law.

**10. Computerized Data and Funding Requirements** The Plan Fiduciary or its authorized agent will provide the Custodian electronic files identifying the individual for whom rollovers are made in a format agreed to by the Custodian. Funds transferred for rollover accounts will be aggregated and, unless otherwise consented to by the Custodian in writing, will be sent from the Plan to the Custodian via wire transfer. The transfer of the electronic files and corresponding rollover amounts will serve as evidence of the Plan Fiduciary's direction to establish the IRA for the Account Owners. The Plan Fiduciary will use best practices to avoid introducing any viruses into the Custodian's systems by such electronic files. It is the responsibility of the Plan Fiduciary or its authorized agent to encrypt such electronic files to the extent and in a manner which the Plan Fiduciary considers necessary to protect the confidentiality of the information contained therein.

**11. Authorized Parties** In addition to the directions provided by the electronic files pursuant to Section 10 of this Agreement, the Plan Fiduciary or its authorized agent may direct the Custodian to act upon directions of certain identified individuals; provided that the Custodian may act upon the directions, written or oral, by telephone, mail or e-mail, of any individual which Custodian reasonably believes is authorized to act on behalf of the Plan Fiduciary or its authorized agent. The Custodian in relying on the directions received and reasonably believed to be from authorized individuals shall be fully indemnified by the Plan Fiduciary and be without liability to the Plan, the Plan Fiduciary, the Account Owner or any other party for any action taken or omitted by it in reliance upon such directions.

**12. Third Party Agreements** The Plan Fiduciary is responsible for obtaining and providing the delivery of information and funds between the Plan Fiduciary, the Plan and the Custodian as contemplated by this Agreement.

**13. Limitation of Liability** Regardless of whether the Plan is ongoing or has been terminated, the Plan Fiduciary will indemnify and hold the Custodian harmless from any and all liability, claims, damages, costs or expenses (including reasonable attorneys' fees) (collectively "Damages") arising from or claimed to have arisen from (1) the performance or non-performance of this Agreement, including without limitation, the terms of the applicable Adoption Agreement, Custodial Agreement and Disclosure Statement, except Damages arising from the Custodian's negligence, (2) a violation of the Plan or Law governing the Plan, or the Code or the Laws, (3) inaccurate information provided by the Plan Fiduciary or its authorized agent about the Account Owner, the Plan, or the assets transferred to the IRA, (4) any actions of the Custodian, or failures of the Custodian to act, in reliance upon the information provided by the Plan Fiduciary or its authorized agent, (5) the failure, or breach of any of the Plan Fiduciary's representations or warranties and (6) any acts or omissions of the Plan Fiduciary, the agents of the Plan Fiduciary or any fiduciary under the Plan.

In no event shall the terms of the Plan, either expressly or by implication, be deemed to impose upon the Custodian any power or responsibility other than those set forth in this Agreement. The Custodian may assume until advised to the contrary that the Plan and the trust funding the Plan are (were, if terminated) qualified under Section 401(a) of the Code and exempt from taxation under Section 501(a) of the Code, or under corresponding provisions of subsequent federal tax laws, or, if applicable, that the Plan is a 403(b) or 457(b) retirement plan exempt from taxation as provided under Sections 403(b) or 457(b) of the Code, as applicable.

Nothing in this Agreement is intended to make the Custodian a sponsor or administrator of the Plan and, to the contrary, the intent of the parties is that the Custodian is not a fiduciary of the Plan under ERISA, the Code or any other applicable Laws.

The Custodian shall have no responsibility to determine whether distributions from the Plan comply with the provisions of the Plan, the Code, or ERISA, as applicable, and shall have no responsibility to pay funds to individuals pursuant to the terms of the Plan.

Notwithstanding any other provisions of this Agreement to the contrary, in no event shall the Custodian be liable for any incidental or consequential damages of any nature.

The terms of these limitations on liability shall survive the termination of this Agreement.

