IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CEI LIQUIDATION ESTATE, *et al.*[1] | ) | Case No. 09-14019 (KG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

---

## DEBTORS' SECOND AMENDED JOINT PLAN OF LIQUIDATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

---

Dated:  November 16, 2010

Counsel for Debtors and Debtors in Possession:

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (DE Bar No. 2436)
Henry C. Kevane (CA Bar No. 125757)
David M. Bertenthal (CA Bar No. 167624)
Timothy P. Cairns (Bar No. 4228)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
Telephone:  302-652-4100
Facsimile:  302-652-4400

Email: ljones@pszjlaw.com
        hkevane@pszjlaw.com
        dbertenthal@pszjlaw.com
        tcairns@pszjlaw.com

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: RH Liquidation Estate (f/k/a Redman Homes, Inc. (4957)); CEI Liquidation Estate (f/k/a Champion Enterprises, Inc. (3168)); CHBC Liquidation Estate (f/k/a Champion Home Builders Co. (4984)); NEBSI Liquidation Estate (f/k/a New Era Building Systems, Inc. (0928)); NAHC Liquidation Estate (f/k/a/ North American Housing Corp. (1097)); Homes of Merit, Inc. (8488); WHC Liquidation Estate (f/k/a Western Homes Corporation (6910)); SFI Liquidation Estate (f/k/a Star Fleet, Inc. (0506)); CEMC Liquidation Estate (f/k/a Champion Enterprises Management Co. (6726)); CRI Liquidation Estate (f/k/a Champion Retail, Inc. (2154)); SJAHI Liquidation Estate (f/k/a San Jose Advantage Homes, Inc. (1951)); HAC Liquidation Estate (f/k/a Highland Acquisition Corp. (8962)); HMCLLC Liquidation Estate (f/k/a Highland Manufacturing Company LLC (6762)); SSH Liquidating Corp. (6678); CHBI (f/k/a Champion Homes of Boaz, Inc. (3165)); Iseman Corp. (5899); MHCDC, LLC (3417); HomePride Finance Corp. (4767); and CDC Liquidation Estate (f/k/a Champion Development Corp. (4642)).  The address for all Debtors is 3520 Lakeview Drive, Algonquin, IL  60102.

# TABLE OF CONTENTS

**Page**

ARTICLE I. DEFINITIONS AND RULES OF INTERPRETATION........................................3

    A. Rules of Interpretation, Computation of Time and Governing Law ......................3
    B. Defined Terms ..........................................................................................................4

ARTICLE II. TREATMENT OF UNCLASSIFIED CLAIMS..............................................24

    A. Summary..................................................................................................................24
    B. Administrative Claims (Other Than Professional Fee Claims)...........................24
    C. Professional Fee Claims .........................................................................................26
    D. Priority Tax Claims ................................................................................................29

ARTICLE III. TREATMENT OF  CLASSIFIED CLAIMS AND EQUITY INTERESTS.........30

    A. Summary..................................................................................................................30
    B. Classification and Treatment of Claims and Equity Interests ............................30
        1. Class 1 – Priority Claims Against Consolidated Debtors...........................31
        2. Class 2 – Priority Claims Against CEI ......................................................31
        3. Class 3 – Secured Claims Against Consolidated Debtors ..........................32
        4. Class 4 – Secured Claims Against CEI ......................................................33
        5. Class 5 – Unsecured Claims Against Consolidated Debtors......................34
        6. Class 6 – Unsecured Claims Against CEI ..................................................34
        7. Class 7 – Equity Interests in the Consolidated Debtors............................35
        8. Class 8 – Equity Interests in CEI...............................................................35

ARTICLE IV. ACCEPTANCE OR REJECTION OF THE PLAN.....................................36

    A. Voting Classes .......................................................................................................36
    B. Acceptance by Impaired Classes ...........................................................................36
    C. Presumed Acceptance of Plan ...............................................................................36
    D. Presumed Rejection of Plan...................................................................................37
    E. Nonconsensual Confirmation ................................................................................37
    F. How to Vote............................................................................................................37

ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN....................................38

    A. Sources of Plan Distributions ...............................................................................38
    B. Substantive Consolidation of Consolidated Debtors...........................................39
    C. Treatment of Estate Assets ...................................................................................41
    D. Payment of Plan Expenses.....................................................................................42
    E. Dissolution of Liquidating Debtors .......................................................................43
    F. Power and Authority of Estate Administrator .....................................................43
    G. Preservation and Settlement of Litigation ...........................................................45
    H. The Creditor Trust .................................................................................................46
        1. Creditor Trust Fund ...................................................................................48
        2. Payment of Creditor Trust Expenses .........................................................49
        3. Indenture Trustee Expenses.......................................................................49
        4. Distribution of Creditor Trust Assets .......................................................49

5. Power and Authority of Creditor Trustee ..............................................................51
6. Creditor Trust Distribution Procedures ..............................................................52
7. Liability and Indemnification of Creditor Trustee ..............................................53
8. Federal Income Taxation of Creditor Trust ........................................................54
I. The Committee Lawsuit ...............................................................................................55
J. Post Effective Date Professional Fees .........................................................................58
K. Release of Liens............................................................................................................60
L. Exemption from Certain Transfer Taxes ......................................................................60
M. Dissolution of the Committee ......................................................................................60
N. Full and Final Satisfaction ...........................................................................................61
O. Allocation of Distributions ..........................................................................................61
P. Rounding ......................................................................................................................61
Q. No Interim Cash Payments of Less Than $50 on Account of Allowed Claims ...............62
R. Unclaimed Property ......................................................................................................62
S. No Distributions on Late-Filed Claims ........................................................................63
T. Withholding Taxes ........................................................................................................63
U. De Minimis Distributions; Charitable Donation ..........................................................64
V. United States Trustee Quarterly Fees ...........................................................................64
W. Books and Records .......................................................................................................64
X. Corporate Action ..........................................................................................................65

ARTICLE VI. PROCEDURES FOR RESOLVING DISPUTED CLAIMS .................................65

ARTICLE VII. TREATMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES .......................................................................................................67

A. Rejection of Executory Contracts and Unexpired Leases .............................................67
B. Claims Based on Rejection of Executory Contracts or Unexpired Leases.....................67

ARTICLE VIII. CONDITIONS PRECEDENT TO CONFIRMATION AND
CONSUMMATION OF THE PLAN....................................................................................68

A. Conditions Precedent to Confirmation .........................................................................68
B. Conditions Precedent to Consummation .......................................................................68
C. Effect of Non-Occurrence of Conditions to Consummation .........................................69
D. Notice of Effective Date ...............................................................................................69

ARTICLE IX. EFFECT OF CONSUMMATION ....................................................................70

A. Binding Effect of Plan ..................................................................................................70
B. Vesting and Transfer of Assets......................................................................................70
C. Property Free and Clear ................................................................................................71
D. Limitation of Liability ..................................................................................................71
E. Injunction .....................................................................................................................72
F. Terms of Existing Injunctions or Stays .........................................................................73
G. Limitation of Liability of the Estate Administrator and the Creditor Trustee................73
H. Releases by Debtors of the Debtor Released Parties.....................................................74
I. [Reserved]....................................................................................................................76
J. Release By Holders of Claims and Equity Interests ......................................................76
K. Good Faith ....................................................................................................................77

ARTICLE X. RETENTION OF JURISDICTION .......................................................... 77

ARTICLE XI. MISCELLANEOUS PROVISIONS ...................................................... 79

    A. Modification of Plan .......................................................................................... 79
    B. Withdrawal of Plan ........................................................................................... 79
    C. Successors and Assigns ..................................................................................... 80
    D. Reservation of Rights ........................................................................................ 80
    E. Further Assurances ............................................................................................ 80
    F. Entire Agreement ............................................................................................... 80
    G. Retiree Benefits ................................................................................................. 81
    H. Failure of Bankruptcy Court to Exercise Jurisdiction ..................................... 81
    I.  Notices ............................................................................................................... 81
    J.  Filing of Additional Documents ....................................................................... 82
    K. Enforceability .................................................................................................... 82
    L. Severability ........................................................................................................ 82
    M. Notice of Default under this Plan ..................................................................... 83
    N. Investments ....................................................................................................... 83
    O. Reliance ............................................................................................................. 84
    P. Asset Purchase Agreement ................................................................................ 84
    Q. Insurance ............................................................................................................ 84

ARTICLE XII. CONCLUSION ................................................................................... 1

Pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, CEI Liquidation Estate (f/k/a Champion Enterprises, Inc.); CHBC Liquidation Estate (f/k/a Champion Home Builders Co.);RH Liquidation Estate (f/k/a Redman Homes, Inc.); NEBSI Liquidation Estate (f/k/a New Era Building Systems, Inc.); NAHC Liquidation Estate (f/k/a/ North American Housing Corp.); Homes of Merit, Inc; WHC Liquidation Estate (f/k/a Western Homes Corporation); SFI Liquidation Estate (f/k/a Star Fleet, Inc.); CEMC Liquidation Estate (f/k/a Champion Enterprises Management Co.); CRI Liquidation Estate (f/k/a Champion Retail, Inc); SJAHI Liquidation Estate (f/k/a San Jose Advantage Homes, Inc.); HAC Liquidation Estate (f/k/a Highland Acquisition Corp.); HMCLLC Liquidation Estate (f/k/a Highland Manufacturing Company LLC); SSH Liquidating Corp; CHBI (f/k/a Champion Homes of Boaz, Inc.); Iseman Corp.; MHCDC, LLC; HomePride Finance Corp; and CDC Liquidation Estate (f/k/a Champion Development Corp), the debtors and debtors in possession in the above-captioned cases, hereby propose the following *Debtors' Second Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code.*

The Plan sets forth a proposal for the satisfaction of all Claims against and Equity Interests in the Debtors. Along with the Plan, Creditors who are entitled to vote will receive a Ballot for voting on the Plan and a Disclosure Statement that provides information concerning the Debtors and the Plan.[2]

The Disclosure Statement accompanying the Plan includes a discussion of the Debtors' history, business, results of operations and properties, the post-petition liquidation of

---

[2] A capitalized term not otherwise defined in the text shall have the meaning ascribed to it in Article I of this Plan.

substantially all of the Debtors' assets, a summary of the assets and liabilities of the Debtors, a summary of what Creditors and Equity Interest Holders can expect to receive under the Plan, a summary of the procedures and voting requirements necessary for confirmation of the Plan and a discussion of certain alternatives to the Plan in the event that the Plan is not confirmed.

All Holders of Claims and Equity Interests should read the Disclosure Statement and the Plan carefully -- and consult with their counsel and other applicable professionals -- before voting to accept or reject the Plan.

The Plan is a plan of liquidation.  Pursuant to prior orders of the Bankruptcy Court, the Debtors sold substantially all of their Assets and obtained funding from the Buyer for certain post-closing, wind-down liabilities of the Debtors.  The Buyer also assumed certain additional liabilities of the Debtors.  The Plan provides for the payment of Administrative Claims and Priority Claims and the creation of a Creditor Trust that will administer and liquidate certain litigation claims for the benefit of general unsecured Creditors.  The Plan further provides for the substantive consolidation of all of the Debtors except CEI Liquidation Estate (formerly known as Champion Enterprises, Inc.), for voting and distribution purposes, the termination of all Equity Interests in the Debtors,[3] and the dissolution and winding up of the Debtors' affairs.

As is more fully described in the Disclosure Statement, the Plan must be approved by the requisite number of Creditors, and the Bankruptcy Court must find that the Plan meets the applicable legal standards before it can be confirmed. If the Plan is not confirmed, the

---

[3]  Equity Interest Holders will receive nothing under the Plan, and therefore, the Classes of Equity Interests (Class 7 and Class 8) are deemed to have rejected the Plan.  Accordingly, acceptances are not being solicited from the Holders of Equity Interests.

Bankruptcy Court may dismiss the cases or convert them to liquidating cases under Chapter 7 of the Bankruptcy Code, or the Debtors or other parties in interest may propose a different plan.

## ARTICLE I.
## DEFINITIONS AND RULES OF INTERPRETATION

### A.   Rules of Interpretation, Computation of Time and Governing Law

For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and each pronoun, whether stated in the masculine, feminine or neuter gender, shall include the masculine, feminine and the neuter gender; (b) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit filed, or to be filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified, all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (e) the words "herein," "hereof," "hereunder," and "hereto" and similar terms refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) references to part includes the whole, except where the context clearly requires otherwise; (g) "or" has the inclusive meaning represented by the phrase "and/or"; (h) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply, and (j) any term used in capitalized form in the Plan that is not defined herein

but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

In computing any period of time prescribed or allowed by the Plan, the provisions of Rule 9006(a) of the Bankruptcy Rules shall apply. Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

**B.     Defined Terms**

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form in the Plan:

1.     "Administrative Claim" means a Claim for costs and expenses of administration under section 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates; (b) the value of any goods received by a Debtor within 20 days before the Petition Date to the extent the goods were sold to a Debtor in the ordinary course of the Debtor's business; (c) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under section 330(a) or 331 of the Bankruptcy Code; and (d) all obligations designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court.

2.     "Administrative Claims Bar Date" means the applicable last date set by the Bankruptcy Court pursuant to an Administrative Claims Bar Date Order for a Creditor (other

than Professionals) to file a request for payment of any Administrative Claim. For

Administrative Claims (other than Professional Fee Claims) arising between the Petition Date

and March 31, 2010, the Administrative Claims Bar Date is May 11, 2010.

3.    "Administrative Claims Bar Date Order" means: (a) the *Order (A) Fixing the*

*Procedures and Deadlines To File Proofs of Claim and to Make Requests for Payment of*

*Administrative Expense Claims, and (B) Approving the Form and Manner of the Notice of Bar*

*Dates* [Docket No. 544], entered on March 9, 2010, with respect to Administrative Claims (other

than Professional Fee Claims) arising between the Petition Date and March 31, 2010, or (b) the

Confirmation Order with respect to Administrative Claims (other than Professional Fee Claims)

arising between April 1, 2010, and the Effective Date.

4.    "Administrative/Priority Reserve Account" means an account or subaccount to be

established and administered by the Liquidating Debtors for the payment of Administrative

Claims (other than Professional Fee Claims), Priority Tax Claims and Priority Claims. The

Administrative/Priority Reserve Account may be an existing account of the Debtors. The

Administrative/Priority Reserve Account shall not be funded with Contingency Fees, nor shall

Contingency Fees be payable from the Administrative/Priority Reserve Account.

5.    "Allowed" means, with respect to any Claim, except as otherwise provided

herein: (a) a Claim that has been scheduled by the Debtors in their Schedules as other than

disputed, contingent or unliquidated as to which no objection has been Filed by the deadline set

forth in the Plan; (b) a Claim that is set forth in a timely Filed Proof of Claim as to which no

objection has been Filed by the deadline set forth in the Plan; (c) a Claim that has been allowed

by a Final Order; (d) a Claim that is allowed: (i) in any stipulation executed by the Debtors prior

to the Effective Date and approved by the Bankruptcy Court, (ii) in any stipulation executed by

the Estate Administrator, in the case of Administrative Claims, Priority Tax Claims or Priority

Claims, or the Creditor Trustee, in the case of Unsecured Claims, on or after the Effective Date,

or (iii) in any contract, instrument, indenture or other agreement entered into or assumed by

Debtors in connection with and in accordance with the Plan; or (e) a Claim that is allowed

pursuant to the terms of the Plan.

      6.     "Allowed Claim" means a Claim that has been Allowed.

      7.     "Assets" means any and all real property or personal property assets, rights or

interests of the Debtors or their Estates, whether tangible or intangible, and any proceeds realized

therefrom, including without limitation, all Cash of the Debtors, all Litigation and any Litigation

Proceeds.

      8.     "Asset Purchase Agreement" means that certain *Asset Purchase Agreement* by

and among Champion Enterprises Holdings, LLC and New Champion Homes, Inc., as

Purchasers, and Champion Enterprises, Inc. and Certain Subsidiaries of Champion Enterprises,

Inc., as Sellers, dated as of February 5, 2010, and all exhibits, schedules, amendments,

modifications and supplements thereto.

      9.     "Assigned Litigation" means (1) the Committee Lawsuit, (2) all Avoidance

Actions, and (3) any other Litigation, provided that, Assigned Litigation excludes any Estate

Avoidance Actions.

      10.     "Assigned Litigation Fee Claims" means those fees and expenses of Professionals

retained by the Committee to prosecute any Assigned Litigation.

11.    "Avoidance Actions" means all claims and causes of action that the Debtors

and/or the Committee have or had the power to assert pursuant to any or all of sections 510, 544,

545, 547, 548, 549, 550 and 551 of the Bankruptcy Code, under any similar or related law, under

fraudulent transfer or preference laws, or pursuant to an order of the Bankruptcy Court, provided

that, Avoidance Actions shall not include those claims and causes of action listed in Schedule

1.3(c) to the Asset Purchase Agreement.

