for their continued prosecution. Similarly, the Debtors have already commenced the process of reviewing and objecting to Claims. In addition, confirmation of the Plan will enable the Debtors, subject to the provisions of the Asset Purchase Agreement, to utilize funds from the Wind Down Facility (paid by the Buyer, not Assets of the Debtors) to satisfy certain administrative and priority claims that would otherwise further dilute the recovery to Unsecured Creditors to the extent such funds are available under the Wind Down Budget.

## B.    Litigation

Except as otherwise provided in the Plan, all Litigation, including without limitation, the Committee Lawsuit and Avoidance Actions are retained, vested in and preserved by the Liquidating Debtors (pursuant to section 1123(b) of the Bankruptcy Code. On the Effective Date, (a) the Estate Avoidance Actions will vest in the Liquidating Debtors and (b) the Assigned Litigation will be automatically transferred to the Creditor Trust and shall be prosecuted or settled by the Creditor Trustee. The Creditor Trust may, in accordance with the Creditor Trust Agreement and the terms of the Plan, enforce, sue on, settle or compromise (or decline to do any of the foregoing) any or all of the Assigned Litigation (provided, however, that Bankruptcy Court approval must be obtained for any settlement of the Committee Lawsuit). The Plan provides that the Debtors may prosecute certain Estate Avoidance Actions to fund the payment of certain administrative, professional and priority Claims provided under the Plan (as well as post-Effective Date Plan Expenses), with any additional surplus amounts derived therefrom (as may be determined by the Estate Administrator, in his discretion) to be transferred to be Creditor Trust as Creditor Trust Assets.

## VI.

## TREATMENT OF UNCLASSIFIED CLAIMS

## A.    Summary

Certain types of Claims are not placed into voting Classes; instead they are unclassified. They are not considered Impaired and do not vote on the Plan because they are automatically entitled to the specific treatment provided for them in the Bankruptcy Code. As such, the Debtors have not placed the Claims described below into a Class.

## B.    Administrative Claims (Other Than Professional Fee Claims)

Each Creditor holding an Allowed Administrative Claim shall receive, without interest, Cash equal to the Allowed amount of such Claim, unless such Creditor shall have agreed to different treatment of such Claim: (a) on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or approving such Allowed Administrative Claim; (b) in accordance with the terms and conditions of agreements between the Creditors holding such Claims and the Debtors; or (c) with respect to any Allowed Administrative Claims representing obligations incurred in the ordinary course of the Debtors' business, upon such regular and customary payment or performance terms as may exist in the ordinary course of the Debtors' business or as otherwise provided in the Plan.

With respect to all Administrative Claims incurred prior to December 31, 2010 and not otherwise paid as of the Effective Date, the Liquidating Debtors shall, only to the extent such Administrative Claims are consistent with the limits and purposes set forth in the Wind Down Budget and the provisions of the Asset Purchase Agreement, use funds from the Wind Down Facility, which funds shall be deposited by the Buyer into the Administrative/Priority Reserve Account from time to time as requested by the Liquidating Debtors under the Asset Purchase Agreement (including requests made after December 31, 2010 with respect to Administrative Claims incurred prior to December 31, 2010), and disbursed to individual Creditors as soon as practicable thereafter (including disbursements made after December 31, 2010 with respect to Administrative Claims incurred prior to December 31, 2010), consistent with the provisions of the Plan. For the avoidance of doubt, notwithstanding any provisions to the contrary in the Asset Purchase Agreement, (a) the Liquidating Debtors may request funds after December 31, 2010, from the Wind Down Facility to pay Administrative Claims incurred prior to December 31, 2010, and the Buyer shall fund such Administrative Claims from the Wind Down Facility, and (b) the Liquidating Debtors may utilize funds received from the Wind Down Facility after December 31, 2010, in each case if otherwise consistent with the limits and purposes set forth in the Wind Down Budget and the provisions of the Asset Purchase Agreement.

Creditors holding Administrative Claims (other than Professional Fee Claims) that do not file requests for payment by the Administrative Claims Bar Date shall be forever barred from asserting such claims against the Debtors, their Estates, the Liquidating Debtors, the Creditor Trustee, the Creditor Trust, the Estate Administrator, their respective successors or assigns, or their property.

## C.      Professional Fee Claims

The Liquidating Debtors shall pay Professionals all of their Allowed Professional Fee Claims, provided that, all Contingency Fees and all Assigned Litigation Fee Claims shall be payable solely by, and from, the Creditor Trust (including Litigation Proceeds from the Committee Lawsuit). Professional Fee Claims shall not be funded with Contingency Fees. Professionals holding claims for Contingency Fees, the Committee Investigation Overage or the Committee WDF Overage have agreed pursuant to Section 1129(a)(9) of the Bankruptcy Code that such Claims are not required to be paid on the Effective Date as a condition to Confirmation of the Plan (but, to the extent funds are available and if otherwise Allowed and permitted, such Claims shall be paid on the Effective Date).

Professionals requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered before the Effective Date are required to file fee applications and serve them pursuant to the notice provisions of the Interim Fee Order by the Professional Fee Claims Bar Date. Any objection to such Professional Fee Claims shall be filed on or before the objection deadline specified in the application for final compensation or order of the Bankruptcy Court. Except as otherwise permitted by the Interim Fee Order, payment shall not be made to a Professional until the Professional's final fee application has been approved by the Bankruptcy Court, unless such Professional shall have agreed to different treatment of such Professional Fee Claim. Creditors holding Professional Fee Claims that do not file final fee applications by the Professional Fee Claims Bar Date shall be forever barred from asserting such claims against the Debtors, their

Estates, the Creditor Trustee, the Estate Administrator, the Liquidating Debtors, their respective successors or assigns, or their property.

The Committee Investigation Overage and the Committee WDF Overage shall not be satisfied from the Professional Fees Reserve Account or the Administrative/Priority Reserve Account but shall be paid from, and subject to the receipt by the Liquidating Debtors of, Litigation Proceeds from the Estate Avoidance Actions, *provided that*, such Professional Fee Claims for the Committee Investigation Overage and the Committee WDF Overage shall be payable *pari passu* with other Professional Fee Claims that are not otherwise satisfied from funds in, or derived from, the Carve Out Account, the Professional Fees Reserve Account, the Administrative/Priority Reserve Account or the Wind Down Facility. Any portion of the Committee Investigation Overage, the Committee WDF Overage, or other Professional Fee Claims that are not otherwise paid by the Liquidating Debtors with Litigation Proceeds from the Estate Avoidance Actions shall be treated as, and included within the, Creditor Trust Residual Obligations. All Professional Fee Claims included within the Creditor Trust Residual Obligations, if any, shall be payable *pari passu*.

After the Effective Date, the Liquidating Debtors shall use funds from the Wind Down Facility (in accordance with the limits and purposes set forth in the Wind Down Budget and the Asset Purchase Agreement), the Carve Out Account (in accordance with the DIP Credit Agreement, the DIP Financing Orders and the provisions of the Asset Purchase Agreement), and Cash on hand (other than any Contingency Fees), to pay Allowed Professional Fee Claims. Such funds shall be deposited into the Professional Fees Reserve Account from time to time in an amount equal to (i) the aggregate amount of asserted, unpaid Professional Fee Claims through the Effective Date (including an estimated amount of Professional Fee Claims related to applications for the allowance of Professional Fee Claims), plus (ii) an estimated amount, determined by the Estate Administrator in his sole discretion, of the reasonable fees for professional services to be rendered, and actual and necessary costs to be incurred, following the Effective Date on behalf of the Liquidating Debtors.

The Buyer shall deposit funds from the Wind Down Facility into the Professional Fees Reserve Account upon the Liquidating Debtors' request only to the extent such Claims are in accordance with the limits and purposes set forth in the Wind Down Budget and the provisions of the Asset Purchase Agreement. For the avoidance of doubt, notwithstanding any provisions to the contrary in the Asset Purchase Agreement, (a) the Liquidating Debtors may request funds after December 31, 2010, from the Wind Down Facility to pay Professional Fee Claims incurred prior to December 31, 2010, and the Buyer shall fund such Professional Fee Claims from the Wind Down Facility, and (b) the Liquidating Debtors may utilize funds received from the Wind Down Facility after December 31, 2010, in each case, if otherwise consistent with the limits and purposes set forth in the Wind Down Budget and the provisions of the Asset Purchase Agreement.

Payments to Professionals shall be made only in accordance with (i) the Interim Fee Order; (ii) an order by the Bankruptcy Court approving the Professional's final fee application, (iii) any other applicable order of the Bankruptcy Court; or (iv) the provisions of Article V(J) of the Plan which govern payments of Post Effective Date Professional Fees.

**D.    Priority Tax Claims**

On the later to occur of (i) the Effective Date (or as soon as practicable thereafter) or (ii) the date on which such Claim shall become an Allowed Claim, the Liquidating Debtors shall pay to each Creditor holding an Allowed Priority Tax Claim the Allowed amount of such Claim without interest from the Petition Date.

With respect to all Priority Tax Claims incurred prior to December 31, 2010 and not otherwise paid as of the Effective Date, the Liquidating Debtors shall, only to the extent such Priority Tax Claims are consistent with the limits and purposes set forth in the Wind Down Budget and the provisions of the Asset Purchase Agreement, use funds from the Wind Down Facility, which funds shall be deposited by the Buyer into the Administrative/Priority Reserve Account from time to time as requested by the Liquidating Debtors under the Asset Purchase Agreement (including requests made after December 31, 2010 with respect to Priority Tax Claims incurred prior to December 31, 2010), and disbursed to individual Creditors as soon as practicable thereafter (including disbursements made after December 31, 2010 with respect to Priority Tax Claims incurred prior to December 31, 2010), consistent with the provisions of the Plan. For the avoidance of doubt, notwithstanding any provisions to the contrary in the Asset Purchase Agreement, (a) the Liquidating Debtors may request funds after December 31, 2010, from the Wind Down Facility to pay Priority Tax Claims incurred prior to December 31, 2010, and the Buyer shall fund such Priority Tax Claims from the Wind Down Facility; and (b) the Liquidating Debtors may utilize funds received from the Wind Down Facility after December 31, 2010, in each case if otherwise consistent with the limits and purposes set forth in the Wind Down Budget and the provisions of the Asset Purchase Agreement.

## VII.

## TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

**A.    Summary**

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, Confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date. The Plan provides for substantive consolidation of the Consolidated Debtors' Estates. Thus, there is only a single Class for each category of Claims or Equity Interests against the Consolidated Debtors into which all such Claims or Equity Interests against any one or more of the Consolidated Debtors are classified. Claims against and Equity Interests in CEI are separately classified.

**B.**    **Classification and Treatment of Claims and Equity Interests**

The classification and treatment of Claims and Equity Interests against the Debtors pursuant to the Plan is as follows:

| Class | Status | Voting Rights |
|---|---|---|
| Class 1-Priority Claims, if any, against Consolidated Debtors | Impaired | Entitled to Vote |
| Class 2-Priority Claims, if any, against CEI | Impaired | Entitled to Vote |
| Class 3-Secured Claims, if any, against Consolidated Debtors | Unimpaired | Not Entitled to Vote |
| Class 4-Secured Claims, if any, against CEI | Unimpaired | Not Entitled to Vote |
| Class 5-Unsecured Claims against Consolidated Debtors | Impaired | Entitled to Vote |
| Class 6-Unsecured Claims against CEI | Impaired | Entitled to Vote |
| Class 7-Equity Interests in Consolidated Debtors | Impaired | Deemed to Reject |
| Class 8-Equity Interests in CEI | Impaired | Deemed to Reject |

**1.**    **Class 1 – Priority Claims Against Consolidated Debtors**

**Classification:** Class 1 consists of the Priority Claims against the Consolidated Debtors. The Debtors believe that there are no Class 1 Claims.

**Treatment:** The Liquidating Debtors shall pay the Allowed amount of each Class 1 Priority Claim to each Creditor holding a Class 1 Priority Claim as soon as practicable following the later of: (a) the Effective Date and (b) the date such Class 1 Priority Claim becomes an Allowed Claim. The Debtors shall pay each Creditor holding a Class 1 Priority Claim in Cash in full in respect of such Allowed Claim without interest from the Petition Date; provided, however, that such Creditor may be treated on such less favorable terms as may be agreed to in writing by such Creditor.

**Voting:** Class 1 is an Impaired Class. Creditors holding Class 1 Claims are entitled to vote on the Plan.

**2.**    **Class 2 – Priority Claims Against CEI**

**Classification:** Class 2 consists of the Priority Claims against CEI. The Debtors believe that there are no Class 2 Claims.

**Treatment:** The Liquidating Debtors shall pay the Allowed amount of each Class 2 Priority Claim to each Creditor holding a Class 2 Priority Claim as soon as practicable following the later of: (a) the Effective Date and (b) the date such Class 2 Priority Claim becomes an Allowed Claim. The Debtors shall pay each Creditor holding a Class 2 Priority Claim in Cash in full in respect of such Allowed Claim without interest from the Petition Date; provided, however, that such Creditor may be treated on such less favorable terms as may be agreed to in writing by such Creditor.

