IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| CEI LIQUIDATION ESTATE, et al.[1] | ) ) | Case No. 09-14019 (KG) |
| Debtors. | ) | (Jointly Administered) |

## SUMMARY OF PLAN AND DISCLOSURE STATEMENT

The following is a Summary of the *Disclosure Statement Describing Debtors' Second Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, as amended (the "Disclosure Statement") [Docket 1084], and the *Debtors' Second Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* dated November 16, 2010 (the "Plan") [Docket 1083]. Capitalized terms used herein without definition shall have the meanings given to them in Article I of the Plan. If there is any inconsistency between any provision of this Summary and any provision of the Plan or the Disclosure Statement, the provision of the Plan or the Disclosure Statement, as applicable, shall control. This Summary has been approved by the Bankruptcy Court for dissemination to Creditors.

### General Overview of the Plan

Under the Plan, the Debtors' remaining assets will be liquidated and distributed to creditors. Virtually all of the Debtors' assets were previously sold to the Buyer under an *Asset Purchase Agreement* approved by the Bankruptcy Court in March 2010. Under the sale, the Debtors' primary secured debts (*i.e.*, obligations under the Prepetition Credit Agreement and the DIP Credit Agreement) were extinguished. The Debtors' remaining assets (including cash) will either be retained by the Liquidating Debtors or transferred to a Creditor Trust. The Liquidating Debtors are responsible under the Plan for distributions to the holders of administrative and priority claims (including certain professional fees). The Creditor Trust is responsible under the Plan for distributions to the holders of general unsecured claims. **There will be no distribution or recovery to shareholders under the Plan.** *The value of the assts transferred to the Creditor Trust (primarily, the Committee Lawsuit and Avoidance Actions that are not Estate Avoidance Actions) is speculative and there is no assurance that such assets will generate any proceeds for distribution to holders of general unsecured claims.* The Debtors and the Committee believe, however, that the Plan provides a superior alternative to Creditors than conversion to Chapter 7 since parties that are intimately familiar with the nature of the Litigation assets transferred to the Creditor Trust will remain responsible for their continued prosecution. Similarly, the Debtors have already commenced the process of reviewing and objecting to Claims. In addition, confirmation of the Plan will enable the Debtors to utilize funds from a Wind Down Facility (paid by the Buyer, not assets of the Debtors) to satisfy certain administrative and priority claims that would otherwise further dilute the recovery to holders of general unsecured claims. **The Committee supports the Plan and urges Creditors to vote to ACCEPT the Plan.**

### Materials Enclosed with This Summary

The Debtors commenced these Chapter 11 Cases on November 15, 2009. On November 17, 2010, the Bankruptcy Court entered its *Order Granting Debtors' Motion for Entry of an Order (A) Approving the Adequacy of the Debtors' Disclosure Statement, et seq.* (the "Disclosure Statement Order"). The Disclosure Statement Order approved, among other things, the adequacy of the Disclosure Statement. Due to the length and the cost of transmittal of the Disclosure Statement and Plan, the Debtors have not included those documents with this Summary (but complete copies may be obtained at no cost, as described below). The following materials are enclosed with this Summary:

(a) *Notice of (I) Entry of Order Approving Disclosure Statement; (II) Hearing to Confirm Plan; and (III) Related Important Dates* (the "Confirmation Notice"); and