**14. Arbitration** Disputes between the parties to this Agreement shall first be submitted to private binding arbitration at the demand of either party in Chicago, Illinois. In any arbitration, each party shall appoint one person who is not in its employ or under contract with it to serve as arbitrator, and the two arbitrators shall name a third arbitrator. Except as otherwise agreed by the parties, the Arbitration Rules of the American Arbitration Association shall apply to the arbitration proceeding. The parties agree that no court action shall be taken by either party prior to arbitration, and the majority decision of the arbitration panel shall be binding on both parties and in any subsequent action in court.

**15. Term** This Agreement is effective as of the date indicated in the first paragraph hereof and shall continue in full force and effect until terminated. This Agreement may be terminated by

the Plan Fiduciary or the Custodian at any time upon sixty (60) days' written notice. Termination shall not effect any IRA previously established pursuant to this Agreement.

**16. Governing Law** This Agreement shall be governed by and construed in accordance with and enforced pursuant to the laws of the State of Illinois to the extent not preempted by controlling federal law. The Plan Fiduciary hereby submits to the jurisdiction of the courts located in the State of Illinois.

**17. Force Majeure** The Custodian shall not be responsible for any default or delay in performance, or non-performance, of any obligation hereunder to the extent the same is due to forces beyond its reasonable control, including, but not limited to, delays, errors or interruptions caused by the Plan Fiduciary, a TPA, other third parties, industrial, judicial, governmental, civil or military action, wars, acts of terrorism, insurrection or revolution, labor disputes, fires, storms, earthquakes, floods or elements of nature, nuclear fusion, fission or radiation, failure or fluctuation in electrical power, heat, light, air conditioning or telecommunications equipment, acts of God or any other cause beyond the reasonable control of the Custodian.

**18. Notices** Any written notice required to be given pursuant to the terms and provisions hereof, will be deemed effective on the date of receipt and may be sent by United States postal service first class mail, postage prepaid, facsimile with confirmation of receipt, overnight delivery service, or by certified or registered mail, return receipt requested to:

Custodian:
Millennium Trust Company, LLC
820 Jorie Blvd., Suite 420
Oak Brook, IL. 60523
E-mail: tdunne@mtrustcompany.com
Attn.: Terrence W. Dunne
630.368.5675

A Party may change its address by written notice to the other Party and to the TPA named above, if any. Either the TPA or the Plan Fiduciary may provide the Custodian with a change of address for the TPA.

**19. Successors and Assigns** Either party may assign or transfer this Agreement, or any of its rights and obligations under it upon written notice to the other party, provided the assignee agrees in writing to the obligations of the assigning party set forth in this Agreement.

**20. Amendments** This Agreement may be amended from time to time by the Custodian upon written notice to the Plan Fiduciary. The Plan Fiduciary shall be bound by any amendment to this Agreement, unless a written notice of objection to such amendment is received by the Custodian within 30 days of the date the notice of such amendment was sent.

**21. Severability** If any provision of this Agreement is held by a court of competent jurisdiction to be invalid or unenforceable, the remaining provisions will continue to be fully effective, provided that both parties will exercise their best efforts in good faith to replace by mutual agreement any such invalid or unenforceable provision that in the opinion of either party materially affects their position under the Agreement.

**22. Headings** The headings in this Agreement are inserted for convenience of reference only and are not to be considered in the construction of its provisions.

**23. Counterparts** This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and the counterparts shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date in the first paragraph hereof.

☐ **Active Plan**   OR   ☐ **Terminated Plan**

Plan Fiduciary: _____
Address: _____
_____
E-mail: _____
Phone: _____
Attn.: _____

TPA (For information purposes only):
_____
Address: _____
_____
E-mail: _____
Phone: _____
Attn.: _____

Plan Fiduciary

Signature: _____
Print Name: _____
Title: _____   Date: _____

Accepted by:
Millennium Trust Company, LLC

Signature: *Terry Dunne*
Title:  SVP, Automatic Rollovers