12.    "Ballots" means the ballots upon which Creditors holding Impaired Claims shall

indicate their acceptance or rejection of the Plan in accordance with the Plan and the Voting

Instructions.

13.    "Bankruptcy Code" means title I of the Bankruptcy Reform Act of 1978, as

amended from time to time, as set forth in sections 101 et seq., of title 11 of the United States

Code, and applicable portions of titles 18 and 28 of the United States Code.

14.    "Bankruptcy Court" means the United States Bankruptcy Court for the District of

Delaware having jurisdiction over these Chapter 11 Cases.

15.    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as

amended from time to time, as applicable to the Chapter 11 Cases, promulgated under 28 U.S.C.

§ 2075 and the General, and Local Rules of the Bankruptcy Court.

16.    "Business Day" means any day, other than a Saturday, Sunday or legal holiday

(as defined in Bankruptcy Rule 9006(a)).

17.    "Buyer" means Champion Enterprises Holdings, LLC and New Champion

Homes, Inc., as purchasers under the Asset Purchase Agreement.

18.     "Carve Out Account" means the account established pursuant to the DIP Credit Agreement and the DIP Financing Orders for the payment of certain Professional Fee Claims.

19.     "Cash" means cash and cash equivalents, including, but not limited to, bank deposits, wire transfers, checks, and readily marketable securities, instruments and legal tender of the United States of America or instrumentalities thereof.

20.     "CEI" means CEI Liquidation Estate (f/k/a Champion Enterprises, Inc.).

21.     "CEI Distributable Trust Assets" means those Creditor Trust Assets that the Creditor Trustee determines (consistent with his or her fiduciary duty) are available for distribution to Unsecured Creditors of CEI, which determination shall have been approved by the Bankruptcy Court.

22.     "Chapter 11 Cases" means the jointly administered cases commenced under Chapter 11 of the Bankruptcy Code by the Debtors on the Petition Date, styled *In re CEI Liquidation Estate, et al.*, Case No. 09-14019 (KG), currently pending before the Bankruptcy Court.

23.     "CHBC" means CHBC Liquidation Estate (f/k/a Champion Home Builders Co.).

24.     "Claim" means a claim as defined in section 101(5) of the Bankruptcy Code against any of the Debtors.

25.     "Claims Agent" means Epiq Bankruptcy Solutions, LLC, which was appointed as the Debtors' claims, notice and balloting agent.

26.     "Class" means a category of Holders of Claims or Equity Interests as set forth in Article III of the Plan.

27.     "Committee" means the Official Committee of Unsecured Creditors appointed by

the U.S. Trustee in these Chapter 11 Cases on December 1, 2009 [Docket No. 90, as amended by

Docket No. 243].

28.     "Committee Investigation Overage" means any Professional Fee Claims of

Professionals retained by the Committee (a) incurred to investigate any claims and defenses

against the Prepetition Lenders in excess of $100,000 permitted under the DIP Financing Orders,

or (b) incurred in connection with the Committee Lawsuit but not otherwise included in the

Contingency Fees.

29.     "Committee Lawsuit" means adversary proceeding number 10-50514 (KG),

initiated on February 18, 2010, by the Committee, as amended on March 22, 2010, and currently

pending in the Bankruptcy Court, as such lawsuit may be amended by any amendment permitted

under applicable law or authorized by the Bankruptcy Court.

30.     "Committee WDF Overage" means any Professional Fee Claims of Professionals

retained by the Committee incurred from March 20, 2010, through the Effective Date in excess

of $100,000 available for the payment of such claims under the Wind Down Facility.

31.     "Confirmation" means the entry of the Confirmation Order, subject to all

conditions specified in Article VIII of the Plan having been (a) satisfied or (b) waived pursuant

to Article VIII.

32.     "Confirmation Date" means the date upon which the Confirmation Order is

entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rules 5003

and 9021.

33.     "Confirmation Order" means the order of the Bankruptcy Court confirming the

Plan pursuant to section 1129 of the Bankruptcy Code.

34.     "Consolidated Debtors" means all of the Liquidating Debtors except CEI.

35.     "Consolidated Debtors Distributable Trust Assets" means those Creditor Trust

Assets that the Creditor Trustee determines (consistent with his or her fiduciary duty) are

available for distribution to Unsecured Creditors of the Consolidated Debtors, which

determination shall have been approved by the Bankruptcy Court.

36.     "Consummation" or "Consummate" means the occurrence of or to achieve the

Effective Date.

37.     "Contingent Claim" means (a) any Claim for which a Proof of Claim has been

Filed with the Bankruptcy Court but was not Filed in a sum certain and which Claim has not

been estimated, fixed or liquidated by the Bankruptcy Court at a sum certain as of the Effective

Date, or (b) any Claim for which a Proof of Claim has been Filed with the Bankruptcy Court but

remains dependent on the occurrence of a future event.

38.     "Contingency Fees" means those Allowed fees and expenses due and owing to, or

claimed by, Milberg LLP and Pinckney, Harris & Weidinger, LLC, pursuant to the Contingency

Fee Orders.  Contingency Fees shall include all "Litigation Expense Claims" and "Litigation

Expenses," as each such term is defined in the Contingency Fee Orders.  Contingency Fees are

payable solely from Litigation Proceeds of the Committee Lawsuit.

39.     "Contingency Fee Orders" means the *Order Approving Application Pursuant to*

*Sections 328(a) and 1103(a) of the Bankruptcy Code Authorizing the Employment and Retention*

*Nunc Pro Tunc of Milberg LLP as Special Litigation Counsel to the Official Committee of*

*Unsecured Creditors* and the *Order Approving Retention of Pinckney, Harris & Weidinger, LLC*

*as Delaware Conflicts Counsel to the Official Committee of Unsecured Creditors Nunc Pro Tunc*

*to April 26, 2010*, and any subsequent order relating to the foregoing including, without

limitation, any order directing payment of Contingency Fees.

40.    "Creditor" means any Holder of a Claim against any of the Debtors that arose on

or prior to the Petition Date.

41.    "Creditor Trust" means the trust established pursuant to the Creditor Trust

Agreement to hold the Creditor Trust Assets.

42.    "Creditor Trust Agreement" means the trust agreement to be Filed with the

Bankruptcy Court not later than three (3) days before the date of the hearing to confirm the Plan

which shall be, in form and substance, acceptable to the Debtors and the Committee.

43.    "Creditor Trust Assets" means (a) the Assigned Litigation and any Litigation

Proceeds from the Assigned Litigation which shall automatically be transferred to the Creditor

Trust on the Effective Date, (b) any selected Estate Assets which may be transferred by the

Liquidating Debtors to the Creditor Trust after the Effective Date, and (c) any Estate Assets

Surplus which shall be transferred by the Liquidating Debtors to the Creditor Trust after the

Effective Date.  Although the Committee Lawsuit is a Creditor Trust Asset, any Contingency

Fees are payable solely from the Committee Lawsuit and are not Creditor Trust Assets.

44.    "Creditor Trust Expenses" means (i) the expenses incurred by the Creditor

Trustee in connection with the administration of the Creditor Trust, the disposition of the

Creditor Trust Assets, and the resolution of Unsecured Claims, and (ii) the Assigned Litigation

Fee Claims.  Although the Committee Lawsuit is a Creditor Trust Asset, any Contingency Fees

are payable solely from the Committee Lawsuit and are not Creditor Trust Expenses.

45.    "Creditor Trust Fund" means an account to be established and administered by the

Creditor Trustee as further described in the Creditor Trust Agreement.

46.    "Creditor Trust Residual Obligations" means, to the extent Estate Assets are

insufficient, the amounts necessary to make the payments otherwise required by the Liquidating

Debtors under the Plan (i) to Creditors holding (a) Allowed Administrative Claims, (b) Allowed

Professional Fee Claims, (c) Allowed Priority Tax Claims and (d) Allowed Priority Claims in

Class 1 and Class 2, or (ii) for Plan Expenses.

47.    "Creditor Trustee" means the person named as the trustee of the Creditor Trust by

the Committee and designated as the Creditor Trustee in the Creditor Trust Agreement.

48.    "Debt" means liability on a Claim.

49.    "Debtors" means CEI, CHBC, RH Liquidation Estate (f/k/a Redman Homes,

Inc.); NEBSI Liquidation Estate (f/k/a New Era Building Systems, Inc.); NAHC Liquidation

Estate (f/k/a/ North American Housing Corp.); Homes of Merit, Inc; WHC Liquidation Estate

(f/k/a Western Homes Corporation); SFI Liquidation Estate (f/k/a Star Fleet, Inc.); CEMC

Liquidation Estate (f/k/a Champion Enterprises Management Co.); CRI Liquidation Estate (f/k/a

Champion Retail, Inc); SJAHI Liquidation Estate (f/k/a San Jose Advantage Homes, Inc.); HAC

Liquidation Estate (f/k/a Highland Acquisition Corp.); HMCLLC Liquidation Estate (f/k/a

Highland Manufacturing Company LLC); SSH Liquidating Corp.; CHBI (f/k/a Champion

Homes of Boaz, Inc.); Iseman Corp.; MHCDC, LLC; HomePride Finance Corp.; and CDC

Liquidation Estate  (f/k/a Champion Development Corp.).

50.    "Debtors in Possession" means the Debtors as debtors in possession in these Chapter 11 Cases pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

51.    "Debtor Released Parties" means those Entities who are the beneficiaries of the releases set forth in Article IX(H) of the Plan.

52.    "DIP Credit Agreement" means that certain *Debtor-in-Possession Credit Agreement* dated as of November 15, 2009 (including all schedules, exhibits and amendments thereto) between CHBC and a syndicate of banks, financial institutions, and other institutional lenders, with Credit Suisse AG, Cayman Islands Branch, as administrative agent.

53.    "DIP Financing Motion" means the Debtors' *Motion for Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 365: (I) Authorizing Debtors to (A) Obtain Post-Petition Financing, and (B) Grant Senior Liens, Junior Liens and Superpriority Administrative Expense Status; (II) Approving Use of Cash Collateral; (III) Granting Adequate Protection to Certain Prepetition Secured Parties; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* [Docket No. 24].

54.    "DIP Financing Orders" means (a) those orders entered by the Bankruptcy Court approving the DIP Financing Motion entered on November 17, 2009 [Docket No. 50], December 18, 2009 [Docket No. 204] and January 6, 2010 [Docket No. 244] and (b) the *Order Granting Debtors' Emergency Motion for Approval of Consensual Third Amendment to DIP Credit Agreement* entered on February 4, 2010 [Docket No. 364].

55.    "Disallowed Claim" means (i) a Claim, or any portion thereof, that has been disallowed by a Final Order or by other agreement of a Creditor; (ii) a Claim that has been listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which no Proof of

Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to the

Bankruptcy Code, Final Order, or other applicable law; or (iii) a Claim that has not been listed in

the Schedules and as to which no Proof of Claim has been timely Filed or deemed timely Filed

with the Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable

law.

56.    "Disclosure Statement" means the *Disclosure Statement Describing Debtors'*

*Second Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, as

amended, supplemented, or modified from time to time, describing the Plan, prepared and

distributed in accordance with the Bankruptcy Code and Bankruptcy Rules and other applicable

law.

57.    "Disputed Claim" means: (i) any Claim or portion of a Claim as to which an

objection to the allowance thereof has been interposed as of the Effective Date or any later

deadline fixed under the Plan or by order of the Bankruptcy Court, which objection has not been

withdrawn or determined by Final Order; (ii) any Claim scheduled by the Debtors in the

Schedules as disputed, contingent or unliquidated; (iii) a Proof of Claim Filed in a greater

amount, or of a different nature or priority, than the amount, nature, or priority listed for that

Claim in the Schedules; or (iv) a Contingent Claim.

58.    "Distribution" means any consideration to be distributed to any Entity under

Article V of this Plan.

59.    "Effective Date" means the Business Day selected by the Debtors after the

Confirmation Date on which: (a) no stay of the Confirmation Order is in effect, and (b) all

conditions specified in Article VIII of the Plan have been satisfied, unless waived by the

Debtors.

60.     "Entity" means an entity as defined in section 101(15) of the Bankruptcy Code.

61.     "Equity Interest" means any equity interest in any Debtor, including, but not

limited to, all issued, unissued, authorized or outstanding shares or stock and any limited liability

company membership interests, together with any warrants, options or contract rights to purchase

or acquire such interests at any time.

62.     "Estates" means the estates of the Debtors in these Chapter 11 Cases created

pursuant to section 541 of the Bankruptcy Code upon the commencement of these Chapter 11

Cases.

63.     "Estate Administrator" means Jack B. Fishman (or, following the Effective Date,

any successor that may be designated pursuant to Article V hereof to serve as the sole

representative, director, officer and responsible person of the Liquidating Debtors).

64.     "Estate Administrator Discharge Notice" means the notice which the Estate

Administrator may give indicating his intent to be discharged.

65.     "Estate Administrator Order" means the order entered by the Bankruptcy Court

on April 20, 2010 [Docket No. 656] authorizing the Debtor's engagement of the Estate

Administrator.

66.     "Estate Assets" means (i) the Administrative/Priority Reserve Account, and all

funds therein, (ii) the Professional Fees Reserve Account, and all funds therein, (iii) the Debtors'

rights in the Carve Out Account, and all funds therein (subject to the DIP Credit Agreement, the

DIP Financing Orders and the Asset Purchase Agreement), (iv) the Debtors' rights under the

Wind Down Facility (subject to and in accordance with the terms of the Asset Purchase

Agreement), (v) all Cash held by any of the Debtors as of the Effective Date, (vi) the Estate

Avoidance Actions and any Litigation Proceeds from the Estate Avoidance Actions, (vii) the

Estate Avoidance Actions Reserve Account, and all funds therein, and (viii) the "Excluded

Assets" under (and as defined in) the Asset Purchase Agreement and the Debtors' rights under

the Asset Purchase Agreement (provided that, such assets shall not encompass the Avoidance

Actions, other than Estate Avoidance Actions, and the other Litigation that is transferred to the

Creditor Trust as Assigned Litigation).

  67. "Estate Assets Surplus" means, to the extent any Estate Assets are remaining, all

surplus amounts following the full payment by the Liquidating Debtors under the Plan (i) to

Creditors holding (a) Allowed Administrative Claims, (b) Allowed Professional Fee Claims, (c)

Allowed Priority Tax Claims and (d) Allowed Priority Claims in Class 1 and Class 2, or (ii) for

Plan Expenses.

  68. "Estate Avoidance Actions" means any Avoidance Actions that have been Filed

by the Debtors prior to the Effective Date.

  69. "Estate Avoidance Actions Reserve Account" means an account or subaccount to

be established and administered by the Liquidating Debtors for the deposit of Litigation Proceeds

from the Estate Avoidance Actions.  The Estate Avoidance Actions Reserve Account may be an

existing account of the Debtors.  The Estate Avoidance Actions Reserve Account shall not be

funded with Contingency Fees, nor shall Contingency Fees be payable from the Estate

Avoidance Actions Reserve Account.

70.    "File" or "Filed" means filed with the Bankruptcy Court or its authorized

designee in these Chapter 11 Cases.

71.    "Final Decree" means the decree contemplated under Bankruptcy Rule 3022.

72.    "Final Distribution Date" means the date of the last payment to Creditors holding

Allowed Claims in accordance with the provisions of this Plan.

73.    "Final Order" means an order or judgment of the Bankruptcy Court or other court

of competent jurisdiction:  (i) which has not been reversed, stayed, modified or amended; (ii) as

to which the time to or the right to appeal or seek reconsideration, review, rehearing, or certiorari

has expired or been waived (without regard to whether the time to seek relief from a judgment

under Bankruptcy Rule 9024 has expired); and (iii) as to which no timely appeal or petition for

reconsideration, review, rehearing, or certiorari is pending.

74.    "General Bar Date" means the deadline for filing Proofs of Claim for any Claims

against the Debtors that arose before the Petition Date established by the Bankruptcy Court

pursuant to the order entered on March 9, 2010 [Docket No. 544], which deadline was 4:00 p.m.

prevailing Eastern time on May 11, 2010, for non-Governmental Units and 4:00 p.m. prevailing

Eastern time on May 14, 2010, for Governmental Units, other than for those Claims that are

expressly excluded from the General Bar Date pursuant to order of the Bankruptcy Court or that

are otherwise governed by a separate order of the Bankruptcy Court.

75.    "Governmental Unit" means the United States and any state, commonwealth,

district, territory, municipality, department, agency, or instrumentality of the United States (but

not a United States trustee while serving as a trustee in a case under this title), or any foreign

state.

76.    "Holder" means an Entity holding a Claim or Equity Interest.

77.    "Impaired" means with respect to a Claim or Class of Claims, a Claim or Class of

Claims that is impaired within the meaning of section 1124 of the Bankruptcy Code.

78.    "Intercompany Claim" means a Claim held by a Debtor against another Debtor.

79.    "Indenture" means that certain indenture for the 2.75% convertible senior notes

due 2037 issued by CEI in the face amount of $180 million.