**Voting:** Class 2 is an Impaired Class. Creditors holding Class 2 Claims are entitled to vote on the Plan.

### 3. Class 3 – Secured Claims Against Consolidated Debtors.

**Classification:** Class 3 consists of any Secured Claims against the Consolidated Debtors. Each Creditor holding a Class 3 Claim, if any, constitutes a separate subclass under the Plan. The Debtors believe that there are no Class 3 Claims.

**Treatment:** To the extent any Class 3 Secured Claims exist, at the option of the Liquidating Debtors, one of the following treatments shall be provided: (i) the Creditor holding such Claim shall retain its Lien on its collateral until such collateral is sold, and the proceeds of such sale, less costs and expenses of disposing of such collateral, shall be paid to such Creditor in full satisfaction, release, and discharge of such Allowed Secured Claim; (ii) on or as soon as practicable after the later of (a) the Effective Date, or (b) the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Claim, or as otherwise agreed between the Creditor and the Debtors, the Creditor holding such Class 3 Secured Claim will receive a Cash payment equal to the amount of its Allowed Secured Claim in full satisfaction, release, and discharge of such Secured Claim; or (iii) the collateral securing the Creditor's Secured Claim shall be abandoned to such Creditor, in full satisfaction, release, and discharge of such Secured Claim.

**Voting:** Class 3 is an Unimpaired Class. Creditors holding Class 3 Claims are not entitled to vote on the Plan.

### 4. Class 4 – Secured Claims Against CEI.

**Classification:** Class 4 consists of any Secured Claims against CEI. Each Creditor holding a Class 4 Claim, if any, constitutes a separate subclass under the Plan. The Debtors believe that there are no Class 4 Claims.

**Certain Alleged Note Holder Claims:** One of the causes of action in the Committee Lawsuit alleges that the Holders of those certain 2.75% convertible senior notes issued by CEI in the face amount of $180 million are subrogated to the rights of the Holders of those certain 7 5/8% Senior Notes issued by CEI in the face amount of $200 million. If the Committee Lawsuit is successful in that regard, the Holders of the 7 5/8% Senior Notes may allege that they hold Class 4 Claims. To the extent that any such holder successfully establishes that it is a secured Class 4 Creditor, notwithstanding any provision to the contrary in the Plan, its Class 4 Claim shall be paid solely from Creditor Trust Assets.

**Treatment:** Except as otherwise provided in Article III(B)(4)(b) of the Plan, to the extent any Class 4 Secured Claims exist, at the option of the Liquidating Debtors, one of the following treatments shall be provided: (i) the Creditor holding such Claim shall retain its Lien on its collateral until such collateral is sold, and the proceeds of such sale, less costs and expenses of disposing of such collateral, shall be paid to such Creditor in full satisfaction, release, and discharge of such Allowed Secured Claim; (ii) on or as soon as practicable after the later of (a) the Effective Date, or (b) the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Claim, or as otherwise agreed between the Creditor and the

Debtors, the Creditor holding such Class 4 Secured Claim will receive a Cash payment equal to the amount of its Allowed Secured Claim in full satisfaction, release, and discharge of such Secured Claim; or (iii) the collateral securing the Creditor's Secured Claim shall be abandoned to such Creditor, in full satisfaction, release, and discharge of such Secured Claim.

**Voting:** Class 4 is an Unimpaired Class. Creditors holding Class 4 Claims are not entitled to vote on the Plan.

### 5. Class 5 –Unsecured Claims Against Consolidated Debtors.

**Classification:** Class 5 consists of Unsecured Claims against the Consolidated Debtors. Class 5 includes the Intercompany Claims of CEI against any Consolidated Debtor.

**Treatment:** Each Creditor holding a Class 5 Allowed Unsecured Claim shall receive a Pro Rata share of the Consolidated Debtors' Distributable Trust Assets.

**Voting:** Class 5 is an Impaired Class. Creditors holding Class 5 Claims are entitled to vote on the Plan.

### Class 6 –Unsecured Claims Against CEI.

**Classification:** Class 6 consists of Unsecured Claims against CEI. Class 6 includes the Intercompany Claims of any Consolidated Debtor against CEI.

**Treatment:** Each Creditor holding a Class 6 Allowed Unsecured Claim shall receive a Pro Rata share of the CEI Distributable Trust Assets.

**Voting:** Class 6 is an Impaired Class. Creditors holding Class 6 Claims are entitled to vote on the Plan.

***Certain Noteholder Distributions***. Any distributions to the Holders of those certain 2.75% convertible senior notes due 2037 issued by CEI in the face amount of $180 million shall be made to the Indenture Trustee for further distribution to such Holders in accordance with (a) the terms of the Indenture, subject to any charging lien provided for in the Indenture, and (b) the terms of the Plan.

### 6. Class 7 – Equity Interests in the Consolidated Debtors.

**Classification:** Class 7 consists of the Equity Interests in the Consolidated Debtors.

**Treatment:** Each Holder of an Equity Interest in the Consolidated Debtors shall neither receive a distribution nor retain any property under the Plan on account of such Equity Interest. Upon the Effective Date, Class 7 Equity Interests will be deemed cancelled and will cease to exist.

**Voting:** Holders of Class 7 Equity Interests are deemed to have rejected the Plan. Accordingly, Class 7 Equity Interest Holders are not entitled to vote on the Plan.

Class 8 – Equity Interests in CEI.

**Classification:** Class 8 consists of the Equity Interests in CEI.

**Treatment:** Each Holder of an Equity Interest in CEI shall neither receive a distribution nor retain any property under the Plan on account of such Equity Interest. Upon the Effective Date, Class 8 Equity Interests will be deemed cancelled and will cease to exist.

**Voting:** Holders of Class 8 Equity Interests are deemed to have rejected the Plan. Accordingly, Class 8 Equity Interest Holders are not entitled to vote on the Plan.

## VIII.

## ACCEPTANCE OR REJECTION OF THE PLAN

### A.    Voting Classes

Each Creditor holding an Allowed Claim in Classes 1, 2, 5 and 6 is entitled to vote either to accept or to reject the Plan. Only those votes cast by Creditors holding Allowed Claims shall be counted in determining whether acceptances have been received sufficient in number and amount to obtain Confirmation..

### B.    Acceptance by Impaired Classes

An Impaired Class of Claims shall have accepted the Plan if, excluding any Creditor designated under section 1126(e) of the Bankruptcy Code: (a) the Creditors holding at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan, and (b) the Creditors holding more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

### C.    Presumed Acceptance of Plan

Holders of Class 3 and Class 4 Secured Claims are deemed to have accepted the Plan and are not entitled to vote.

### D.    Presumed Rejection of Plan

Holders of Class 7 and Class 8 Equity Interests shall not receive any distributions under the Plan, are deemed to reject the Plan and are not entitled to vote.

### E.    Nonconsensual Confirmation

Because Classes 7 and 8 are deemed to reject the Plan by operation of law, the Debtors will ask the Bankruptcy Court to confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code. Without limiting the foregoing, in the event that any Class of Claims entitled to vote on the Plan fails to accept the Plan as required by section 1129(a) of the Bankruptcy Code, the Plan may be amended and, in any event, the Debtors reserve the right to seek confirmation of the Plan over such rejection pursuant to section 1129(b) of the Bankruptcy Code.

**F.**    **How to Vote**

Creditors who are entitled to vote should do so in accordance with the instructions given in Article II (E) of this Disclosure Statement.

## IX.

## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.**    **Sources of Plan Distributions**

All Cash necessary for the Liquidating Debtors to make payments pursuant to the Plan shall be obtained from the Estate Assets. All Cash necessary for the Creditor Trust to make payments pursuant to the Plan shall be obtained from the Creditor Trust Assets. As described below, if and to the extent the Estate Assets are insufficient to make the payments otherwise required by the Liquidating Debtors under the Plan (i) to Creditors holding (a) Allowed Administrative Claims, (b) Allowed Professional Fee Claims (including any unpaid portion of the Committee Investigation Overage or the Committee WDF Overage), (c) Allowed Priority Tax Claims and (d) Allowed Priority Claims in Class 1 and Class 2, or (ii) for Plan Expenses, the Creditor Trust shall make such payments from the Creditor Trust Assets at the times, in the amounts and according to the provisions of the Plan. As described below, if and to the extent the there are any remaining Estate Assets following the payments in full otherwise required by the Liquidating Debtors under the Plan (i) to Creditors holding (a) Allowed Administrative Claims, (b) Allowed Professional Fee Claims, (c) Allowed Priority Tax Claims and (d) Allowed Priority Claims in Class 1 and Class 2, or (ii) for Plan Expenses, the Liquidating Debtors shall transfer such remaining assets to the Creditor Trust and such assets shall be deemed Creditor Trust Assets.

**B.**    **Substantive Consolidation of Consolidated Debtors**

The Plan will effectuate a substantive consolidation of the Chapter 11 Cases of the Consolidated Debtors (i.e., all Liquidating Debtors other than CEI) into a single entity solely for the purpose of the Chapter 11 Cases and all actions with respect to voting, Confirmation, Consummation and implementation of the Plan. On the Effective Date, the Plan consolidates all the assets and liabilities of the Consolidated Debtors into a single estate. Accordingly, the Plan treats the Consolidated Debtors as a single entity and distributions are made on a collective basis to Creditors holding Unsecured Claims against the Consolidated Debtors. The Distributions to Class 5 Creditors will be made exclusively from the Consolidated Debtors' Distributable Trust Assets. Likewise, Distributions to Class 6 Creditors will be made exclusively from the CEI Distributable Trust Assets. Voting will be aggregated by type of Claim without regard to which Debtor the Claim is asserted against.

On the Effective Date: (i) all Intercompany Claims by, between and among the Consolidated Debtors shall be eliminated,[6] (ii) all assets and liabilities of any Consolidated Debtor shall be merged or treated as if they were merged with the assets and liabilities of the

---

[6] The Intercompany Claims by any of the Consolidated Debtors against CEI, or by CEI against any of the Consolidated Debtors are preserved (subject, however, to any objections to the allowance and priority of such Claims, among other rights, defenses and offsets, to the treatment of such Claims).

other Consolidated Debtors, (iii) any obligation of a Consolidated Debtor and all guarantees thereof by one or more of the other Consolidated Debtors shall be deemed to be one obligation of the Consolidated Debtors, (iv) the Equity Interests in the Consolidated Debtors shall be cancelled, and (v) each Claim filed or to be filed against any Consolidated Debtor shall be deemed filed as a single Claim against and a single obligation of the Consolidated Debtors. On the Effective Date, in accordance with the terms of the Plan, and the consolidation of the assets and liabilities of the Consolidated Debtors, all Claims based upon guarantees of collection, payment, or performance made by any Consolidated Debtor as to the obligations of another Consolidated Debtor shall be released and of no further force and effect. The foregoing (a) shall not affect the rights of any Creditor holding a Secured Claim with respect to the Collateral securing its Claim, or the terms and implementation of any settlement, and the rights and obligations of the parties thereto, entered into in connection with the confirmation of the Plan and (b) shall not, and shall not be deemed to, prejudice the Litigation (subject to the releases set forth in Article IX of the Plan), which shall survive entry of the Confirmation Order for the benefit of the Debtors and their Estates, as if there had been no substantive consolidation.

The Plan and Disclosure Statement, jointly, shall serve as, and shall be deemed to be, a motion for entry of an order under Bankruptcy Rule 9019 for the substantive consolidation of the Consolidated Debtors' Chapter 11 Cases. If no objection to the Plan is timely filed and served by any Creditor holding an Impaired Claim affected by the Plan, the Confirmation Order will serve as the Order approving substantive consolidation pursuant to the terms of the Plan. If any such objections are timely filed and served, a hearing with respect to the Plan and the objections thereto shall be scheduled by the Bankruptcy Court, which hearing may, but is not required to, coincide with the Confirmation Hearing.

## C. **Treatment of Estate Assets**

The Estate Assets shall be held by the Liquidating Debtors in trust for Creditors and shall be distributed only in accordance with the Plan.

On or as soon as practicable after the Effective Date, the Liquidating Debtors shall establish the Professional Fees Reserve Account and the Administrative Claim/Priority Reserve Account by using available Cash (except to the extent such Cash is derived from Litigation Proceeds from Estate Avoidance Actions, in which case such Cash shall instead be deposited in the Estate Avoidance Actions Reserve Account), and funds from the Carve Out Account and the Wind Down Facility (subject to and in accordance with the Asset Purchase Agreement and the Wind Down Budget). The Professional Fees Reserve Account and the Administrative Claim/Priority Reserve Account and the funds contained therein shall be free and clear of all Claims and Liens, except with respect to the Buyer's interests, pursuant to the Asset Purchase Agreement, in (a) any Excess Carve-Out Cash (as defined in the Asset Purchase Agreement) and (b) certain unutilized amounts funded under the Wind Down Facility.