(b) A Ballot to either accept or reject the Plan, and an envelope to mail the Ballot back to the Claims Agent so that the Ballot is received no later than December 20, 2010 by 4:00 p.m. ET.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: RH Liquidation Estate (f/k/a Redman Homes, Inc. (4957)); CEI Liquidation Estate (f/k/a Champion Enterprises, Inc. (3168)); CHBC Liquidation Estate (f/k/a Champion Home Builders Co. (4984)); NEBSI Liquidation Estate (f/k/a New Era Building Systems, Inc. (0928)); NAHC Liquidation Estate (f/k/a/ North American Housing Corp. (1097)); Homes of Merit, Inc. (8488); WHC Liquidation Estate (f/k/a Western Homes Corporation (6910)); SFI Liquidation Estate (f/k/a Star Fleet, Inc. (0506)); CEMC Liquidation Estate (f/k/a Champion Enterprises Management Co. (6726)); CRI Liquidation Estate (f/k/a Champion Retail, Inc. (2154)); SJAHI Liquidation Estate (f/k/a San Jose Advantage Homes, Inc. (1951)); HAC Liquidation Estate (f/k/a Highland Acquisition Corp. (8962)); HMCLLC Liquidation Estate (f/k/a Highland Manufacturing Company LLC (6762)); SSH Liquidating Corp. (6678); CHBI (f/k/a Champion Homes of Boaz, Inc. (3165)); Iseman Corp. (5899); MHCDC, LLC (3417); HomePride Finance Corp. (4767); and CDC Liquidation Estate (f/k/a Champion Development Corp. (4642)). The address for all Debtors is 3520 Lakeview Drive, Algonquin, IL 60102.

### How to Obtain Complete Copies of the Plan and Disclosure Statement

Copies of the Disclosure Statement and the Plan, and other related confirmation documents, can be **accessed on the Internet** at http://chapter11.epiqsystems.com/Champion. Alternatively, you can obtain a copy of these documents by contacting counsel for the Debtors (a) by e-mail, at ksuk@pszjlaw.com, (b) by telephone, by contacting Kati Suk at 415-263-7000, or (c) by mail, at Pachulski Stang Ziehl & Jones LLP, Attn: Kati Suk, 150 California Street, 15th Floor, San Francisco, CA 94111. Please specify whether you would like to receive copies of these documents by (i) **email transmission** (in which case, please include your e-mail address), (ii) on a **CD-ROM disk** delivered by return mail, or (iii) in **paper copies** delivered by return mail.

### Treatment of Creditors and Equity Interest Holders

The Plan provides for the classification and treatment of Claims against and Equity Interests in the Debtors, based on the differing nature and priority of the such claims and interests under the Bankruptcy Code. The following chart summarizes the treatment of Creditors and Equity Interest Holders under the Plan. The claim and recovery amounts are only estimates. Distributions under the Plan will only be made to holders of Allowed Claims. The total amount of Allowed Claims and recoveries may differ from the estimates set forth in the chart, depending upon, among other things, the outcome of objections to Claims and recoveries on Estate Assets and Creditor Trust Assets.

| CLASS | DESCRIPTION | CLAIM ESTIMATES | TREATMENT |
|---|---|---|---|
| N/A | Administrative Claims | Uncertain<br><br>Estimated Recovery: 100% | Pursuant to Article II(B) of the Plan, the Liquidating Debtors shall pay each Creditor holding an Allowed Administrative Claim Cash equal to the Allowed amount of such Claim, without interest, unless such Creditor shall have agreed to different treatment of such Claim. |
| N/A | Priority Tax Claims | Less than $10,000<br><br>Estimated Recovery: 100% | Pursuant to Article II(D) of the Plan, the Liquidating Debtors shall pay each Creditor holding an Allowed Priority Tax Claim Cash equal to the Allowed amount of such Claim, without interest, unless such Creditor shall have agreed to different treatment of such Claim. |
| N/A | Professional Fee Claims | Uncertain<br><br>Estimated Recovery: 100% | Pursuant to Article II(C) of the Plan, the Liquidating Debtors or the Creditor Trust shall pay Allowed Professional Fee Claims at the times and from the sources identified in the Plan (*i.e.*, the Carve Out Account, the Wind Down Facility or Litigation Proceeds from Estate Avoidance Actions). |
| 1 | Priority Claims against the Consolidated Debtors | Less than $10,000<br><br>Estimated Recovery: 100% | Pursuant to Article III(B)(1) of the Plan, the Liquidating Debtors shall pay, each Creditor holding an Allowed Priority Claim in Class 1 Cash equal to the Allowed amount of such Claim, without interest, unless such Creditor shall have agreed to different treatment of such Claim.<br>**IMPAIRED - ENTITLED TO VOTE** |
| 2 | Priority Claims against CEI | Less than $10,000<br><br>Estimated Recovery: 100% | Pursuant to Article III(B)(2) of the Plan, the Liquidating Debtors shall pay, each Creditor holding an Allowed Priority Claim in Class 1 Cash equal to the Allowed amount of such Claim, without interest, unless such Creditor shall have agreed to different treatment of such Claim.<br>**IMPAIRED - ENTITLED TO VOTE** |
| 3 | Secured Claims against the Consolidated Debtors | $0.00<br><br>Estimated Recovery: 100% | Pursuant to Article III(B)(3) of the Plan, each Creditor holding an Allowed Secured Claim in Class 3 (i) will retain its Lien on its collateral until the collateral is sold, and the proceeds of the sale, less costs and expenses of disposing of the collateral, will be paid to the Creditor; (ii) will receive a Cash payment equal to the amount of its Allowed Secured Claim; or (iii) will receive the collateral securing the its Allowed Secured Claim.<br>**UNIMPAIRED - NOT ENTITLED TO VOTE** |