80.    "Indenture Trustee" means Wells Fargo Bank, N.A., in its capacity as indenture

trustee under the Indenture.

81.    "Interim Fee Order" means that certain *Order Establishing Procedures for

Interim Compensation* [Docket No. 176] entered by the Bankruptcy Court on December 17,

2009.

82.    "Lien" has the meaning in section 101(37) of the Bankruptcy Code.

83.    "Liquidating Debtors" means all of the Debtors on and after the Effective Date of

the Plan.

84.    "Litigation" means any and all claims, rights and causes of action which have

been or may be commenced by the Debtors, the Committee, the Liquidating Debtors or the

Creditor Trust (subject, however, to the Asset Purchase Agreement).  Litigation includes, without

limitation, but subject to the Asset Purchase Agreement and the provisions of this Plan, any: (i)

Avoidance Action; (ii) action for the turnover of property to the Debtors; (iii) action for the

recovery of property or payment of money that belongs to or can be asserted by the Debtors; (iv)

action for compensation for damages incurred by the Debtors; (v) action for equitable

subordination against any Creditor; (vi) the Committee Lawsuit; (vii) action against officers or

directors of the Debtors, and (viii) any other claim or counterclaim by the Debtors against any

Creditor or any other party in interest.  For the avoidance of doubt, Litigation does *not* include

objections to the allowance of Claims (except to the extent included in the Committee Lawsuit),

which are reserved, as the case may be, to the Liquidating Debtors and the Creditor Trust.

85.    "Litigation Proceeds" means any Cash or other property of any nature received

from or on account of any Litigation, including, but not limited to, awards of damages, attorneys'

fees and expenses (other than Contingency Fees), interest and punitive damages, whether

recovered by way of settlement, execution on judgment or otherwise at any time before or after

the Effective Date.

86.    "Petition Date" means November 15, 2009, the date on which each Debtor Filed a

voluntary petition for relief commencing its Chapter 11 Case.

87.    "Plan" means this *Debtors' Second Amended Joint Plan of Liquidation Pursuant
to Chapter 11 of the Bankruptcy Code*, either in its present form or as it may be altered,

amended, modified or supplemented from time to time in accordance with the Plan, the

Bankruptcy Code and the Bankruptcy Rules, including, without limitation, any exhibits and

schedules hereto.

88.    "Plan Expenses" means the expenses incurred by the Liquidating Debtors

following the Effective Date (including the fees and costs of attorneys and other Professionals

but excluding any Assigned Litigation Fee Claims) for the purpose of (a) selling, liquidating or

collecting upon any of the Assets; (b) resolving Disputed Administrative Claims, Priority Tax

Claims and Claims in Classes 1 through 4 and making Distributions to Creditors holding

Allowed Administrative Claims, Priority Tax Claims, Professional Fee Claims and Claims in

Classes 1 through 4 under the Plan; (c) otherwise implementing the Plan and closing the Chapter

11 Cases to the extent such is the responsibility of the Liquidating Debtors, including the cost of

any bond or insurance obtained for the protection of the Estate Administrator; or (d) carrying out

any of the duties or responsibilities of the Estate Administrator under this Plan.  Plan Expenses

specifically do not include Creditor Trust Expenses unless and until such time as the Creditor

Trustee assumes the obligations of the Estate Administrator (after the Estate Administrator is

discharged), at which point all outstanding and future Plan Expenses shall become Creditor Trust

Expenses (and shall be treated *pari passu* with other Creditor Trust Expenses).  Plan Expenses

shall not include, nor be satisfied from, Contingency Fees.

89.    "Post Effective Date Professional Fees" means the fees and expenses attributable

to services provided and/or expenses incurred by Professionals retained, respectively, by the

Liquidating Debtors and the Creditor Trust after the Effective Date.

90.    "Prepetition Credit Agreement" means that certain *Amended and Restated Credit

Agreement,* dated as of April 7, 2006 (as amended, restated, supplemented or otherwise modified

from time to time), among CHBC, as borrower, CEI and certain other direct and indirect

subsidiaries of CHBC as guarantors, the lenders from time to time party thereto and Credit

Suisse AG, Cayman Islands Branch, as administrative agent.

91.    "Prepetition Lenders" means the lenders, including Credit Suisse AG, Cayman

Islands Branch, as agent, under the Prepetition Credit Agreement.

92.    "Priority Claim" means a Claim, other than an Administrative Claim or a Priority

Tax Claim, to the extent entitled to priority under section 507(a) of the Bankruptcy Code.

93.    "<u>Priority Tax Claim</u>" means a Tax Claim to the extent entitled to priority under

sections 502(i) and 507(a)(8) of the Bankruptcy Code.

94.    "<u>Pro Rata</u>" means proportionately so that, with respect to a Claim, (a) the ratio of

(i) the amount of property distributed on account of a particular Claim to (ii) the Allowed amount

of the Claim, is the same as (b) the ratio of (i) the amount of property distributed on account of

all Allowed Claims in the Class or Classes entitled to share in the applicable distribution to (ii)

the amount of all Allowed Claims in such Class or Classes.

95.    "<u>Professional</u>" means an Entity:  (a) employed pursuant to a Final Order in

accordance with sections 327 and 1103 of the Bankruptcy Code (other than Milberg LLP and

Pinckney, Harris & Weidinger, LLC) and to be compensated for services rendered prior to the

Effective Date, pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b)

for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant

to section 503(b)(4) of the Bankruptcy Code.

96.    "<u>Professional Fee Claim</u>" means those fees and expenses claimed by

Professionals for services rendered or expenses incurred prior to the Effective Date pursuant to

sections 330, 331 and/or 503 of the Bankruptcy Code (but excluding Contingency Fees).

Professional Fee Claims shall include (i) fees and expenses incurred by Professionals after the

Effective Date to the extent related to Filed applications for the allowance of Professional Fee

Claims, and (ii) the actual, necessary expenses of members of the Committee.

97.    "<u>Professional Fee Claims Bar Date</u>" means the date by which final applications

for the allowance and payment of Professional Fee Claims must be Filed, which date is sixty

days after the Effective Date.

98.    "Professional Fees Reserve Account" means an account or subaccount to be established and administered by the Liquidating Debtors for the payment of Professional Fee Claims (other than Assigned Litigation Fee Claims).  The Professional Fees Reserve Account may be an existing account of the Debtors.  The Professional Fees Reserve Account shall not be funded with Contingency Fees nor Litigation Proceeds from the Estate Avoidance Actions, nor shall Contingency Fees be payable from the Professional Fees Reserve Account.

99.    "Proof of Claim" means a proof of claim Filed pursuant to section 501 of the Bankruptcy Code and/or any order of the Bankruptcy Court, together with supporting documents.

100.    "Rejection Claims Bar Date" means the date set by the Bankruptcy Court as the last date by which a Creditor must file any claim it has against the Debtors based on the rejection of an executory contract or unexpired lease, which date is the later of (i) May 11, 2010, or (ii) thirty days after the entry of an order approving the rejection of an executory contract or unexpired lease [Docket No. 544].

101.    "Schedules" means the schedules of assets and liabilities and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the Official Bankruptcy Forms and the Bankruptcy Rules, as they may be amended and supplemented from time to time.

102.    "Secured Claim" means any Claim that is secured in whole or part, as of the Petition Date, by a Lien that is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or subject to

setoff under section 553 of the Bankruptcy Code, to the extent of the value of such Lien or right

of setoff as determined under sections 506(a) or 1129(b) of the Bankruptcy Code, as applicable.

103.    "Tax" means any tax, charge, fee, levy, impost or other assessment by any

federal, state, local or foreign taxing authority, including, without limitation, income, excise,

property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem,

estimated, severance, stamp, occupation and withholding tax.  "Tax" shall include any interest or

additions attributable to, imposed on or with respect to such assessments.

104.    "Tax Claim" means all or that portion of a Claim held by a Governmental Unit for

a Tax.

105.    "Unimpaired" means with respect to a Claim or Class of Claims, a Claim or Class

of Claims that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

106.    "Unliquidated Claim" means any Claim for which a Proof of Claim has been

Filed with the Bankruptcy Court but was not Filed in a sum certain, and which Claim has not

been estimated, fixed or liquidated by the Bankruptcy Court at a sum certain as of the Effective

Date.

107.    "Unsecured Claim" means any Claim against any of the Debtors or their Estates

that is not a Secured Claim, Administrative Claim, Professional Fee Claim, Priority Tax Claim or

Priority Claim.

108.    "U.S. Trustee" means the Office of the United States Trustee for the District of

Delaware.

109.    "Voting Instructions" means the instructions for voting on the Plan contained in

the Disclosure Statement and in the Ballots.

110.    "Wind Down Budget" means the wind down budget provided in Schedule 10.1(ffff) to the Asset Purchase Agreement.

111.    "Wind Down Facility" means the Cash provided by Buyer to fund the Wind Down Budget.

## ARTICLE II.
## TREATMENT OF UNCLASSIFIED CLAIMS

A.    **Summary**

Certain types of Claims are not placed into voting Classes; instead they are unclassified.  They are not considered Impaired and do not vote on the Plan because they are automatically entitled to the specific treatment provided for them in the Bankruptcy Code.  As such, the Debtors have not placed the Claims described below into a Class.

B.    **Administrative Claims (Other Than Professional Fee Claims)**

Each Creditor holding an Allowed Administrative Claim shall receive, without interest, Cash equal to the Allowed amount of such Claim, unless such Creditor shall have agreed to different treatment of such Claim: (a) on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or approving such Allowed Administrative Claim; (b) in accordance with the terms and conditions of agreements between the Creditors holding such Claims and the Debtors; or (c) with respect to any Allowed Administrative Claims representing obligations incurred in the ordinary course of the Debtors' business, upon such regular and customary payment or performance terms as may exist in the ordinary course of the Debtors' business or as otherwise provided in the Plan.

With respect to all Administrative Claims incurred prior to December 31, 2010, and not otherwise paid as of the Effective Date, the Liquidating Debtors shall, only to the extent such Administrative Claims are consistent with the limits and purposes set forth in the Wind Down Budget and the provisions of the Asset Purchase Agreement, use funds from the Wind Down Facility, which funds shall be deposited by the Buyer into the Administrative/Priority Reserve Account from time to time as requested by the Liquidating Debtors under the Asset Purchase Agreement (including requests made after December 31, 2010, with respect to Administrative Claims incurred prior to December 31, 2010), and disbursed to individual Creditors as soon as practicable thereafter (including disbursements made after December 31, 2010, with respect to Administrative Claims incurred prior to December 31, 2010), consistent with the provisions of the Plan.  For the avoidance of doubt, notwithstanding any provisions to the contrary in the Asset Purchase Agreement, (a) the Liquidating Debtors may request funds after December 31, 2010, from the Wind Down Facility to pay Administrative Claims incurred prior to December 31, 2010, and Buyer shall fund such Administrative Claims from the Wind Down Facility, and (b) the Liquidating Debtors may utilize funds received from the Wind Down Facility after December 31, 2010, in each case if otherwise consistent with the limits and purposes set forth in the Wind Down Budget and the provisions of the Asset Purchase Agreement.

Creditors holding Administrative Claims (other than Professional Fee Claims) that do not file requests for payment by the Administrative Claims Bar Date shall be forever barred from asserting such claims against the Debtors, their Estates, the Liquidating Debtors, the

Creditor Trustee, the Creditor Trust, the Estate Administrator, their respective successors or

assigns, or their property.

      **C.**     **Professional Fee Claims**

         The Liquidating Debtors shall pay Professionals all of their Allowed Professional

Fee Claims, provided that, all Contingency Fees and all Assigned Litigation Fee Claims shall be

payable solely by, and from, the Creditor Trust (including Litigation Proceeds from the

Committee Lawsuit).  Professional Fee Claims shall not be funded with Contingency Fees.

Professionals holding claims for Contingency Fees, the Committee Investigation Overage or the

Committee WDF Overage have agreed pursuant to Section 1129(a)(9) of the Bankruptcy Code

that such Claims are not required to be paid on the Effective Date as a condition to Confirmation

of the Plan (but, to the extent funds are available and if otherwise Allowed and permitted, such

Claims shall be paid on the Effective Date).

         Professionals requesting compensation or reimbursement of expenses pursuant to

sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered

before the Effective Date are required to file fee applications and serve them pursuant to the

notice provisions of the Interim Fee Order by the Professional Fee Claims Bar Date.  Any

objection to such Professional Fee Claims shall be filed on or before the objection deadline

specified in the application for final compensation or order of the Bankruptcy Court.  Except as

otherwise permitted by the Interim Fee Order, payment shall not be made to a Professional until

the Professional's final fee application has been approved by the Bankruptcy Court, unless such

Professional shall have agreed to different treatment of such Professional Fee Claim.  Creditors

holding Professional Fee Claims that do not file final fee applications by the Professional Fee

Claims Bar Date shall be forever barred from asserting such claims against the Debtors, their Estates, the Creditor Trustee, the Estate Administrator, the Liquidating Debtors, their respective successors or assigns, or their property.

The Committee Investigation Overage and the Committee WDF Overage shall not be satisfied from the Professional Fees Reserve Account or the Administrative/Priority Reserve Account but shall be paid from, and subject to the receipt by the Liquidating Debtors of, Litigation Proceeds from the Estate Avoidance Actions, provided that, such Professional Fee Claims for the Committee Investigation Overage and the Committee WDF Overage shall be payable *pari passu* with other Professional Fee Claims that are not otherwise satisfied from funds in, or derived from, the Carve Out Account, the Professional Fees Reserve Account, the Administrative/Priority Reserve Account or the Wind Down Facility.  Any portion of the Committee Investigation Overage, the Committee WDF Overage, or other Professional Fee Claims that are not otherwise paid by the Liquidating Debtors with Litigation Proceeds from the Estate Avoidance Actions shall be treated as, and included within the, Creditor Trust Residual Obligations.  All Professional Fee Claims included within the Creditor Trust Residual Obligations, if any, shall be payable *pari passu*.

After the Effective Date, the Liquidating Debtors shall use funds from the Wind Down Facility (in accordance with the limits and purposes set forth in the Wind Down Budget and the Asset Purchase Agreement), the Carve Out Account (in accordance with the DIP Credit Agreement, the DIP Financing Orders and the provisions of the Asset Purchase Agreement), and Cash on hand (other than any Contingency Fees), to pay Allowed Professional Fee Claims.  Such funds shall be deposited into the Professional Fees Reserve Account from time to time in an

amount equal to (i) the aggregate amount of asserted, unpaid Professional Fee Claims through the Effective Date (including an estimated amount of Professional Fee Claims related to applications for the allowance of Professional Fee Claims), plus (ii) an estimated amount, determined by the Estate Administrator in his sole discretion, of the reasonable fees for professional services to be rendered, and actual and necessary costs to be incurred, following the Effective Date on behalf of the Liquidating Debtors.

The Buyer shall deposit funds from the Wind Down Facility into the Professional Fees Reserve Account upon the Liquidating Debtors' request only to the extent such Claims are in accordance with the limits and purposes set forth in the Wind Down Budget and the provisions of the Asset Purchase Agreement.  For the avoidance of doubt, notwithstanding any provisions to the contrary in the Asset Purchase Agreement, (a) the Liquidating Debtors may request funds after December 31, 2010, from the Wind Down Facility to pay Professional Fee Claims incurred prior to December 31, 2010, and Buyer shall fund such Professional Fee Claims from the Wind Down Facility, and (b) the Liquidating Debtors may utilize funds received from the Wind Down Facility after December 31, 2010, in each case if otherwise consistent with the limits and purposes set forth in the Wind Down Budget and the provisions of the Asset Purchase Agreement.

Payments to Professionals shall be made only in accordance with (i) the Interim Fee Order; (ii) an order by the Bankruptcy Court approving the Professional's final fee application, (iii) any other applicable order of the Bankruptcy Court; or (iv) the provisions of Article V(J) of the Plan which govern payments of Post Effective Date Professional Fees.

### D.    Priority Tax Claims

On the later to occur of (i) the Effective Date (or as soon as practicable thereafter) or (ii) the date on which such Claim shall become an Allowed Claim, the Liquidating Debtors shall pay to each Creditor holding an Allowed Priority Tax Claim the Allowed amount of such Claim without interest from the Petition Date.