On or as soon as practicable after the Effective Date, the Liquidating Debtors shall establish the Estate Avoidance Actions Reserve Account by using available Cash derived from Litigation Proceeds from Estate Avoidance Actions. From time to time as Litigation Proceeds from Estate Avoidance Actions are received , the Liquidating Debtors shall deposit such

proceeds into the Estate Avoidance Actions Reserve Account. The Estate Avoidance Actions Reserve Account and the funds contained therein shall be free and clear of all Claims and Liens.

Subject to the occurrence of the Effective Date, in accordance with Articles II and III of the Plan, the Liquidating Debtors shall pay Creditors holding (a) Allowed Administrative Claims, (b) Allowed Professional Fee Claims, (c) Allowed Priority Tax Claims and (d) Allowed Priority Claims in Class 1 and Class 2. The Liquidating Debtors shall make the Cash payments to the above referenced Creditors holding Allowed Claims: (aa) in U.S. dollars by check, draft or warrant, drawn on a domestic bank selected by the Liquidating Debtors in their sole discretion, or by wire transfer from a domestic bank, at the Liquidating Debtors' option, and (bb) by first-class mail (or by other equivalent or superior means as determined by the Liquidating Debtors).

At such time(s) as the Estate Administrator deems reasonable and prudent in his sole discretion, any Estate Assets Surplus shall be transferred by the Liquidating Debtors to the Creditor Trust, provided that, from time to time, the Estate Administrator may transfer selected Estate Assets from the Liquidating Debtors to the Creditor Trust.

**D.    Payment of Plan Expenses**

All Plan Expenses may be paid by the Estate Administrator without further notice to Creditors or approval of the Bankruptcy Court. Any disputes concerning the payment of Plan Expenses shall be submitted to the Bankruptcy Court for resolution. Plan Expenses shall be payable prior to payment of any Committee Investigation Overage, Committee WDF Overage and any other Professional Fee Claims that are not otherwise satisfied from the Professional Fees Reserve Account or the Administrative/Priority Reserve Account.

**E.    Dissolution of Liquidating Debtors**

The Liquidating Debtors shall conduct no business following the Effective Date other than winding up their affairs in accordance with applicable law and the provisions of the Plan. Without limiting the generality or effect of the foregoing, following the Effective Date the Liquidating Debtors (acting through the Estate Administrator as described in Article V(F)) shall: (i) undertake those transactions that are necessary, advantageous or practicable to obtain the maximum value from the Estate Assets; and (ii) exercise their best efforts and endeavor in good faith and without undue delay to resolve all Professional Fee Claims, Administrative Claims, Priority Tax Claims, and Claims in Classes 1 through 4. Except as otherwise provided in the Plan or the Confirmation Order, pursuant to applicable bankruptcy and non-bankruptcy law, the Liquidating Debtors shall be authorized to wind up their affairs, dissolve the Debtors and put into effect and carry out the terms of the Plan and any orders of the Bankruptcy Court entered in the Chapter 11 Cases, without further action by their boards of directors or stockholders.

**F.    Power and Authority of Estate Administrator**

From and after the Effective Date, the Liquidating Debtors will be managed and governed by the Estate Administrator who shall act as the representative of the Liquidating Debtors. Except as otherwise delegated to the Creditor Trustee as described in Article V(H) or as delegated to the Creditor Trustee after the conclusion of the Estate Administrator's employment, the activities of the Liquidating Debtors as permitted and limited under the Plan

will be managed by the Estate Administrator. Compensation and reimbursement of the Estate Administrator shall be in accordance with the Estate Administrator Order and shall be considered a Plan Expense. The Estate Administrator shall be authorized to act on behalf of the Liquidating Debtors to take any actions necessary to wind up the business of the Liquidating Debtors, including but not limited to (i) exercising the rights, power and authority of the Liquidating Debtors under applicable provisions of the Plan and bankruptcy and non-bankruptcy law; (ii) retaining professionals to represent the Liquidating Debtors in implementing the Plan; (iii) establishing the Professional Fees Reserve Account and the Administrative/Priority Reserve Account; (iv) making the payments required by the Plan for Allowed Administrative Claims, Professional Fee Claims, Allowed Priority Tax Claims, and the Allowed Claims of Classes 1, 2, 3 and 4; (v) effecting the transfer of the Creditor Trust Assets to the Creditor Trust, (vi) resolving Disputed Claims of Creditors holding Professional Fee Claims, Administrative Claims, Priority Tax Claims and Claims in Classes 1 through 4; (vii) ensuring that the Liquidating Debtors comply with their obligations to pay quarterly fees under 28 U.S.C. § 1930(a)(6), (viii) filing all post-Confirmation reports required by the Bankruptcy Rules, the Bankruptcy Court, the Local Bankruptcy Rules, or any applicable guidelines of the U.S. Trustee; (ix) providing reasonable assistance to the Creditor Trust to (a) obtain access to books, records and information in the possession, custody or control of the Buyer to the extent such access is permitted under the Asset Purchase Agreement, and (b) prosecute the Committee Lawsuit; (x) otherwise implementing the Plan, winding up the affairs of the Debtors (including filing certificates of dissolution) and closing the Chapter 11 Cases, and (xi) any other duties that are within the scope of the Estate Administrator Order, the Plan or the Confirmation Order. If the sitting Estate Administrator becomes unable, unavailable or unwilling to continue to serve, the Bankruptcy Court will appoint a replacement upon the request of any party in interest, unless his duties and responsibilities have already been transferred to the Creditor Trustee.

If not discharged earlier in accordance with the Estate Administrator Order, when the Estate Administrator completes the payment of Professional Fee Claims, Allowed Administrative Claims, Allowed Priority Claims and Allowed Priority Tax Claims and determines, in his sole judgment (following consultation with the Creditor Trustee), that the Liquidating Debtors no longer need the services of an Estate Administrator, he may File the Estate Administrator Discharge Notice (with a copy served on the Creditor Trustee). From and after the effective date of the Estate Administrator Discharge Notice (which date shall be 30 days from the date of mailing of the notice), the Estate Administrator shall be relieved of his duties and responsibilities under the Plan, and any outstanding obligations of the Liquidating Debtors under the Plan shall become the duties and responsibilities of the Creditor Trustee.

## G.     **Preservation and Settlement of Litigation**

Except as otherwise provided in the Plan, all Litigation, including without limitation, the Committee Lawsuit and Avoidance Actions, is retained, vested and preserved by the Liquidating Debtors pursuant to section 1123(b) of the Bankruptcy Code. Upon the Effective Date, (a) the Estate Avoidance Actions will vest in the Liquidating Debtors and (b) the Assigned Litigation will be automatically transferred to the Creditor Trust and shall be prosecuted or settled by the Creditor Trustee. The Debtors and the Committee have not concluded their investigation into all of the Litigation. Accordingly, in considering the Plan, each party in interest should understand that any and all Litigation that may exist against such Person or entity may be pursued by the

Debtors, the Liquidating Debtors or the Creditor Trust as applicable. The failure of the Debtors to specifically list a claim, right, cause of action, suit or proceeding in the Plan or the Disclosure Statement shall not constitute a waiver or release by the Debtors or their Estates of such claim, right of action, suit or proceeding. The substantive consolidation of the Consolidated Debtors and their Estates shall not prejudice or otherwise affect the rights or defenses of any party to the Litigation.

Subject to the limitations of liability and releases set forth in Article IX of the Plan, the Creditor Trustee may commence and prosecute (or continue the prosecution of) the Assigned Litigation against any Entity, including but not limited to, any Creditor or other party in interest. Such Assigned Litigation may include, but shall not be limited to, Avoidance Actions against any Entity receiving transfers prior to the Petition Date, including but not limited to transfers set forth in the Schedules. The Creditor Trustee and/or the Creditor Trust may, in accordance with the Creditor Trust Agreement and the terms of the Plan, file, prosecute, settle, release, compromise, enforce or abandon any or all of the Assigned Litigation. Bankruptcy Court approval must be obtained for any settlement of the Committee Lawsuit

The Debtors (or the Liquidating Debtors) may settle, in consultation with the Committee or the Creditor Trustee, any of the Estate Avoidance Actions with the approval of the Bankruptcy Court pursuant to Bankruptcy Rule 9019.

## H.    The Creditor Trust

The Creditor Trust shall be created on the Effective Date. On the Effective Date, the Assigned Litigation, any Litigation Proceeds from the Assigned Litigation, and all other Assets of the Estates (except the Estate Assets), shall be automatically transferred, free and clear of all Liens, to the Creditor Trust and shall be deemed accomplished pursuant to the Plan and the Confirmation Order. Subsequently, the Estate Administrator, at such time(s) as he deems reasonable and prudent in his discretion, (a) may assign any selected Estate Assets to the Creditor Trust, and (b) shall assign the Estate Assets Surplus to the Creditor Trust; provided, however, that the Estate Administrator may not assign to the Creditor Trust any Excess Carve-Out Cash (as defined in the Asset Purchase Agreement) which shall be remitted to the Buyer, or those certain unutilized amounts funded under the Wind Down Facility, which shall be repaid to the Buyer pursuant to the Asset Purchase Agreement.

The Debtors will submit a form of Creditor Trust Agreement that is acceptable to the Debtors and the Committee not later than three days prior to the Confirmation Hearing.

The Creditor Trustee owes its fiduciary duties to Creditors holding Claims in Classes 5 and 6 under the Plan, who are the beneficiaries of the Creditor Trust. Subject to any funding necessary to pay the Creditor Trust Residual Obligations and the Creditor Trust Expenses, the Creditor Trust Assets shall be held by the Creditor Trustee in trust for Creditors holding Claims in Class 5 and 6 and shall be distributed only in accordance with the Plan and the Creditor Trust Agreement. For the avoidance of doubt, however, the Contingency Fees payable on account of any Assigned Litigation shall be for the sole benefit of Milberg LLP and Pinckney, Harris & Weidinger, LLC, and shall not be used to pay any Creditor Trust Residual Obligations, Creditor Trust Expenses, or Plan Expenses.

From and after the Effective Date, the Creditor Trustee shall retain and pursue the Assigned Litigation on such terms and conditions as are consistent with the interests of the beneficiaries of the Creditor Trust. In addition, from and after the Effective Date, except as otherwise provided in the Plan or in the Confirmation Order, the Creditor Trustee shall be free to operate without any limitation or restriction by, and without any requirement to comply with, the Bankruptcy Code, Bankruptcy Rules, or Guidelines of the United States Trustee. All Cash and all Litigation Proceeds realized or obtained by the Creditor Trustee shall be deposited into the Creditor Trust Fund and held in accordance with the Plan and the Creditor Trust Agreement and shall be distributed in accordance with the Plan and the Creditor Trust Agreement.

The duties, responsibilities and powers of the Creditor Trustee shall terminate after all Creditor Trust Assets have been distributed in accordance with the Plan and the Creditor Trust Agreement. Except in the circumstances set forth below, the Creditor Trust shall terminate no later than five years after the Effective Date. However, if warranted by the facts and circumstances provided for in the Plan, and subject to the approval of the Bankruptcy Court upon a finding that an extension is necessary to aid the purpose of the Creditor Trust, the term of the Creditor Trust may be extended, one or more times (not to exceed a total of four extensions, unless the Creditor Trustee receives a favorable ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Creditor Trust as a grantor trust for federal income tax purposes) for a finite period, based on the particular circumstances at issue. Each such extension must be approved by the Bankruptcy Court within two months prior to the beginning of the extended term with notice thereof to all of the unpaid beneficiaries of the Creditor Trust. Upon the occurrence of the termination of the Creditor Trust, the Creditor Trustee shall file with the Bankruptcy Court a report thereof, seeking an order discharging the Creditor Trustee.

### 1. Creditor Trust Fund

The Creditor Trustee shall periodically deposit any Litigation Proceeds into the Creditor Trust Fund to satisfy the obligations to Creditors holding Claims in Class 5 and 6 and to make any payments necessary for Creditor Trust Residual Obligations or Creditor Trust Expenses. The Creditor Trust Fund shall be invested by the Creditor Trustee in a manner consistent with the provisions of the Creditor Trust Agreement.

### 2. Payment of Creditor Trust Expenses

All Creditor Trust Expenses may be paid by the Creditor Trustee from the Creditor Trust Fund without further notice to Creditors or approval of the Bankruptcy Court. Any disputes concerning the payment of Creditor Trust Expenses shall be submitted to the Bankruptcy Court for resolution. Creditor Trust Expenses shall include any quarterly fees payable under 28 U.S.C. § 1930(a)(6) on account of disbursements made by the Creditor Trust.