| CLASS | DESCRIPTION | CLAIM ESTIMATES | TREATMENT |
|---|---|---|---|
| 4 | Secured Claims against CEI | $0.00<br><br>Estimated Recovery: 100% | Pursuant to Article III(B)(4) of the Plan, each Creditor holding an Allowed Secured Claim in Class 3 (i) will retain its Lien on its collateral until the collateral is sold, and the proceeds of the sale, less costs and expenses of disposing of the collateral, will be paid to the Creditor; (ii) will receive a Cash payment equal to the amount of its Allowed Secured Claim; or (iii) will receive the collateral securing the its Allowed Secured Claim. If any Holder of 2.75% convertible senior notes issued by CEI in the face amount of $180 million assert a Class 4 Claim, such claim will be paid solely from the proceeds of the Committee Lawsuit (or otherwise by, and from, the Creditor Trust Assets).<br>**UNIMPAIRED - NOT ENTITLED TO VOTE** |
| 5 | General Unsecured Claims against the Consolidated Debtors | $2,136,781,786 in Filed General Unsecured Claims. The amount of Allowed General Unsecured Claims is currently unknown.<br><br>Estimated Recovery: Unknown | Pursuant to Article III(B)(5) of the Plan, each Creditor holding an Allowed General Unsecured Claim in Class 5 shall receive a Pro Rata share of the Consolidated Debtors' Distributable Trust Assets.<br>**IMPAIRED - ENTITLED TO VOTE** |
| 6 | General Unsecured Claims against CEI | $1,515,016,232 in Filed General Unsecured Claims. The amount of Allowed General Unsecured Claims is currently unknown.<br><br>Estimated Recovery: Unknown | Pursuant to Article III(B)(6) of the Plan, each Creditor holding an Allowed General Unsecured Claim in Class 6 shall receive a Pro Rata share of the CEI Distributable Trust Assets.<br>**IMPAIRED - ENTITLED TO VOTE** |
| 7 | Equity Interests in the Consolidated Debtors | Recovery: 0% | Class 7 consists of the Equity Interests in the Consolidated Debtors. Upon the Effective Date, Class 7 Equity Interests will be deemed cancelled and will cease to exist.<br>**DEEMED TO REJECT - NOT ENTITLED TO VOTE** |
| 8 | Equity Interests in CEI | Recovery: 0% | Class 8 consists of the Equity Interests in CEI. Upon the Effective Date, Class 8 Equity Interests will be deemed cancelled and will cease to exist.<br>**DEEMED TO REJECT - NOT ENTITLED TO VOTE** |

### Objectives of the Plan

The Plan is a plan of liquidation. Virtually all of the Debtors' assets were sold to the Buyer pursuant to the Asset Purchase Agreement. Certain administrative and contractual liabilities of the Debtors were assumed by the Buyer under the Asset Purchase Agreement. Additionally, the Buyer agreed to fund a Wind Down Facility containing approximately $2.5 million to satisfy various post-closing obligations of the Debtors. With the exception of certain Cash on hand and funds derived from the Carve Out Account and the Wind Down Facility, the Debtors' primary remaining assets are any Avoidance Actions and the Committee Lawsuit.