With respect to all Priority Tax Claims incurred prior to December 31, 2010, and not otherwise paid as of the Effective Date, the Liquidating Debtors shall, only to the extent such Priority Tax Claims are consistent with the limits and purposes set forth in the Wind Down Budget and the provisions of the Asset Purchase Agreement, use funds from the Wind Down Facility, which funds shall be deposited by the Buyer into the Administrative/Priority Reserve Account from time to time as requested by the Liquidating Debtors under the Asset Purchase Agreement (including requests made after December 31, 2010, with respect to Priority Tax Claims incurred prior to December 31, 2010), and disbursed to individual Creditors as soon as practicable thereafter (including disbursements made after December 31, 2010, with respect to Priority Tax Claims incurred prior to December 31, 2010), consistent with the provisions of the Plan.  For the avoidance of doubt, notwithstanding any provisions to the contrary in the Asset Purchase Agreement, (a) the Liquidating Debtors may request funds after December 31, 2010, from the Wind Down Facility to pay Priority Tax Claims incurred prior to December 31, 2010, and Buyer shall fund such Priority Tax Claims from the Wind Down Facility, and (b) the Liquidating Debtors may utilize funds received from the Wind Down Facility after December 31, 2010, in each case if otherwise consistent with the limits and purposes set forth in the Wind Down Budget and the provisions of the Asset Purchase Agreement.

## ARTICLE III.
## TREATMENT OF
## CLASSIFIED CLAIMS AND EQUITY INTERESTS

A.    **Summary**

The categories of Claims and Equity Interests listed below classify Claims and

Equity Interests for all purposes, including voting, Confirmation and distribution pursuant to the

Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Equity

Interest shall be deemed classified in a particular Class only to the extent that the Claim or

Equity Interest qualifies within the description of that Class and shall be deemed classified in a

different Class to the extent that any remainder of such Claim or Equity Interest qualifies within

the description of such different Class.  A Claim or Equity Interest is in a particular Class only to

the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or

otherwise settled prior to the Effective Date.  The Plan provides for substantive consolidation of

the Consolidated Debtors' Estates.  Thus, there is only a single Class for each category of Claims

or Equity Interests against the Consolidated Debtors into which all such Claims or Equity

Interests against any one or more of the Consolidated Debtors are classified.  Claims against and

Equity Interests in CEI are separately classified.

B.    **Classification and Treatment of Claims and Equity Interests**

The classification and treatment of Claims and Equity Interests against the

Debtors pursuant to the Plan is as follows:

| Class | Status | Voting Rights |
|---|---|---|
| Class 1-Priority Claims, if any, against Consolidated Debtors | Impaired | Entitled to Vote |
| Class 2-Priority Claims, if any, against CEI | Impaired | Entitled to Vote |
| Class 3-Secured Claims, if any, against Consolidated Debtors | Unimpaired | Not Entitled to Vote |
| Class 4-Secured Claims, if any, against CEI | Unimpaired | Not Entitled to Vote |
| Class 5-Unsecured Claims against Consolidated Debtors | Impaired | Entitled to Vote |
| Class 6-Unsecured Claims against CEI | Impaired | Entitled to Vote |
| Class 7-Equity Interests in Consolidated Debtors | Impaired | Deemed to Reject |
| Class 8-Equity Interests in CEI | Impaired | Deemed to Reject |

1.    *Class 1 – Priority Claims Against Consolidated Debtors*

a.    **Classification:**  Class 1 consists of the Priority Claims against the Consolidated Debtors.  The Debtors believe that there are no Class 1 Claims.

b.    **Treatment:**  The Liquidating Debtors shall pay the Allowed amount of each Class 1 Priority Claim to each Creditor holding a Class 1 Priority Claim as soon as practicable following the later of:  (a) the Effective Date and (b) the date such Class 1 Priority Claim becomes an Allowed Claim.  The Debtors shall pay each Creditor holding a Class 1 Priority Claim in Cash in full in respect of such Allowed Claim without interest from the Petition Date; provided, however, that such Creditor may be treated on such less favorable terms as may be agreed to in writing by such Creditor.

c.    **Voting:**  Class 1 is an Impaired Class.  Creditors holding Class 1 Claims are entitled to vote on the Plan.

2.    *Class 2 – Priority Claims Against CEI*

a.    **Classification:**  Class 2 consists of the Priority Claims against CEI.  The Debtors believe that there are no Class 2 Claims.

b.      **Treatment:**  The Liquidating Debtors shall pay the Allowed

amount of each Class 2 Priority Claim to each Creditor holding a Class 2 Priority Claim as soon

as practicable following the later of:  (a) the Effective Date and (b) the date such Class 2 Priority

Claim becomes an Allowed Claim.  The Debtors shall pay each Creditor holding a Class 2

Priority Claim in Cash in full in respect of such Allowed Claim without interest from the Petition

Date; provided, however, that such Creditor may be treated on such less favorable terms as may

be agreed to in writing by such Creditor.

c.      **Voting:**  Class 2 is an Impaired Class.  Creditors holding Class 2

Claims are entitled to vote on the Plan.

**3.      *Class 3 – Secured Claims Against Consolidated Debtors***

a.      **Classification:**  Class 3 consists of any Secured Claims against the

Consolidated Debtors.  Each Creditor holding a Class 3 Claim, if any, constitutes a separate

subclass under the Plan.  The Debtors believe that there are no Class 3 Claims.

b.      **Treatment:**  To the extent any Class 3 Secured Claims exist, at the

option of the Liquidating Debtors, one of the following treatments shall be provided: (i) the

Creditor holding such Claim shall retain its Lien on its collateral until such collateral is sold, and

the proceeds of such sale, less costs and expenses of disposing of such collateral, shall be paid to

such Creditor in full satisfaction, release, and discharge of such Allowed Secured Claim; (ii) on

or as soon as practicable after the later of (a) the Effective Date, or (b) the date upon which the

Bankruptcy Court enters a Final Order determining or allowing such Claim, or as otherwise

agreed between the Creditor and the Debtors, the Creditor holding such Class 3 Secured Claim

will receive a Cash payment equal to the amount of its Allowed Secured Claim in full

satisfaction, release, and discharge of such Secured Claim; or (iii) the collateral securing the Creditor's Secured Claim shall be abandoned to such Creditor, in full satisfaction, release, and discharge of such Secured Claim.

      c.    **Voting:** Class 3 is an Unimpaired Class. Creditors holding Class 3 Claims are not entitled to vote on the Plan.

      **4.**    *Class 4 – Secured Claims Against CEI*

      a.    **Classification:** Class 4 consists of any Secured Claims against CEI. Each Creditor holding a Class 4 Claim, if any, constitutes a separate subclass under the Plan. The Debtors believe that there are no Class 4 Claims.

      b.    **Certain Alleged Note Holder Claims:** One of the causes of action in the Committee Lawsuit alleges that the Holders of those certain 2.75% convertible senior notes issued by CEI in the face amount of $180 million are subrogated to the rights of the Holders of those certain 7 5/8% Senior Notes issued by CEI in the face amount of $200 million. If the Committee Lawsuit is successful in that regard, the Holders of the 7 5/8% Senior Notes may allege that they hold Class 4 Claims. To the extent that any such holder successfully establishes that it is a secured Class 4 Creditor, notwithstanding any provision to the contrary in this Plan, its Class 4 Claim shall be paid solely from Creditor Trust Assets.

      c.    **Treatment:** Except as otherwise provided in Article III(B)(4)(b) above, to the extent any Class 4 Secured Claims exist, at the option of the Liquidating Debtors, one of the following treatments shall be provided: (i) the Creditor holding such Claim shall retain its Lien on its collateral until such collateral is sold, and the proceeds of such sale, less costs and expenses of disposing of such collateral, shall be paid to such Creditor in full satisfaction,

release, and discharge of such Allowed Secured Claim; (ii) on or as soon as practicable after the later of (a) the Effective Date, or (b) the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Claim, or as otherwise agreed between the Creditor and the Debtors, the Creditor holding such Class 4 Secured Claim will receive a Cash payment equal to the amount of its Allowed Secured Claim in full satisfaction, release, and discharge of such Secured Claim; or (iii) the collateral securing the Creditor's Secured Claim shall be abandoned to such Creditor, in full satisfaction, release, and discharge of such Secured Claim.

        d.      **Voting:** Class 4 is an Unimpaired Class. Creditors holding Class 4 Claims are not entitled to vote on the Plan.

       **5.**     *Class 5 – Unsecured Claims Against Consolidated Debtors*

        a.      **Classification:** Class 5 consists of Unsecured Claims against the Consolidated Debtors. Class 5 includes the Intercompany Claims of CEI against any Consolidated Debtor.

        b.      **Treatment:** Each Creditor holding a Class 5 Allowed Unsecured Claim shall receive a Pro Rata share of the Consolidated Debtors Distributable Trust Assets.

        c.      **Voting:** Class 5 is an Impaired Class. Creditors holding Class 5 Claims are entitled to vote on the Plan.

       **6.**     *Class 6 – Unsecured Claims Against CEI*

        a.      **Classification:** Class 6 consists of Unsecured Claims against CEI. Class 6 includes the Intercompany Claims of any Consolidated Debtor against CEI.

        b.      **Treatment:** Each Creditor holding a Class 6 Allowed Unsecured Claim shall receive a Pro Rata share of the CEI Distributable Trust Assets.

c.      **Voting:** Class 6 is an Impaired Class.  Creditors holding Class 6 Claims are entitled to vote on the Plan.

d.      **Certain Noteholder Distributions.**  Any distributions to the Holders of those certain 2.75% convertible senior notes due 2037 issued by CEI in the face amount of $180 million shall be made to the Indenture Trustee for further distribution to such Holders in accordance with (a) the terms of the Indenture, subject to any charging lien provided for in the Indenture, and (b) the terms of the Plan.

7.      *Class 7 – Equity Interests in the Consolidated Debtors*

a.      **Classification:**  Class 7 consists of the Equity Interests in the Consolidated Debtors.

b.      **Treatment:**  Each Holder of an Equity Interest in the Consolidated Debtors shall neither receive a distribution nor retain any property under the Plan on account of such Equity Interest.  Upon the Effective Date, Class 7 Equity Interests will be deemed cancelled and will cease to exist.

c.      **Voting:**  Holders of Class 7 Equity Interests are deemed to have rejected the Plan.  Accordingly, Class 7 Equity Interest Holders are not entitled to vote on the Plan.

8.      *Class 8 – Equity Interests in CEI*

a.      **Classification:**  Class 8 consists of the Equity Interests in CEI.

b.      **Treatment:**  Each Holder of an Equity Interest in CEI shall neither receive a distribution nor retain any property under the Plan on account of such Equity Interest.

Upon the Effective Date, Class 8 Equity Interests will be deemed cancelled and will cease to exist.

        c.    **Voting:** Holders of Class 8 Equity Interests are deemed to have rejected the Plan. Accordingly, Class 8 Equity Interest Holders are not entitled to vote on the Plan.

**ARTICLE IV.**
**ACCEPTANCE OR REJECTION OF THE PLAN**

A.    **Voting Classes**

Each Creditor holding an Allowed Claim in Classes 1, 2, 5 and 6 is entitled to vote either to accept or to reject the Plan. Only those votes cast by Creditors holding Allowed Claims shall be counted in determining whether acceptances have been received sufficient in number and amount to obtain Confirmation.

B.    **Acceptance by Impaired Classes**

An Impaired Class of Claims shall have accepted the Plan if, excluding any Creditor designated under section 1126(e) of the Bankruptcy Code: (a) the Creditors holding at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan , and (b) the Creditors holding more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

C.    **Presumed Acceptance of Plan**

Holders of Class 3 and Class 4 Secured Claims are deemed to have accepted the Plan and are not entitled to vote thereon.

D.    **Presumed Rejection of Plan**

Holders of Class 7 and Class 8 Equity Interests shall not receive any distributions under the Plan, are deemed to reject the Plan and are not entitled to vote thereon.

E.    **Nonconsensual Confirmation**

Because Classes 7 and 8 are deemed to reject the Plan by operation of law, the Debtors will ask the Bankruptcy Court to confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code. Without limiting the foregoing, in the event that any Class of Claims entitled to vote on the Plan fails to accept the Plan as required by section 1129(a) of the Bankruptcy Code, the Plan may be amended and, in any event, the Debtors reserve the right to seek confirmation of the Plan over such rejection pursuant to section 1129(b) of the Bankruptcy Code.

F.    **How to Vote**

A form of Ballot is being provided to Creditors in Classes 1, 2, 5 and 6 by which Creditors in such Class may vote to accept or reject the Plan. The Ballot for voting on the Plan gives you one important choice to make with respect to the Plan – you can vote <u>for</u> or <u>against</u> the Plan. To vote on the Plan, please complete the Ballot, as indicated thereon by, (1) indicating on the enclosed Ballot that (a) you accept the Plan or (b) reject the Plan, and (2) signing your name and mailing the Ballot in the envelope provided for this purpose. The Claims Agent will count the Ballots.

**IN ORDER TO BE COUNTED, BALLOTS MUST BE COMPLETED, SIGNED AND RECEIVED NO LATER THAN 4:00 P.M. PREVAILING EASTERN TIME ON THE VOTING DEADLINE AT THE FOLLOWING ADDRESS:**

If by first class mail:

Champion Enterprises, Inc., et al., Ballot Processing Center
c/o Epiq Bankruptcy Solutions, LLC
P.O. Box 5014
New York, NY 10150-5014

If by overnight mail or hand delivery:

Champion Enterprises, Inc., et al., Ballot Processing Center
c/o Epiq Bankruptcy Solutions, LLC
757 Third Avenue
3rd Floor
New York, NY  10017

**DO NOT SEND YOUR BALLOT VIA FACSIMILE OR E-MAIL.**

**IF YOUR BALLOT IS NOT PROPERLY COMPLETED, SIGNED AND RECEIVED AS DESCRIBED, IT WILL NOT BE COUNTED.  IF YOUR BALLOT IS DAMAGED OR LOST, YOU MAY REQUEST A REPLACEMENT BY ADDRESSING A WRITTEN REQUEST TO THE ADDRESS SHOWN ABOVE.  FACSIMILE OR ELECTRONICALLY SUBMITTED BALLOTS WILL NOT BE COUNTED.**

**ARTICLE V.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

A.    **Sources of Plan Distributions**

All Cash necessary for the Liquidating Debtors to make payments pursuant to the

Plan shall be obtained from the Estate Assets.  All Cash necessary for the Creditor Trust to make

payments pursuant to the Plan shall be obtained from the Creditor Trust Assets.  As described

below, if and to the extent the Estate Assets are insufficient to make the payments otherwise

required by the Liquidating Debtors under the Plan (i) to Creditors holding (a) Allowed

Administrative Claims, (b) Allowed Professional Fee Claims (including any unpaid portion of

the Committee Investigation Overage or the Committee WDF Overage), (c) Allowed Priority

Tax Claims and (d) Allowed Priority Claims in Class 1 and Class 2, or (ii) for Plan Expenses, the

Creditor Trust shall make such payments from the Creditor Trust Assets at the times, in the

amounts and according to the provisions of the Plan.  As described below, if and to the extent the

there are any remaining Estate Assets following the payments in full otherwise required by the

Liquidating Debtors under the Plan (i) to Creditors holding (a) Allowed Administrative Claims,

(b) Allowed Professional Fee Claims, (c) Allowed Priority Tax Claims and (d) Allowed Priority

Claims in Class 1 and Class 2, or (ii) for Plan Expenses, the Liquidating Debtors shall transfer

such remaining assets to the Creditor Trust and such assets shall be deemed Creditor Trust

Assets.

>    **B.**    **<u>Substantive Consolidation of Consolidated Debtors</u>**

The Plan will effectuate a substantive consolidation of the Chapter 11 Cases of

the Consolidated Debtors (*i.e.*, all Liquidating Debtors other than CEI) into a single entity solely

for the purpose of the Chapter 11 Cases and all actions with respect to voting, Confirmation,

Consummation and implementation of the Plan.  On the Effective Date, the Plan consolidates all

the assets and liabilities of the Consolidated Debtors into a single estate.  Accordingly, the Plan

treats the Consolidated Debtors as a single entity and distributions are made on a collective basis

to Creditors holding Unsecured Claims against the Consolidated Debtors.  The Distributions to

Class 5 Creditors will be made exclusively from the Consolidated Debtors Distributable Trust

Assets.  Likewise, Distributions to Class 6 Creditors will be made exclusively from the CEI

Distributable Trust Assets.  Voting will be aggregated by type of Claim without regard to which

Debtor the Claim is asserted against.

On the Effective Date: (i) all Intercompany Claims by, between and among the Consolidated Debtors shall be eliminated,[4] (ii) all assets and liabilities of any Consolidated Debtor shall be merged or treated as if they were merged with the assets and liabilities of the other Consolidated Debtors, (iii) any obligation of a Consolidated Debtor and all guarantees thereof by one or more of the other Consolidated Debtors shall be deemed to be one obligation of the Consolidated Debtors, (iv) the Equity Interests in the Consolidated Debtors shall be cancelled, and (v) each Claim filed or to be filed against any Consolidated Debtor shall be deemed filed as a single Claim against and a single obligation of the Consolidated Debtors.  On the Effective Date, in accordance with the terms of the Plan, and the consolidation of the assets and liabilities of the Consolidated Debtors, all Claims based upon guarantees of collection, payment, or performance made by any Consolidated Debtor as to the obligations of another Consolidated Debtor shall be released and of no further force and effect.  The foregoing (a) shall not affect the rights of any Creditor holding a Secured Claim with respect to the Collateral securing its Claim, or the terms and implementation of any settlement, and the rights and obligations of the parties thereto, entered into in connection with the confirmation of the Plan and (b) shall not, and shall not be deemed to, prejudice the Litigation (subject to the releases set forth in Article IX of the Plan), which shall survive entry of the Confirmation Order for the benefit of the Debtors and their Estates, as if there had been no substantive consolidation.