### 3. Indenture Trustee Expenses

The expenses of the Indenture Trustee (including the reasonable fees and expenses of its counsel) in an amount not to exceed $50,000 (and otherwise consistent with and authorized under the terms of the Indenture) may be paid as Creditor Trust Expenses, provided however, such permitted expenses shall be junior and subordinate to all any (a) Creditor Trust Expenses,

and (b) any Creditor Trust Residual Obligations (including any Administrative Claims or Professional Fee Claims that may be within such obligations). The expenses of the Indenture Trustee shall not constitute nor be Allowed as Administrative Claims.

### 4. Distribution of Creditor Trust Assets

The Creditor Trust Assets shall be used to satisfy (a) first, Creditor Trust Expenses, (b) second, any Creditor Trust Residual Obligations, and (c) thereafter, the payments required under the Plan on account of Allowed Claims in Classes 5 and 6, <u>provided that</u>, (i) any Contingency Fees are payable solely from the Committee Lawsuit and are not Creditor Trust Assets, and (ii) the Creditor Trustee shall only make distributions in the amounts and at such times permitted by the Plan and the Creditor Trust Agreement. The Creditor Trustee shall segregate the assets and liabilities of the Consolidated Debtors and the assets of CEI and shall make distributions to the Creditors of each in accordance with the assets, if any, available to satisfy the Claims of Unsecured Creditors of CEI and the Consolidated Debtors, respectively. Distributions on Class 5 Allowed Claims shall be paid only from the proceeds of the Consolidated Debtors' Distributable Trust Assets and distributions on Class 6 Allowed Claims shall be paid solely from the proceeds of CEI Distributable Trust Assets.

Prior to any Distribution, the Creditor Trustee shall seek and obtain Bankruptcy Court approval for its proposed allocation of Creditor Trust Assets between CEI and the Consolidated Debtors. The Creditor Trustee shall have the authority to formulate and propose an "inter-estate" settlement (among, on the one hand, CEI, and, on the other hand, the Consolidated Debtors), that (a) compromises, withdraws, offsets or extinguishes any Intercompany Claims, (b) substantively consolidates, in whole or in part, CEI into the Consolidated Debtors, (c) transfers any potential surplus available after Claims against the Consolidated Debtors are paid in full to satisfy Claims against CEI, or (d) otherwise achieves a comprehensive allocation of Creditor Trust Assets for Distributions among the holders of Allowed Claims in Classes 5 and 6. The Creditor Trustee shall seek the approval of the Bankruptcy Court for any such "inter-estate" settlement. Nothing in the Plan or the Creditor Trust Agreement shall be construed to affect the rights of any party in interest, including the Creditor Trustee, to object to any such "inter-estate" settlement or otherwise seek or oppose the full substantive consolidation of CEI into the Consolidated Debtors.

If there are insufficient funds to make full payment on account of any Creditor Trust Residual Obligations, the Creditor Trustee shall remit an amount sufficient to satisfy such claims to the Estate Administrator to enable full payment of such obligations prior to the payment of any Allowed Claims in Classes 5 and 6. If the Estate Administrator has been discharged, the Creditor Trustee shall make the necessary payments.

No payments or Distributions shall be made by the Creditor Trustee on account of Disputed Claims unless and to the extent such Claims become Allowed Claims in Class 5 and 6. The Creditor Trust Assets allocated to Disputed Claims will not be distributed but will be reserved in the Creditor Trust Fund in accordance with the Plan pending the resolution of such Disputed Claims.

## 5. Power and Authority of Creditor Trustee

Upon the Effective Date, the Creditor Trust will be managed and governed by the Creditor Trustee, as set forth in the Creditor Trust Agreement. The Creditor Trustee shall retain and have all the rights, powers and duties necessary to carry out its responsibilities under the Plan and the Creditor Trust Agreement, and as otherwise provided in the Confirmation Order. In addition, following the effectiveness of the Estate Administrator Discharge Notice, the Creditor Trustee shall assume the duties and responsibilities formerly assigned to, undertaken or otherwise performed by the Estate Administrator pursuant to the Estate Administrator Order, the Plan or the Confirmation Order (including those acts set forth in Section V(F) of the Plan). The Creditor Trustee's identity and compensation shall be disclosed in a notice filed with the Bankruptcy Court not later than three (3) days before the date of the hearing to confirm the Plan. The compensation arrangements of the Creditor Trustee shall be subject to the approval of the Bankruptcy Court prior to the Effective Date. The Confirmation of the Plan shall constitute the appointment of the Creditor Trustee.

On the Effective Date, the Creditor Trustee will be deemed to have retained the Committee's Professionals under the arrangements existing on the Effective Date, without any need for further orders of the Bankruptcy Court, provided, however, that the Assigned Litigation Fee Claims (whether incurred by the Committee prior to the Effective Date or by the Creditor Trustee after the Effective Date) shall be payable solely from the Litigation Proceeds of Assigned Litigation.

The Creditor Trustee shall serve until the Creditor Trust Assets have been fully distributed, a Final Decree is entered closing the Chapter 11 Cases and the Creditor Trustee has completed a wind-down of the administration of the Creditor Trust and such other activities as designated in the Confirmation Order. If the then current Creditor Trustee is unable, unavailable or unwilling to serve, or has been earlier removed by the Bankruptcy Court for cause shown, subject in either case to the terms of the Creditor Trust Agreement, then after notice and a hearing the Bankruptcy Court will appoint a replacement.

## 6. Creditor Trust Distribution Procedures

Except as otherwise agreed by the Creditor holding a particular Claim, or as provided in the Plan, all amounts to be paid by the Creditor Trustee under the Plan shall be distributed in such amounts and at such times as is reasonably prudent. The allowance of Class 5 and Class 6 Claims, including Intercompany Claims, is subject to all statutory, equitable and contractual claims, rights and defenses available to the Debtors and the Estates (and pursuant to the Plan, available to the Creditor Trustee, the Estate Administrator and the Liquidating Debtors), which claims, rights and defenses are fully enforceable before, on and after the Effective Date. On the Effective Date, or as soon as practicable thereafter, subject to the Plan and the Creditor Trust Agreement, the Creditor Trustee shall make interim and final distributions of Creditor Trust Assets to Creditors holding Allowed Class 5 and 6 Claims from the Creditor Trust Fund in the amounts set forth in the Plan.

Notwithstanding any provision to the contrary in the Plan, distributions may be made in full or on a Pro Rata basis depending on: (x) the amount of the Allowed Claim, (y) the then available Creditor Trust Assets, and (z) the then anticipated Creditor Trust Assets. The Creditor

Trustee shall make the Cash payments to Creditors holding Allowed Claims: (aa) in U.S. dollars by check, draft or warrant, drawn on a domestic bank selected by the Creditor Trustee in its sole discretion, or by wire transfer from a domestic bank, at the Creditor Trustee's option, and (bb) by first-class mail (or by other equivalent or superior means as determined by the Creditor Trustee).

## 7. Liability and Indemnification of Creditor Trustee

The Creditor Trustee shall not be liable for (and the Creditor Trust Assets shall not be burdened or otherwise available to satisfy any judgment for) any act or omission taken or omitted to be taken in his or her capacity as the Creditor Trustee, other than acts or omissions resulting from fraud, gross negligence or willful misconduct. The Creditor Trustee may, in connection with the performance of his or her functions, and in his or her sole and absolute discretion, consult with attorneys, accountants and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such professionals, other than acts or omissions resulting from fraud, gross negligence or willful misconduct. Notwithstanding such authority, the Creditor Trustee shall be under no obligation to consult with attorneys, accountants or his or her agents, and his or her determination to not do so should not result in imposition of liability on the Creditor Trustee unless such determination is based on fraud, gross negligence or willful misconduct. The Creditor Trust shall indemnify and hold harmless the Creditor Trustee and his or her agents, representatives, professionals and employees from and against any and all liabilities, losses, damages, claims, causes of action, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Creditor Trust or the implementation or administration of the Plan; provided, however, that no such indemnification will be made to such Persons for such actions or omissions as a result of fraud, gross negligence or willful misconduct.

## 8. Federal Income Taxation of Creditor Trust

For federal income tax purposes, the Debtors, the Liquidating Debtors, the Creditor Trust and the beneficiaries of the Creditor Trust shall treat the Creditor Trust as a Creditor Trust within the meaning of Treasury Income Tax Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124. For federal income tax purposes, the transfer of assets to the Creditor Trust under the Plan is treated as a deemed transfer to the beneficiaries of the Creditor Trust in satisfaction of their Claims followed by a deemed transfer of the assets by the beneficiaries of the Creditor Trust to the Creditor Trust. For federal income tax purposes, the beneficiaries of the Creditor Trust will be deemed to be the grantors and owners of the Creditor Trust and its assets. For federal income tax purposes, the Creditor Trust will be taxed as a grantor trust within the meaning of IRC Sections 671-677 (a non-taxable pass-through tax entity) owned by the beneficiaries of the Creditor Trust. The Creditor Trust will file federal income tax returns as a grantor trust under IRC Section 671 and Treasury Income Tax Regulation Section 1.671-4 and report, but not pay, tax on the Creditor Trust's tax items of income, gain, loss deductions and credits ("Tax Items"). The beneficiaries of the Creditor Trust will report on their federal income tax returns and pay any federal income tax liability attributable to such Creditor Trust's Tax Items. The Liquidating Debtors, Creditor Trust and the beneficiaries of the Creditor Trust will use consistent valuations of the assets transferred to the Creditor Trust for all federal

income tax purposes, such valuations to be determined jointly by the Estate Administrator and the Creditor Trustee.

## I.     The Committee Lawsuit

Notwithstanding any other provision of the Plan, this Section V(I) of the Plan shall apply and control the Committee Lawsuit and, in the event or any inconsistency with any other provision of or ambiguity in the Plan or the Plan Documents, the provisions of this Section shall govern. The following provisions shall apply to the Committee Lawsuit:

1. The Committee Lawsuit shall be included within "Assigned Litigation" as defined in the Plan, and shall automatically be transferred to the Creditor Trust on the Effective Date. The Committee Lawsuit shall be a Creditor Trust Asset and allocated to the Contingency Fees, Creditor Trust Expenses, Creditor Trust Residual Obligations and Creditors of the Debtors as set forth in sub-paragraph (2) below. The Committee and Creditor Trustee intend to continue prosecuting the lawsuit both before and after the Effective Date. Milberg LLP and Pinkney, Harris & Weidinger, LLC have been retained as special counsel to prosecute the Committee Lawsuit, and the Contingency Fee Orders and the existing retention agreements shall continue to be applicable both to the Committee prior to the Effective Date, and to the Creditor Trustee after the Effective Date, and shall not be affected by the Plan.

2. Any proceeds of the Committee Lawsuit shall be distributed to and held by the Creditor Trustee and distributed first, to pay the Contingency Fees in accordance with the Contingency Fee Orders, and, after such Fees are paid in full, to distribute the remainder as Litigation Proceeds under the provisions of the Plan. Neither the Creditors of the Debtors nor any Person other than Milberg LLP and Pinckney, Harris & Weidinger, LLC shall have any interest in or right to the proceeds of the Committee Lawsuit which are to be used to pay the Contingency Fees. The Creditor Trustee shall hold all Litigation Proceeds from the Committee Lawsuit which are allocable to the Contingency Fees for the sole benefit of Milberg LLP and Pinckney, Harris & Weidinger, LLC.

3. Prior to the Effective Date, the Committee shall have standing to prosecute the Committee Lawsuit and, following the Effective Date, the Creditor Trustee shall have (i) standing to prosecute the Committee Lawsuit, and (ii) the power to settle the Committee Lawsuit subject to the approval of the Bankruptcy Court. The Debtors shall have irrevocably waived and relinquished all rights in and power to control the Committee Lawsuit, and the Debtors, Liquidating Debtors, and Estate Administrator shall not be authorized to prosecute, settle, abandon, or take any other actions that adversely affect the Committee Lawsuit and the prosecution of the Committee Lawsuit by the Creditor Trustee. The Liquidating Debtors and Estate Administrator shall render such cooperation as may be reasonably requested by the Creditor Trustee in connection with the prosecution of the Committee Lawsuit, and shall provide reasonable assistance to the Creditor Trust to obtain access to books, records and information in the possession, custody or

control of the Buyer to the extent such access is permitted under the Asset Purchase Agreement.

4. Any settlement of the Committee Lawsuit shall be approved by the Bankruptcy Court in accordance with Bankruptcy Rule 9019. At the time of any motion to approve such a settlement, or thereafter, or upon a final judgment in the Committee Lawsuit which results in Litigation Proceeds being available for Creditors of the Debtors, Milberg and Pinckney may request payment of the Contingency Fees in accordance with the Contingency Fee Orders.

5. The Litigation Proceeds from the Committee Lawsuit are available for Holders of Unsecured Claims to the extent any Creditor Trust Residual Obligations, Assigned Litigation Fee Claims, Committee WDF Overage, Committee Investigation Overage and any other Creditor Trust Expenses have been satisfied.