Under the Plan, the Committee Lawsuit will be transferred to the Creditor Trust for continued prosecution and liquidation. In addition, certain Avoidance Actions that may be commenced by the Debtors prior to the Effective Date (referred to under the Plan as the Estate Avoidance Actions) will be prosecuted by the Liquidating Debtors for the principal purpose of satisfying any otherwise unpaid administrative, professional and priority claims (or portions thereof) as well as Plan Expenses (*i.e.*, expenses of the Liquidating Debtors following the Effective Date). All other Avoidance Actions will be transferred to the Creditor Trust for continued prosecution and liquidation. At such time as the Estate Administrator determines that all administrative and priority claims will be fully satisfied from the Estate Assets, and that sufficient funding exists for accrued and anticipated Plan Expenses, any unresolved Estate Avoidance Actions may then be turned over to the Creditor Trust.

The Plan contemplates the substantive consolidation of all Debtors except CEI (the parent Debtor). Creditors with Unsecured Claims against the Consolidated Debtors are classified in Class 5 of the Plan and Creditors with Unsecured Claims against CEI are classified in Class 6 of the Plan. The Creditor Trustee will segregate the assets and liabilities of the Consolidated Debtors and the assets of CEI and will make distributions to the Creditors of each in accordance with the assets, if any, available to satisfy their respective claims. Distributions to Class 5 Creditors will be made from the Consolidated Debtors' Distributable Trust Assets. Likewise, Distributions to Class 6 Creditors will be made from the CEI Distributable Trust Assets.

The Creditor Trustee will seek Bankruptcy Court approval for its proposed allocation of Creditor Trust Assets between CEI and the Consolidated Debtors. The trustee, however, also has the authority to propose an "inter-estate" settlement (among, on the one hand, CEI, and, on the other hand, the Consolidated Debtors), that (a) compromises, withdraws, offsets or extinguishes any Intercompany Claims, (b) substantively consolidates, in whole or in part, CEI into the Consolidated Debtors, (c) transfers any potential surplus available after Claims against the Consolidated Debtors are paid in full to satisfy Claims against CEI, or (d) otherwise achieves a comprehensive allocation of Creditor Trust Assets for Distributions among the holders of Allowed Claims in Classes 5 and 6. The Creditor Trustee will seek the approval of the Bankruptcy Court for any such "inter-estate" settlement. Nothing in the Plan or the Creditor Trust Agreement will affect the rights of any party in interest, including the Creditor Trustee, to object to any such "inter-estate" settlement or otherwise seek or oppose the full substantive consolidation of CEI into the Consolidated Debtors.

*The value of the Creditor Trust Assets (the Committee Lawsuit and any Avoidance Actions that are not Estate Avoidance Actions) is speculative and there is no assurance that such assets will generate any Litigation Proceeds for Distribution to the Holders of Class 5 and Class 6 Claims.* Under the Plan, Creditor Trust Expenses (*i.e.*, expenses related to the administration of the Creditor Trust and the fees and expenses of its Professionals) are payable from the Creditor Trust Assets before any Distributions to Unsecured Creditors. In addition, in the event the Estate Assets are insufficient to satisfy administrative, professional and priority Claims under the Plan (or the Plan Expenses of the Liquidating Debtors), such costs may also become Creditor Trust Expenses payable prior to Distributions to Unsecured Creditors. Last, the Contingency Fee is also payable from the Litigation Proceeds of the Committee Lawsuit and might further reduce the amount of Creditor Trust Assets available for Distribution to Unsecured Creditors.