The Plan and Disclosure Statement, jointly, shall serve as, and shall be deemed to be, a motion for entry of an order under Bankruptcy Rule 9019 for the substantive consolidation

---

[4] The Intercompany Claims by any of the Consolidated Debtors against CEI, or by CEI against any of the Consolidated Debtors are preserved (subject, however, to any objections to the allowance and priority of such Claims, among other rights, defenses and offsets, to the treatment of such Claims).

of the Consolidated Debtors' Chapter 11 Cases. If no objection to the Plan is timely filed and

served by any Creditor holding an Impaired Claim affected by the Plan, the Confirmation Order

will serve as the Order approving substantive consolidation pursuant to the terms of the Plan. If

any such objections are timely filed and served, a hearing with respect to the Plan and the

objections thereto shall be scheduled by the Bankruptcy Court, which hearing may, but is not

required to, coincide with the Confirmation Hearing.

C.    **Treatment of Estate Assets**

The Estate Assets shall be held by the Liquidating Debtors in trust for Creditors

and shall be distributed only in accordance with this Plan.

On or as soon as practicable after the Effective Date, the Liquidating Debtors

shall establish the Professional Fees Reserve Account and the Administrative Claim/Priority

Reserve Account by using available Cash (except to the extent such Cash is derived from

Litigation Proceeds from Estate Avoidance Actions, in which case such Cash shall instead be

deposited in the Estate Avoidance Actions Reserve Account), and funds from the Carve Out

Account and the Wind Down Facility (subject to and in accordance with the Asset Purchase

Agreement and the Wind Down Budget). The Professional Fees Reserve Account and the

Administrative Claim/Priority Reserve Account and the funds contained therein shall be free and

clear of all Claims and Liens except with respect to the Buyer's interests, pursuant to the Asset

Purchase Agreement, in (a) any Excess Carve-Out Cash (as defined in the Asset Purchase

Agreement) and (b) certain unutilized amounts funded under the Wind Down Facility.

On or as soon as practicable after the Effective Date, the Liquidating Debtors

shall establish the Estate Avoidance Actions Reserve Account by using available Cash derived

from Litigation Proceeds from Estate Avoidance Actions.  From time to time as Litigation

Proceeds from Estate Avoidance Actions are received, the Liquidating Debtors shall deposit such

proceeds into the Estate Avoidance Actions Reserve Account.  The Estate Avoidance Actions

Reserve Account and the funds contained therein shall be free and clear of all Claims and Liens.

Subject to the occurrence of the Effective Date, in accordance with Articles II and

III of the Plan, the Liquidating Debtors shall pay Creditors holding (a) Allowed Administrative

Claims, (b) Allowed Professional Fee Claims, (c) Allowed Priority Tax Claims and (d) Allowed

Priority Claims in Class 1 and Class 2.  The Liquidating Debtors shall make the Cash payments

to the above referenced Creditors holding Allowed Claims: (aa) in U.S. dollars by check, draft or

warrant, drawn on a domestic bank selected by the Liquidating Debtors in their sole discretion,

or by wire transfer from a domestic bank, at the Liquidating Debtors' option, and (bb) by first-

class mail (or by other equivalent or superior means as determined by the Liquidating Debtors).

At such time(s) as the Estate Administrator deems reasonable and prudent in his

sole discretion, any Estate Assets Surplus shall be transferred by the Liquidating Debtors to the

Creditor Trust, _provided that_, from time to time, the Estate Administrator may transfer selected

Estate Assets from the Liquidating Debtors to the Creditor Trust.

### D.    **Payment of Plan Expenses**

All Plan Expenses may be paid by the Estate Administrator without further notice

to Creditors or approval of the Bankruptcy Court.  Any disputes concerning the payment of Plan

Expenses shall be submitted to the Bankruptcy Court for resolution.  Plan Expenses shall be

payable prior to payment of any Committee Investigation Overage, Committee WDF Overage

and any other Professional Fee Claims that are not otherwise satisfied from the Professional Fees

Reserve Account or the Administrative/Priority Reserve Account.

     **E.**      **Dissolution of Liquidating Debtors**

     The Liquidating Debtors shall conduct no business following the Effective Date

other than winding up their affairs in accordance with applicable law and the provisions of this

Plan. Without limiting the generality or effect of the foregoing, following the Effective Date the

Liquidating Debtors (acting through the Estate Administrator as described in Article V(F)) shall:

(i) undertake those transactions that are necessary, advantageous or practicable to obtain the

maximum value from the Estate Assets; and (ii) exercise their best efforts and endeavor in good

faith and without undue delay to resolve all Professional Fee Claims, Administrative Claims,

Priority Tax Claims, and Claims in Classes 1 through 4. Except as otherwise provided in this

Plan or the Confirmation Order, pursuant to applicable bankruptcy and non-bankruptcy law, the

Liquidating Debtors shall be authorized to wind up their affairs, dissolve the Debtors and put into

effect and carry out the terms of the Plan and any orders of the Bankruptcy Court entered in the

Chapter 11 Cases, without further action by their boards of directors or stockholders.

     **F.**      **Power and Authority of Estate Administrator**

     From and after the Effective Date, the Liquidating Debtors will be managed and

governed by the Estate Administrator who shall act as the representative of the Liquidating

Debtors. Except as otherwise delegated to the Creditor Trustee as described in Article V(H) or

as delegated to the Creditor Trustee after the conclusion of the Estate Administrator's

employment, the activities of the Liquidating Debtors as permitted and limited under this Plan

will be managed by the Estate Administrator. Compensation and reimbursement of the Estate

Administrator shall be in accordance with the Estate Administrator Order and shall be considered

a Plan Expense.  The Estate Administrator shall be authorized to act on behalf of the Liquidating

Debtors to take any actions necessary to wind up the business of the Liquidating Debtors,

including but not limited to (i) exercising the rights, power and authority of the Liquidating

Debtors under applicable provisions of the Plan and bankruptcy and non-bankruptcy law; (ii)

retaining professionals to represent the Liquidating Debtors in implementing the Plan; (iii)

establishing the Professional Fees Reserve Account and the Administrative/Priority Reserve

Account; (iv) making the payments required by the Plan for Allowed Administrative Claims,

Professional Fee Claims, Allowed Priority Tax Claims, and the Allowed Claims of Classes 1, 2,

3 and 4; (v) effecting the transfer of the Creditor Trust Assets to the Creditor Trust, (vi) resolving

Disputed Claims of Creditors holding Professional Fee Claims, Administrative Claims, Priority

Tax Claims and Claims in Classes 1 through 4; (vii) ensuring that the Liquidating Debtors

comply with their obligations to pay quarterly fees under 28 U.S.C. § 1930(a)(6), (viii) filing all

post-Confirmation reports required by the Bankruptcy Rules, the Bankruptcy Court, the Local

Bankruptcy Rules, or any applicable guidelines of the U.S. Trustee; (ix) providing reasonable

assistance to the Creditor Trust to (a) obtain access to books, records and information in the

possession, custody or control of the Buyer to the extent such access is permitted under the Asset

Purchase Agreement and (b) prosecute the Committee Lawsuit; (x) otherwise implementing the

Plan, winding up the affairs of the Debtors (including filing certificates of dissolution) and

closing the Chapter 11 Cases, and (xi) any other duties that are within the scope of the Estate

Administrator Order, the Plan or the Confirmation Order.  If the sitting Estate Administrator

becomes unable, unavailable or unwilling to continue to serve, the Bankruptcy Court will

appoint a replacement upon the request of any party in interest, unless his duties and responsibilities have already been transferred to the Creditor Trustee.

If not discharged earlier in accordance with the Estate Administrator Order, when the Estate Administrator completes the payment of Professional Fee Claims, Allowed Administrative Claims, Allowed Priority Claims and Allowed Priority Tax Claims and determines, in his sole judgment (following consultation with the Creditor Trustee), that the Liquidating Debtors no longer need the services of an Estate Administrator, he may File the Estate Administrator Discharge Notice (with a copy served on the Creditor Trustee). From and after the effective date of the Estate Administrator Discharge Notice (which date shall be 30 days from the date of mailing of the notice), the Estate Administrator shall be relieved of his duties and responsibilities under this Plan, and any outstanding obligations of the Liquidating Debtors under the Plan shall become the duties and responsibilities of the Creditor Trustee.

## G.    **Preservation and Settlement of Litigation**

Except as otherwise provided in this Plan, all Litigation, including without limitation, the Committee Lawsuit and Avoidance Actions, is retained, vested and preserved by the Liquidating Debtors pursuant to section 1123(b) of the Bankruptcy Code. Upon the Effective Date, (a) the Estate Avoidance Actions will vest in the Liquidating Debtors and (b) the Assigned Litigation will be automatically transferred to the Creditor Trust and shall be prosecuted or settled by the Creditor Trustee. The Debtors and the Committee have not concluded their investigation into all of the Litigation. Accordingly, in considering the Plan, each party in interest should understand that any and all Litigation that may exist against such Person or entity may be pursued by the Debtors, the Liquidating Debtors or the Creditor Trust as applicable. The

failure of the Debtors to specifically list a claim, right, cause of action, suit or proceeding in this

Plan or the Disclosure Statement shall not constitute a waiver or release by the Debtors or their

Estates of such claim, right of action, suit or proceeding. The substantive consolidation of the

Consolidated Debtors and their Estates shall not prejudice or otherwise affect the rights or

defenses of any party to the Litigation.

Subject to the limitations of liability and releases set forth in Article IX of the

Plan, the Creditor Trustee may commence and prosecute (or continue the prosecution of) the

Assigned Litigation against any Entity, including but not limited to, any Creditor or other party

in interest. Such Assigned Litigation may include, but shall not be limited to, Avoidance Actions

against any Entity receiving transfers prior to the Petition Date, including but not limited to

transfers set forth in the Schedules. The Creditor Trustee and/or the Creditor Trust may, in

accordance with the Creditor Trust Agreement and the terms of the Plan, file, prosecute, settle,

release, compromise, enforce or abandon any or all of the Assigned Litigation. Bankruptcy

Court approval must be obtained for any settlement of the Committee Lawsuit

The Debtors (or the Liquidating Debtors) may settle, in consultation with the

Committee or the Creditor Trustee, any of the Estate Avoidance Actions with the approval of the

Bankruptcy Court pursuant to Bankruptcy Rule 9019.

### H. **The Creditor Trust**

The Creditor Trust shall be created on the Effective Date. On the Effective Date,

the Assigned Litigation, any Litigation Proceeds from the Assigned Litigation, and all other

Assets of the Estates (except the Estate Assets), shall be automatically transferred, free and clear

of all Liens, to the Creditor Trust and shall be deemed accomplished pursuant to this Plan and the

Confirmation Order.  Subsequently, the Estate Administrator, at such time(s) as he deems

reasonable and prudent in his discretion, (a) may assign any selected Estate Assets to the

Creditor Trust, and (b) shall assign the Estate Assets Surplus to the Creditor Trust; provided,

however, that the Estate Administrator may not assign to the Creditor Trust any Excess Carve-

Out Cash (as defined in the Asset Purchase Agreement) which shall be remitted to the Buyer, or

those certain unutilized amounts funded under the Wind Down Facility which shall be repaid to

the Buyer pursuant to the Asset Purchase Agreement.

 The Creditor Trustee owes its fiduciary duties to Creditors holding Claims in

Classes 5 and 6 under the Plan, who are the beneficiaries of the Creditor Trust.  Subject to any

funding necessary to pay the Creditor Trust Residual Obligations and the Creditor Trust

Expenses, the Creditor Trust Assets shall be held by the Creditor Trustee in trust for Creditors

holding Claims in Class 5 and 6 and shall be distributed only in accordance with this Plan and

the Creditor Trust Agreement.  For the avoidance of doubt, however, the Contingency Fees

payable on account of any Assigned Litigation shall be for the sole benefit of Milberg LLP and

Pinckney, Harris & Weidinger, LLC, and shall not be used to pay any Creditor Trust Residual

Obligations, Creditor Trust Expenses, or Plan Expenses.

 From and after the Effective Date, the Creditor Trustee shall retain and pursue the

Assigned Litigation on such terms and conditions as are consistent with the interests of the

beneficiaries of the Creditor Trust.  In addition, from and after the Effective Date, except as

otherwise provided in this Plan or in the Confirmation Order, the Creditor Trustee shall be free to

operate without any limitation or restriction by, and without any requirement to comply with, the

Bankruptcy Code, Bankruptcy Rules, or Guidelines of the United States Trustee.  All Cash and

all Litigation Proceeds realized or obtained by the Creditor Trustee shall be deposited into the

Creditor Trust Fund and held in accordance with this Plan and the Creditor Trust Agreement and

shall be distributed in accordance with this Plan and the Creditor Trust Agreement.

The duties, responsibilities and powers of the Creditor Trustee shall terminate

after all Creditor Trust Assets have been distributed in accordance with this Plan and the Creditor

Trust Agreement.  Except in the circumstances set forth below, the Creditor Trust shall terminate

no later than five years after the Effective Date.  However, if warranted by the facts and

circumstances provided for in this Plan, and subject to the approval of the Bankruptcy Court

upon a finding that an extension is necessary to aid the purpose of the Creditor Trust, the term of

the Creditor Trust may be extended, one or more times (not to exceed a total of four extensions,

unless the Creditor Trustee receives a favorable ruling from the Internal Revenue Service that

any further extension would not adversely affect the status of the Creditor Trust as a grantor trust

for federal income tax purposes) for a finite period, based on the particular circumstances at

issue.  Each such extension must be approved by the Bankruptcy Court within two months prior

to the beginning of the extended term with notice thereof to all of the unpaid beneficiaries of the

Creditor Trust.  Upon the occurrence of the termination of the Creditor Trust, the Creditor

Trustee shall file with the Bankruptcy Court a report thereof, seeking an order discharging the

Creditor Trustee.

### 1.    *Creditor Trust Fund*

The Creditor Trustee shall periodically deposit any Litigation Proceeds into the

Creditor Trust Fund to satisfy the obligations to Creditors holding Claims in Class 5 and 6 and to

make any payments necessary for Creditor Trust Residual Obligations or Creditor Trust

Expenses. The Creditor Trust Fund shall be invested by the Creditor Trustee in a manner consistent with the provisions of the Creditor Trust Agreement.

### 2.    *Payment of Creditor Trust Expenses*

All Creditor Trust Expenses may be paid by the Creditor Trustee from the Creditor Trust Fund without further notice to Creditors or approval of the Bankruptcy Court. Any disputes concerning the payment of Creditor Trust Expenses shall be submitted to the Bankruptcy Court for resolution. Creditor Trust Expenses shall include any quarterly fees payable under 28 U.S.C. § 1930(a)(6) on account of disbursements made by the Creditor Trust.

### 3.    *Indenture Trustee Expenses*

The expenses of the Indenture Trustee (including the reasonable fees and expenses of its counsel) in an amount not to exceed $50,000 (and otherwise consistent with and authorized under the terms of the Indenture) may be paid as Creditor Trust Expenses, provided however, such permitted expenses shall be junior and subordinate to all any (a) Creditor Trust Expenses, and (b) any Creditor Trust Residual Obligations (including any Administrative Claims or Professional Fee Claims that may be within such obligations). The expenses of the Indenture Trustee shall not constitute nor be Allowed as Administrative Claims.

### 4.    *Distribution of Creditor Trust Assets*

The Creditor Trust Assets shall be used to satisfy (a) first, Creditor Trust Expenses, (b) second, any Creditor Trust Residual Obligations, and (c) thereafter, the payments required under the Plan on account of Allowed Claims in Classes 5 and 6, provided that, (i) any Contingency Fees are payable solely from the Committee Lawsuit and are not Creditor Trust Assets, and (ii) the Creditor Trustee shall only make distributions in the amounts and at such

times permitted by this Plan and the Creditor Trust Agreement. The Creditor Trustee shall

segregate the assets and liabilities of the Consolidated Debtors and the assets of CEI and shall

make distributions to the Creditors of each in accordance with the assets, if any, available to

satisfy the Claims of Unsecured Creditors of CEI and the Consolidated Debtors, respectively.

Distributions on Class 5 Allowed Claims shall be paid only from the proceeds of the

Consolidated Debtors Distributable Trust Assets and distributions on Class 6 Allowed Claims

shall be paid solely from the proceeds of CEI Distributable Trust Assets.