6. The Creditor Trustee shall have the same powers and rights with respect to the Committee Lawsuit as he does hereunder with respect any other Creditor Trust Asset, as set forth in Article V(H) of the Plan. Furthermore, the Creditor Trustee is responsible for making distributions of Litigation Proceeds from the Committee Lawsuit to the Holders of Unsecured Claims in Classes 5 and 6 of the Plan.

7. Milberg LLP and Pinckney, Harris & Weidinger, LLC have been retained as special counsel to prosecute the Committee Lawsuit on the behalf of the Committee on the terms set forth in the Contingency Fee Orders. As set forth therein, the Bankruptcy Court approved the contingent fee arrangement in the retention applications of Milberg LLP and Pinckney, Harris & Weidinger, LLC. Upon the resolution of the Committee Lawsuit, Contingency Fees shall be determined in accordance with the Contingency Fee Orders, and the Contingency Fees shall be held for and the sole and exclusive benefit of, and distributed to, Milberg LLP and Pinckney, Harris & Weidinger, LLC.

8. With the exception of the provisions of Sections V(H), (I), and (J), Sections IX(G), (H), and (J), and Section III(B) of the Plan, no provision in the Plan shall be construed to impair the claims in and the prosecution of the Committee Lawsuit, nor shall any provision in the Plan be construed to discharge, waive, release, or enjoin the claims or causes of action asserted or to be asserted against any named or unnamed defendant in connection with the Committee Lawsuit.

## J.    Post Effective Date Professional Fees

On the Effective Date, the Liquidating Debtors will be deemed to have retained the Debtors' Professionals under the arrangements existing on the Effective Date, without any need for new retention agreements or further orders of the Bankruptcy Court. During the time in which the Estate Administrator remains employed by the Liquidating Debtors, he may also retain additional Professionals on behalf of the Liquidating Debtors without order of the Bankruptcy Court. From and after the Effective Date, the Estate Administrator shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable Post Effective Date Professional Fees thereafter incurred on behalf of the Liquidating

Debtors and the Estate Administrator including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

The Post Effective Date Professional Fees incurred on behalf of the Liquidating Debtors shall be paid within fifteen (15) business days after submission of a detailed invoice thereof to the Estate Administrator. If the Estate Administrator disputes the reasonableness of any such invoice, the affected Professional may submit such dispute to the Bankruptcy Court for determination of reasonableness of such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved. To the extent that the Estate Administrator has insufficient Assets with which to pay Plan Expenses, including but not limited to Post Effective Date Professional Fees, they shall become the obligation of the Creditor Trust (i.e., as Creditor Trust Residual Obligations) and shall be paid from Creditor Trust Assets.

On the Effective Date, the Creditor Trust will be deemed to have retained the Committee's Professionals under the arrangements existing on the Effective Date, without any need for new retention agreements or further orders of the Bankruptcy Court. The Creditor Trustee may also retain additional Professionals on behalf of the Creditor Trust without order of the Bankruptcy Court. From and after the Effective Date, the Creditor Trustee shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable Post Effective Date Professional Fees thereafter incurred on behalf of the Creditor Trust. The Post Effective Date Professional Fees incurred on behalf of the Creditor Trust shall be paid within fifteen (15) business days after submission of a detailed invoice thereof to the Creditor Trustee. If the Creditor Trustee disputes the reasonableness of any such invoice, the affected Professional may submit such dispute to the Bankruptcy Court for determination of reasonableness of such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved. All Post Effective Date Professional Fees incurred on behalf of the Creditor Trust shall be payable solely from the Creditor Trust Assets.

In the event that there are insufficient assets with which to pay the Post Effective Date Professional Fees of the Liquidating Debtors and the Creditor Trust in full, they shall be paid pro rata from the Creditor Trust Assets.

## K.     Release of Liens

Except as otherwise provided in the Plan, the Confirmation Order, or in any document, instrument, or other agreement created in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, liens, or other security interests against the property of the Estates shall be released.

## L.     Exemption from Certain Transfer Taxes

Pursuant to Bankruptcy Code section 1146(c), any transfers from any of the Debtors to the Creditor Trust or to any other Person pursuant to the Plan in the United States shall not be subject to any stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## M.    Dissolution of the Committee

On the Effective Date, the Committee shall be dissolved and its members shall be deemed released of all of their duties, responsibilities and obligations except for any act necessary for the Committee's Professionals to File, serve, and prosecute applications for final allowance of compensation and reimbursement of expenses.

## N.    Full and Final Satisfaction

Commencing upon the Effective Date, the Liquidating Debtors and the Creditor Trust shall be authorized and directed to distribute the amounts required under the Plan to Creditors holding Allowed Claims according to the provisions of the Plan.  Upon the Effective Date, all Debts of the Debtors shall be deemed fixed and adjusted pursuant to the Plan and the Debtors, the Liquidating Debtors, the Estate Administrator, the Creditor Trust and the Creditor Trustee shall have no liability on account of any Claims or Equity Interests except as set forth in the Plan and in the Creditor Trust Agreement.  All payments and all distributions made by the Liquidating Debtors, the Estate Administrator, the Creditor Trust and the Creditor Trustee under the Plan shall be in full and final satisfaction, settlement and release of all Claims filed against the Debtors' Estates; provided, however, that nothing contained in this Article V(N) of the Plan, or in any other provision of the Plan, shall be deemed to constitute or result in a discharge of the Debtors under section 1141(d) of the Bankruptcy Code.

## O.    Allocation of Distributions

Distributions to any Creditor holding an Allowed Claim shall be allocated first to the principal amount of any such Allowed Claim, as determined for federal income tax purposes, and then, to the extent the consideration exceeds such amount, to the remainder of such Claim comprising interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

## P.    Rounding

Whenever any payment of a fraction of a cent would otherwise be called for, the actual distribution shall reflect a rounding of such fraction down to the nearest cent.

## Q.    No Interim Cash Payments of Less Than $50 on Account of Allowed Claims

If an interim Distribution to be received by a Creditor holding an Allowed Claim would be less than $50, notwithstanding any contrary provision in the Plan, at the discretion of the Liquidating Debtors or the Creditor Trustee, as applicable, no such interim payment will be made to such Creditor, and such Cash shall be held for such Holder until the earlier of (i) the next time an interim Distribution is made (unless the Distribution would still be less than $50 in which case this Section 5(Q) shall again apply), or (ii) the date on which final Distributions are made to Creditors holding Allowed Claims.

## R.    Unclaimed Property

Any Creditor that fails to claim any Cash within 90 days from the date upon which a Distribution is first made to such entity shall forfeit all rights to any Distribution under the Plan.

Upon forfeiture, such Cash (including interest thereon) shall be returned to the source from which it was paid. Unclaimed Distributions on account of Administrative Claims, Priority Claims and Priority Tax Claims shall be returned to the Administrative/Priority Reserve Account. Unclaimed distributions on account of Professional Fee Claims shall be returned to the Professional Fees Reserve Account. Unclaimed distributions on account of Unsecured Claims shall be returned to the Creditor Trust Fund for redistribution to Creditors holding Allowed Class 5 and 6 Claims to whom distributions were previously made by the Creditor Trustee. Creditors that fail to claim Cash shall forfeit their rights thereto and shall have no claim whatsoever against the Liquidating Debtors, the Creditor Trust or any Creditor holding an Allowed Claim to whom distributions are made by the Estate Administrator or the Creditor Trustee.

**S.      No Distributions on Late-Filed Claims**

Except as otherwise provided in a Final Order of the Bankruptcy Court, any Claim as to which a Proof of Claim was first filed after the applicable bar date shall be a Disallowed Claim, and the Liquidating Debtors or the Creditor Trustee, as applicable, shall not make any distribution to a Creditor holding such a Claim; provided, however, that to the extent such Claim was listed in the Schedules (other than as contingent, disputed, or unliquidated) and would be an Allowed Claim but for the lack of a timely proof of Claim, the Liquidating Debtors or the Creditor Trustee, as applicable, shall treat such Claim as an Allowed Claim in the amount in which it was so listed.

**T.      Withholding Taxes**

Pursuant to section 346(f) of the Bankruptcy Code, the Liquidating Debtors and the Creditor Trustee shall be entitled to deduct any federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate. Following the Effective Date, the Liquidating Debtors and the Creditor Trustee shall comply with all reporting obligations imposed on them by any Governmental Unit in accordance with applicable law with respect to such withholding taxes. As a condition to making any Distribution under the Plan, the Debtors (if before the Effective Date), or the Liquidating Debtors and the Creditor Trustee (if on or after the Effective Date), may require that a Creditor holding an Allowed Claim provide such Creditor's taxpayer identification number and such other information and certification as may be deemed necessary for the Debtors, if before the Effective Date, and the Liquidating Debtors or the Creditor Trustee, if on or after the Effective Date, to comply with applicable tax reporting and withholding laws.

**U.      De Minimis Distributions; Charitable Donation**

Notwithstanding anything to the contrary therein, the Creditor Trust shall not be required to make a Distribution if the dollar amount of the Distribution is so small that the cost of making that Distribution exceeds the dollar amount of such Distribution. At the Final Distribution Date, the Creditor Trustee may make a charitable donation with undistributed funds if, in the reasonable judgment of the Creditor Trustee, the cost of calculating and making the final Distribution of the remaining funds is excessive in relation to the benefits to Creditors holding Allowed Claims who would otherwise be entitled to such Distributions.

## V.     **United States Trustee Fees**

All outstanding quarterly fees due under 28 U.S.C. § 1930(a)(6) that have not been paid shall be paid by the Debtors on or before the Effective Date.  Thereafter, the Liquidating Debtors and Creditor Trustee shall each pay their respective share of any quarterly fees due pursuant to 28 U.S.C. § 1930(a)(6) based upon actual disbursements by each entity, and such fees shall be paid until entry of a Final Decree or an order converting or dismissing the Chapter 11 Cases. The Liquidating Debtors shall File and transmit to the U.S. Trustee quarterly fee statements regarding their post-confirmation activities with each quarterly fee payable by the Liquidating Debtors.  The Creditor Trust shall File and transmit to the U.S. Trustee quarterly fee statements regarding its post-confirmation activities with each quarterly fee payable by the Creditor Trust.

## W.     **Books and Records**

Ownership of all of the Debtors' books and records in whatever form, manner or media, including, without limitation, all pass-codes for security systems and computers, keys, keycards, and notice letters to landlords, warehousemen or other relevant parties shall vest in the Liquidating Debtors on the Effective Date.  As soon as practicable after the transfer of Assigned Litigation and any other specified Assets to the Creditor Trust, the Creditor Trustee shall provide for the retention and storage of the books, records and files that shall have been delivered to the Creditor Trust until such time as all such books, records and files are no longer required to be retained under applicable law, and file a certificate informing the Bankruptcy Court of the location at which such books, records, and files are being stored.

## X.     **Corporate Action**

Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided under the Plan involving the corporate structure of the Debtors shall be deemed to be authorized and approved without further action by the Debtors, the Debtors' shareholders, and/or the Debtors' board of directors.

**X.**

**PROCEDURES FOR RESOLVING DISPUTED CLAIMS**

Unless otherwise ordered by the Bankruptcy Court or as set forth in the Plan: (i) the Liquidating Debtors and their Professionals shall have the exclusive right to make and File objections to any Administrative Claims, Priority Tax Claims and Claims in Classes 1 through 4 and (ii) the Creditor Trust and its Professionals shall have the exclusive right to make and File objections to any Claims in Classes 5 and 6.  Notwithstanding the foregoing, (a) the U.S. Trustee shall also have the right to make and File objections to any Administrative Claims or Professional Fee Claims, and (b) any insurer of any of the Debtors that has, following entry of an order of the Bankruptcy Court granting relief from the automatic stay under Section 362 of the Bankruptcy Code, assumed the defense of a Claim against the Debtors shall also have the right to make and File objections to such Claims.

All objections to Claims shall be filed and served not later than 180 days following the Effective Date; provided, however, such date may be extended by the Bankruptcy Court upon

motion (the "Extension Motion") filed by the Liquidating Debtors with respect to Disputed Administrative Claims, Priority Tax Claims or Claims in Classes 1 through 4, or the Creditor Trust with respect to Disputed Claims in Classes 5 and 6 prior to the deadline established in Section VI of the Plan. If an objection is not timely Filed or if no Extension Motion is pending by such deadline, any remaining Disputed Claims shall be deemed to be Allowed Claims for purposes of the Plan. Unless otherwise provided in the Confirmation Order or the Creditor Trust Agreement, the Liquidating Debtors or Creditor Trust, as applicable, is authorized to settle, or withdraw any objections to, any Disputed Claim following the Effective Date without further notice to Creditors or authorization of the Bankruptcy Court, in which event such Claim shall be deemed to be an Allowed Claim in the amount compromised for purposes of the Plan. Under no circumstances will any distributions be made on account of Disallowed Claims.