Distributions to Class 5 and Class 6 Creditors will be made from the net proceeds, after deduction of certain expenses and obligations as provided in the Plan, of those assets transferred to a trust for the benefit of Unsecured Creditors (the "Creditor Trust"). The specific assets to be transferred to the Creditor Trust are set forth in Article I(B)(44) of the Plan, and include, among other things, the Assigned Litigation, which consists of (i) avoidance actions belonging to the Debtors to recover certain prepetition transfers made to third parties, (ii) any claims recovered by the Committee against certain of the Debtors' prepetition lenders with respect to the Committee Lawsuit, (iii) other litigation belonging to the Debtors as of the Effective Date. Because Distributions to Class 5 Creditors depend largely on the outcome of the Assigned Litigation, it is impossible, at present, to determine the amount or timing of Distributions. The Debtors and the Committee believe, however, that the Plan provides a superior alternative to Creditors than conversion to Chapter 7.

**Releases and Injunction Under the Plan**

The Plan includes a release by the Debtors and Debtors in Possession (on behalf of the Estates) (of all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities (other than the rights of the Debtors to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered hereunder, and liabilities arising after the Effective Date in the ordinary course of business) against the Debtors' Professionals, any member of the Committee (solely in its capacity as a member of the Committee), the Committee's Professionals, and the Estate Administrator, and any of the representatives, agents, officers, directors, employees, professionals, advisors, consultants and attorneys of any of the foregoing (the "Debtor Released Parties") whether such claims are liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place before, on or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of the Debtors, the Chapter 11 Cases, the negotiation and filing of the Plan, the Disclosure Statement or any prior plans of reorganization, the filing of the Chapter 11 Cases, the pursuit of confirmation of the Plan or any prior plans of reorganization, the consummation of the Plan, the administration of the Plan, or the property to be liquidated and/or distributed under the Plan, and that could have been asserted by or on behalf of the Debtors or their Estates, including pursuant to principles of substantive consolidation, piercing the corporate veil, alter ego, domination, constructive trust and similar principles of state or federal creditors' rights laws, in any such case, against the Debtor Released Parties. This release does not extend to potential Avoidance Actions, if any, against any Debtor Released Party, or objections to claims (including Professional Fee Claims) filed by any Debtor Released Party.

The Plan provides that each Entity that affirmatively elects by marking its Ballot, for itself and its successors, assigns, transferees, current and former officers, directors, agents, shareholders, members, financial advisors, attorneys, employees, partners, affiliates, representatives, in each case in their capacity as such, shall, by virtue of its election, be deemed to have released and discharged any and all claims, causes of action, demands, losses, whether known or unknown, in law or equity, against the Debtors, the Debtor Released Parties, the Debtors' present or former officers, directors, employees, representatives or agents, and their respective property based in whole or in part upon any act or omission arising from or in connection with or in any way relating to the Debtors. Nothing in the previous sentence shall be deemed to release the Debtors from liability for (i) Claims filed before the Administrative Claims Bar Date or the General Bar Date, to the extent Allowed, and (ii) Claims scheduled by the Debtors that are not contingent, disputed or unliquidated; provided, however, that, notwithstanding clause (i) above, the Debtors, the Liquidating Debtors, the Estate

Administrator, the Creditor Trust or the Creditor Trustee may object to the allowance of any Claim, on any ground. Notwithstanding the foregoing, Section IX(J) of the Plan shall not release any party from any Claims or causes of action existing as of the Effective Date based on an act of gross negligence or willful misconduct. The Committee takes no position whether Creditors should "opt in" to the foregoing release.