Prior to any Distribution, the Creditor Trustee shall seek and obtain Bankruptcy

Court approval for its proposed allocation of Creditor Trust Assets between CEI and the

Consolidated Debtors. The Creditor Trustee shall have the authority to formulate and propose an

"inter-estate" settlement (among, on the one hand, CEI, and, on the other hand, the Consolidated

Debtors), that (a) compromises, withdraws, offsets or extinguishes any Intercompany Claims, (b)

substantively consolidates, in whole or in part, CEI into the Consolidated Debtors, (c) transfers

any potential surplus available after Claims against the Consolidated Debtors are paid in full to

satisfy Claims against CEI, or (d) otherwise achieves a comprehensive allocation of Creditor

Trust Assets for Distributions among the holders of Allowed Claims in Classes 5 and 6. The

Creditor Trustee shall seek the approval of the Bankruptcy Court for any such "inter-estate"

settlement. Nothing in the Plan or the Creditor Trust Agreement shall be construed to affect the

rights of any party in interest, including the Creditor Trustee, to object to any such "inter-estate"

settlement or otherwise seek or oppose the full substantive consolidation of CEI into the

Consolidated Debtors.

If there are insufficient funds to make full payment on account of any Creditor Trust Residual Obligations, the Creditor Trustee shall remit an amount sufficient to satisfy such claims to the Estate Administrator to enable full payment of such obligations prior to the payment of any Allowed Claims in Classes 5 and 6. If the Estate Administrator has been discharged, the Creditor Trustee shall make the necessary payments.

No payments or Distributions shall be made by the Creditor Trustee on account of Disputed Claims unless and to the extent such Claims become Allowed Claims in Class 5 and 6. The Creditor Trust Assets allocated to Disputed Claims will not be distributed but will be reserved in the Creditor Trust Fund in accordance with this Plan pending the resolution of such Disputed Claims.

5.    *Power and Authority of Creditor Trustee*

Upon the Effective Date, the Creditor Trust will be managed and governed by the Creditor Trustee, as set forth in the Creditor Trust Agreement. The Creditor Trustee shall retain and have all the rights, powers and duties necessary to carry out its responsibilities under this Plan and the Creditor Trust Agreement, and as otherwise provided in the Confirmation Order. In addition, following the effectiveness of the Estate Administrator Discharge Notice, the Creditor Trustee shall assume the duties and responsibilities formerly assigned to, undertaken or otherwise performed by the Estate Administrator pursuant to the Estate Administrator Order, the Plan or the Confirmation Order (including those acts set forth in Section V(F) of this Plan). The Creditor Trustee's identity and compensation shall be disclosed in a notice filed with the Bankruptcy Court not later than three (3) days before the date of the hearing to confirm the Plan. The compensation arrangements of the Creditor Trustee shall be subject to the approval of the

Bankruptcy Court prior to the Effective Date.  The Confirmation of the Plan shall constitute the appointment of the Creditor Trustee.

On the Effective Date, the Creditor Trustee will be deemed to have retained the Committee's Professionals under the arrangements existing on the Effective Date, without any need for further orders of the Bankruptcy Court, provided, however, that the Assigned Litigation Fee Claims (whether incurred by the Committee prior to the Effective Date or by the Creditor Trustee after the Effective Date) shall be payable solely from the Litigation Proceeds of Assigned Litigation.

The Creditor Trustee shall serve until the Creditor Trust Assets have been fully distributed, a Final Decree is entered closing the Chapter 11 Cases and the Creditor Trustee has completed a wind-down of the administration of the Creditor Trust and such other activities as designated in the Confirmation Order.  If the then current Creditor Trustee is unable, unavailable or unwilling to serve, or has been earlier removed by the Bankruptcy Court for cause shown, subject in either case to the terms of the Creditor Trust Agreement, then after notice and a hearing the Bankruptcy Court will appoint a replacement.

### 6.    *Creditor Trust Distribution Procedures*

Except as otherwise agreed by the Creditor holding a particular Claim, or as provided in this Plan, all amounts to be paid by the Creditor Trustee under the Plan shall be distributed in such amounts and at such times as is reasonably prudent.  The allowance of Class 5 and Class 6 Claims, including Intercompany Claims, is subject to all statutory, equitable and contractual claims, rights and defenses available to the Debtors and the Estates (and pursuant to the Plan, available to the Creditor Trustee, the Estate Administrator and the Liquidating

Debtors), which claims, rights and defenses are fully enforceable before, on and after the

Effective Date.  On the Effective Date, or as soon as practicable thereafter, subject to this Plan

and the Creditor Trust Agreement, the Creditor Trustee shall make interim and final distributions

of Creditor Trust Assets to Creditors holding Allowed Class 5 and 6 Claims from the Creditor

Trust Fund in the amounts set forth in this Plan.

Notwithstanding any provision to the contrary in this Plan, distributions may be

made in full or on a Pro Rata basis depending on: (x) the amount of the Allowed Claim, (y) the

then available Creditor Trust Assets, and (z) the then anticipated Creditor Trust Assets.  The

Creditor Trustee shall make the Cash payments to Creditors holding Allowed Claims: (aa) in

U.S. dollars by check, draft or warrant, drawn on a domestic bank selected by the Creditor

Trustee in its sole discretion, or by wire transfer from a domestic bank, at the Creditor Trustee's

option, and (bb) by first-class mail (or by other equivalent or superior means as determined by

the Creditor Trustee).

### 7.    *Liability and Indemnification of Creditor Trustee*

The Creditor Trustee shall not be liable for (and the Creditor Trust Assets shall

not be burdened or otherwise available to satisfy any judgment for) any act or omission taken or

omitted to be taken in his or her capacity as the Creditor Trustee, other than acts or omissions

resulting from fraud, gross negligence or willful misconduct.  The Creditor Trustee may, in

connection with the performance of his or her functions, and in his or her sole and absolute

discretion, consult with attorneys, accountants and agents, and shall not be liable for any act

taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered

by such professionals, other than acts or omissions resulting from fraud, gross negligence or

willful misconduct. Notwithstanding such authority, the Creditor Trustee shall be under no

obligation to consult with attorneys, accountants or his or her agents, and his or her

determination to not do so should not result in imposition of liability on the Creditor Trustee

unless such determination is based on fraud, gross negligence or willful misconduct. The

Creditor Trust shall indemnify and hold harmless the Creditor Trustee and his or her agents,

representatives, professionals and employees from and against any and all liabilities, losses,

damages, claims, causes of action, costs and expenses, including, but not limited to attorneys'

fees and costs arising out of or due to their actions or omissions, or consequences of such actions

or omissions, with respect to the Creditor Trust or the implementation or administration of this

Plan; provided, however, that no such indemnification will be made to such Persons for such

actions or omissions as a result of fraud, gross negligence or willful misconduct.

### 8.    *Federal Income Taxation of Creditor Trust*

For federal income tax purposes, the Debtors, the Liquidating Debtors, the

Creditor Trust and the beneficiaries of the Creditor Trust shall treat the Creditor Trust as a

Creditor Trust within the meaning of Treasury Income Tax Regulation Section 301.7701-4(d)

and IRS Revenue Procedure 94-45, 1994-2 C.B. 124. For federal income tax purposes, the

transfer of assets to the Creditor Trust under the Plan is treated as a deemed transfer to the

beneficiaries of the Creditor Trust in satisfaction of their Claims followed by a deemed transfer

of the assets by the beneficiaries of the Creditor Trust to the Creditor Trust. For federal income

tax purposes, the beneficiaries of the Creditor Trust will be deemed to be the grantors and

owners of the Creditor Trust and its assets. For federal income tax purposes, the Creditor Trust

will be taxed as a grantor trust within the meaning of IRC Sections 671-677 (a non-taxable pass-

through tax entity) owned by the beneficiaries of the Creditor Trust. The Creditor Trust will file federal income tax returns as a grantor trust under IRC Section 671 and Treasury Income Tax Regulation Section 1.671-4 and report, but not pay, tax on the Creditor Trust's tax items of income, gain, loss deductions and credits ("Tax Items"). The beneficiaries of the Creditor Trust will report on their federal income tax returns and pay any federal income tax liability attributable to such Creditor Trust's Tax Items. The Liquidating Debtors, Creditor Trust and the beneficiaries of the Creditor Trust will use consistent valuations of the assets transferred to the Creditor Trust for all federal income tax purposes, such valuations to be determined jointly by the Estate Administrator and the Creditor Trustee.

**I.    The Committee Lawsuit**

Notwithstanding any other provision of the Plan, this Section V(I) of the Plan shall apply and control the Committee Lawsuit and, in the event or any inconsistency with any other provision of or ambiguity in the Plan or the Plan Documents, the provisions of this Section V(I) shall govern. The following provisions shall apply to the Committee Lawsuit:

a.    The Committee Lawsuit shall be included within "Assigned Litigation" as defined in the Plan, and shall automatically be transferred to the Creditor Trust on the Effective Date. The Committee Lawsuit shall be a Creditor Trust Asset and allocated to the Contingency Fees, Creditor Trust Expenses, Creditor Trust Residual Obligations and Creditors of the Debtors as set forth in sub-paragraph (b) below. The Committee and Creditor Trustee intend to continue prosecuting the lawsuit both before and after the Effective Date. Milberg LLP and Pinkney, Harris & Weidinger, LLC have been retained as special counsel to prosecute the Committee Lawsuit, and the Contingency Fee Orders and the existing retention agreements shall

continue to be applicable both to the Committee prior to the Effective Date, and to the Creditor

Trustee after the Effective Date, and shall not be affected by the Plan.

        b.        Any proceeds of the Committee Lawsuit shall be distributed to and

held by the Creditor Trustee and distributed first, to pay the Contingency Fees in accordance

with the Contingency Fee Orders, and, after such Fees are paid in full, to distribute the remainder

as Litigation Proceeds under the provisions of the Plan.  Neither the Creditors of the Debtors nor

any Person other than Milberg LLP and Pinckney, Harris & Weidinger, LLC shall have any

interest in or right to the proceeds of the Committee Lawsuit which are to be used to pay the

Contingency Fees.  The Creditor Trustee shall hold all Litigation Proceeds from the Committee

Lawsuit which are allocable to the Contingency Fees for the sole benefit of Milberg LLP and

Pinckney, Harris & Weidinger, LLC.

        c.        Prior to the Effective Date, the Committee shall have standing to

prosecute the Committee Lawsuit and, following the Effective Date, the Creditor Trustee shall

have (i) standing to prosecute the Committee Lawsuit, and (ii) the power to settle the Committee

Lawsuit subject to the approval of the Bankruptcy Court.  The Debtors shall have irrevocably

waived and relinquished all rights in and power to control the Committee Lawsuit, and the

Debtors, Liquidating Debtors, and Estate Administrator shall not be authorized to prosecute,

settle, abandon, or take any other actions that adversely affect the Committee Lawsuit and the

prosecution of the Committee Lawsuit by the Creditor Trustee.  The Liquidating Debtors and

Estate Administrator shall render such cooperation as may be reasonably requested by the

Creditor Trustee in connection with the prosecution of the Committee Lawsuit, and shall provide

reasonable assistance to the Creditor Trust to obtain access to books, records and information in

the possession, custody or control of the Buyer to the extent such access is permitted under the Asset Purchase Agreement.

d.      Any settlement of the Committee Lawsuit shall be approved by the Bankruptcy Court in accordance with Bankruptcy Rule 9019.  At the time of any motion to approve such a settlement, or thereafter, or upon a final judgment in the Committee Lawsuit which results in Litigation Proceeds being available for Creditors of the Debtors, Milberg and Pinckney may request payment of the Contingency Fees in accordance with the Contingency Fee Orders.

e.      The Litigation Proceeds from the Committee Lawsuit are available for Holders of Unsecured Claims to the extent any Creditor Trust Residual Obligations, Assigned Litigation Fee Claims, Committee WDF Overage, Committee Investigation Overage and any other Creditor Trust Expenses have been satisfied.

f.      The Creditor Trustee shall have the same powers and rights with respect to the Committee Lawsuit as he does hereunder with respect any other Creditor Trust Asset, as set forth in Article V(H) above.  Furthermore, the Creditor Trustee is responsible for making distributions of Litigation Proceeds from the Committee Lawsuit to the Holders of Unsecured Claims in Classes 5 and 6 of the Plan.

g.      Milberg LLP and Pinckney, Harris & Weidinger, LLC have been retained as special counsel to prosecute the Committee Lawsuit on the behalf of the Committee on the terms set forth in the Contingency Fee Orders.  As set forth therein, the Bankruptcy Court approved the contingent fee arrangement in the retention applications of Milberg LLP and Pinckney, Harris & Weidinger, LLC.  Upon the resolution of the Committee Lawsuit,

Contingency Fees shall be determined in accordance with the Contingency Fee Orders, and the

Contingency Fees shall be held for and the sole and exclusive benefit of, and distributed to,

Milberg LLP and Pinckney, Harris & Weidinger, LLC.

        h.     With the exception of the provisions of Sections V(H), (I) and (J),

Sections IX(G), (H) and (J), and Sections III(B) of the Plan, no provision in the Plan shall be

construed to impair the claims in and the prosecution of the Committee Lawsuit, nor shall any

provision in the Plan be construed to discharge, waive, release, or enjoin the claims or causes of

action asserted or to be asserted against any named or unnamed defendant in connection with the

Committee Lawsuit.

      **J.**    **Post Effective Date Professional Fees**

        On the Effective Date, the Liquidating Debtors will be deemed to have retained

the Debtors' Professionals under the arrangements existing on the Effective Date, without any

need for new retention agreements or further orders of the Bankruptcy Court.  During the time in

which the Estate Administrator remains employed by the Liquidating Debtors, he may also retain

additional Professionals on behalf of the Liquidating Debtors without order of the Bankruptcy

Court.  From and after the Effective Date, the Estate Administrator shall, in the ordinary course

of business and without the necessity for any approval by the Bankruptcy Court, pay the

reasonable Post Effective Date Professional Fees thereafter incurred on behalf of the Liquidating

Debtors and the Estate Administrator including, without limitation, those fees and expenses

incurred in connection with the implementation and consummation of the Plan.

        The Post Effective Date Professional Fees incurred on behalf of the Liquidating

Debtors shall be paid within fifteen (15) business days after submission of a detailed invoice

thereof to the Estate Administrator. If the Estate Administrator disputes the reasonableness of any such invoice, the affected Professional may submit such dispute to the Bankruptcy Court for determination of reasonableness of such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved. To the extent that the Estate Administrator has insufficient Assets with which to pay Plan Expenses, including but not limited to Post Effective Date Professional Fees, they shall become the obligation of the Creditor Trust (*i.e.*, as Creditor Trust Residual Obligations) and shall be paid from Creditor Trust Assets.

On the Effective Date, the Creditor Trust will be deemed to have retained the Committee's Professionals under the arrangements existing on the Effective Date, without any need for new retention agreements or further orders of the Bankruptcy Court. The Creditor Trustee may also retain additional Professionals on behalf of the Creditor Trust without order of the Bankruptcy Court. From and after the Effective Date, the Creditor Trustee shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable Post Effective Date Professional Fees thereafter incurred on behalf of the Creditor Trust. The Post Effective Date Professional Fees incurred on behalf of the Creditor Trust shall be paid within fifteen (15) business days after submission of a detailed invoice thereof to the Creditor Trustee. If the Creditor Trustee disputes the reasonableness of any such invoice, the affected Professional may submit such dispute to the Bankruptcy Court for determination of reasonableness of such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved. All Post Effective Date Professional Fees incurred on behalf of the Creditor Trust shall be payable solely from the Creditor Trust Assets.

In the event that there are insufficient assets with which to pay the Post Effective

Date Professional Fees of the Liquidating Debtors and the Creditor Trust in full, they shall be

paid pro rata from the Creditor Trust Assets.

K.    **Release of Liens**

Except as otherwise provided in the Plan, the Confirmation Order, or in any

document, instrument, or other agreement created in connection with the Plan, on the Effective

Date, all mortgages, deeds of trust, liens, or other security interests against the property of the

Estates shall be released.

L.    **Exemption from Certain Transfer Taxes**

Pursuant to section 1146(c) of the Bankruptcy Code, any transfers from any of the

Debtors to the Creditor Trust or to any other Person pursuant to the Plan in the United States

shall not be subject to any stamp tax or similar tax, and the Confirmation Order shall direct the

appropriate state or local governmental officials or agents to forgo the collection of any such tax

or governmental assessment and to accept for filing and recordation any of the foregoing

instruments or other documents without the payment of any such tax or governmental

assessment.

M.    **Dissolution of the Committee**

On the Effective Date, the Committee shall be dissolved and its members shall be

deemed released of all of their duties, responsibilities and obligations except for any act

necessary for the Committee's Professionals to File, serve, and prosecute applications for final

allowance of compensation and reimbursement of expenses.