Except as set forth in the Plan, nothing in the Plan, the Disclosure Statement, the Confirmation Order or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the commencement of these Chapter 11 Cases or the Effective Date, against the Holder of, or with respect to, any Claim or Equity Interest. Except as set forth in the Plan, upon Confirmation, the Liquidating Debtors and the Creditor Trust, as applicable, shall be vested with and entitled to assert all such claims, causes of action, rights of setoff and other legal or equitable defenses that the Debtors had immediately prior to the Effective Date or prior to the commencement of these Chapter 11 Cases as if these Chapter 11 Cases had not been commenced.

## XI.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.   Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, except for those executory contracts or unexpired leases that were previously assumed or rejected by order of the Bankruptcy Court, or are the subject of a pending motion to assume or reject, pursuant to section 365 of the Bankruptcy Code, each executory contract and unexpired lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to section 365 of the Bankruptcy Code. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections pursuant to section 365 of the Bankruptcy Code, as of the Effective Date. The non-Debtor parties to any rejected personal property leases shall be responsible for taking all steps necessary to retrieve the personal property that is the subject of such leases.

### B.   Claims Based on Rejection of Executory Contracts or Unexpired Leases

All Proofs of Claim with respect to Claims arising from the rejection of executory contracts or unexpired leases, if any, must be Filed with the Bankruptcy Court by the applicable Rejection Claims Bar Date. Any Claims arising from the rejection of an executory contract or unexpired lease not Filed by the Rejection Claims Bar Date will be forever barred against the Debtors, the Estates and their property, the Liquidating Debtors and the Creditor Trust, unless

otherwise ordered by the Bankruptcy Court or provided in the Plan. All such Claims for which Proofs of Claim are timely and properly Filed and ultimately Allowed will be treated as Unsecured Claims subject to the provisions of Article III of the Plan.

## XII.

## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

### A.    Conditions Precedent to Confirmation

It is a condition to Confirmation that (a) the Confirmation Order shall approve in all respects all of the provisions, terms and conditions of the Plan, and (b) the Confirmation Order is satisfactory in form and substance to the Debtors in consultation with the Committee.

### B.    Conditions Precedent to Consummation

The following are conditions to the occurrence of the Effective Date of the Plan, each of which must be satisfied or waived in writing:

- The Confirmation Order in form and substance satisfactory to the Debtors in consultation with the Committee shall have been entered and become a Final Order and shall provide that the Debtors, the Estate Administrator, the Liquidating Debtors, the Creditor Trust, and the Creditor Trustee are authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan or to effectuate, advance, or further the purposes thereof;

- All Plan exhibits shall be, in form and substance, reasonably acceptable to the Debtors in consultation with the Committee, and shall have been executed and delivered by all parties' signatory thereto;

- The Debtors shall be authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, leases, indentures, and the agreements or documents created in connection with, and expressly provided for under, the Plan;

- All other actions, documents, and agreements necessary to implement the Plan shall have been effected or executed; and

- In the reasonable judgment of the Estate Administrator, the Debtors shall have sufficient Cash available to satisfy in full, or adequately reserve for, all Allowed Administrative Claims, Professional Fee Claims, Priority Tax Claims, Priority Claims and Secured Claims (if any).

The Debtors may waive any of the conditions of the Confirmation and/or Consummation of the Plan, in whole or in part, set forth in this Article VIII at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to obtain Confirmation and/or achieve Consummation of the Plan.

**C.** **Effect of Non-Occurrence of Conditions to Consummation**

If the Confirmation Order is vacated, the Plan shall be null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or the Committee; (b) prejudice in any manner the rights of the Debtors or the Committee, or (c) constitute an admission, acknowledgment, offer or undertaking by the Debtors or the Committee.

**D.** **Notice of Effective Date**

On the Effective Date, or as soon thereafter as reasonably practicable, the Liquidating Debtors shall File with the Bankruptcy Court a "Notice of Effective Date", which notice shall constitute appropriate and adequate notice that the Plan has become effective, provided, however, that the Liquidating Debtors shall have no obligation to notify any Entity other than counsel to the Committee. The Plan shall be deemed effective as of 12:01 a.m., prevailing Eastern time, on the Effective Date specified in such filing. A courtesy copy of the Notice of Effective Date may be sent by first class mail, postage prepaid to those Entities who have Filed with the Bankruptcy Court requests for notices pursuant to Bankruptcy Rule 2002.

**XIII.**

**EFFECT OF CONSUMMATION**

**A.** **Binding Effect of Plan**

Subject to the occurrence of the Effective Date, the provisions of the confirmed Plan shall bind the Debtors, the Liquidating Debtors, the Estate Administrator, the Creditor Trust, the Creditor Trustee, any Entity acquiring property under the Plan, and any Creditor or Equity Interest Holder, whether or not such Creditor or Equity Interest Holder has filed a Proof of Claim or Equity Interest in the Chapter 11 Case, whether or not the Claim of such Creditor or the Equity Interest of such Equity Interest Holder is impaired under the Plan, and whether or not such Creditor or Equity Interest Holder has accepted or rejected the Plan. All Claims and Debts shall be fixed and adjusted pursuant to the Plan. The Plan shall also bind any taxing authority, recorder of deeds or similar official for any county, state, or governmental unit or parish in which any instrument related to the Plan or related to any transaction contemplated under the Plan is to be recorded with respect to any taxes of the kind specified in Bankruptcy Code section 1146(a).

**B.** **Vesting and Transfer of Assets**

Upon the Effective Date, title to all Assets shall vest in the Liquidating Debtors and shall no longer constitute property of the Estates. Thereafter, also on the Effective Date, title to (i) the Assigned Litigation and any Litigation Proceeds from the Assigned Litigation, and (ii) all other Assets of the Estates (except the Estate Assets), shall be transferred from the Liquidating Debtors to the Creditor Trust for the purposes contemplated under the Plan pursuant to the Creditor Trust

Agreement. Thereafter, from time to time, the Estate Administrator may transfer all or selected Estate Assets to the Creditor Trust for the purposes contemplated under the Plan pursuant to the Creditor Trust Agreement.

**C.      Property Free and Clear**

Except as otherwise provided in the Plan or the Confirmation Order, all property that vests in the Liquidating Debtors and all property that is subsequently transferred to the Creditor Trust shall be free and clear of all Claims, Equity Interests, Liens, interests, charges or other encumbrances of Creditors or Equity Interest Holders, other than as set forth herein, and in the Creditor Trust Agreement. Following the Effective Date, the Liquidating Debtors and the Creditor Trustee may transfer and dispose of any such property free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Rules and without further approval of the Bankruptcy Court or notice to Creditors, except as may otherwise be required under the Plan or the Confirmation Order.

**D.      Limitation of Liability**

**The Debtors, the Committee, the Estate Administrator and their respective officers, directors, managers, employees, members, agents, advisors, accountants, attorneys and representatives (collectively, the "Exculpated Parties"), will neither have nor incur any liability to any Entity for any action in good faith taken or omitted to be taken after the Petition Date in connection with or related to the Chapter 11 Cases or the formulation, preparation, dissemination, implementation, Confirmation or Consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in connection with the Plan; provided, however, that this limitation will not affect or modify the obligations created under the Plan, or the rights of any Creditor holding an Allowed Claim to enforce its rights under the Plan and shall not release any action (or inaction) constituting willful misconduct, fraud or gross negligence (in each case, liability shall be subject to determination by Final Order of the Bankruptcy Court); provided that, any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Plan and such reasonable reliance shall form an absolute defense to any such claim, cause of action, or liability. Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the protections of section 1125(e) of the Bankruptcy Code.**

**E.      Injunction**

**Except as otherwise expressly provided in the Plan, all Entities that have held, hold or may hold Claims against or Equity Interests in the Debtors are permanently enjoined, from and after the Effective Date, from taking any of the following actions against any of the Debtors, their Estates, the Committee, the Estate Administrator, the Liquidating Debtors, the Creditor Trust, the Creditor Trustee, the Professionals, or any of their property on account of any Claims or causes of action arising from events prior to the Effective Date: (i) enforcing, attaching, collecting or recovering by any manner or in any place or means any judgment, award, decree or order; (ii) creating, perfecting, or enforcing any Lien or encumbrance of any kind; (iii) asserting any right of setoff, right of subrogation or recoupment against any obligation, debt or liability due to the Debtors, and**

**(iv)** any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Equity Interest. Except as expressly provided herein, the Debtors, the Liquidating Debtors, the Creditor Trust and the Creditor Trustee expressly reserve all rights and defenses that the Debtors may have (including, without limitation, the rights of subrogation and recoupment) with respect to any obligation, debt or liability allegedly due to any Entity. By accepting Distributions pursuant to the Plan, each Creditor holding an Allowed Claim will be deemed to have specifically consented to the injunctions set forth herein. Nothing in Section IX(E) of the Plan shall prohibit a Creditor holding a timely Filed Proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and to be paid in accordance with the distribution provisions of the Plan.

**F.      Terms of Existing Injunctions or Stays**

Unless otherwise provided herein, all injunctions or stays provided for in these Chapter 11 Cases pursuant to sections 105, 362 or 525(a) of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**G.      Limitation of Liability of the Estate Administrator and the Creditor Trustee**

The Estate Administrator and the Creditor Trustee, together with their respective consultants, agents, advisors, attorneys, accountants, financial advisors, other representatives and the professionals engaged by the foregoing (collectively, the "Indemnified Parties") shall not be liable for any and all liabilities, losses, damages, claims, causes of action, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, to the Holders of Claims or Equity Interests for any action or inaction taken in good faith in connection with the performance or discharge of his or her duties under the Plan, except the Indemnified Parties will be liable for actions or inactions that are grossly negligent, fraudulent, or which constitute willful misconduct (in each case, liability shall be subject to determination by Final Order of the Bankruptcy Court). However, any act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence, fraud or willful misconduct. In addition, the Liquidating Debtors, Creditor Trust and the Estates shall, to the fullest extent permitted by the laws of the State of Delaware, indemnify and hold harmless the Indemnified Parties from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Debtors, the Creditor Trust and the Estates or the implementation or administration of the Plan if the Indemnified Party acted in good faith and in a manner reasonably believed to be in or not opposed to the best interests of the Liquidating Debtors, the Creditor Trust and the Estates. To the extent the Liquidating Debtors or the Creditor Trust indemnify and hold harmless the Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Liquidating Debtors or the Creditor Trustee in monitoring and participating in the defense of such claims giving rise to the right of indemnification shall be paid as Plan Expenses or Creditor Trust Expenses, as applicable. All rights of the Persons exculpated and indemnified pursuant hereto shall survive confirmation of the Plan.

**H.     Releases by Debtors of the Debtor Released Parties**

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors and Debtors in Possession (on behalf of the Estates) will be deemed to release forever, waive, and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities (other than the rights of the Debtors to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered hereunder, and liabilities arising after the Effective Date in the ordinary course of business) against the Debtors' Professionals, any member of the Committee (solely in its capacity as a member of the Committee), the Committee's Professionals, and the Estate Administrator and any of the representatives, agents, officers, directors, employees, professionals, advisors, consultants and attorneys of any of the foregoing (the "Debtor Released Parties") whether such claims are liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place before, on or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of the Debtors, the Chapter 11 Cases, the negotiation and filing of the Plan, the Disclosure Statement or any prior plans of reorganization, the filing of the Chapter 11 Cases, the pursuit of confirmation of the Plan or any prior plans of reorganization, the consummation of the Plan, the administration of the Plan, or the property to be liquidated and/or distributed under the Plan, and that could have been asserted by or on behalf of the Debtors or their Estates, including pursuant to principles of substantive consolidation, piercing the corporate veil, alter ego, domination, constructive trust and similar principles of state or federal creditors' rights laws, in any such case, against the Debtor Released Parties.  This release does not extend to potential Avoidance Actions, if any, against any Debtor Released Party, or objections to claims (including Professional Fee Claims) filed by any Debtor Released Party.

After the Effective Date, the Creditor Trustee and the Creditor Trust shall be bound, to the same extent the Debtors are bound, by the releases set forth above.

**I.     [Reserved]**

**J.     Release By Holders of Claims and Equity Interests**

Each Entity that affirmatively elects by marking its Ballot, for itself and its successors, assigns, transferees, current and former officers, directors, agents, shareholders, members, financial advisors, attorneys, employees, partners, affiliates, representatives, in each case in their capacity as such, shall, by virtue of its election, be deemed to have released and discharged any and all claims, causes of action, demands, losses, whether known or unknown, in law or equity, against the Debtors, the Debtor Released Parties, the Debtors' present or former officers, directors, employees, representatives or agents, and their respective property based in whole or in part upon any act or omission arising from or in connection with or in any way relating to the Debtors.  Nothing in the previous sentence shall be deemed to release the Debtors from liability for (i) Claims filed before the Administrative Claims Bar Date or the General Bar Date, to the extent Allowed, and (ii) Claims scheduled by the Debtors that are not contingent, disputed or unliquidated; provided, however, that, notwithstanding clause (i) above, the Debtors, the Liquidating Debtors, the Estate Administrator, the Creditor Trust or the Creditor Trustee may

object to the allowance of any Claim, on any ground.  Notwithstanding the foregoing, Section IX(J) of the Plan shall not release any party from any Claims or causes of action existing as of the Effective Date based on an act of gross negligence or willful misconduct.