The Plan also provides for the issuance of the following injunction: **All Entities that have held, hold or may hold Claims against or Equity Interests in the Debtors are permanently enjoined, from and after the Effective Date, from taking any of the following actions against any of the Debtors, their Estates, the Committee, the Estate Administrator, the Liquidating Debtors, the Creditor Trust, the Creditor Trustee, the Professionals, or any of their property on account of any Claims or causes of action arising from events prior to the Effective Date: (i) enforcing, attaching, collecting or recovering by any manner or in any place or means any judgment, award, decree or order; (ii) creating, perfecting, or enforcing any Lien or encumbrance of any kind; (iii) asserting any right of setoff, right of subrogation or recoupment against any obligation, debt or liability due to the Debtors, and (iv) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Equity Interest. Except as expressly provided herein, the Debtors, the Liquidating Debtors, the Creditor Trust and the Creditor Trustee expressly reserve all rights and defenses that the Debtors may have (including, without limitation, the rights of subrogation and recoupment) with respect to any obligation, debt or liability allegedly due to any Entity. By accepting Distributions pursuant to the Plan, each Creditor holding an Allowed Claim will be deemed to have specifically consented to the injunctions set forth herein. Nothing in this injunction shall prohibit a Creditor holding a timely Filed Proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and to be paid in accordance with the distribution provisions of the Plan.**

### Voting Deadline

The Disclosure Statement Order fixed December 20, 2010 at 4:00 ET (the "Voting Deadline") as the deadline for casting a Ballot to accept or reject the Plan. In order to be tabulated, your ballot must be <u>received</u> by the Claims Agent by 4:00 p.m., prevailing Eastern time, on the Voting Deadline at the following addresses, as specified on each holders' Ballot:

If by first class mail or USPS Express Mail:
Champion Enterprises Ballot Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5014
New York, NY 10150-5014

If by overnight courier or hand delivery:
Champion Enterprises Ballot Processing Center
c/o Epiq Bankruptcy Solutions, LLC
757 Third Avenue, 3rd floor
New York, NY 10017

Dated: November 17, 2010

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Laura Davis Jones*
Laura Davis Jones (Bar No. 2436)
919 North Market Street, 17th Floor
P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com

Counsel for the Debtors and
Debtors in Possession

# Notice of Confirmation Hearing

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CEI LIQUIDATION ESTATE, et al.[1] | ) | Case No. 09-14019 (KG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

### NOTICE OF: (I) ENTRY OF ORDER APPROVING DISCLOSURE STATEMENT; (II) HEARING TO CONFIRM PLAN; AND (III) RELATED IMPORTANT DATES[2]

**DISCLOSURE STATEMENT and SOLICITATION PROCEDURES APPROVED.** On November 17, 2010, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered its *Order (A) Approving the Adequacy of the Debtors' Disclosure Statement; (B) Scheduling a Hearing to Confirm the Debtors' Second Amended Joint Plan of Liquidation; (C) Establishing Deadline for Filing Objections to Confirmation of Plan; (D) Approving Form of Ballots, Voting Deadline and Solicitation Procedures; and (E) Approving Form and Manner of Notice* (the "Disclosure Statement Order") [Docket No. 1088]. The Disclosure Statement Order approved the *Disclosure Statement Describing Debtors' Second Amended Joint Plan Of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, as amended (the "Disclosure Statement") [Docket No. 1084], as containing adequate information required under section 1125(a) of the Bankruptcy Code, and authorized the Debtors to solicit acceptances of the *Debtors' Second Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, dated November 16, 2010 (the "Plan") [Docket No. 1083].

**HEARING TO CONFIRM PLAN.** A hearing to confirm the Plan (the "Confirmation Hearing") will commence on December 29, 2010, at 1:30 p.m., prevailing eastern time, before the Bankruptcy Court. The Confirmation Hearing may be continued from time to time by announcing such continuance in open court or otherwise, without further notice to parties in interest. The Bankruptcy Court, in its discretion and prior to the Confirmation Hearing, may put in place additional procedures governing the Confirmation Hearing.