N.      **Full and Final Satisfaction**

Commencing upon the Effective Date, the Liquidating Debtors and the Creditor Trust shall be authorized and directed to distribute the amounts required under the Plan to Creditors holding Allowed Claims according to the provisions of the Plan.  Upon the Effective Date, all Debts of the Debtors shall be deemed fixed and adjusted pursuant to this Plan and the Debtors, the Liquidating Debtors, the Estate Administrator, the Creditor Trust and the Creditor Trustee shall have no liability on account of any Claims or Equity Interests except as set forth in this Plan and in the Creditor Trust Agreement.  All payments and all distributions made by the Liquidating Debtors, the Estate Administrator, the Creditor Trust and the Creditor Trustee under the Plan shall be in full and final satisfaction, settlement and release of all Claims filed against the Debtors' Estates; provided, however, that nothing contained in this Article V(N) of the Plan, or in any other provision of this Plan, shall be deemed to constitute or result in a discharge of the Debtors under section 1141(d) of the Bankruptcy Code.

O.      **Allocation of Distributions**

Distributions to any Creditor holding an Allowed Claim shall be allocated first to the principal amount of any such Allowed Claim, as determined for federal income tax purposes, and then, to the extent the consideration exceeds such amount, to the remainder of such Claim comprising interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

P.      **Rounding**

Whenever any payment of a fraction of a cent would otherwise be called for, the actual distribution shall reflect a rounding of such fraction down to the nearest cent.

**Q.**    **No Interim Cash Payments of Less Than $50 on Account of Allowed Claims**

If an interim Distribution to be received by a Creditor holding an Allowed Claim would be less than $50, notwithstanding any contrary provision in the Plan, at the discretion of the Liquidating Debtors or the Creditor Trustee, as applicable, no such interim payment will be made to such Creditor, and such Cash shall be held for such Holder until the earlier of (i) the next time an interim Distribution is made (unless the Distribution would still be less than $50 in which case this Section V(Q) shall again apply), or (ii) the date on which final Distributions are made to Creditors holding Allowed Claims.

**R.**    **Unclaimed Property**

Any Creditor that fails to claim any Cash within 90 days from the date upon which a Distribution is first made to such entity shall forfeit all rights to any Distribution under the Plan. Upon forfeiture, such Cash (including interest thereon) shall be returned to the source from which it was paid. Unclaimed Distributions on account of Administrative Claims, Priority Claims and Priority Tax Claims shall be returned to the Administrative/Priority Reserve Account. Unclaimed distributions on account of Professional Fee Claims shall be returned to the Professional Fees Reserve Account. Unclaimed distributions on account of Unsecured Claims shall be returned to the Creditor Trust Fund for redistribution to Creditors holding Allowed Class 5 and 6 Claims to whom distributions were previously made by the Creditor Trustee. Creditors that fail to claim Cash shall forfeit their rights thereto and shall have no claim whatsoever against the Liquidating Debtors, the Creditor Trust or any Creditor holding an Allowed Claim to whom distributions are made by the Estate Administrator or the Creditor Trustee.

S.    **No Distributions on Late-Filed Claims**

Except as otherwise provided in a Final Order of the Bankruptcy Court, any Claim as to which a Proof of Claim was first filed after the applicable bar date shall be a Disallowed Claim, and the Liquidating Debtors or the Creditor Trustee, as applicable, shall not make any distribution to a Creditor holding such a Claim; provided, however, that to the extent such Claim was listed in the Schedules (other than as contingent, disputed, or unliquidated) and would be an Allowed Claim but for the lack of a timely proof of Claim, the Liquidating Debtors or the Creditor Trustee, as applicable, shall treat such Claim as an Allowed Claim in the amount in which it was so listed.

T.    **Withholding Taxes**

Pursuant to section 346(f) of the Bankruptcy Code, the Liquidating Debtors and the Creditor Trustee shall be entitled to deduct any federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate.  Following the Effective Date, the Liquidating Debtors and the Creditor Trustee shall comply with all reporting obligations imposed on them by any Governmental Unit in accordance with applicable law with respect to such withholding taxes.  As a condition to making any Distribution under this Plan, the Debtors (if before the Effective Date), or the Liquidating Debtors and the Creditor Trustee (if on or after the Effective Date), may require that a Creditor holding an Allowed Claim provide such Creditor's taxpayer identification number and such other information and certification as may be deemed necessary for the Debtors, if before the Effective Date, and the Liquidating Debtors or the Creditor Trustee, if on or after the Effective Date, to comply with applicable tax reporting and withholding laws.

U.      **De Minimis Distributions; Charitable Donation**

Notwithstanding anything to the contrary therein, the Creditor Trust shall not be required to make a Distribution if the dollar amount of the Distribution is so small that the cost of making that Distribution exceeds the dollar amount of such Distribution.  At the Final Distribution Date, the Creditor Trustee may make a charitable donation with undistributed funds if, in the reasonable judgment of the Creditor Trustee, the cost of calculating and making the final Distribution of the remaining funds is excessive in relation to the benefits to Creditors holding Allowed Claims who would otherwise be entitled to such Distributions.

V.      **United States Trustee Quarterly Fees**

All outstanding quarterly fees due under 28 U.S.C. § 1930(a)(6) that have not been paid shall be paid by the Debtors on or before the Effective Date.  Thereafter, the Liquidating Debtors and Creditor Trustee shall each pay their respective share of any quarterly fees due pursuant to 28 U.S.C. § 1930(a)(6) based upon actual disbursements by each entity, and such fees shall be paid until entry of a Final Decree or an order converting or dismissing the Chapter 11 Cases.  The Liquidating Debtors shall File and transmit to the U.S. Trustee quarterly fee statements regarding their post-confirmation activities with each quarterly fee payable by the Liquidating Debtors.  The Creditor Trust shall File and transmit to the U.S. Trustee quarterly fee statements regarding its post-confirmation activities with each quarterly fee payable by the Creditor Trust.

W.      **Books and Records**

Ownership of all of the Debtors' books and records, in whatever form, manner or media, including, without limitation, all pass-codes for security systems and computers, keys,

keycards, and notice letters to landlords, warehousemen or other relevant parties shall vest in the

Liquidating Debtors on the Effective Date. As soon as practicable after the transfer of Assigned

Litigation and any other specified Assets to the Creditor Trust, the Creditor Trustee shall provide

for the retention and storage of the books, records and files that shall have been delivered to the

Creditor Trust until such time as all such books, records and files are no longer required to be

retained under applicable law, and file a certificate informing the Bankruptcy Court of the

location at which such books, records, and files are being stored.

X.    **Corporate Action**

Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters

provided under this Plan involving the corporate structure of the Debtors shall be deemed to be

authorized and approved without further action by the Debtors, the Debtors' shareholders, and/or

the Debtors' board of directors. Effective upon the Effective Date, each Debtor's charter shall be

deemed amended to prohibit the issuance by the Debtors of nonvoting securities to the extent

required under Section 1123(a)(6) of the Bankruptcy Code.

**ARTICLE VI.**
**PROCEDURES FOR RESOLVING DISPUTED CLAIMS**

Unless otherwise ordered by the Bankruptcy Court or as set forth in this Plan: (i)

the Liquidating Debtors and their Professionals shall have the exclusive right to make and File

objections to any Administrative Claims, Priority Tax Claims and Claims in Classes 1 through 4

and (ii) the Creditor Trust and its Professionals shall have the exclusive right to make and File

objections to any Claims in Classes 5 and 6. Notwithstanding the foregoing, (a) the U.S. Trustee

shall also have the right to make and File objections to any Administrative Claims or

Professional Fee Claims, and (b) any insurer of any of the Debtors that has, following entry of an order of the Bankruptcy Court granting relief from the automatic stay under Section 362 of the Bankruptcy Code, assumed the defense of a Claim against the Debtors shall also have the right to make and File objections to such Claims.

All objections to Claims shall be filed and served not later than 180 days following the Effective Date; provided, however, such date may be extended by the Bankruptcy Court upon motion (the "Extension Motion") filed by the Liquidating Debtors with respect to Disputed Administrative Claims, Priority Tax Claims or Claims in Classes 1 through 4, or the Creditor Trust with respect to Disputed Claims in Classes 5 and 6 prior to the deadline established in this Section VI of the Plan. If an objection is not timely Filed or if no Extension Motion is pending by such deadline, any remaining Disputed Claims shall be deemed to be Allowed Claims for purposes of this Plan. Unless otherwise provided in the Confirmation Order or the Creditor Trust Agreement, the Liquidating Debtors or Creditor Trust, as applicable, is authorized to settle, or withdraw any objections to, any Disputed Claim following the Effective Date without further notice to Creditors or authorization of the Bankruptcy Court, in which event such Claim shall be deemed to be an Allowed Claim in the amount compromised for purposes of this Plan. Under no circumstances will any distributions be made on account of Disallowed Claims.

Except as set forth in this Plan, nothing in this Plan, the Disclosure Statement, the Confirmation Order or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the commencement of these

Chapter 11 Cases or the Effective Date, against the Holder of, or with respect to, any Claim or

Equity Interest.  Except as set forth in this Plan, upon Confirmation, the Liquidating Debtors and

the Creditor Trust, as applicable, shall be vested with and entitled to assert all such claims,

causes of action, rights of setoff and other legal or equitable defenses that the Debtors had

immediately prior to the Effective Date or prior to the commencement of these Chapter 11 Cases

as if these Chapter 11 Cases had not been commenced.

## ARTICLE VII.
## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

### A.      Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, except for those executory contracts or unexpired leases

that were previously assumed or rejected by order of the Bankruptcy Court, or are the subject of

a pending motion to assume or reject, pursuant to section 365 of the Bankruptcy Code, each

executory contract and unexpired lease entered into by the Debtors prior to the Petition Date that

has not previously expired or terminated pursuant to its own terms shall be deemed rejected

pursuant to section 365 of the Bankruptcy Code.  The Confirmation Order shall constitute an

order of the Bankruptcy Court approving such rejections pursuant to section 365 of the

Bankruptcy Code, as of the Effective Date.  The non-Debtor parties to any rejected personal

property leases shall be responsible for taking all steps necessary to retrieve the personal

property that is the subject of such leases.

### B.      Claims Based on Rejection of Executory Contracts or Unexpired Leases

All Proofs of Claim with respect to Claims arising from the rejection of executory

contracts or unexpired leases, if any, must be Filed with the Bankruptcy Court by the applicable

Rejection Claims Bar Date.  Any Claims arising from the rejection of an executory contract or

unexpired lease not Filed by the Rejection Claims Bar Date will be forever barred against the

Debtors, the Estates and their property, the Liquidating Debtors and the Creditor Trust, unless

otherwise ordered by the Bankruptcy Court or provided in this Plan.  All such Claims for which

Proofs of Claim are timely and properly Filed and ultimately Allowed will be treated as

Unsecured Claims subject to the provisions of Article III of this Plan.

## ARTICLE VIII.
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

A.      **Conditions Precedent to Confirmation**

It is a condition to Confirmation that (a) the Confirmation Order shall approve in

all respects all of the provisions, terms and conditions of this Plan, and (b) the Confirmation

Order is satisfactory in form and substance to the Debtors in consultation with the Committee.

B.      **Conditions Precedent to Consummation**

The following are conditions to the occurrence of the Effective Date of the Plan,

each of which must be satisfied or waived in writing:

- The Confirmation Order in form and substance satisfactory to the Debtors in consultation with the Committee shall have been entered and become a Final Order and shall provide that the Debtors, the Estate Administrator, the Liquidating Debtors, the Creditor Trust, and the Creditor Trustee are authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan or to effectuate, advance, or further the purposes thereof;

- All Plan exhibits shall be, in form and substance, reasonably acceptable to the Debtors in consultation with the Committee, and shall have been executed and delivered by all parties' signatory thereto;

- The Debtors shall be authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments,

releases, leases, indentures, and the agreements or documents created in connection with, and expressly provided for under, the Plan;

- All other actions, documents, and agreements necessary to implement the Plan shall have been effected or executed; and

- In the reasonable judgment of the Estate Administrator, the Debtors shall have sufficient Cash available to satisfy in full, or adequately reserve for, all Allowed Administrative Claims, Professional Fee Claims, Priority Tax Claims, Priority Claims and Secured Claims (if any).

The Debtors may waive any of the conditions of the Confirmation and/or Consummation of this Plan, in whole or in part, set forth in this Article VIII at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to obtain Confirmation and/or achieve Consummation of this Plan.

### C.    **Effect of Non-Occurrence of Conditions to Consummation**

If the Confirmation Order is vacated, this Plan shall be null and void in all respects, and nothing contained in this Plan or the Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or the Committee; (b) prejudice in any manner the rights of the Debtors or the Committee, or (c) constitute an admission, acknowledgment, offer or undertaking by the Debtors or the Committee.

### D.    **Notice of Effective Date**

On the Effective Date, or as soon thereafter as reasonably practicable, the Liquidating Debtors shall File with the Bankruptcy Court a "Notice of Effective Date", which notice shall constitute appropriate and adequate notice that this Plan has become effective, provided, however, that the Liquidating Debtors shall have no obligation to notify any Entity other than counsel to the Committee. This Plan shall be deemed effective as of 12:01 a.m., prevailing Eastern time, on the Effective Date specified in such filing. A courtesy copy of the

Notice of Effective Date may be sent by first class mail, postage prepaid to those Entities who have Filed with the Bankruptcy Court requests for notices pursuant to Bankruptcy Rule 2002.

## ARTICLE IX.
## EFFECT OF CONSUMMATION

### A.    Binding Effect of Plan

Subject to the occurrence of the Effective Date, the provisions of the confirmed Plan shall bind the Debtors, the Liquidating Debtors, the Estate Administrator, the Creditor Trust, the Creditor Trustee, any Entity acquiring property under the Plan, and any Creditor or Equity Interest Holder, whether or not such Creditor or Equity Interest Holder has filed a Proof of Claim or Equity Interest in the Chapter 11 Case, whether or not the Claim of such Creditor or the Equity Interest of such Equity Interest Holder is impaired under the Plan, and whether or not such Creditor or Equity Interest Holder has accepted or rejected the Plan.  All Claims and Debts shall be fixed and adjusted pursuant to this Plan.  This Plan shall also bind any taxing authority, recorder of deeds or similar official for any county, state, or governmental unit or parish in which any instrument related to this Plan or related to any transaction contemplated under this Plan is to be recorded with respect to any taxes of the kind specified in section 1146(a) of the Bankruptcy Code.

### B.    Vesting and Transfer of Assets

Upon the Effective Date, title to all Assets shall vest in the Liquidating Debtors and shall no longer constitute property of the Estates.  Thereafter, also on the Effective Date, title to (i) the Assigned Litigation and any Litigation Proceeds from the Assigned Litigation, and (ii) all other Assets of the Estates (except the Estate Assets), shall be transferred from the Liquidating Debtors to the Creditor Trust for the purposes contemplated under this Plan pursuant

to the Creditor Trust Agreement.  Thereafter, from time to time, the Estate Administrator may

transfer all or selected Estate Assets to the Creditor Trust for the purposes contemplated under

this Plan pursuant to the Creditor Trust Agreement.

C.    **Property Free and Clear**

Except as otherwise provided in this Plan or the Confirmation Order, all property

that vests in the Liquidating Debtors and all property that is subsequently transferred to the

Creditor Trust shall be free and clear of all Claims, Equity Interests, Liens, interests, charges or

other encumbrances of Creditors or Equity Interest Holders, other than as set forth herein, and in

the Creditor Trust Agreement.  Following the Effective Date, the Liquidating Debtors and the

Creditor Trustee may transfer and dispose of any such property free of any restrictions imposed

by the Bankruptcy Code or the Bankruptcy Rules and without further approval of the Bankruptcy

Court or notice to Creditors, except as may otherwise be required under the Plan or the

Confirmation Order.

D.    **Limitation of Liability**

**The Debtors, the Committee, the Estate Administrator and their respective**

**officers, directors, managers, employees, members, agents, advisors, accountants, attorneys**

**and representatives (collectively, the "Exculpated Parties"), will neither have nor incur any**

**liability to any Entity for any action in good faith taken or omitted to be taken after the**

**Petition Date in connection with or related to the Chapter 11 Cases or the formulation,**

**preparation, dissemination, implementation, Confirmation or Consummation of the Plan,**

**the Disclosure Statement, or any agreement created or entered into in connection with the**

**Plan; provided, however, that this limitation will not affect or modify the obligations**

created under this Plan, or the rights of any Creditor holding an Allowed Claim to enforce its rights under the Plan and shall not release any action (or inaction) constituting willful misconduct, fraud or gross negligence (in each case, liability shall be subject to determination by Final Order of the Bankruptcy Court); provided that, any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under this Plan and such reasonable reliance shall form an absolute defense to any such claim, cause of action, or liability.  Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the protections of section 1125(e) of the Bankruptcy Code.