The Debtors believe that the proposed releases set forth in Section IX(J) of the Plan are appropriate and are consistent with applicable law.  Section IX(J) of the Plan does not impose non-consensual releases on creditors.  Only those creditors who vote to accept the Plan <u>and</u> who affirmatively elect to opt-in to the releases on Section IX(J) of the Plan will be deemed to grant such releases.  Creditors who vote to reject the Plan <u>or</u> who vote to accept the Plan, but who do not affirmatively elect to opt-in and grant the releases set forth in Section IX(J) of the Plan shall not be deemed to grant such releases.

**K.**     <u>**Good Faith**</u>

Confirmation of the Plan shall constitute a finding that:  (i) the Plan has been proposed in good faith and in compliance with applicable provisions of the Bankruptcy Code; and (ii) the solicitation of acceptances or rejections of the Plan by all Entities has been in good faith and in compliance with applicable provisions of the Bankruptcy Code.

## XIV.

## <u>RETENTION OF JURISDICTION</u>

Notwithstanding entry of the Confirmation Order or Consummation having occurred, these Chapter 11 Cases having been closed, or Final Decrees having been entered, the Bankruptcy Court shall have jurisdiction of matters arising out of, and related to these Chapter 11 Cases and the Plan under, and for the purposes of, sections 105(a), 1127, 1142 and 1144 of the Bankruptcy Code and for, among other things, the following purposes:

- allow, disallow, determine, liquidate, classify, estimate or establish the priority or status of any Claim, including the resolution of any request for payment of any Administrative Claim or Priority Tax Claim and the resolution of any and all objections to the allowance or priority of Claims;

- grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

- resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which any or all of the Debtors are parties or with respect to which any or all of the Debtors may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

- ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan, including ruling on any motion or objection Filed pursuant to the Plan;

- decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving any or

all of the Debtors or their affiliates, directors, employees, agents or Professionals that may be pending on the Effective Date;

- enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan or the Disclosure Statement;

- resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of the Plan, or any Entity's obligations incurred in connection with the Plan, including, among other things, any avoidance actions or subordination actions under sections 510, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code;

- issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan, except as otherwise provided herein;

- resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunction and other provisions;

- enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

- determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan or the Disclosure Statement;

- enter a Final Decree concluding these Chapter 11 Cases;

- consider any modification of the Plan proposed under section 1127 of the Bankruptcy Code;

- protect the property of the Estates from adverse Claims or interference inconsistent with the Plan, including to hear actions to quiet or otherwise clear title to such property based upon the terms and provisions of the Plan, or to determine a Debtor's exclusive ownership of claims and Litigation retained or otherwise dealt with under the Plan;

- hear and determine matters pertaining to abandonment of property of the Estates;

- consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

- interpret, enforce and address any and all issues relating to any orders previously entered in these Chapter 11 Cases to the extent such orders are not superseded or inconsistent with the Plan;

- recover all Assets of the Debtors and property of the Estates, wherever located;

- hear and determine all matters related to the Committee Lawsuit;

- hear and determine matters concerning state, local, and federal taxes in accordance with sections 345, 505, and 1146 of the Bankruptcy Code.

- hear and act on any other matter not inconsistent with the Bankruptcy Code; and

- interpret and enforce the injunctions contained in the Confirmation Order and Plan.

## XV.

## MISCELLANEOUS PROVISIONS

### A.  Modification of Plan

The Debtors reserve to themselves, in accordance with the Bankruptcy Code, the right to amend or modify the Plan prior to the entry of the Confirmation Order. However, in certain instances, the Bankruptcy Court may require a new disclosure statement and/or revoking the Plan. After the entry of the Confirmation Order, and subject to the prior written consent of the Committee (such consent not to be unreasonably delayed or withheld), the Debtors may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan, if (a) the Plan has not been Consummated and (b) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

### B.  Withdrawal of Plan

The Debtors reserve the right, to the extent provided under the Bankruptcy Code, to withdraw the Plan at any time before Consummation of the Plan.

### C.  Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Entity.

### D.  Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. The filing of the Plan, the statements or provisions contained therein, or the taking of any action by the Debtors or the Committee with respect to the Plan shall not be, or shall not be deemed to be, an admission or waiver of any rights of the Debtors or the Committee with respect to the Holders of Claims or Equity Interests prior to the Effective Date.

**E.     Further Assurances**

The Debtors, the Liquidating Debtors, the Estate Administrator, the Creditor Trust, the Creditor Trustee and all Creditors holding Claims receiving Distributions under the Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**F.     Entire Agreement**

The Plan supersedes all prior discussions, understandings, agreements, and documents pertaining or relating to any subject matter of the Plan.

**G.     Retiree Benefits**

The Debtors do not provide "retiree benefits" as that term is defined in Section 1114(a) of the Bankruptcy Code.  Therefore, on and after the Effective Date the Debtors will not pay retiree benefits.

**H.     Failure of Bankruptcy Court to Exercise Jurisdiction**

If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter arising out of these Chapter 11 Cases, including any of the matters set forth in the Plan, the Plan shall not prohibit or limit the exercise of jurisdiction by any other court of competent jurisdiction with respect to such matter.

**I.     Notices**

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtors shall be sent by first class U.S. mail, postage prepaid to:

Counsel for the Debtors
Laura Davis Jones
Curtis A. Hehn
Timothy P. Cairns
Pachulski Stang Ziehl & Jones LLP
919 North Market St., 17th Floor
Wilmington, DE  19801

Henry C. Kevane, Esq.
David M. Bertenthal, Esq
Pachulski Stang Ziehl & Jones LLP
150 California St., 15th Floor
San Francisco, CA  94111

Estate Administrator
Jack Fishman, Esq.
JACK B. FISHMAN & ASSOCIATES, P.C.

3250 Lakeview Drive
Algonquin, IL 60102

Counsel for the Committee
William E. Chipman, Jr., Esq.
Landis Rath & Cobb LLP
919 N. Market Street, Suite 1800
Wilmington, DE 19801

Michael E. Hastings, Esq.
LeClairRyan
1800 Wachovia Tower, Drawer 1200
Roanoke, VA 24006

Bruce H. Matson, Esq.
LeClairRyan
951 East Byrd Street
Riverfront Plaza East Tower
Richmond, VA 23218

United States Trustee
844 King Street, Room 2207
Lockbox #35
Wilmington, DE 19801

## J.      **Filing of Additional Documents**

On or before the Effective Date, the Debtors may File such agreements and other
documents as may be necessary or appropriate to effectuate and further evidence the terms and
conditions of the Plan.

## K.      **Enforceability**

Should any provision in the Plan be determined to be unenforceable, such determination
shall in no way limit or affect the enforceability and operative effect of any and all other
provisions of the Plan.

## L.      **Severability**

The provisions of the Plan shall not be severable unless such severance is agreed to by
the Debtors and such severance would constitute a permissible modification of the Plan pursuant
to section 1127 of the Bankruptcy Code.

## M.      **Notice of Default under the Plan**

Unless otherwise agreed, no default shall be declared under the Plan unless any payment
or performance due under the Plan (other than a payment required on the Effective Date) shall

not have been made or deemed made thirty (30) calendar days after written notice of the default is received by the Liquidating Debtors, the Creditor Trustee, and the Committee. Any notice of default as provided for in the Plan or in any exhibit to the Disclosure Statement shall (a) conspicuously state that it is a notice of default; (b) describe with particularity the nature of the default, including a reference to the specific provisions of the Plan as to which a default or defaults have allegedly occurred; and (c) describe any action required to cure the default, including the exact amount of any payment required to cure such default, if applicable.

**N.    Investments**

The Estate Administrator and the Creditor Trustee, as applicable, shall be permitted from time to time to invest all or a portion of the Cash contained in the Carve Out Account, the Administrative/Priority Reserve Account, the Professional Fees Reserve Account and/or the Creditor Trust Fund in securities issued or directly guaranteed by the United States government or any agency thereof, commercial paper of corporations rated at least "A-1" by Standard & Poor's Corporation or rated at least "P-1" by Moody's Investor Services, Inc., interest bearing certificates of deposit, time deposits, bankers' acceptances and overnight bank deposits, and repurchase agreements. Any investments shall be invested in a manner consistent with the objectives of section 345(a) of the Bankruptcy Code and shall be made in the reasonable and prudent exercise of discretion of the Estate Administrator or the Creditor Trustee. Neither the Estate Administrator nor the Creditor Trustee shall have any obligation or liability to beneficiaries in connection with such investments in the event of the unforeseeable insolvency of any financial institution where such funds are held.

**O.    Reliance**

The Debtors, the Liquidating Debtors, the Estate Administrator, and the Creditor Trustee, and their respective agents, attorneys, employees and professionals, while acting in their capacity as such, including but not limited to, objecting to Claims, making Distributions to Creditors holding allowed Claims and approving settlement of actions, as the case may be, shall be permitted to reasonably rely on any certificates, sworn statements, instruments, reports, claim dockets, schedules, or other documents reasonably believed to be genuine and to have been prepared or presented by the Bankruptcy Court Clerk's Office, the Debtors, and the Debtors' Professionals.

**P.    Asset Purchase Agreement**

Nothing in the Plan shall alter the rights and obligations of the Debtors and the Buyer under the Asset Purchase Agreement. For the avoidance of doubt, nothing in the Plan shall alter or increase the Wind Down Budge or the maximum amount available from the Wind Down Facility.

**Q.    Insurance**

Any insurance policy of, or for the benefit of the Debtors (or any officers and directors of any of the Debtors) shall remain in full force and effect after the Effective Date according to its terms. Nothing in the Plan shall provide, or be construed to provide, for the assignment of any

insurance policy to the Creditor Trust. The Committee continues to review the foregoing insurance policies.

# XVI.

# **RISK FACTORS**

Distributions to Creditors holding Allowed Class 5 and Class 6 Claims are almost entirely dependent on the successful prosecution of the Assigned Litigation. There is no other source of payment for Distributions to Class 5 and Class 6 Creditors. As noted above, the value of the Creditor Trust Assets (the Committee Lawsuit and any Avoidance Actions that are not Estate Avoidance Actions) is speculative and there is no assurance that such assets will generate any Litigation Proceeds for Distribution to the Holders of Class 5 and Class 6 Claims. Under the Plan, Creditor Trust Expenses (i.e., expenses related to the administration of the Creditor Trust and the fees and expenses of its Professionals) are payable from the Creditor Trust Assets before any Distributions to Unsecured Creditors. In addition, in the event the Estate Assets are insufficient to satisfy administrative, professional and priority Claims under the Plan (or the Plan Expenses of the Liquidating Debtors), such costs may also become Creditor Trust Expenses payable prior to Distributions to Unsecured Creditors. Last, the Contingency Fee is also payable from the Litigation Proceeds of the Committee Lawsuit and might further reduce the amount of Creditor Trust Assets available for Distribution to Unsecured Creditors.

The Debtors and the Committee believe, however, that the Plan provides a superior alternative to Creditors than conversion to Chapter 7 since parties that are intimately familiar with the nature of the Litigation assets transferred to the Creditor Trust will remain responsible for their continued prosecution. Similarly, the Debtors have already commenced the process of reviewing and objecting to Claims. In addition, confirmation of the Plan will enable the Debtors to utilize funds from the Wind Down Facility (paid by the Buyer, not Assets of the Debtors) to the extent such funds are available thereunder, subject to and in a manner consistent with the Wind Down Budget and the provisions of the Asset Purchase Agreement, to satisfy certain administrative and priority claims that would otherwise further dilute the recovery to Unsecured Creditors.

Notwithstanding the risks, however, the Debtors believe that the very same risks described herein are present in and significantly greater to Creditors in a chapter 7 case.

# XVII.
# **FEASIBILITY**

Section 1129(a)(11) of the Bankruptcy Code requires a finding that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan. Here, the Plan is unquestionably feasible in terms of the likelihood that the Estate Administrator, and later the Creditor Trustee will successfully liquidate the Debtors' Assets, the Liquidating Debtor will have sufficient cash to make required payments on account of Allowed Professional Fee Claims, Allowed Administrative Claims, and Allowed priority Claims on the Effective Date. In addition, the Plan gives the Creditor Trustee and his or her counsel the right and the means to continue liquidating the Debtor's assets (primarily through the

continued prosecution of the Committee lawsuit and other Assigned Litigation). Based on the foregoing, the Debtors submit that the Plan is feasible as required under section 1129(a)(11) of the Bankruptcy Code.