**PLAN OBJECTION DEADLINE.** The Bankruptcy Court has established December 20, 2010, at 4:00 p.m., prevailing eastern time, as the last date and time for filing and serving objections to the confirmation of the Plan (the "Plan Objection Deadline"). All objections must state with particularity the legal and factual grounds for such objection.

In order to be considered by the Bankruptcy Court, objections, if any, to confirmation of the Plan, must, in addition to being filed by the Plan Objection Deadline: (i) counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: RH Liquidation Estate (f/k/a Redman Homes, Inc. (4957)); CEI Liquidation Estate (f/k/a Champion Enterprises, Inc. (3168)); CHBC Liquidation Estate (f/k/a Champion Home Builders Co. (4984)); NEBSI Liquidation Estate (f/k/a New Era Building Systems, Inc. (0928)); NAHC Liquidation Estate (f/k/a/ North American Housing Corp. (1097)); Homes of Merit, Inc. (8488); WHC Liquidation Estate (f/k/a Western Homes Corporation (6910)); SFI Liquidation Estate (f/k/a Star Fleet, Inc. (0506)); CEMC Liquidation Estate (f/k/a Champion Enterprises Management Co. (6726)); CRI Liquidation Estate (f/k/a Champion Retail, Inc. (2154)); SJAHI Liquidation Estate (f/k/a San Jose Advantage Homes, Inc. (1951)); HAC Liquidation Estate (f/k/a Highland Acquisition Corp. (8962)); HMCLLC Liquidation Estate (f/k/a Highland Manufacturing Company LLC (6762)); SSH Liquidating Corp. (6678); CHBI (f/k/a Champion Homes of Boaz, Inc. (3165)); Iseman Corp. (5899); MHCDC, LLC (3417); HomePride Finance Corp. (4767); and CDC Liquidation Estate (f/k/a Champion Development Corp. (4642)). The address for all Debtors is 3520 Lakeview Drive Algonquin, IL 60102.

[2] Capitalized terms not defined herein shall have the same meaning as ascribed in the Plan.

Laura Davis Jones, Esquire; (ii) the Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 N. King Street, Suite 2207, Lock Box 35, Wilmington, Delaware 19801, Attn: Richard Schepacarter, Esquire; and (iii) counsel to the Official Committee of Unsecured Creditors: (1) Landis Rath & Cobb LLP, 919 North Market Street, Suite 600, P.O. Box 2087, Wilmington, Delaware 19899 (Courier 19801), Attn: William Chipman, Esquire and (2) LeClairRyan, 1800 Wachovia Tower, Drawer 1200, Roanoke, Virginia 24006, Attn: Michael Hastings, Esquire (collectively, the "Notice Parties").

**Objections not timely filed and served by the Plan Objection Deadline in accordance with the provisions of this Notice will not be heard and will be overruled.**

**NON-VOTING STATUS FOR MEMBERS OF Class 3 (Secured Claims Against Consolidated Debtors), Class 4 (Secured Claims Against CEI); Class 7 (Equity Interests in Consolidated Debtors); Class 8 (Equity Interests in CEI).** Under the Plan, Holders of Secured Claims in Classes 3 and 4 (if any) are unimpaired, deemed to have accepted the Plan and are not entitled to vote on the Plan. Holders of Equity Interests in Classes 7 and 8 will not receive or retain any property on account of their equity interests in the Debtors, are deemed to have rejected the Plan, and are not entitled to vote on the Plan. As such, holders of Secured Claims in Classes 3 and 4 (if any) and holders of Equity Interests in Classes 7 and 8 are not receiving a ballot with respect to the Plan.