E.    **Injunction**

Except as otherwise expressly provided in this Plan, all Entities that have held, hold or may hold Claims against or Equity Interests in the Debtors are permanently enjoined, from and after the Effective Date, from taking any of the following actions against any of the Debtors, their Estates, the Committee, the Estate Administrator, the Liquidating Debtors, the Creditor Trust, the Creditor Trustee, the Professionals, or any of their property on account of any Claims or causes of action arising from events prior to the Effective Date: (i) enforcing, attaching, collecting or recovering by any manner or in any place or means any judgment, award, decree or order; (ii) creating, perfecting, or enforcing any Lien or encumbrance of any kind; (iii) asserting any right of setoff, right of subrogation or recoupment against any obligation, debt or liability due to the Debtors, and (iv) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan with respect to such Claim or Equity Interest.  Except as

expressly provided herein, the Debtors, the Liquidating Debtors, the Creditor Trust and

the Creditor Trustee expressly reserve all rights and defenses that the Debtors may have

(including, without limitation, the rights of subrogation and recoupment) with respect to

any obligation, debt or liability allegedly due to any Entity.  By accepting Distributions

pursuant to this Plan, each Creditor holding an Allowed Claim will be deemed to have

specifically consented to the injunctions set forth herein.  Nothing in this Section IX(E)

shall prohibit a Creditor holding a timely Filed Proof of Claim from litigating its right to

seek to have such Claim declared an Allowed Claim and to be paid in accordance with the

distribution provisions of this Plan.

F.    **Terms of Existing Injunctions or Stays**

Unless otherwise provided herein, all injunctions or stays provided for in these

Chapter 11 Cases pursuant to sections 105, 362 or 525(a) of the Bankruptcy Code, or otherwise,

and in existence on the Confirmation Date, shall remain in full force and effect until the

Effective Date.

G.    **Limitation of Liability of the Estate Administrator and the Creditor Trustee**

The Estate Administrator and the Creditor Trustee, together with their respective

consultants, agents, advisors, attorneys, accountants, financial advisors, other representatives and

the professionals engaged by the foregoing (collectively, the "Indemnified Parties") shall not be

liable for any and all liabilities, losses, damages, claims, causes of action, costs and expenses,

including but not limited to attorneys' fees arising out of or due to their actions or omissions, or

consequences of such actions or omissions, to the Holders of Claims or Equity Interests for any

action or inaction taken in good faith in connection with the performance or discharge of his or

her duties under this Plan, except the Indemnified Parties will be liable for actions or inactions

that are grossly negligent, fraudulent, or which constitute willful misconduct (in each case,

liability shall be subject to determination by Final Order of the Bankruptcy Court). However,

any act or omission taken with the approval of the Bankruptcy Court, and not inconsistent

therewith, will be conclusively deemed not to constitute gross negligence, fraud or willful

misconduct. In addition, the Liquidating Debtors, Creditor Trust and the Estates shall, to the

fullest extent permitted by the laws of the State of Delaware, indemnify and hold harmless the

Indemnified Parties from and against and with respect to any and all liabilities, losses, damages,

claims, costs and expenses, including but not limited to attorneys' fees arising out of or due to

their actions or omissions, or consequences of such actions or omissions, with respect to the

Liquidating Debtors, the Creditor Trust and the Estates or the implementation or administration

of the Plan if the Indemnified Party acted in good faith and in a manner reasonably believed to be

in or not opposed to the best interests of the Liquidating Debtors, the Creditor Trust and the

Estates. To the extent the Liquidating Debtors or the Creditor Trust indemnify and hold

harmless the Indemnified Parties as provided above, the legal fees and related costs incurred by

counsel to the Liquidating Debtors or the Creditor Trustee in monitoring and participating in the

defense of such claims giving rise to the right of indemnification shall be paid as Plan Expenses

or Creditor Trust Expenses, as applicable. All rights of the Persons exculpated and indemnified

pursuant hereto shall survive confirmation of the Plan.

**H.**      **Releases by Debtors of the Debtor Released Parties**

As of the Effective Date, for good and valuable consideration, the adequacy of

which is hereby confirmed, the Debtors and Debtors in Possession (on behalf of the Estates) will

be deemed to release forever, waive, and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities (other than the rights of the Debtors to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered hereunder, and liabilities arising after the Effective Date in the ordinary course of business) against the Debtors' Professionals, any member of the Committee (solely in its capacity as a member of the Committee), the Committee's Professionals, and the Estate Administrator, and any of the representatives, agents, officers, directors, employees, professionals, advisors, consultants and attorneys of any of the foregoing (the "Debtor Released Parties") whether such claims are liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place before, on or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of the Debtors, the Chapter 11 Cases, the negotiation and filing of the Plan, the Disclosure Statement or any prior plans of reorganization, the filing of the Chapter 11 Cases, the pursuit of confirmation of the Plan or any prior plans of reorganization, the consummation of the Plan, the administration of the Plan, or the property to be liquidated and/or distributed under the Plan, and that could have been asserted by or on behalf of the Debtors or their Estates, including pursuant to principles of substantive consolidation, piercing the corporate veil, alter ego, domination, constructive trust and similar principles of state or federal creditors' rights laws, in any such case, against the Debtor Released Parties. This release does not extend to potential Avoidance Actions, if any, against any Debtor Released Party, or objections to claims (including Professional Fee Claims)

filed by any Debtor Released Party. After the Effective Date, the Creditor Trustee and the

Creditor Trust shall be bound, to the same extent the Debtors are bound, by the releases set forth

above.

I.      **[Reserved]**

J.      **Release By Holders of Claims and Equity Interests**

Each Entity that affirmatively elects by marking its Ballot, for itself and its

successors, assigns, transferees, current and former officers, directors, agents, shareholders,

members, financial advisors, attorneys, employees, partners, affiliates, representatives, in each

case in their capacity as such, shall, by virtue of its election, be deemed to have released and

discharged any and all claims, causes of action, demands, losses, whether known or unknown, in

law or equity, against the Debtors, the Debtor Released Parties, the Debtors' present or former

officers, directors, employees, representatives or agents, and their respective property based in

whole or in part upon any act or omission arising from or in connection with or in any way

relating to the Debtors. Nothing in the previous sentence shall be deemed to release the Debtors

from liability for (i) Claims filed before the Administrative Claims Bar Date or the General Bar

Date, to the extent Allowed, and (ii) Claims scheduled by the Debtors that are not contingent,

disputed or unliquidated; provided, however, that, notwithstanding clause (i) above, the Debtors,

the Liquidating Debtors, the Estate Administrator, the Creditor Trust or the Creditor Trustee may

object to the allowance of any Claim, on any ground. Notwithstanding the foregoing, this

Section IX(J) shall not release any party from any Claims or causes of action existing as of the

Effective Date based on an act of gross negligence or willful misconduct.

**K.**     **Good Faith**

Confirmation of this Plan shall constitute a finding that: (i) this Plan has been proposed in good faith and in compliance with applicable provisions of the Bankruptcy Code; and (ii) the solicitation of acceptances or rejections of this Plan by all Entities has been in good faith and in compliance with applicable provisions of the Bankruptcy Code.

## ARTICLE X.
## RETENTION OF JURISDICTION

Notwithstanding entry of the Confirmation Order or Consummation having occurred, these Chapter 11 Cases having been closed, or Final Decrees having been entered, the Bankruptcy Court shall have jurisdiction of matters arising out of, and related to these Chapter 11 Cases and this Plan under, and for the purposes of, sections 105(a), 1127, 1142 and 1144 of the Bankruptcy Code and for, among other things, the following purposes:

a.     allow, disallow, determine, liquidate, classify, estimate or establish the priority or status of any Claim, including the resolution of any request for payment of any Administrative Claim or Priority Tax Claim and the resolution of any and all objections to the allowance or priority of Claims;

b.     grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date;

c.     resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which any or all of the Debtors are parties or with respect to which any or all of the Debtors may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

d.     ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan, including ruling on any motion or objection Filed pursuant to this Plan;

e.     decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving any or all of the Debtors or their affiliates, directors, employees, agents or Professionals that may be pending on the Effective Date;

          f.     enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with this Plan or the Disclosure Statement;

          g.     resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of this Plan, or any Entity's obligations incurred in connection with this Plan, including, among other things, any avoidance actions or subordination actions under sections 510, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code;

          h.     issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of this Plan, except as otherwise provided herein;

          i.     resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in this Plan and enter such orders as may be necessary or appropriate to implement such releases, injunction and other provisions;

          j.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

          k.     determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document created in connection with this Plan or the Disclosure Statement;

          l.     enter a Final Decree concluding these Chapter 11 Cases;

          m.     consider any modification of this Plan proposed under section 1127 of the Bankruptcy Code;

          n.     protect the property of the Estates from adverse Claims or interference inconsistent with this Plan, including to hear actions to quiet or otherwise clear title to such property based upon the terms and provisions of this Plan, or to determine a Debtor's exclusive ownership of claims and Litigation retained or otherwise dealt with under this Plan;

          o.     hear and determine matters pertaining to abandonment of property of the Estates;

          p.     consider any modifications of this Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

          q.     interpret, enforce and address any and all issues relating to any orders previously entered in these Chapter 11 Cases to the extent such orders are not superseded or inconsistent with this Plan;

     r.  recover all Assets of the Debtors and property of the Estates, wherever located;

     s.  hear and determine all matters related to the Committee Lawsuit;

     t.  hear and determine matters concerning state, local, and federal taxes in accordance with sections 345, 505, and 1146 of the Bankruptcy Code.

     u.  hear and act on any other matter not inconsistent with the Bankruptcy Code;

     v.  interpret and enforce the injunctions contained in the Confirmation Order and Plan; and

     w.  interpret and enforce the Creditor Trust Agreement.

## ARTICLE XI.
## MISCELLANEOUS PROVISIONS

### A.  Modification of Plan

    The Debtors reserve to themselves, in accordance with the Bankruptcy Code, the right to amend or modify this Plan prior to the entry of the Confirmation Order. However, in certain instances, the Bankruptcy Court may require a new disclosure statement and/or revoking this Plan. After the entry of the Confirmation Order, and subject to the prior written consent of the Committee (such consent not to be unreasonably delayed or withheld), the Debtors may, upon order of the Bankruptcy Court, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan, if (a) this Plan has not been Consummated and (b) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

### B.  Withdrawal of Plan

    The Debtors reserve the right, to the extent provided under the Bankruptcy Code, to withdraw this Plan at any time before Consummation of this Plan.

C.      **Successors and Assigns**

The rights, benefits and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Entity.

D.      **Reservation of Rights**

Except as expressly set forth herein, this Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  The filing of this Plan, the statements or provisions contained therein, or the taking of any action by the Debtors or the Committee with respect to this Plan shall not be, or shall not be deemed to be, an admission or waiver of any rights of the Debtors or the Committee with respect to the Holders of Claims or Equity Interests prior to the Effective Date.

E.      **Further Assurances**

The Debtors, the Liquidating Debtors, the Estate Administrator, the Creditor Trust, the Creditor Trustee and all Creditors holding Claims receiving Distributions under this Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

F.      **Entire Agreement**

This Plan supersedes all prior discussions, understandings, agreements, and documents pertaining or relating to any subject matter of this Plan.

**G.** **Retiree Benefits**

The Debtors do not provide "retiree benefits" as that term is defined in s 1114(a) of the Bankruptcy Code.  Therefore, on and after the Effective Date the Debtors will not pay retiree benefits.

**H.** **Failure of Bankruptcy Court to Exercise Jurisdiction**

If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter arising out of these Chapter 11 Cases, including any of the matters set forth in this Plan, this Plan shall not prohibit or limit the exercise of jurisdiction by any other court of competent jurisdiction with respect to such matter.

**I.** **Notices**

Any pleading, notice or other document required by this Plan to be served on or delivered to the Debtors shall be sent by first class U.S. mail, postage prepaid to:

> Counsel for the Debtors
> Laura Davis Jones
> Curtis A. Hehn
> Pachulski Stang Ziehl & Jones LLP
> 919 North Market St., 17th Floor
> Wilmington, DE  19801
>
> David M. Bertenthal, Esq.
> Henry C. Kevane, Esq.
> Pachulski Stang Ziehl & Jones LLP
> 150 California St., 15th Floor
> San Francisco, CA  94111
>
> Estate Administrator
> Jack Fishman, Esq.
> JACK B. FISHMAN & ASSOCIATES, P.C.
> 3250 Lakeview Drive
> Algonquin, IL 60102

Counsel for the Committee
William E. Chipman, Jr., Esq.
Landis Rath & Cobb LLP
919 N. Market Street, Suite 1800
Wilmington, DE 19801

Michael E. Hastings, Esq.
LeClairRyan
1800 Wachovia Tower, Drawer 1200
Roanoke, VA 24006

Bruce H. Matson, Esq.
LeClairRyan
951 East Byrd Street
Riverfront Plaza East Tower
Richmond, VA 23218

United States Trustee
844 King Street, Room 2207
Lockbox #35
Wilmington, DE 19801

## J.    **Filing of Additional Documents**

On or before the Effective Date, the Debtors may File such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

## K.    **Enforceability**

Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Plan.

## L.    **Severability**

The provisions of this Plan shall not be severable unless such severance is agreed to by the Debtors and such severance would constitute a permissible modification of this Plan pursuant to section 1127 of the Bankruptcy Code.

M.    **Notice of Default under this Plan**

Unless otherwise agreed, no default shall be declared under this Plan unless any

payment or performance due under this Plan (other than a payment required on the Effective

Date) shall not have been made or deemed made thirty (30) calendar days after written notice of

the default is received by the Liquidating Debtors, the Creditor Trustee, and the Committee.  Any

notice of default as provided for in this Plan or in any exhibit to the Disclosure Statement shall

(a) conspicuously state that it is a notice of default; (b) describe with particularity the nature of

the default, including a reference to the specific provisions of this Plan as to which a default or

defaults have allegedly occurred; and (c) describe any action required to cure the default,

including the exact amount of any payment required to cure such default, if applicable.

N.    **Investments**

The Estate Administrator and the Creditor Trustee, as applicable, shall be

permitted from time to time to invest all or a portion of the Cash contained in the Carve Out

Account, the Administrative/Priority Reserve Account, the Professional Fees Reserve Account

and/or the Creditor Trust Fund in securities issued or directly guaranteed by the United States

government or any agency thereof, commercial paper of corporations rated at least "A-1" by

Standard & Poor's Corporation or rated at least "P-1" by Moody's Investor Services, Inc.,

interest bearing certificates of deposit, time deposits, bankers' acceptances and overnight bank

deposits, and repurchase agreements.  Any investments shall be invested in a manner consistent

with the objectives of section 345(a) of the Bankruptcy Code and shall be made in the reasonable

and prudent exercise of discretion of the Estate Administrator or the Creditor Trustee.  Neither

the Estate Administrator nor the Creditor Trustee shall have any obligation or liability to

beneficiaries in connection with such investments in the event of the unforeseeable insolvency of any financial institution where such funds are held.

### O.   Reliance

The Debtors, the Liquidating Debtors, the Estate Administrator, and the Creditor Trustee, and their respective agents, attorneys, employees and professionals, while acting in their capacity as such, including but not limited to, objecting to Claims, making Distributions to Creditors holding allowed Claims and approving settlement of actions, as the case may be, shall be permitted to reasonably rely on any certificates, sworn statements, instruments, reports, claim dockets, schedules, or other documents reasonably believed to be genuine and to have been prepared or presented by the Bankruptcy Court Clerk's Office, the Debtors, and the Debtors' Professionals.

### P.   Asset Purchase Agreement

Except as clarified in Sections II(B), (C) and (D) of the Plan, nothing in this Plan shall alter the rights and obligations of the Debtors and the Buyer under the Asset Purchase Agreement.  For the avoidance of doubt, nothing in this Plan shall alter or increase the Wind Down Budget or the maximum amount available from the Wind Down Facility.

### Q.   Insurance

Any insurance policy of, or for the benefit of the Debtors (or any officers and directors of any of the Debtors) shall remain in full force and effect after the Effective Date according to its terms.  Nothing in the Plan shall provide, or be construed to provide, for the assignment of any insurance policy to the Creditor Trust.

## ARTICLE XII.
## CONCLUSION

The Debtors believe that the Plan is in the best interest of Creditors and urge

Creditors to vote to accept the Plan.

Dated: November 10, 2010                    Respectfully submitted,


JACK B. FISHMAN & ASSOCIATES, P.C.

_____
Jack B. Fishman, Esq.
3250 Lakeview Drive
Algonquin, IL 60102
Telephone: (847) 458-8107
Facsimile: (847) 458-8107
Email: jbfishman@fishmanpc.com

Estate Administrator for Debtors


PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Laura Davis Jones*
Laura Davis Jones (Bar No. 2436)
Henry C. Kevane (CA Bar No. 125757)
David M. Bertenthal (CA Bar No. 167624)
Curtis A. Hehn (DE Bar No. 4264)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
       hkevane@pszjlaw.com
       dbertenthal@pszjlaw.com
       chehn@pszjlaw.com

Counsel to Debtors


*Signature Page to Second Amended Plan*

13814-001\DOCS_SF:72893.11