## XVIII.

## BEST INTERESTS OF CREDITORS TEST

Confirmation of the Plan requires, among other things, that each holder of a claim in an impaired class and each holder of an interest either: (a) accepts the Plan; or (b) receives or retains under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code. This requirement is commonly referred to as the "Best Interests Test."

### A.     Chapter 7

To determine the value that the Holders of Impaired Claims and Equity Interests would receive if the Debtors were liquidated, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtors' assets and properties in the context of a chapter 7 liquidation case. Bankruptcy Code section 704 requires a chapter 7 trustee to collect and reduce to money the property of the Estates as expeditiously as is compatible with the best interests of parties in interest.

The Cash available for satisfaction of Allowed Claims would consist of the proceeds resulting from the disposition of the Debtors' few remaining assets (specifically, the Litigation), augmented by the Cash, if any, held by the Debtors at the time of the commencement of the chapter 7 case. Any such Cash amount would then be reduced by the amount of any Allowed Claims secured by such assets, the costs and expenses of the liquidation and such additional Administrative Claims, and other priority claims that may result from the use of chapter 7 for the purposes of liquidation.

The costs of liquidation under chapter 7 would include fees payable to a trustee in bankruptcy, as well as those that might be payable to his or her attorneys and to other professionals that such trustee may engage, plus any unpaid expenses incurred by the Debtors during the Chapter 11 Cases that would be allowed in the chapter 7 case, such as compensation for attorneys, appraisers, accountants or other professionals, and costs and expenses of the Debtors and the Committee. Such Administrative Claims would have to be paid in Cash, in full, from the liquidation proceeds before the balance of those proceeds could be made available to pay other Claims.

### B.     Liquidation Analysis

Pursuant to Bankruptcy Code section 1129(a)(7), unless there is unanimous acceptance of the Plan by an Impaired Class, the Debtors must demonstrate, and the Bankruptcy Court must determine that with respect to such Class, each Creditor holding a Claim will receive property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date of the Plan. This requirement is commonly referred to as the "Best Interests of

Creditors Test."

The Plan satisfies the Best Interests of Creditors Test. The Plan provides greater recovery to Creditors holding Allowed general Unsecured Claims than such Creditors would receive under a liquidation under chapter 7 primarily because the Plan avoids a layer of administrative expense associated with the appointment of a chapter 7 trustee, while increasing the efficiency of administrating the Debtors assets for the benefit of their Creditors. Most obviously (with respect to efficiency), the Debtors and the Committee have already completed much of the analysis concerning the Assigned Litigation that a Chapter 7 trustee would have to reevaluate before he could commence or continue the prosecution.

In addition, the trustee will likely employ legal counsel and accountants, which would add additional administrative expenses that would be paid ahead of Class 5 and 6 Creditors. As described above, the liquidation of the one of the primary remaining assets, the Committee Lawsuit, is already well underway, with experienced counsel at the helm with extensive knowledge of the complexities of this case. The learning curve for the trustee, new counsel, and the new staff that would likely need to be hired due to the attrition caused by the appointment of a trustee, would simply increase expense and reduce the recoveries to Creditors would commence.

Moreover, in chapter 7 cases, the chapter 7 trustee would also be entitled to seek a sliding scale commission based upon the funds distributed by such trustee, even though the Debtors have already accumulated much of the funds and have already incurred many of the expenses associated with generating those funds. Therefore, liquidating the Debtors under chapter 7 of the Bankruptcy Code would result in an additional administrative expenses and reduce the amounts payable to Creditors. Accordingly, the Debtors believe that there is a reasonable likelihood that Creditors would "pay again" for the funds accumulated by the Debtors, since the chapter 7 trustee would be entitled to receive a commission in some amount for all funds distributed. It is also anticipated that a Chapter 7 liquidation would result in delay in the distributions to Creditors. Among other things, a chapter 7 case would trigger a new bar date for filing Claims that would be more than 90 days following conversion of the case to chapter 7. Fed. R. Bankr. P. 3002(c). Hence, a Chapter 7 liquidation would not only delay Distributions, but raise the prospect of additional Claims that were not asserted in the Chapter 11 Cases. Based on the foregoing, the Plan provides an opportunity to bring the greatest return to Creditors.

## XIX.

## CERTAIN FEDERAL INCOME TAX
## CONSEQUENCES OF THE PLAN

The following discussion is a summary of certain material U.S. federal income tax consequences of the implementation of the Plan to the Debtors and to certain Holders of Claims. This discussion does *not* address the federal income tax consequences of the Plan to (a) the Holders of unclassified Claims under Article II of the Plan (*i.e.*, Administrative Claims and Priority Claims), (b) the Holders of Secured Claims, or (c) the Holders of Equity Interests.

Due to the complexity of certain aspects of the Plan, the lack of applicable legal precedent, the possibility of changes in the law; the differences in the nature of the Claims

(including Claims within the same Class) and Equity Interests, the Holder's status and method of accounting (including Holders within the same Class) and the potential for disputes as to legal and factual matters with the IRS, the tax consequences described herein are subject to significant uncertainties. No legal opinions have been requested from counsel with respect to any of the tax aspects of the Plan and no rulings have been or will be requested from the IRS with respect to any of the issues discussed below. Furthermore, legislative, judicial or administrative changes may occur, perhaps with retroactive effect, which could affect the accuracy of the statements and conclusions set forth below as well as the tax consequences to the Debtors and the Holders of Claims and Equity Interests.

This discussion does not purport to address all aspects of U.S. federal income taxation that may be relevant to the Debtors or certain Holders of Claims in light of their personal circumstances, nor does the discussion deal with tax-issues with respect to taxpayers subject to special treatment under the U.S. federal income tax laws (including, for example, banks, governmental authorities or agencies, pass-through entities, brokers and dealers in securities, insurance companies, financial institutions, tax-exempt organizations, small business investment companies, regulated investment companies and foreign taxpayers). This discussion does not address the tax consequences to certain Holders of Claims who did not acquire such Claims at the issue price on original issue. No aspect of foreign, state, local or estate and gift taxation is addressed.

THE FOLLOWING SUMMARY IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE PERSONAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR EQUITY INTEREST. EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS URGED TO CONSULT WITH SUCH HOLDER'S TAX ADVISORS CONCERNING THE U.S. FEDERAL, STATE, LOCAL, FOREIGN AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.

## A.     Consequences to Holders of Claims

The federal income tax consequences of the Plan to a Holder of a Claim will depend upon several factors including but not limited to: (i) the origin on the Holder's Claim, (ii) whether the Holder is a resident of the United States for tax purposes (or falls into any of the special classes of taxpayers excluded from this discussion as noted above), (iii) whether the Holder reports income or the accrual or cash basis method, (iv) whether the Holder has taken a bad debt deduction or worthless security deduction with respect to this Claim and (v) whether the Holder receives distributions under the Plan in more than one taxable-year. HOLDERS ARE STRONGLY ADVISED TO CONSULT THEIR TAX ADVISORS WITH RESPECT TO THE TAX TREATMENT UNDER THE PLAN OF THEIR PARTICULAR CLAIMS.

Generally, a Holder of an Allowed Claim will recognized gain or loss equal to the difference between the "amount realized" by such Holder and such Holder's adjusted tax basis in the Allowed Claim. The "amount realized" is equal to the sum of the Cash and the fair market value of any other consideration received under the Plan in respect of a Holder's Claim. HOLDERS SHOULD CONSULT THEIR OWN TAX ADVISORS CONCERNING THE

RECOGNITION OF GAIN OR LOSS, FOR FEDERAL INCOME TAX PURPOSES, ON THE SATISFACTION OF THEIR ALLOWED CLAIMS.

Pursuant to the Plan, distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Allowed Claims, with any excess allocated to accrued but unpaid interest. However, there is no assurance that the IRS will respect such allocation for federal income tax purposes. Holders of Allowed Claims not previously required to include in their taxable income any accrued by unpaid interest on an Allowed Claim may be treated as receiving taxable interest, to the extent any consideration they receive under the Plan is allocable to such accrued but unpaid interest. Holders previously required to include in their taxable income any accrued but unpaid interest on an Allowed Claim may be entitled to recognize a deductible loss, to the extent that such accrued but unpaid interest is not satisfied under the Plan. HOLDERS SHOULD CONSULT THEIR OWN TAX ADVISORS CONCERNING THE ALLOCATION OF CONSIDERATION RECEIVED IN SATISFACTION OF THEIR ALLOWED CLAIMS AND THE FEDERAL INCOME TAX TREATMENT OF ACCRUED BUT UNPAID INTEREST.

Where gain or loss is recognized by a Holder of an Allowed Claim, the character of such gain or loss as a long-term or short-term capital gain or loss or as ordinary income or loss will be determined by a number of factors, including, but not limited to, the status of the Holder, the nature of the Allowed Claim in such Holder's hands (*i.e.*, whether the claim constitutes a capital asset in the hands of the holder), the purpose and circumstances of its acquisition, the Holder's holding period of the Allowed Claim, and the extent to which the Holder previously claimed a deduction for the worthlessness of all or a portion of the Allowed Claim. The Holder's aggregate tax basis for any consideration received under the Plan will generally equal the amount realized in the exchange (less any amount allocable to interest as described in the previous paragraph). The holding period for any consideration received under the Plan will generally begin on the day following the receipt of such consideration.

A Holder that purchased its Claim from a prior Holder at a market discount may be subject to the market discount rules of the Internal Revenue Code. Under those rules, assuming that the holder has made no election to amortize the market discount into income on a current basis with respect to any market discount instrument, any gain recognized on the exchange of such Claim (subject to a de minimis rule) generally would be characterized ordinary income to the extent of the accrued market discount on such Claim as of the date of the exchange.

## B. __Withholding__

All distributions to Holders of Allowed Claims under the Plan are subject to any applicable withholding, including employment tax withholding. The Debtors will withhold appropriate employment taxes with respect to payments made to a Holder of an Allowed Claim that constitutes a payment for compensation. Payers of interest, dividends, and payments if the payee fails to furnish such payee's correct taxpayer identification number (social security number or employer identification number), to the payer. The Debtors may be required to withhold a portion of any payments made to a Holder of an Allowed Claim if the Holder (a) fails to furnish the correct social security number or other taxpayer identification number ("TIN") of such Holder, (b) furnishes an incorrect TIN, (c) has failed property to report interest or dividends

to the IRS in the past, or (d) under certain circumstances, fails to provide a certified statement signed under penalty of perjury, that the TIN provided is the correct number and that such Holder is not subject to backup withholding. Backup withholding is not an addition tax but merely an advance payment, which may be refunded to the extent it results in an overpayment of tax. Certain persons are exempt from backup withholding, including, in certain circumstances, corporations and financial institutions.

AS INDICATED ABOVE, THE FOREGOING IS INTENDED TO BE A SUMMARY ONLY FOR INFORMATIONAL PURPOSES AND NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE FEDERAL, STATE, LOCAL AND OTHER TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND; IN SOME CASES UNCERTAIN. ACCORDINGLY, EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS URGED TO CONSULT SUCH HOLDER'S TAX ADVISORS CONCERNING THE FEDERAL, STATE, LOCAL, AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.

### 1. Importance of Obtaining Professional Tax Assistance.

The United States federal income tax consequences to a Holder other than a Holder receiving Cash (or other property) in satisfaction of such Holder's Claim may be different from the tax consequences described above. Creditors holding each such Claim should consult their tax advisers regarding the potential federal income tax consequences.

THE FOREGOING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE ABOVE DISCUSSION IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A CLAIM HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, CLAIM HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

## XX.

## CONCLUSION

The Debtors believe that the Plan is in the best interest of Creditors and urge Creditors to vote to accept the Plan.

Dated: November 10, 2010   Respectfully submitted,

JACK B. FISHMAN & ASSOCIATES, P.C.

_____

Jack B. Fishman, Esq.
3250 Lakeview Drive
Algonquin, IL 60102
Telephone: (847) 458-8107
Facsimile: (847) 458-8107
Email: jbfishman@fishmanpc.com

Estate Administrator for CEI Liquidation Estate, et al., Debtors and Debtors in Possession

PACHULSKI STANG ZIEHL & JONES LLP

/s/ Laura Davis Jones
_____
Laura Davis Jones (Bar No. 2436)
Henry C. Kevane (CA Bar No. 125757)
David M. Bertenthal (CA Bar No. 167624)
Curtis A. Hehn (DE Bar No. 4264)
Timothy P. Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
  hkevane@pszjlaw.com
  dbertenthal@pszjlaw.com
  chehn@pszjlaw.com
  tcairns@pszjlaw.com

Counsel to Debtors and Debtors in Possession

*Signature Page to Disclosure Statement*