**Persons may obtain copies of the Disclosure Statement and the Plan from Epiq Bankruptcy Systems, LLC by** visiting http://chapter11.epiqsystems.com/Champion, or by requesting copies (a) telephonically by calling 646-282-2400; or (b) by writing to Epiq Bankruptcy Solutions, LLC, Attn: Champion Ballot Processing, 757 Third Avenue, 3rd Floor, New York, NY 10017. Alternatively, you can obtain a copy of these documents by contacting counsel for the Debtors (a) by e-mail, at ksuk@pszjlaw.com, (b) by telephone, by contacting Kati Suk at 415-263-7000, or (c) by mail, at Pachulski Stang Ziehl & Jones LLP, Attn: Kati Suk, 150 California Street, 15th Floor, San Francisco, CA 94111. Please specify whether you would like to receive copies of these documents by (i) **email transmission** (in which case, please include your e-mail address), (ii) on a **CD-ROM disk** delivered by return mail, or (iii) in **paper copies** delivered by return mail.

**VOTING RECORD DATE.** October 26, 2010, is the record date for purposes of determining which parties are entitled to vote on the Plan.

**VOTING DEADLINE.** December 20, 2010 (the "Voting Deadline"), is the deadline for casting a ballot ("Ballot") to accept or reject the Plan. All Ballots accepting or rejecting the Plan must be received by Epiq Bankruptcy Systems, LLC (the "Notice and Balloting Agent") by 4:00 p.m., prevailing eastern time, on the Voting Deadline at the following address: (i) if by First Class Mail: Champion Ballot Processing Center, c/o Epiq Bankruptcy Solutions, LLC, FDR Station, P.O. Box 5014, New York, NY 10150-5014; (ii) if by overnight courier or hand delivery: Champion Ballot Processing Center, c/o Epiq Bankruptcy Solutions, LLC, 757 Third Avenue, 3rd Floor, New York, NY 10017.

**RULE 3018 MOTION DEADLINE AND HEARING.** It shall be the responsibility of each party who files a motion for an order pursuant to Bankruptcy Rule 3018(a) seeking temporary allowance of a claim for voting purposes (a "Rule 3018(a) Motion") to (a) file such Rule 3018(a) Motion with evidence in support thereof by no later than December 1, 2010, (b) schedule a hearing on such Rule 3018(a) Motion (the "Rule 3018(a) Hearing"), and (c) schedule the Rule 3018(a) Hearing on a date that is not less than ten (10) days prior to the Confirmation Hearing.

**THE PLAN INJUNCTION. Except as otherwise expressly provided in the Plan, all Entities that have held, hold or may hold Claims against or Equity Interests in the Debtors are permanently enjoined, from and after the Effective Date, from taking any of the following actions against any of the Debtors, their Estates, the Committee, the Estate Administrator, the Liquidating Debtors, the Creditor Trust, the Creditor Trustee, the Professionals, or any of their property on account of any Claims or causes of action arising from events prior to the Effective Date: (i) enforcing, attaching, collecting or recovering by any manner or in any place or means any judgment, award, decree or order; (ii) creating, perfecting, or enforcing any Lien or encumbrance of any kind; (iii) asserting any right of setoff, right of subrogation or recoupment against any obligation, debt or liability due to the Debtors, and (iv) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Equity Interest. Except as expressly provided herein, the Debtors, the Liquidating Debtors, the Creditor Trust and the Creditor**

Trustee expressly reserve all rights and defenses that the Debtors may have (including, without limitation, the rights of subrogation and recoupment) with respect to any obligation, debt or liability allegedly due to any Entity. By accepting Distributions pursuant to the Plan, each Creditor holding an Allowed Claim will be deemed to have specifically consented to the injunctions set forth therein. Nothing in Section IX(E) of the Plan shall prohibit a Creditor holding a timely Filed Proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and to be paid in accordance with the distribution provisions of the Plan.

Dated: November 17, 2010

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Laura Davis Jones*
Laura Davis Jones (Bar No. 2436)
Henry C. Kevane (CA Bar No. 125757)
David Bertenthal (CA Bar No. 167624)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
      hkevane@pszjlaw.com
      dbertenthal@pszjlaw.com
Counsel to Debtors

# Ballot
[Not filed]